1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California        Case No. 13-5161
    Corporation,
13
                    Plaintiff;               **COMPLAINT FOR:**
14
           v.                                 **(1) DIRECT PATENT INFRINGEMENT**
15                                            **(2) INDUCING PATENT INFRINGEMENT**
    **Versata Software, Inc., f/k/a Trilogy**  **(3) DECLARATORY RELIEF**
16  **Software, Inc.,** a Delaware corporation;
    **Trilogy Development Group, Inc.**, a   **Jury Trial Demanded**
17  California corporation; **Ameriprise
    Financial, Inc.,** a Delaware corporation;
18  **Ameriprise Financial Services, Inc.**, a
    Delaware corporation; **Aurea Software, Inc.,**
19  **a/k/a Aurea, Inc.,** a Delaware corporation;
    **Pacific Life Insurance Company**, a
20  Nebraska corporation; **United HealthCare
    Services, Inc.**, a Minnesota corporation;
21  **Metropolitan Life Insurance Company**, a
    New York corporation; **The Prudential
22  Insurance Company of America**, a New
    Jersey corporation; **Wellmark, Inc.**, an Iowa
23  corporation, **Waddell & Reed Financial,
    Inc.**, a Delaware corporation; and **Aviva USA
24  Corporation**, an Iowa corporation,

25                 Defendants.

26

27

28

Plaintiff XimpleWare Corp. alleges the following against Defendants Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Aurea Software, Inc. a/k/a Aurea, Inc. (collectively "Versata" or the "Versata Defendants"); and against Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., Pacific Life Insurance Company, United HealthCare Services, Inc., Metropolitan Life Insurance Company, The Prudential Insurance Company of America, Wellmark, Inc., Waddell & Reed Financial, Inc., and Aviva USA Corporation ((collectively the "Customer Defendants"); and the Versata Defendants and the Customer Defendants are collectively the "Defendants"):

## NATURE OF ACTION

1.     This action involves claims of patent infringement under 35 U.S.C. § 271 *et seq.* and declaratory relief.

## PARTIES

2.     Plaintiff XimpleWare Corp. ("XimpleWare") is a corporation organized under the laws of, and registered to do business in, California, with its principal place of business in Milpitas, California.

3.     Plaintiff XimpleWare is the designer, developer, and distributor of advanced computer software and, as an enterprise that practices its own patents, it has delivered to the marketplace advanced computer software that provides enterprises, Fortune 5000 corporations, firms, and other businesses with an advanced data processing solution for challenging data processing problems. Plaintiff XimpleWare has a number of licensed customers including Matrikon, Inc., Smith & Tinker, Inc., United Stationers Technology Services LLC, and Zoosk, Inc.

4.     Defendant Versata Software, Inc., f/k/a Trilogy Software, Inc. ("Versata") is a private corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business in Austin, Texas.

5.     Defendant Trilogy Development Group, Inc. ("Trilogy") is a corporation organized under the laws of California, with its principal place of business in Austin, Texas. On

Computerlaw Group LLP
www.computerlaw.com℠

information and belief, Trilogy acquired Defendant Versata in or about February 2006, and Trilogy is now the parent company of Versata and its subsidiaries.

6. Defendant Aurea Software, Inc. a/k/a Aurea, Inc. ("Aurea") is a corporation registered to do business in California, organized under the laws of Delaware with its principal place of business in Austin, Texas. On information and belief, Aurea merged with Trilogy and Versata in October, 2013.[1]

7. Defendant Ameriprise Financial, Inc. is a corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. On information and belief, Ameriprise is a leading diversified financial services provider, providing a range of financial planning products and is a customer of Versata and Trilogy.

8. Defendant Ameriprise Financial Services, Inc. is a corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. On information and belief, Defendant Ameriprise Financial Services, Inc. is a subsidiary of Defendant Ameriprise Financial, Inc. (together, Ameriprise Financial, Inc. and Ameriprise Financial Services Inc. shall be referred to as "Ameriprise").

9. Defendant Pacific Life Insurance Company ("Pacific Life") is a Nebraska corporation with its principal place of business in Newport Beach, California. On information and belief, Pacific Life is a customer of Versata and Trilogy.

10. Defendant United HealthCare Services, Inc. ("UHS") is a public corporation registered to do business in California organized under the laws of Minnesota with its principal place of business in Minnetonka, Minnesota. On information and belief, UHS is a diversified managed health care company and a customer of Versata and Trilogy.

11. Defendant Metropolitan Life Insurance Company ("MetLife") is a public corporation registered to do business in California organized under the laws of New York with its principal place of business in New York, New York. On information and belief, Metlife is a

---

[1] http://www.aurea.com/pressrelease/20131013

Complaint 2 Case No. 13-5161

global provider of insurance, annuities, and employment benefit programs and is a customer of Versata and Trilogy.

12. Defendant The Prudential Insurance Company of America ("Prudential") is a public corporation registered to do business in California organized under the laws of New Jersey with its principal place of business in Newark, New Jersey. On information and belief, Prudential provides insurance and financial services and is a customer of Versata and Trilogy.

13. Defendant Wellmark, Inc. ("Wellmark") is a corporation organized under the laws of Iowa, operating under the fictitious names "Blue Cross and Blue Shield of Iowa" and "Wellmark Blue Cross and Blue Shield." Wellmark has its principal place of business in Des Moines, Iowa. On information and belief, Wellmark is an insurance company and a customer of Versata and Trilogy.

14. Defendant Waddell & Reed Financial, Inc. ("W&R") is a public corporation registered to do business in California, organized under the laws of Delaware with its principal place of business in Overland Park, Kansas. On information and belief, W&R provides asset management and financial planning services and is a customer of Versata and Trilogy.

15. Defendant Aviva USA Corporation ("Aviva") is a company organized under the laws of Iowa with its principal place of business in West Des Moines, Iowa. On information and belief, Aviva is a subsidiary of Aviva, plc., a multinational insurance company headquartered in London, United Kingdom, and is a customer of Versata and Trilogy.

16. Plaintiff is informed and believes and on that basis alleges (collectively hereinafter "on information and belief"), that at all relevant times Trilogy was and is the operating entity of, and has effective, if not actual, control over the business decisions made by its subsidiaries, Versata and Aurea.

17. On information and belief, at all relevant times, Versata and Aurea were the mere solely controlled instrumentalities of Trilogy and functioned as Trilogy's *alter egos*, and all undertakings by Versata and Aurea were known by, sanctioned, or done at the direction and under the sole control of Trilogy, or by others serving under Trilogy's direction and/or sole control.

18. On information and belief, at all relevant times, Trilogy, Versata, Aurea, and a number of other entities have acted and continue to act in conspiracy to obscure Versata's liability for Patent infringement, breaches of contract, and other wrongful conduct. On information and belief, those acts consist of, but are not limited to, the comingling of corporate funds and assets; failure to segregate funds and assets of the separate entities; concealment and misrepresentation of the identity and ownership of the corporations; disregard for formalities and failure to maintain arms' length relationships among the various entities; the use of the corporate entity to procure labor, services, or merchandise for another entity; the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; contracting with one another with intent to avoid performance by use of a corporate entity as a shield against liability of another entity; and the use of a corporation to transfer to it the existing liability of another entity.

19. By reason of the foregoing, this Court should pierce the corporate veils of Versata and Aurea and hold Trilogy or any other parent company or controlling persons or entities liable for Versata's monetary and other obligations as determined at trial.

### JURISDICTION AND VENUE

20. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Federal courts have exclusive jurisdiction in patent cases, and because those claims are Federal questions.

21. This Court has personal jurisdiction over all defendants because all Defendants do substantial business in this District.

22. Venue is proper, under 28 U.S.C. §§ 1331, 1391(c), 1391(d), and 1400(b). This action raises federal questions (patent infringement); substantial part of the events giving rise to this action occurred in this District; the creation, infringement, and sale of software at issue involved corporations registered to do business in California with California subsidiaries, branches, and partners found in and doing business in this district; and at least one act of infringement took place in this District.

## BACKGROUND FACTS

### XML Parsing

23. A parser is a piece of software that reads certain electronic files and makes the information from those files available to applications and programming languages, acting as a go-between as underlying code which can be written in any number of programming languages and what a user sees when the program runs.

24. Extensible Markup Language (known as XML) is a set of rules for encoding documents electronically. Known as a metalanguage, XML allows one to design a markup language which is in turn used for the easy interchange of documents on the World Wide Web. XML is itself a subset of a standard called SGML, and can be used to design a tagging scheme that allows elements of a document to be marked according to their content rather than their format.

25. Information stored in XML documents can be used more effectively when parsed—read line by line or node by node to fetch pieces of information for the program to read and translate. In essence, parsing is the act of analyzing a set of characters or data and then determining, recognizing, deciphering, or acquiring the significant data and commands from a sequence of programming code, and translating the code which allows the program to do the job for which it was designed.

### Formation of XimpleWare

26. In October 2002, Zhengyu "Jimmy" Zhang founded XimpleWare (the "Company") with a since-departed co-founder Hui Tian. Mr. Ying Shum (who has since passed away) was an advisor to the Company during its early stages. Using experience gained from fifteen years in the software engineering field, Mr. Zhang started XimpleWare with the goal of achieving maximum efficiency for XML processing by using dedicated integrated circuits as a system on a chip (SOC). Mr. Tian left the venture in 2003, and since then Mr. Zhang has handled all creative and managerial responsibilities at XimpleWare.

27. Mr. Zhang chose the name "XimpleWare" for his new venture to evoke the efficiency, speed, and simplicity with which his innovative source code parses XML. The name

also included the letters X-M-L, further identifying XimpleWare's goal and product in the marketplace.

28. Mr. Zhang began writing the XimpleWare Source code (the "<u>Source Code</u>") in 2004, and has since put in over 10,000 work hours of computer programming into developing and improving the XimpleWare product.

29. In its nascent stages, XimpleWare was funded entirely by seed money from friends and family of the original founders, mostly from Mr. Zhang and his parents. Mr. Tian still holds a minority stake in the company, but apart from Mr. Zhang, Mr. Tian, and Ying Shum, there are no other owners, venture capital groups, angel investors, or parties with an interest in XimpleWare.

**Open Source Software**

30. Open source software is software whose source code is available free of charge for the public to use, copy, modify, sublicense, or distribute. While some developers choose to provide their product entirely free of charge, many developers and companies—including large public companies like Oracle and IBM—make use of open source licensing and its collaborative nature to create or incorporate code into products that can be licensed for profit outside the open source community.

31. By licensing one's source code as part of the open source community, or making modifications to someone else's source code under an open source license, the creator is granted certain protections, depending on the permissiveness of the particular license, from improper use of his or her intellectual property. To that end, most, if not all, open source licenses apply certain requirements and restrictions for the method and manner in which code extracted from an open source repository can be used, and attaches conditions on any such use.

32. There are many commonly used open source licenses, including the GNU General Public License, the BSD License, and the Apache License.

33. XimpleWare made the business decision to license its Source Code under the GNU General Public License version 2 ("<u>GPL</u>"). A copy of the GPL is attached to this Complaint as **Exhibit 1**. Due to the fundamental properties of XML technology, XML parsing

innovations are very hard to sell. A parser is not an end-user product, *i.e.*, it must be integrated into another existing product.

34. The GPL requires, among other things, (1) that any changes made to the code carry notices stating that the files were changed, and the date of all changes; (2) any code created or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices must print or display when the code is run; and (4) that when distributed, the program must be accompanied by the complete machine-readable source code.

35. XimpleWare chose the GPL approach because it is one of the most restrictive open source licenses available, requiring that any derivative code incorporating GPL-protected code must be returned to the open source community in its entirety. This concept is often referred to as "copyleft."

**The XimpleWare Product**

36. The complete XimpleWare software product, known as "VTD-XML" or "VTD-XML Extended" (collectively, the "Product"), is made up of a number of constituent parts, each with individual functions, and is written in several different programming languages. Most of the code, however, is written in Java, which is one of the most popular programming languages in use today.

37. XML is ubiquitous in today's business world. For example, since 2007, the file formats for Microsoft Office are based on XML,[2] and many modern web pages are coded in XML.[3]

38. The XimpleWare Source Code and Product reads and parses XML at a rate estimated to be five to ten times faster than other current XML parsing programs, effecting greater efficiency and speed. It also provides indexing and incremental capabilities that are

---

[2] Tom Ngo, "Office Open XML Overview", Ecma International, http://www.ecma-international.org/news/TC45_current_work/OpenXML%20White%20Paper.pdf (last accessed Sep. 10, 2013) (archived at http://perma.cc/0fyzpuJ6Vzg).

[3] Murray Altheim and Shane McCarron, eds., XHTML™ 1.1 - Module-based XHTML - Second Edition, W3C Recommendation, World Wide Web Consortium, Nov. 23, 2010, http://www.w3.org/TR/xhtml11/ (last accessed Sep. 10, 2013) (archived at http://perma.cc/05zB2mzwJW8).

crucial to many high performance XML applications and are not available in any other XML parsing libraries. Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs.

39. The Product is an enabler for any program that uses XML in its applications, but to see the upside in the parsing speed, customers have to try it.

40. XimpleWare has had interest and licensing discussions with several industry leaders, and has established its vtd-xml software as a leading technology in XML parsing.

**The XimpleWare Source Code**

41. Over the course of over ten years, Mr. Zhang updated and improved the Source Code and Product (and still does), checking out sections of code to work on and then checking it back in to an open source database called SourceForge. SourceForge is a community-based website where software developers can publish source code to a global audience, and can join and collaborate on open source projects.[4]

42. One of the principal tools SourceForge provides is version control systems. A version control system is a computer program that manages a set of source code. Programmers use version control systems by "checking out" a copy of the source code to their own computer, making changes, and then submitting those changes back into the version control system in a process called "checking in." Each check-in is documented in the version control system with time, date, and contributor information, as well as comments from the programmer describing his or her changes. With a version control system, it is possible to review all changes to a set of source code and to know who made those changes.

43. SourceForge also provides a system where programmers not affiliated with a project may submit suggested changes to members of the project. The members may then choose

---

[4] SourceForge "About" page, http://sourceforge.net/about (last accessed Sep. 10, 2013) (noting SourceForge has "3.4 million developers [who] create powerful software in over 324,000 projects") (archived at http://perma.cc/0fwQ1xw51i1)..

to check those changes in to the version control system, or to reject them. As with any other check-in, time, date, contributor, and other information are logged in the version control system.

44. One version control system offered by SourceForge is the Concurrent Versions System, commonly known as "CVS". Like other version control systems, CVS tracks who made which changes to the managed source code, and CVS keeps a log of those revisions.

45. XimpleWare placed its Source Code on SourceForge, and managed that Source Code in SourceForge's CVS system.

## The XimpleWare Issued Patents

46. XimpleWare applied for, and the United States Patent and Trademark Office issued, three patents (the "Patents"):

 A. U.S. Patent No. 7,133,857, issued Nov. 7, 2006, titled "Processing structured data" (the "'857 Patent")
 B. U.S. Patent No. 7,620,652, issued Nov. 17, 2009, titled "Processing structured data" (the "'652 Patent")
 C. U.S. Patent No. 7,761,459, issued July 20, 2010, titled "Processing structured data" (the "'459 Patent")

47. All of the Patents received a term extension to February 2024 under 35 U.S.C. § 154(b). The named inventors on all of the Patents are Jimmy Zhang and Hui Tian, and all right, title, and interest are assigned to XimpleWare.

48. The first patent (the '857 Patent), filed in 2002 and issued in 2006, is titled "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering methods, apparatuses, and program storage devices for "efficiently processing a structured data file" or "efficiently processing structured data"—including XML. The '857 Patent has been cited by five other issued U.S. patents—including patents issued to IBM, HP, and Canon—and by three published U.S. patent applications.

49. The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8 independent claims) for methods, apparatuses, and program storage devices, and focuses on efficiently processing structured data like XML. The '652 Patent has been cited by two issued U.S. patents by IBM and Canon and by one published U.S. patent application.

50. The '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent claims) for methods, apparatuses, hardware devices, and program storage devices, and again focuses on efficiently processing structured data like XML. The '459 Patent has been cited by two issued U.S. patents and one published U.S. patent application.

51. There has been no challenge to any of the XimpleWare Patents or any other XimpleWare intellectual property rights.

52. The XimpleWare Source Code and Product practice the XimpleWare Patents.

53. XimpleWare owned the three XimpleWare Patents throughout the period of the Defendants' infringing acts, and still owns the patents. XimpleWare uses the patent numbers on its Product and in its documentation to give actual and constructive notice of the existence of the XimpleWare patents.

### **Defendants Copy XimpleWare's Patented Source Code**

54. In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute.

55. According to documents filed in that case, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for breach of contract, among other claims.

56. During the prosecution of that lawsuit, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's GPL-licensed Source Code in the source code of Versata's DCM product.

57. XimpleWare has never granted Versata any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

58. XimpleWare has never granted Ameriprise or any other Defendant in this case any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

59. On information and belief, Versata has distributed thousands of unauthorized copies of the Product or the Source Code to a number of customers like the Customer Defendants, and Versata has illegally collected revenues on the sale and distribution of the

1 derivative DCM product incorporating XimpleWare's Source Code, in violation of
2 XimpleWare's Patents. XimpleWare estimates Versata's total sales of the infringing DCM
3 product to exceed $300,000,000.

4     60.    Defendants have infringed, and are still infringing on the XimpleWare's
5 intellectual property rights by making, selling, and using the DCM product that practices the
6 XimpleWare Patents, and the Defendants will continue to do so unless this Court enjoins them.

**FIRST CLAIM FOR RELIEF**

**DIRECT PATENT INFRINGEMENT**

**(AGAINST ALL DEFENDANTS)**

    61.    XimpleWare incorporates the allegations in paragraphs 1–60 as if set forth here in full.

    62.    XimpleWare designs and licenses software designed to more effectively and more efficiently parse XML in an almost limitless range of products and applications.

    63.    XimpleWare has made substantial investments of time and money, as well as great efforts over a period of ten or more years developing a faster, more efficient way to parse XML. These investments in research and development have, over the years, yielded many innovations, including the innovations disclosed and claimed in the Patents.

    64.    The '857, '652, and '459 were duly and legally issued to XimpleWare, as assignee of the inventors named therein, for an invention entitled "Processing Structured Data." True and correct copies of the Patents are attached as **Exhibits 2, 3, and 4**, respectively.

    65.    The Patents are valid and enforceable.

    66.    At all material times since the original issue dates, XimpleWare has been the owner of the entire right, title, and interest in the Patents.

    67.    XimpleWare's Product as well as its Source Code practices each of the independent claims of the Patents.

    68.    On information and belief, Defendants have infringed and continue to infringe XimpleWare's Patents and each of them by making, using, selling, and/or offering for sale in the

United States a number of products that practice the claims contained in the Patent, and will continue to do so unless enjoined by this Court.

69. The Versata Defendants incorporated the XimpleWare Product and/or Source Code into a number of their own products (the "<u>Versata Products</u>"), including but not limited to the Versata DCM product. Therefore, the Versata Products **necessarily** practice **at least** independent Claims 1 and 7 the '857 Patent, independent Claims 1 and 9 of the '652 Patent, and independent Claim 1 of the '459 Patent.

70. The Versata Products and each of them literally infringe because every element of each of those Claims is included in DCM, and are necessarily included in any other product into which Defendants incorporated the XimpleWare Source Code or Product. The Versata Defendants used and sold its infringing products in the United States, and did so willfully.

71. On information and belief, without any license or other authorization of Plaintiff, the Customer Defendants purchased the Versata Products from the Versata Defendants. The Customer Defendants infringed and continue to willfully infringe the Patents by using the infringing Versata Products, incorporated into the Customer Defendants' internal software systems which the Customer Defendants used and continue to use in their daily course of business.

72. Defendants' conduct constitutes direct infringement of XimpleWare's patent rights under 35 U.S.C. § 271(a).

73. Defendants' direct infringement of XimpleWare's exclusive patent rights has damaged, and/or will damage XimpleWare's business, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court pursuant to 35 U.S.C. § 283.

74. Defendants' direct infringement of XimpleWare's Patents is the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory damages in an amount to be determined at trial.

75. Defendants' direct infringement of the Patents entitles XimpleWare to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283, an award of all damages sustained

by XimpleWare as a result of Defendants' infringement, and enhanced damages adequate to compensate for Defendants' collective and willful infringement of XimpleWare's patent rights together with attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284 and 285.

### SECOND CLAIM FOR RELIEF

### INDUCING PATENT INFRINGEMENT

### (AGAINST VERSATA DEFENDANTS)

76. XimpleWare incorporates the allegations in paragraphs 1–60 as if set forth here in full.

77. The Versata Defendants have infringed and induced infringement of the '857, '652, and '459 Patents.

78. The Versata Defendants deliberately downloaded the XimpleWare Source Code from the SourceForge open source repository and incorporated it into DCM and a number of other products. On information and belief, the Versata Defendants then sold those products to a number of customers including, but not necessarily limited to, the Customer Defendants who incorporated those products into their own internal systems, which the Customer Defendants used and continue to use in the daily course of business.

79. The Versata Defendants, in violation of 35 U.S.C. § 271(b), have knowingly aided, abetted, and actively induced the Customer Defendants and others to infringe XimpleWare's Patents.

80. The Versata Defendants have committed contributory infringement of XimpleWare's exclusive rights has damaged and will continue to damage XimpleWare's business, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court pursuant to 35 U.S.C. § 283.

81. The Versata Defendants' infringement of XimpleWare's exclusive patent rights has damaged, and/or will damage XimpleWare's business, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court pursuant to 35 U.S.C. § 283.

82. The Versata Defendants' willful contributory infringement of XimpleWare's Patents is the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory damages in an amount to be determined at trial.

83. The Versata Defendants' infringement of the Patents entitles XimpleWare to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283, an award of all damages sustained by XimpleWare as a result of Defendants' infringement, and enhanced damages adequate to compensate for Defendants' collective and willful infringement of XimpleWare's patent rights together with attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284 and 285.

## THIRD CLAIM FOR DECLARATORY RELIEF

### (AGAINST ALL DEFENDANTS)

84. XimpleWare incorporates the allegations in paragraphs 1–60 as if set forth here in full.

85. XimpleWare owns each and every of the three issued Patents.

86. XimpleWare has the superior, and indeed only, right to continue to use, make, sell, or offer for sale its Source Code, subject to the GPL, as the lawful owner of the Patents.

87. XimpleWare requests that this Court declare that United States Patents Nos. 7133857, 7620652, and 7761459 and each of them are valid and enforceable.

88. The requested declaration is necessary and appropriate at this time to affirm XimpleWare's rights to exclusive use and sale of its protected intellectual property rights under federal patent law.

89. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

XimpleWare prays for judgment against all Defendants, and each of them, and those persons in control of or acting in concert with them as follows:

A. On the First Claim for Relief, for preliminary and permanent injunctive relief enjoining the manufacture, production, marketing, or sale by Defendants, or any of them, of any product practicing the '857, '652, and/ or '459 Patents; for all damages sustained by XimpleWare

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

as a result of Defendants' infringement; and for an award to XimpleWare of enhanced damages adequate to compensate for Defendants' collective infringement, up to and including trebling of XimpleWare's damages for the Versata Defendants' willful infringement.

      B.      On the Second Claim for Relief, for preliminary and permanent injunctive relief enjoining the Versata Defendants or any of them from contributing to the manufacture, production, marketing, or sale of any product practicing the '857, '652, and/ or '459 Patents; for all damages sustained by XimpleWare as a result of the Versata Defendants' infringement; and for an award to XimpleWare of enhanced damages adequate to compensate for the Versata Defendants' collective and willful infringement, up to and including trebling of XimpleWare's damages for the Versata Defendants' willful infringement.

      C.      On the Third Claim for Relief, for a declaration that:

          1.      XimpleWare is the sole owner of the XimpleWare Patents;

          2.      The XimpleWare Patents are valid and enforceable; and

          3.      As such, XimpleWare has the exclusive right to make sell, offer for sale and copy the XimpleWare Product and Source Code.

      D.      On all Claims for Relief, for a constructive trust of all benefits Defendants gained, and disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

      E.      For costs of suit including any applicable interest and reasonably attorneys' fees as allowed by law.

      F.      For such other, further, and different relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on each and every cause of action which is triable by or which may otherwise be tried by jury in this action.

//
//
//
//

|  |  |  |
|---|---|---|
|  |  | COMPUTERLAW GROUP LLP |
| Dated: November 5, 2013 | By: | /s/ Jack Russo |
|  |  | Jack Russo |
|  |  | Christopher Sargent |
|  |  | Ansel Halliburton |
|  |  |  |
|  |  | Attorneys for Plaintiff |
|  |  | XIMPLEWARE CORP. |