1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California          Case No. 5:13-cv-5161-PSG
    Corporation,
13                                              **PLAINTIFF XIMPLEWARE'S**
                        Plaintiff;              **CONSOLIDATED OPPOSITION TO**
14                                              **THREE MOTIONS TO DISMISS BY THE**
              v.                                **VERSATA DEFENDANTS, UNITED**
15                                              **HEALTHCARE, AND OTHER CUSTOMERS**
    **Versata Software, Inc., f/k/a Trilogy**
16  **Software, Inc.**, a Delaware corporation;  Date:        March 14, 2014
    **Trilogy Development Group, Inc.**, a      Time:        9:00 a.m.
17  California corporation; **Ameriprise**       Location:    Courtroom 10, 19th Floor
    **Financial, Inc.**, a Delaware corporation;  Judge:       Hon. Susan Illston
18  **Ameriprise Financial Services, Inc.**, a
    Delaware corporation; **Aurea Software, Inc.**,
19  **a/k/a Aurea, Inc.**, a Delaware corporation;
    **Pacific Life Insurance Company**, a
20  Nebraska corporation; **United HealthCare**
    **Services, Inc.**, a Minnesota corporation;
21  **Metropolitan Life Insurance Company**, a
    New York corporation; **The Prudential**
22  **Insurance Company of America**, a New
    Jersey corporation; **Wellmark, Inc.**, an Iowa
23  corporation; **Waddell & Reed Financial,**
    **Inc.**, a Delaware corporation; and **Aviva USA**
24  **Corporation**, an Iowa corporation,

25                      Defendants.

26

27

28

_Computerlaw Group LLP_
_www.computerlaw.com℠_

1

**TABLE OF CONTENTS**

2   Table of Contents ................................................................................................. i

3   Table of Authorities.......................................................................................... iii

4   Introduction   ..................................................................................................... 1

5   Statement of Facts.............................................................................................. 2

6   Legal Standard .................................................................................................. 5

7   Argument   ........................................................................................................ 6

8   I.   The Court Has Already Ruled on the Substance of This Motion............................ 6

9     A.  The Court Has Already Held Plaintiff's Copyright Claims Sufficient. .............. 6

10    B.  The Court Has Also Held Many of Plaintiff's Secondary Claims Sufficient. ........ 6

11  II.  XimpleWare Alleges The Interrelationships Between  Versata, Trilogy, and Aurea with

12    Sufficient Particularity. .................................................................................. 7

13  III. XimpleWare Licenses its Software  Under Strict and Specific Conditions Only. ......... 9

14    A.  The GPL Contains Many Restrictions on Use, Including Notice and Attribution, as Well as

15    Copying and Distribution............................................................................ 9

16    B.  The GPL's Preamble is Factual and Not Part of the Legally Binding Terms and Conditions

17    of the Limited License Grant Language. ...................................................... 10

18  IV. XimpleWare's Amended Complaint  Properly Alleges That The Versata Defendants  Violated

19    the GPL and Infringed XimpleWare's Patents. ............................................. 11

20    A.  The Facts of The Versata Defendants' Infringing Conduct Are Clearly Pled.................. 11

21    B.  The Versata Defendants' GPL Violation, Breach of Contract, And Patent Infringement are

22    Pled Clearly and Sufficiently. .................................................................. 12

23      1.  The GPL Implements Automatic Voiding of a Failed License Grant. ................. 12

24      2.  The Versata Defendants Violated the GPL By Either Removing or Failing to Include

25      Both XimpleWare's Copyright Notices and the GPL License Itself...................... 13

26  V.  All Defendants Practice the XimpleWare Patents In Suit.................................. 14

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1  VI. XimpleWare's Other Claims Survive Because It Has Alleged and Will Prove the Elements of

2    Its Well-Pled Patent Claim. ............................................................. 15

3    A. XimpleWare Owns the Patents in Suit  and the Unlicensed VTD-XML Software. .......... 15

4    B. No Defendant Had Authority to Practice XimpleWare's Patents. ..................................... 15

5    C. XimpleWare Alleges That The Defendants "make[], use[],  offer[] to sell, or sell[]"

6      Software Implementing the Patents. ................................................................... 16

7  VII.    XimpleWare Properly Pleads Inducement of Patent Infringement. ................................ 16

8    A. Like Versata's, the Customers' Licenses Also  Terminate Automatically Upon Their Own

9      Violation of the GPL. ......................................................................... 16

10   B. It is Factually Impossible for the  Versata Defendants' Customers Not to Violate the GPL.

11      17

12   C. The Versata Defendants' Customers Cannot Satisfy Conditions Precedent. ..................... 18

13   D. The Versata Defendants Had Full Knowledge That They Were  Selling Many Open Source

14      Components, Including XimpleWare's, in DCM. ............................................. 18

15 VIII.   At Minimum, Leave to Amend Should be Liberally Granted. ......................................... 19

16 Conclusion      ............................................................................. 19

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

**TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal,* 566 U.S. 662 (2009) ....................................................................... 5

*Automated Transaction LLC v. New York Cmty. Bank*, 12-CV-3070, 2013 WL 992423

  (E.D.N.Y. Mar. 13, 2013) ........................................................................................ 8

*Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007).......................................... 5

*Foman v. Davis*, 371 U.S. 178 (1962)......................................................................... 20

*Guillen v. Bank of America Corp.,* 2011 WL 4071996 (N.D. Cal. 2011) ..................... 5

*In re Napster Copyright Litig. v. Hummer Winblad Venture Partners*, 354 F. Supp. 2d 1113

  (N.D. Cal. 2005)........................................................................................................ 8

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................................. 12

*Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173 (9th Cir. 1989) ........... 15

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012)............................................ 5

*Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594 (N.D. Cal. 2007) ............................ 8

*Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 U.S. Dist. LEXIS 30052, 2004 WL 5268123

  (E.D.Tex. Aug. 4., 2004)........................................................................................ 12

*Matthews v. Starritt*, 252 Cal. App. 2d 884 (1967) ............................................ 10, 18

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ................... 5

*Mindlab Media, LLC. v. LWRC Int'l LLC*, CV 11-CV-3405, 2012 WL 386695

  (C.D. Cal. Feb. 6, 2012)............................................................................................ 8

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1316–17 (Fed. Cir. 2005)

*OSU Student Alliance v. Ray,* 699 F.3d 1053 (9th Cir. 2012) ....................................... 5

*Quigley v. Verizon Wireless*, 2012 U.S. Dist. LEXIS 75027 (N.D. Cal. May 30, 2012)............... 8

*Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d. 1393 (9th Cir. 1986)................... 19

*Schwab v. Bridge*, 27 Cal. App. 204 (1915)............................................................... 10

*Skilstaf, Inc. v. CVS Caremark Corp.,* 669 F.3d 1005 (9th Cir. 2012) ........................... 5

Computerlaw Group LLP
www.computerlaw.com℠

1

**STATUTES**

2  17 U.S.C. § 106 ................................................................................................... 14

3  35 U.S.C.§ 271(a) (2014) ................................................................................... 15

4  35 U.S.C.§ 282 .................................................................................................... 15

5

**OTHER AUTHORITIES**

6  LAWRENCE ROSEN, OPEN SOURCE LICENSING: SOFTWARE FREEDOM AND INTELLECTUAL

7     PROPERTY LAW (Prentice Hall 2004) ............................................................. 11

8

**RULES**

9  FED. R. CIV. P. Rule 12(b)(6) ............................................................................. 5

10

**TREATISES**

11  2-8 *Nimmer on Copyright* § 8.11[B][1] (2014)................................................ 14

12  4 PATRY ON COPYRIGHT § 13:9 (2013)............................................................. 14

13  5-16 CHISUM ON PATENTS § 16.02 .................................................................... 14

14  5-17 CHISUM ON PATENTS § 17.04 (2014) ....................................................... 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

### INTRODUCTION

Despite its apparent procedural complexity, the story behind this case is simple. Versata and its affiliates develop specialized enterprise software called DCM and sell it to financial services and insurance companies to help them run their businesses. Versata incorporated XimpleWare's VTD-XML software into DCM. XimpleWare's software is licensed as open source under a license called the General Public License, or GPL. Under the GPL, software is free for some purposes, but that freedom comes with strings attached. Versata violated the GPL by (among other things) incorporating XimpleWare's software into DCM without proper attribution, without including source code, and without entering into a commercial license with XimpleWare. Because of the way in which Versata breached the GPL, its license to XimpleWare's software, copyrights, and patents terminated automatically, and also made it impossible for the Customers themselves to comply. XimpleWare sued Versata, its affiliates, and its Customers for copyright infringement (in a separate copyright case now pending before Judge Illston, no. 3:13-cv-5160-SI (the "Copyright Case")) and for patent infringement (this case).

Before this Court are four Motions to Dismiss: one from Defendants Versata, Trilogy, and Aurea (the "Versata Defendants"), Dkt. 39; a second from Defendants Pacific Life Insurance, Metropolitan Life Insurance, Prudential Insurance, Wellmark, and Aviva, Dkt. 38; a third from United Healthcare Services, Dkt. 33 ("UHC", and with the others, collectively the "Customers"); and a fourth renewed motion to dismiss from Ameriprise, Dkt. 25. XimpleWare offers this consolidated Opposition in response to the three Motions by the Versata Defendants and the Customers, and has already filed a separate opposition to Ameriprise's renewed motion to dismiss, Dkt. 28.

The Court, through Judge Illston in XimpleWare's case for copyright infringement, has already ruled on many of the same issues presented in these Motions. *XimpleWare v. Versata*, no. 3:13-cv-5160-SI, at Dkt. 61 (Feb. 4, 2014 order denying Ameriprise's motion to dismiss) (the "Copyright Order", a copy of which is attached as Exhibit 1 to this Opposition for convenience).

Computerlaw Group LLP
www.computerlaw.com℠

1    Because XimpleWare has sufficiently pled all of its claims against all of the defendants in

2    this case, the Court should deny all of the Motions and allow this case to proceed on its merits.

3                                       S<small>TATEMENT OF</small> F<small>ACTS</small>

4        1.        Plaintiff XimpleWare Corp. ("XimpleWare") had spent over a decade developing

5    and fine-tuning its copyrighted[1] software product, known as "VTD-XML" or "VTD XML

6    Extended" (collectively, the "Product"), which reads and parses XML code at a range estimated

7    to be five to ten times faster than other current XML parsing programs, effecting greater

8    efficiency and speed. Amended Complaint (Dkt. 18) ("Am. Compl."), ¶ 42.

9        2.        The Product provides indexing and incremental capabilities that are crucial to

10   many high performance XML applications and are not available in any other XML parsing

11   libraries. Efficiency and speed are critical in many applications of XML, especially in large scale

12   enterprise data interchange applications where entire server computers are dedicated to handling

13   streams of XML data. If XML data can be processed faster, then fewer servers are needed, less

14   leased space in data centers is needed for those servers, and less energy is required to power

15   those servers—altogether greatly reducing computing needs and costs. Am. Compl. ¶ 42.

16       3.        XimpleWare made the business decision to license its Product and related source

17   code under an "open source" license known as the GNU General Public License version 2

18   ("GPL"). The GPL requires, among other things, that: (1) any changes made to the code carry

19   notices stating that the files were changed, and the dates of all changes; (2) any code created or

20   derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices

21   must print or display when the code is run; and (4) when distributed, the program must be

22   accompanied by the complete machine-readable source code. Am. Compl., Ex. 1. All four

23   conditions must be met. Am. Compl. ¶ 34.

24       4.        The GPL requires strict compliance: Under its Section 4, any failure to comply

25   with **any** of the GPL's multiple conditions means there is no license and this means any use,

26

27   _____

[1] There is no dispute that the Copyright Office issued Registration Certificate No. TX 7-727-556

28   to Plaintiff XimpleWare. The Court may, of course, take judicial notice of Exhibit 2 hereto.

distribution, or other exploitation is not licensed, and all rights the violator could have obtained under the GPL are voided. Am. Compl. ¶¶ 30–39.

5.      XimpleWare chose the GPL approach because it is one of the most restrictive licenses available, requiring that any derivative code incorporating GPL-protected code must be returned to the open source community in its entirety. In other words, if Developer A creates Product A and licenses it under the GPL, and Developer B creates Product B which incorporates Product A, then Developer B must also license Product B under the GPL. Am. Compl. ¶ 36.

6.      XimpleWare is the owner of all right, title, and interest in all patents related to the Product and related source code, including but not limited to U.S. Patent Nos. 7,133,857, 7620,652, and 7,761,459. Am. Compl. ¶¶ 50–51.

7.      All versions of the Source Code have appropriate copyright notices printed or affixed conspicuously on the first page of each work, as required by the GPL. XimpleWare uses the GPL-required copyright notices on its Product and its documentation to give actual and constructive notice of the existence of XimpleWare copyrights. Am. Compl. ¶¶ 44–47.

8.      The first patent (the '857 Patent), filed in 2002 and issued in 2006, is titled "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering methods, apparatuses, and program storage devices for "efficiently processing a structured data file" or "efficiently processing structured data"—including XML. The '857 Patent has been cited by five other issued U.S. patents—including patents issued to IBM, HP, and Canon—and by three published U.S. patent applications. Am. Compl. ¶ 52.

9.      The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8 independent claims) for methods, apparatuses, and program storage devices, and focuses on efficiently processing structured data like XML. The '652 Patent has been cited by two issued U.S. patents by IBM and Canon and by one published U.S. patent application. Am. Compl. ¶ 53. The '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent claims) for methods, apparatuses, hardware devices, and program storage devices, and again

Computerlaw Group LLP
www.computerlaw.com℠

1  focuses on efficiently processing structured data like XML. The '459 Patent has been cited by

2  two issued U.S. patents and one published U.S. patent application. Am. Comp. ¶ 54.

3      10.    The XimpleWare Source Code and Product practice the XimpleWare Patents and

4  XimpleWare owns and owned the three XimpleWare Patents throughout the period of the

5  Defendants' infringing acts. XimpleWare uses the patent numbers on its Product and in its

6  documentation. Am. Compl. ¶ 57.

7      11.    XimpleWare's SourceForge project page also clearly indicates that the VTD-

8  XML software is licensed under the GPL; the XimpleWare web site has always made clear that

9  any and all commercial projects, and those involving any distribution, require a commercial

10  license under the commercial terms and conditions to be concluded with XimpleWare, and that

11  generally requires a signed written agreement between the parties and payment of commercial

12  royalties to XimpleWare. Multiple other commercial parties who could not come within the

13  GPL's strict conditions have agreed to sign and have signed commercial licenses with

14  XimpleWare and the custom and practice in the industry is for the proposed licensee to do

15  appropriate due diligence and to assure that his, her or its project is strictly within the GPL's

16  conditions or else to contact XimpleWare to discuss the requirements for commercial licensing.

17  Am. Compl. ¶ 58.

18                          **The Texas Litigation**

19      12.    In the Summer of 2013, XimpleWare first learned of a Texas lawsuit between

20  Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation"). According to

21  documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until

22  Ameriprise attempted to write its own software using programmers in India to replace the

23  Versata product. Versata then sued for misappropriation, among other claims. During the

24  prosecution of the Texas Litigation, Ameriprise informed XimpleWare that it had discovered

25  XimpleWare's Source Code in Versata's DCM product, and with said XimpleWare Source code,

26  none of the conditions of the GPL license had been met. There was also no evidence of any

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1  commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in

2  Versata's DCM product. Am. Compl. ¶¶ 59–61.

3      13.    According to the same set of documents, Versata maintained in the course of

4  business a list of open source software components that it included in its DCM Product, and that

5  list included VTD-XML. Versata then distributed its DCM product to customers, including

6  Ameriprise, in violation of the GPL and XimpleWare's copyrights and patents. XimpleWare has

7  never granted Defendants any commercial license, permission, or authorization to use and

8  redistribute any XimpleWare Product or Source Code. The only license that the Versata

9  Defendants purported to have was from the GPL. Am. Compl. ¶¶ 66–67.

10  **LEGAL STANDARD**

11      Though the Rule 12(b)(6) test has been revised in recent years, the Supreme Court in *Bell*

12  *Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007), clarified that "once a claim has been stated

13  adequately, it may be supported by showing **any** set of facts consistent with the allegations in the

14  complaint." *Id.* at 563 (emphasis added). Thus, when deciding a motion to dismiss, Federal

15  Courts must accept "all factual allegations in the complaint as true and constru[e] them in the

16  light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.,* 669 F.3d

17  1005, 1014 (9th Cir. 2012); *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1058 (9th Cir. 2012);

18  *see also Guillen v. Bank of America Corp.,* 2011 WL 4071996 (N.D. Cal. 2011).

19      "To survive a motion to dismiss a complaint must contain sufficient factual matter,

20  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa*

21  *County*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 566 U.S. 662 (2009)). A

22  complaint meets this standard when "plaintiff pleads factual content that allows the court to draw

23  the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal

24  under Rule 12(b)(6) is appropriate **only** where the complaint lacks a cognizable legal theory or

25  sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*,

26  521 F.3d 1097, 1104 (9th Cir. 2008) (emphasis added).

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1

<u>**ARGUMENT**</u>

2   Plaintiff opposes the Versata Defendants' and the Customers' Motions to Dismiss on the

3   merits. XimpleWare has adequately pled the Versata Defendants' violation of the GPL, its

4   resulting automatic termination, the impossibility of the Customers themselves acting in

5   compliance with the GPL and the resulting automatic termination of their downstream licenses,

6   the practicing of XimpleWare's patents by its own software, and the inclusion of that software in

7   the Versata Defendants' DCM software, which all defendants have made, used, offered to sell, or

8   sold. XimpleWare has thus stated claims for direct patent infringement, inducement, and

9   declaratory relief, and the Court should deny all of the Motions to Dismiss in their entirety.

10   **I.     <u>THE COURT HAS ALREADY RULED ON THE SUBSTANCE OF THIS MOTION.</u>**

11       **A.     <u>The Court Has Already Held Plaintiff's Copyright Claims Sufficient.</u>**

12   The Court, through Judge Illston, has already held that XimpleWare's claims in its

13   copyright case for direct copyright infringement are legally sufficient to survive a motion to

14   dismiss. Specifically, the Court held:

15       Accepting as true the facts alleged in the amended complaint and drawing all
         reasonable inferences in favor of XimpleWare, as it must, the Court finds that
16       XimpleWare has alleged Ameriprise reproduced and distributed the software
         outside of Ameriprise and to non-employees, thereby acting outside the scope of
17       the GPL. **XimpleWare has therefore stated a claim of copyright infringement.**
         The Court DENIES defendants' motion to dismiss plaintiff's copyright claim.
18

19       Copyright Order at p. 5:3–7 (emphasis added).

20   In making this ruling, the Court considered many of the same arguments now advanced

21   in the Motions in this case, and rejected them all.

22       **B.     <u>The Court Has Also Held Many of Plaintiff's Secondary Claims Sufficient.</u>**

23   As quoted above, the Court has already held that XimpleWare has stated a claim for

24   copyright infringement, and that secondary claims that depend on that copyright infringement

25   claim may also proceed. The Court found that the secondary claims rise and fall with the core

26   copyright infringement claim:

27       Ameriprise argues that XimpleWare's claims for unjust enrichment, unfair
         competition, and declaratory relief must all be dismissed **because they are**
28

Computerlaw Group LLP
www.computerlaw.com℠

**dependent upon XimpleWare's copyright infringement claim**. [] Having found that XimpleWare's allegations constitute a claim for copyright infringement, the Court accordingly DENIES the defendants' motion to dismiss XimpleWare's claims for unjust enrichment, unfair competition, and declaratory relief.

Copyright Order at p. 5:10–14 (emphasis added).

Here, the Court should apply this same reasoning, and should also deny the Motion as to XimpleWare's claims for inducing patent infringement and declaratory relief.

## II.   XIMPLEWARE ALLEGES THE INTERRELATIONSHIPS BETWEEN VERSATA, TRILOGY, AND AUREA WITH SUFFICIENT PARTICULARITY.

The Versata Defendants complain of "group pleading." Dkt. 39 at pp. 1–2. However, XimpleWare has alleged clearly in its Amended Complaint that Versata, Trilogy, and Aurea are closely interrelated companies, all of which have had a role in the development, marketing, and sale the infringing DCM product. It is notable that the Versata Defendants complain only in the abstract, without denying these interrelationships. The Court should see this for what it is: merely one more procedural roadblock to avoid adjudication on the merits, rather than to secure this case's "just, speedy, and inexpensive determination." FED. R. CIV. P. Rule 1; FED. R. CIV. P. Rule 8(e) ("Pleadings must be construed so as to do justice").

The Versata Defendants also argue that XimpleWare has recited only conclusory *alter ego* allegations. This is, however, not true. XimpleWare has alleged specific facts tying the three Versata Defendants together closely. Specifically, XimpleWare alleges that Versata is a subsidiary of Trilogy, and that Aurea has merged with Trilogy and Versata:

> Plaintiff is informed and believes, and on that basis, alleges (collectively hereinafter "on information and belief"), that at all relevant times Trilogy was and is the operating entity of, and has effective, if not actual, control over the business decisions made by its subsidiaries, Versata and Aurea.
>
> Am. Compl. ¶ 16.
>
> On information and belief, Trilogy acquired Defendant Versata in or about February 2006, and Trilogy is now the parent company of Versata and its subsidiaries.
>
> Am. Compl. ¶ 5.

Computerlaw Group LLP
www.computerlaw.com℠

On information and belief, Aurea merged with Trilogy and Versata in October, 2013.

Am. Compl. ¶ 6.

On information and belief, Ameriprise is a leading diversified financial services provider, providing a range of financial planning products and is a customer of Versata and Trilogy.

Am. Compl. ¶ 7.

The Amended Complaint further cites an Aurea press release confirming its merger with Versata and Trilogy. Am. Compl. at fn. 1.

The Versata Defendants cite *Quigley v. Verizon Wireless*, 2012 U.S. Dist. LEXIS 75027 (N.D. Cal. May 30, 2012) for the proposition that bare *alter ego* allegations are insufficient to survive a motion to dismiss. However, *Quigley*, a debt collection case, is easily distinguished. There, the plaintiff sued a wireless phone carrier and debt collectors it had engaged in an arms-length transaction. The Court dismissed the claims against the debt collectors' parent companies because all the plaintiff had alleged was the mere fact of the parent–child relationship. *Id.* Here, however, XimpleWare alleges far more: that all three of the Versata Defendants actively contributed to the infringing activities at the core of this dispute. *See, e.g.*, Am. Compl. ¶¶ 5, 6, 7, 9, 16. This is not merely an allegation of a parent–child relationship. It is an allegation that **all three companies share active business operations, and that all three companies contributed directly related to the infringing acts**. Thus, *Quigley* is distinguishable, as are *Mindlab Media, LLC. v. LWRC Int'l LLC*, CV 11-CV-3405, 2012 WL 386695 (C.D. Cal. Feb. 6, 2012) and *Automated Transaction LLC v. New York Cmty. Bank*, 12-CV-3070, 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013).

The allegations XimpleWare makes in its Amended Complaint are more than sufficient to support claims on the basis of *alter ego*. *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607–08 (N.D. Cal. 2007) (holding that allegations of inadequate capitalization and failure to maintain formalities was sufficient for *alter ego* allegations to survive motion to dismiss) *citing In re Napster Copyright Litig. v. Hummer Winblad Venture Partners*, 354 F. Supp. 2d 1113, 1121 (N.D. Cal. 2005) (allegations of "essentially full operational control" sufficient to support *alter*

Computerlaw Group LLP
www.computerlaw.com℠

*ego* claims).  Here, XimpleWare has alleged the domination and control over Versata and Aurea

by Trilogy and the inequities caused if Trilogy is allowed to hide behind the corporate form it has

abused.  Accordingly, the motion to dismiss as to the *alter ego* claims should be denied.

### III.   XIMPLEWARE LICENSES ITS SOFTWARE UNDER STRICT AND SPECIFIC CONDITIONS ONLY.

#### A.   The GPL Contains Many Restrictions on Use, Including Notice and Attribution, as Well as Copying and Distribution.

The GPL does not provide "free" software for unlimited commercial use.[2]  Rather, it

allows certain persons to use source code under very strict terms that require returning code to

the open source community, and maintaining **at all times** (a) copyright notices, (b) disclaimers of

warranties, (c) notices referencing the GPL license, and (d) when distributed, the program must

be accompanied by the complete machine-readable source code.  For example, the GPL states:

> You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, **provided that** you conspicuously and appropriately publish on each copy an appropriate **copyright notice** and **disclaimer of warranty**; **keep intact all the notices that refer to this License** and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

GPL at § 1 (emphasis added).  Another very clear conditional example is expressed in section 2:

> If the modified program normally reads commands interactively when run, you **must** cause it, when started running for such interactive use in the most ordinary way, [1] **to print or display an announcement including an appropriate copyright notice [2] and a notice that there is no warranty** (or else, saying that you provide a warranty) and that users may redistribute the program [3] under these conditions, and [4] telling the user how to view a copy of this License.

GPL at § 2(c) (emphasis and brackets added).

//

//

//

//

---

[2] The defendants repeat this wildly inaccurate characterization of the GPL throughout their briefs. The Court need only glance at the GPL to realize that it contains many detailed terms and conditions that place real limits on how GPL-licensed software is treated. To say GPL-licensed software has "no restrictions" is simply untrue. Dkt. 33 at p. 5; Dkt. 38 at p. 1, 2.

Computerlaw Group LLP
www.computerlaw.com℠

1    The illegally copied and illegally distributed code did not contain the required notices and

2    disclaimers and that can never be GPL-compliant under these provisions. <u>The use of the words</u>

3    <u>"**provided that**" in the license term in Section 1 of the GPL means the required notices are a</u>

4    <u>condition precedent to the grant of a license, not merely a condition of it. Conditional language</u>

5    <u>such as "provided" has long been upheld to create a condition precedent.</u> *Schwab v. Bridge*, 27

6    Cal. App. 204 (1915); *see also Matthews v. Starritt*, 252 Cal. App. 2d 884, 887 (1967) ("'Subject

7    to' means subordinate to [citations] and is generally interpreted as a condition precedent."

8    [citations omitted]).

9    There can be no doubt that the Versata Defendants failed to comply with these conditions

10    precedent to a license under the GPL because they either removed or never included: (a)

11    XimpleWare's copyright notices, (b) the GPL warranty disclaimer, (c) a full copy of the modified

12    code, or (d) the notice of the GPL license itself as alleged in the Amended Complaint. Am.

13    Compl. ¶ 34, 61, 71. Any one of these failures is fatal. GPL § 1. The software that the Versata

14    Defendants provided to Ameriprise and other customers did not contain the requisite notices and

15    disclaimers. Am. Compl. ¶ 63. For this reason alone, XimpleWare has more than adequately pled

16    and established that the Versata Defendants have violated the GPL, and no license was ever

17    granted—which means that no use by any defendant was ever authorized, licensed or otherwise

18    compliant with the GPL.

19    **Defendant Ameriprise agrees**, stating that "the rights to copy, modify, sublicense, and

20    distribute the software are all contingent on precise compliance with the terms of the GPL, and

21    are terminated in the event of non-compliance." Dkt. 25 at p. 7:20–22. However, again, the Court

22    has already ruled on this issue in the context of Ameriprise's motion to dismiss in the Copyright

23    Case, holding that XimpleWare's allegations against Ameriprise were sufficient to withstand a

24    Motion to Dismiss. Copyright Order at p. 5. The same is equally true in this case.

25    **B.    The GPL's Preamble is Factual and Not Part of the Legally**
            **Binding Terms and Conditions of the Limited License Grant Language.**

26

27    The GPL's lengthy "Preamble" section is not a legally operative part of the GPL; it is

28    generally understood in the open source community to be simply recitals. The Preamble's own

Computerlaw Group LLP
www.computerlaw.com℠

terms make it clear that the operative language is in the subsequent sections, stating in its last

sentence, "The precise terms and conditions for copying, distribution and modification follow."

This is further confirmed in the secondary literature where, for example, Lawrence Rosen, an

attorney and noted open source expert, states in a 2004 book:

> The preamble, of course, is **not** an operative part of the GPL license. It is not among its *terms and conditions*. There is nothing in its words that must be obeyed. It is merely a helpful preface so that you can better understand the GPL in its context.

LAWRENCE ROSEN, OPEN SOURCE LICENSING: SOFTWARE FREEDOM AND INTELLECTUAL

PROPERTY LAW 109 (Prentice Hall 2004) (emphasis added).

As this is a Motion to Dismiss, the allegations in the Amended Complaint must be taken

at full face value. While the Court may consider certain types of contracts attached to pleadings,

non-binding language such as the Preamble cannot override the clear allegations of the

Complaint, let alone the actual terms and conditions of the GPL. Those terms and conditions—

whose breach and non-compliance by all defendants is clearly alleged—control and are fully

governing here. Accordingly, the Motions to Dismiss must be denied.

**IV.   XIMPLEWARE'S AMENDED COMPLAINT PROPERLY ALLEGES THAT THE VERSATA DEFENDANTS VIOLATED THE GPL AND INFRINGED XIMPLEWARE'S PATENTS.**

**A.   The Facts of The Versata Defendants' Infringing Conduct Are Clearly Pled.**

As alleged in XimpleWare's Amended Complaint, XimpleWare provided its software

online under the GPL. Versata downloaded XimpleWare's software, and included a subset of it—

object code only, without any notices, without any warranty disclaimers, without a copy of the

code, and without any license information—in its DCM product, which it distributed to

customers including Ameriprise and the other Customers. Am. Compl. ¶¶ 68-69. **XimpleWare**

**has alleged that the software Versata distributed was not GPL compliant—including**

**especially its failure to include the required notices and disclaimers.** Am. Compl. ¶¶ 34, 61,

71.

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

**B.    The Versata Defendants' GPL Violation, Breach of Contract, And Patent Infringement are Pled Clearly and Sufficiently.**

**1.    The GPL Implements Automatic Voiding of a Failed License Grant.**

At all times, the Versata Defendants were **strictly** bound by the GPL's terms and conditions. There is no dispute that the GPL applies to the Versata Defendants: their arguments are all attempts to reinterpret the GPL, not claim its inapplicability.

Section 4 of the GPL states a requirement of strict compliance, and any violation terminates the license automatically at the moment of violation. Section 4's language is clear on this:

> 4. **You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License.** Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and **will automatically terminate your rights under this License**. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

GPL at § 4 (emphasis added).

The Court, in the Copyright Case, has already held that if a party violates the GPL, then an action for copyright infringement is appropriate. Copyright Order at pp. 4–5, *citing Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) (allowing action for copyright infringement based on breach of open source license). This is equally true in the patent context. *Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 U.S. Dist. LEXIS 30052, 2004 WL 5268123 (E.D.Tex. Aug. 4, 2004) ("A patent license grants the licensee rights to undertake activities that would otherwise constitute infringement, *i.e.*, to produce and sell products covered by a patent. If a licensee materially breaches the license, however, the licensee loses the protection of the license and becomes a mere infringer.").

The Amended Complaint alleges clear facts amounting to a breach which triggers this automatic termination, and such allegations must be accepted as true for these Motions—and the Court must fairly apply the law and reach the obvious results, namely that any and all licenses terminated automatically under these provisions. Am. Compl. ¶¶ 39, 67.

XimpleWare's Amended Complaint states multiple instances of violations of the terms of the GPL. First, the Versata Defendants made copies of XimpleWare's software without the

1   required copyright notices and license information. Second, the Versata Defendants made illegal

2   "distributions" within the meaning of the GPL as well as copyright law and patent law (because

3   "distribution" is a kind of either "use" or "sale" under 35 U.S.C. § 271(a)). Third, the adoption

4   into commercial software is also not authorized and violates XimpleWare's patent rights (again,

5   either "use" or "sale" under 35 U.S.C. § 271(a)). The effect of any and each violation is that the

6   Versata Defendants breached the GPL and lost any license automatically, at that moment, by

7   operation of law, and they are therefore patent infringers.

8           **2.**       **The Versata Defendants Violated the**
                        **GPL By Either Removing or Failing to Include**

9                           <u>**Both XimpleWare's Copyright Notices and the GPL License Itself.**</u>

10       XimpleWare's Amended Complaint states that Versata's DCM software, which

11   incorporates XimpleWare's software, does not include any XimpleWare copyright or use notices.

12   Am. Compl. ¶¶ 61, 70 XimpleWare alleges that it has always included such copyright notices on

13   its source code and in the software packages it distributes online via SourceForge. Am. Compl. ¶

14   87.

15       Under the GPL, Section 1 is incorporated by Section 3, which governs distribution and

16   copying of GPL-licensed software in object code form: "You may copy and distribute the

17   Program (or a work based on it, under Section 2) in object code or executable form under the

18   terms of Sections 1 and 2 above provided that you also do one of the following…" GPL § 3.

19       XimpleWare's Amended Complaint alleges clearly that Versata downloaded

20   XimpleWare's software (Am. Compl. ¶¶ 61–62); included it in object code form in its DCM

21   product (Am. Compl. ¶¶ 61–73); and did not include any XimpleWare copyright notices or GPL

22   licensing information (Am. Compl. ¶¶ 59–73). For these reasons, XimpleWare's claims are well-

23   founded and this Motion must be denied.

24       Finally, XimpleWare alleges that this distribution[3] ran afoul of the terms and conditions

25   of the GPL, and thus the Versata Defendants' patent license under the GPL terminated

26   

27   [3] The Patent Act does not define "use" or "distribution." However, "[t]he few court decisions that
address the meaning of 'use' have consistently followed the Supreme Court's lead in giving the

28   

Computerlaw Group LLP
www.computerlaw.com℠

1    automatically. Am. Compl. ¶ 67 XimpleWare pled adequate facts in support of each of these

2    allegations, as the Court has already found. Copyright Order at p. 5 (order denying Ameriprise

3    motion to dismiss).

4           Thus, XimpleWare has sufficiently pled that the Versata Defendants do not have a license

5    to XimpleWare's software.

6    **V.      ALL DEFENDANTS PRACTICE THE XIMPLEWARE PATENTS IN SUIT.**

7           The final element of XimpleWare's direct patent infringement claim is that the defendants

8    practice the patents in suit. This alleged clearly in the Amended Complaint, despite attempts to

9    obfuscate it. XimpleWare alleges that:

10          1.      its VTD-XML software practices the three patents in suit (¶¶ 56, 80);

11          2.      the Versata Defendants included VTD-XML software in their DCM software

12                  (¶ 82)

13          3.      the Versata Defendants made (by making copies), used (by using it internally and

14                  selling it), offered to sell, and did sell copies of DCM including VTD-XML

15                  (¶¶ 61–68, 83);

16          4.      the Customers received those copies of DCM including VTD-XML (¶¶ 68, 84);

17                  and

18          5.      the Customers made (by making more copies, including to third parties) and used

19                  that software (¶¶ 68, 70, 73, 81, 84–85).

20

21

22

23    term a broad interpretation." 5-16 CHISUM ON PATENTS § 16.02, citing *NTP, Inc. v. Research in*

24    *Motion, Ltd.*, 418 F.3d 1316–17 (Fed. Cir. 2005). Although one might also expect to look to
      copyright law for help interpreting the GPL, which is both a copyright license and a patent

25    license, the Federal Copyright Act does not itself define "distribution" either. 17 U.SC. § 106; 4
      PATRY ON COPYRIGHT § 13:9 (2013). A common sense approach to statutory interpretation is

26    therefore warranted. The word "distribution" generally includes "the exclusive right to sell or

27    otherwise transfer ownership of, rent, lease, or lend one or more copies or sound recordings of
      the work." 2-8 NIMMER ON COPYRIGHT § 8.11[B][1] (2014); *see also* 17 U.SC. § 106(3).

28

Computerlaw Group LLP
www.computerlaw.com℠

**VI.    XIMPLEWARE'S OTHER CLAIMS SURVIVE BECAUSE IT HAS ALLEGED AND WILL PROVE THE ELEMENTS OF ITS WELL-PLED PATENT CLAIM.**

The elements for stating a claim for direct patent infringement are laid out clearly in the Patent Act:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a) (2014).

**A.    XimpleWare Owns the Patents in Suit and the Unlicensed VTD-XML Software.**

There is no dispute in this case that XimpleWare is the owner of the patents in suit (Am. Compl. ¶ 57), as well as the source code to VTD-XML that implements them—the use of unlicensed copies of which XimpleWare contends constitutes patent infringement. Indeed, there can be no dispute—especially at the pleadings stage—because XimpleWare presents a copyright registration and three issued patents, which all constitute *prima facie* evidence of ownership. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("copyright registration is *prima facie* evidence of ownership"); 35 U.S.C. § 282 (patent presumed valid) .

XimpleWare's Amended Complaint alleges clearly that multiple parties (including Ameriprise) received XimpleWare's software from Versata, and that Versata violated the GPL. *See generally*, Amended Complaint. The Copyright Office Registered Plaintiff's Copyright and Issued Registration Certificate TX 7-727-556 to Plaintiff, affording XimpleWare all the rights connected thereto, and the U.S. Patent and Trademark Office issued three patents to XimpleWare. Am. Compl. ¶¶ 50–54

**B.    No Defendant Had Authority to Practice XimpleWare's Patents.**

As discussed in detail above, no defendant has had authority to practice XimpleWare's patents because of the Versata Defendants' violation of the GPL, and impossibility that the Customers could ever comply based on the nature of the Versata Defendants' own infringement, which rendered their downstream receipt of the GPL void *ab initio*.

Computerlaw Group LLP
www.computerlaw.com℠

1

### C.   XimpleWare Alleges That The Defendants "make[], use[], offer[] to sell, or sell[]" Software Implementing the Patents.

2   XimpleWare has clearly alleged that all of the Defendants infringe the patents-in-suit.

3   The Versata Defendants have used, offered to sell, and sold software incorporating XimpleWare's

4   VTD-XML software which practices the patents. Am. Compl. ¶ 73. Ameriprise has also used the

5   software both for its internal purposes and with its outside third-party franchisees. Am. Compl.

6   ¶¶ 68–69.¶; Copyright Order at p. 5. The other Customers have similarly used the software. Am.

7   Compl. ¶ 84.  These acts all qualify as direct infringement. Finally, XimpleWare has alleged no

8   activity beyond the United States.

9   ### VII.   XIMPLEWARE PROPERLY PLEADS INDUCEMENT OF PATENT INFRINGEMENT.

10   The key to XimpleWare's patent inducement claim is simple: the Versata Defendants

11   have not given their customers notice or means to comply with the GPL. Any customer's use of

12   the infringing DCM software is doomed to violate the GPL, the consequence of which is

13   automatic termination of the customer's GPL license. Thus, all the Customers never had licenses

14   to begin with, because no conditions for a license grant were ever met—or, to put it differently,

15   any purported licenses were void *ab initio* and/or were instantly terminated automatically as a

16   direct result of the Versata Defendants' infringing conduct and failure to tell their Customers that

17   its DCM product included XimpleWare's VTD-XML. This is classic inducement of patent

18   infringement, for which all Defendants are strictly liable under well-settled patent law principles.

19   5-17 CHISUM ON PATENTS § 17.04 (2014).).

20   ### A.   Like Versata's, the Customers' Licenses Also Terminate Automatically Upon Their Own Violation of the GPL.

21   The parties agree that, under the terms of the GPL, one party's distribution of GPL-

22   licensed software confers a license under the GPL to the receiving party. GPL § 6. However, the

23   **receiving party is equally bound by the GPL's terms and conditions**, including the conditions

24   that XimpleWare clearly alleges that the Versata Defendants violated—as well as its automatic

25   termination provision. If the receiving party violates any term or condition, its license

26   **terminates automatically** and, where there was never any compliance, the license is void *ab*

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1   *initio*. Section 4 of the GPL—which Defendant United Healthcare quotes in its motion, Dkt. 33,

2   at pp. 5–6, and which the other Customers quote at pp. 4–5 of their motion, Dkt. 38—states:

> 3   You may not copy, modify, sublicense, or distribute the Program except as
> expressly provided under this License. Any attempt otherwise to copy, modify,
> 4   sublicense or distribute the Program is void, and will **automatically terminate**
> your rights under this License. However, parties who have received copies, or
> 5   rights, from you under this License will not have their licenses terminated **so long
> as such parties remain in full compliance**.
>
> 6
>
> 7   GPL § 4 (emphasis added).

8   **B.      It is Factually Impossible for the
            Versata Defendants' Customers Not to Violate the GPL.**

9          Under the facts alleged in the Amended Complaint, it is **impossible** for the Versata

10  Defendants' customers not to violate the GPL and infringe on XimpleWare's patents.

11         XimpleWare has alleged, among other violations, that the Versata Defendants distributed

12  VTD-XML without a copy of the GPL (a first violation); did not include a copy of its source

13  code (a second violation); and did not offer to provide its source code (a third violation). In

14  combination with the Versata Defendants' utter lack of notice to their customers that VTD-XML

15  was included in DCM, there is no way that those customers even could know that they had to

16  comply with the GPL. This is precisely the position in which Ameriprise found itself; it is

17  precisely the point of the GPL's notice conditions; and it is precisely the interpretation of the

18  GPL that the Court has already found sufficient for purposes of Ameriprise's motion to dismiss.

19  Copyright Order at p. 5.

20         The Versata Defendants provided VTD-XML to their customers as a part of DCM. Am.

21  Compl. at ¶ 84. Under Section 3 of the GPL, object code copies must be accompanied by one of

22  the following: (1) a copy of the source code; (2) an offer to provide the source code; or (3)

23  information the providing party received regarding an offer to provide the source code.

24  XimpleWare alleges that the Versata Defendants provided their customers **none** of those things

25  (as Ameriprise confirms), and thus violated the GPL.

26         Because the Versata Defendants' customers never received any of the information

27  required to make a compliant copy of the object code, nor any source code, nor any notice at all

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

that the GPL applied, **it is factually impossible for the Versata Defendants' customers not to violate the GPL**.

### C.      The Versata Defendants' Customers Cannot Satisfy Conditions Precedent.

The Versata Defendants' customers received XimpleWare's software in violation of the GPL license. For their subsequent use of the XimpleWare software to be licensed, they had to first comply with <u>all</u> the terms and conditions—because, like the original license itself, this "automatic" license contains a condition precedent requiring compliance with the terms and conditions of the GPL license. *Matthews v. Starritt*, 252 Cal. App. 2d 884, 887 (1967). <u>XimpleWare has alleged that the code the Versata Defendants' Customers received from Versata and that the Versata Defendants' customers used was not GPL compliant—including especially its failure to include the required notices and disclaimers.</u> Am. Compl. ¶¶ 39, 61, 67. Because of the Customers' failure—indeed, inability—to meet this additional condition precedent to the "automatic" license, their receipt of a copy and use of XimpleWare's software was never authorized, never licensed, and at all times an infringement of XimpleWare's patents. For this additional reason, the Motions must be denied both as to the inducement claim against the Versata Defendants and as to the direct infringement claims against the Customers.

### D.      The Versata Defendants Had Full Knowledge That They Were Selling Many Open Source Components, Including XimpleWare's, in DCM.

XimpleWare also alleges that the Versata Defendants had clear, early knowledge that they were incorporating GPL-licensed software into their DCM product and selling it (as their own) to customers:

> Versata's commercial distribution of the XimpleWare Product or Source Code outside the terms of the GPL was knowing and willful. According to documents filed in the Texas Litigation[4], **Versata maintained in the course of business a list of open source software components that it included in its DCM product, and that list included VTD-XML as well as the fact that VTD-XML and several other components were licensed under the GPL**…

Am. Compl. ¶ 65 (emphasis added).

---

[4] *Versata v. Ameriprise*, Travis County District Court, No. D-1-GN-12-003588, removed in January 2014 by Ameriprise to Federal court as *Versata v. Ameriprise*, U.S. District Court for the Western District of Texas, No. 1:14-cv-00012-SS.

1  This clear knowledge of VTD-XML's licensing status, coupled with the failure to even

2  attempt to negotiate a commercial license with XimpleWare, makes the Versata Defendants liable

3  for willful patent infringement—and it also provides a further basis for XimpleWare's claim for

4  inducing patent infringement.

5  By encouraging their Customers to receive and make copies onto their own computers to

6  run DCM, without giving them notice or means to comply with the GPL, the Versata Defendants

7  have induced their Customers to infringe XimpleWare's patents. The Court should deny the

8  Versata Defendants' Motion as to XimpleWare's inducement claim.

9  **VIII.    AT MINIMUM, LEAVE TO AMEND SHOULD BE LIBERALLY GRANTED.**

10  The Ninth Circuit has held that "if a complaint is dismissed for failure to state a claim,

11  leave to amend should be granted unless the court determines that the allegation of other facts

12  consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber*

13  *Distributing v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Even if the Court

14  finds any reason to grant the Versata Defendants' motion to dismiss, it is well-established that the

15  proper remedy is to permit Plaintiff to amend the claims for relief at issue. Leave to amend

16  should **only** be denied in extreme circumstances where it would cause undue prejudice, or where

17  it would be impossible to cure the defect with an amendment, *e.g.*, where a statute had not been

18  enacted at the time of the alleged facts. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149,

19  1159 (9th Cir. 1989) (denial of leave to amend proper where sought amendment was tardy, and

20  amendment would be futile because statute was not even enacted at time of alleged facts). Here,

21  neither is true—no defendants have even answered XimpleWare's Complaint or Amended

22  Complaint, so there would plainly not be manifest injustice in another amendment, and

23  impossibility is a high bar that Defendants do not clear.

24  **CONCLUSION**

25  The Versata Defendants lost their license under the GPL automatically by breaching its

26  terms, and thus, their making, use, sale, and offering for sale of DCM incorporating

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1  XimpleWare's software is without a license and constitutes patent infringement and inducement

2  of their Customers' infringement.

3      As the Amended Complaint alleges, the Versata Defendants used XimpleWare's software

4  without the required notices and disclaimers, and distributed XimpleWare's code without

5  authorization and also without the required notices. Because the XimpleWare software practices

6  the XimpleWare patents-in-suit, and because the Versata Defendants have no license to those

7  patents, the Versata Defendants have infringed XimpleWare's patents. Moreover, the Versata

8  Defendants made it impossible for their Customers to comply with the GPL, and thus induced

9  them to infringe, which they did. XimpleWare's Amended Complaint pleads all the facts

10  necessary to support these conclusions, and all four Motions to Dismiss should be denied in their

11  entirety.

12      Because a motion to dismiss may only be granted when **no** set of facts would support the

13  alleged claims, Plaintiff respectfully requests an opportunity to amend its complaint to allege

14  additional facts if the Court determines that further factual allegations are required to state any

15  claim for relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave freely given). Thus, even if the

16  any claims are not sufficiently pled, the Court should grant XimpleWare leave to amend.

17

18                              Respectfully submitted,

19                              COMPUTERLAW GROUP LLP

19  Dated: February 10, 2014

20                      By:   /Jack Russo/

20                              Jack Russo

21                              Christopher Sargent

21                              Ansel Halliburton

22                              Attorneys for Plaintiff

23                              XIMPLEWARE CORP.

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠