**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| XIMPLEWARE, INC., )<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>VERSATA SOFTWARE, INC., et al., )<br>)<br>Defendants.  )<br>_____ ) | Case No. 5:13-cv-05161-PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>**(Re: Docket Nos. 25, 33, 38, 39)** |

Think of the millions of lines of source code licensed in this country and around the world under the terms of version 2 of Richard Stallman's GNU General Public License. And yet it appears that only one court has yet to weigh in on an elementary question arising from the license: what does it mean to distribute? Before the court are four motions to dismiss that place that question front-and-center. The motions are brought by Defendants: (1) Ameriprise Financial, Inc. and Ameriprise Financial Services, Inc.;[1] (2) United HealthCare Services, Inc.;[2] (3) Pacific Life Ins. Co., the Prudential Ins. Co. of America, Wellmark, Inc. and Aviva USA Corp.[3] and (4) Versata

---

[1] *See* Docket No. 25.

[2] *See* Docket No. 33.

[3] *See* Docket No. 38.

1

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

Software, Inc., Trilogy Development Group, Inc. and Aurea Software, Inc.[4]  Plaintiff XimpleWare, Inc. opposes each motion, and the parties appeared for a hearing.[5]  After considering the arguments, both at the hearing and in the papers, the court adopts in its entirety Judge Ilston's recent conclusion that the kind of source code distribution alleged here can establish a breach of the GPL sufficient to render the use of code unlicensed.  But distribution by one customer is not distribution by all. The motions are therefore GRANTED, but only IN-PART.

**I. BACKGROUND**

**A.    The Parties**

Plaintiff XimpleWare is a California corporation based in Milpitas engaged in the design, development and distribution of computer software.[6]  XimpleWare spent over a decade developing and fine-tuning its copyrighted software product, known as "VTD-XML" or "VTD XML Extended" (collectively, the "Product"), which reads and parses XML code more efficiently and faster than alternative XML parsers.  Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs.[7]

XimpleWare made the business decision to license the Product and related source code under an "open source" license known as the GNU General Public License version 2. The GPL requires, among other things, that: (1) any changes made to the code carry notices stating that the files were changed, and the dates of all changes; (2) any code created or derived from GPL-

---

[4] *See* Docket No. 39.

[5] *See* Docket No. 66.

[6] *See* Docket No. 18 at ¶¶ 2-3.

[7] *See id.*

2
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

protected code must also be licensed under the GPL; (3) copyright notices must print or display when the code is run; and (4) when distributed, the program must be accompanied by the complete machine-readable source code.[8] All four conditions must be met,[9] and the GPL requires strict compliance.[10]

XimpleWare is the owner of all right, title, and interest in various patents related to the Product and related source code, including U.S. Patent Nos. 7,133,857, 7620,652, and 7,761,459.[11] The first patent at issue (the '857 Patent), filed in 2002 and issued in 2006, is titled "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering methods, apparatuses, and program storage devices for "efficiently processing a structured data file" or "efficiently processing structured data"—including XML. The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8 independent claims) for methods, apparatuses, and program storage devices, and focuses on efficiently processing structured data like XML. The '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent claims) for methods, apparatuses, hardware devices, and program storage devices, and again focuses on efficiently processing structured data like XML.

Versata is a Delaware corporation with its principal place of business in Austin, Texas.[12] Trilogy, the parent of Versata, is a California corporation that shares a principal place of business with Versata in Austin.[13]

---

[8] *See* Docket No. 18-1.

[9] *See* Docket No. 18 at ¶ 24.

[10] *See id.* at ¶ 30-39.

[11] *See id.* at ¶¶ 50–51.

[12] *See id.* at ¶ 4.

[13] *See id.* at ¶ 4.

Aurea is a California corporation that merged with Trilogy and Versata and is believed to also be based out of Austin.[14]

Ameriprise Financial, Inc. and Ameriprise Financial Services, Inc. are Delaware corporations with their principal place of business in Minneapolis.[15]  Ameriprise is one of Versata's customers.

Pacific Life is a Nebraska corporation with its principal place of business in Newport Beach, California.[16]

United HealthCare is a Minnesota corporation focused on managed health care with its principal place of business in Minnetonka, Minnesota.[17]

MetLife is a New York corporation that provides insurance, annuities and employment benefit programs with its principal place of business in Manhattan.[18]

Prudential is a New Jersey corporation that provides insurance and financial services out of its principal place of business in Newark.[19]

Wellmark is an Iowa insurance corporation that operates as Blue Cross and Blue Shield of Iowa with a principal place of business in Des Moines.[20]

Waddell & Reed is a Delaware corporation providing asset management and financial planning out of its PPB in Overland Park, Kansas.[21]

---

[14] *See id.* at ¶ 6.

[15] *See id.* at ¶ 8.

[16] *See id.* at ¶ 9.

[17] *See id.* at ¶ 10.

[18] *See id.* at ¶ 11.

[19] *See id.* at ¶ 12.

[20] *See id.* at ¶ 13.

[21] *See id.* at ¶ 14.

Aviva is an Iowa insurance corporation with its PPB in West Des Moines.[22]

United HealthCare, MetLife, Prudential, Wellmark, Waddell & Reed and Aviva are all believed to be customers of Versata and Triology.[23]

### B. XimpleWare's Patent Infringement Claims

This case spawned from earlier litigation between Versata and Ameriprise. During that litigation, Ameriprise reached out to XimpleWare to support its defense of the pending litigation and informed XimpleWare that it had discovered XimpleWare VTM-XML source code throughout Versata's DCM product. In violation of Versata's license under the GNU. XimpleWare then filed this suit against the Versata Defendants, Ameriprise and other Versata customers.[24] XimpleWare's complaint asserts claims for (1) direct infringement of the '852, '459 and '657 patents under 35 U.S.C. § 271(a) against all defendants;[25] (2) inducement under 35 U.S.C. § 271(b) against Versata and its corporate parents Aurea and Trilogy;[26] and (3) declaratory relief that the asserted patents are valid and enforceable.[27]

---

[22] *See id.* at ¶ 15.

[23] *See id.* at ¶¶ 9-15.

[24] *See id.* at ¶¶ 59-61.

> 59. In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation").
>
> 60. According to documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for misappropriation, among other claims.
>
> 61. During the prosecution of the Texas Litigation, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's Source Code in the source code of Versata's DCM product, and with said XimpleWare Source code, none of the conditions of the GPL license had been met. There was also no evidence of any commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in Versata's DCM product.

[25] *See id.* at ¶¶ 74-90.

[26] *See id.* at ¶¶ 91-98.

[27] *See id.* at ¶¶ 99-105.

5
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

## II. LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[28] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[29] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[31] When resolving a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true.[32] Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[33]

### B.    35 U.S.C. § 271(a) – Direct Infringement

"In order to be liable for direct infringement, an accused infringer must make, use, offer to sell, or sell a product embodying the patented design in the United States, or import such a product into the United States."[34]

### C.    35 U.S.C. § 271(b) – Induced Infringement

35 U.S.C. § 271(b) provides that whoever "actively induces infringement of a patent shall

---

[28] Fed. R. Civ. P. 8(a)(2).

[29] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[31] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[32] *See Hannan v. Maxim Integrated Products, Inc.*, 394 F. App'x 434 (9th Cir. 2010) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005)).

[33] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[34] *Alibaba.com Hong Kong LTD v. P.S. Products, Inc.*, Case No. 3:10-cv-04457-WHA, 2012 WL 1668896, at *3 (N.D. Cal. May 11, 2012) (citing 35 U.S.C. § 271(a)).

6
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

be liable as an infringer."[35]  "Unlike direct infringement, induced infringement is not a strict liability tort; it requires that the accused inducer act with knowledge that the induced acts constitute patent infringement."[36]  Although inducement "requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's" infringement,[37] it "does does not require that the induced party be an agent of the inducer or be acting under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer."[38]  "It is enough that the inducer causes, urges, encourages, or aids the infringing conduct and that the induced conduct is carried out."[39]

"An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement.  That principle, that there can be no indirect infringement without direct infringement, is well-settled."[40]  "The reason for that rule is simple: There is no such thing as attempted patent infringement, so if there is no infringement, there can be no indirect liability for infringement."[41]

---

[35] 35 U.S.C. § 271(b).

[36] *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011)).

[37] *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (internal quotation marks omitted).

[38] *Akamai*, 692 F.3d at 1308. On January 13, 2014, the Supreme Court granted certiorari as to a single question: whether a defendant may be held liable for inducing patent infringement under 35 U.S.C. § 271(b) even though no one has committed direct infringement under § 271(a).  Although the court heard oral arguments on April 30, 2014, no opinion has yet issued.

[39] *Id.* (quotations omitted) (citing *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 n.13 (Fed. Cir. 2011)); *see also Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001).

[40] *Id.* (citing *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526 (1972); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961); *Henry v. A.B. Dick Co.*, 224 U.S. 1, 12 (1912)).

[41] *Id.*

### D. 35 U.S.C. § 271(c) – Contributory Infringement

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent.'"[42] "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'"[43]

### E. Form 18

"Form 18 sets forth a sample complaint for direct patent infringement and requires:(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using the device embodying the patent; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages."[44] Federal Rule of Civil Procedure 84 provides: "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." "Rule 84, combined with guidance from the Advisory Committee Notes to the

---

[42] *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *see* 35 U.S.C. § 271(c):

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

[43] *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

[44] *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

8
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

1946 amendment of Rule 84, makes clear that a proper use of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding the sufficiency of the pleading."[45] But "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement."[46]

### III. DISCUSSION

#### A.   The Versata Customers' Motions to Dismiss

The court starts with the customers' motions challenging XimpleWare's allegations of direct infringement pursuant to Section 271(a).

Because an express license is a defense to patent infringement,[47] XimpleWare's direct infringement claims against Versata's customers turn on whether the customers' distribution is licensed under the GPL. The reason is that the GPL provides that even if the original licensee – here, one of the Versata entities – breaches its license for whatever reason, third-party customers of that original license retain the right to use XimpleWare's software so long as the customer does not itself breach the license by "distributing" XimpleWare's software without satisfying an attendant conditions.[48] Because XimpleWare has plainly alleged that the customers did not satisfy these

---

[45] *Id.* (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012)).

[46] *Id.* at 1284.

   It logically follows that a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend. *See Bell Atlantic*, 127 S.Ct. at 1971 n.10 (stating "[a] defendant wishing to prepare an answer in the simple fact pattern laid out in Form 9 [in the Federal Rules of Civil Procedure] would know what to answer; a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."). Thus, a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent. *See, e.g., Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

[47] *See Carborundum Co. v. Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 878 (Fed. Cir. 1995).

[48] *See* Docket No. 18-1, Ex. 1 at ¶ 0 ("Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does."); s*ee also id.* at ¶¶ 1-2, 4.

9
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

attendant conditions, the only real issue to resolve is whether XimpleWare has sufficiently alleged that its software was "distributed" by the customers when they shared the software with their independent contractors, franchisees, and producers.[49]

The customers marshal two primary arguments against such a conclusion. First, the customers argue that any independent contractor or the like working for the customers has no need for the software because the software is designed to calculate the commissions owed by the customers on various financial transactions. In short, there is no need in the field to use what is back office software. Second, the complaint does not allege Versata's customers shared the

---

1. You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

2. You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

   a)  You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.

   b)  You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.

   c)  If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License.  (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

[49] *See Jacobsen v. Kotzer,* 535 F.3d 1373, 1380 (Fed. Cir. 2008) (holding that a software owner cannot bring an infringement action as to an open source software unless the defendant acts in a manner contrary to the open source license terms.).

10
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

software with independent contractors who then themselves copied, distributed or used it, and sharing the software with independent contractors working with the customers alone does not constitute distribution. Put another way, this is effectively internal distribution, and internal distribution is not enough to breach the GPL.

The customers, or rather certain customers, are correct: XimpleWare's allegation that the Versata customers distributed XimpleWare's software without specificity is insufficient.[50] The bundling of customer defendants into a conclusory statement does not in any way provide adequate notice. This is classic *Iqbal* and *Twombly* territory. Because XimpleWare has not sufficiently alleged the customers other than Ameriprise distributed the Versata software to any unrelated third party, no distribution-related conditions were triggered.

With respect to Amerirprise, XimpleWare has alleged enough to clear the bar set by Rule 8.[51] To understand why, one need only look to Judge Illston's recent decision in a parallel copyright infringement case between XimpleWare and Ameriprise. As Judge Illston explains, "[a]ccepting as true the facts alleged in the amended complaint and drawing all reasonable

---

[50] *See* Docket No. 18 at ¶ 85 ("On information and belief, and without entering a commercial license with XimpleWare and without strict compliance with any of the conditions for the GPL license, the Customer Defendants have distributed without authorization DCM and VTD-XML to thousands of non-employee independent contractor or franchisee advisors or 'producers.'").

[51] *See id.* at ¶¶ 69-71

> 69. The majority of Ameriprise financial advisors are not Ameriprise employees. According to Ameriprise's own 2012 Annual Report, filed publicly with the U.S. Securities and Exchange Commission, Ameriprise operates a "nationwide network of more than 9,700 advisors," of which "more than 7,400 are independent franchisees or employees or contractors of franchisees."
>
> 70. On information and belief, Ameriprise distributed DCM and VTD-XML to these thousands of non-employee financial advisors. According to its 2012 Annual Report, "The support [Ameriprise] offer[s] to [its] franchisee advisors includes generalist and specialist leadership support, technology platforms and tools, training and marketing programs" (emphasis added). On information and belief, DCM is among the "technology platforms and tools" that Ameriprise provides its outside advisors.
>
> 71. On information and belief, when Ameriprise made its outside distributions of DCM and VTD-XML, it did so under a commercial license (and not the GPL) without any attribution to XimpleWare, without any XimpleWare copyright notice, without any XimpleWare Source Code, and without any offer to convey the XimpleWare Source Code—all in violation of the GPL and all of which were void under the GPL.

11
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

inferences in favor of XimpleWare, as it must, the Court finds that XimpleWare has alleged Ameriprise reproduced and distributed the software outside of Ameriprise and to non-employees, thereby acting outside the scope of the GPL. XimpleWare has therefore stated a claim of copyright infringement."[52] While Ameriprise has cited two Fifth Circuit cases suggesting that sharing code with contractors is not distribution, neither case was before the court on a motion to dismiss, when all allegations must be accepted as true.[53] In sum, Paragraph 85 of the amended complaint fails to state a claim for patent infringement against any Versata customer, except as to Ameriprise.

**B.     XimpleWare's Claims Against Versata, Triology and Aurea – The Versata Entities**

   **1.     Direct Infringement**

Because the "touchstones of an appropriate analysis under Form 18 are notice and facial" plausibility, Congress has elected not to set "an extraordinarily high" bar against "frivolous" pleading.[54] The Versata Defendants know what XimpleWare's patents claim, know what open source software XimpleWare's patents cover and know how XimpleWare's software benefits their business.[55] XimpleWare's allegations, while far from illuminating, are adequate to satisfy Form 18

---

[52] Case No. 3:13-cv-05061, Docket No. 61 at 5.

[53] *See Womack+Hamilton Architects, L.L.C. v. Metric Holdings Ltd. P'ship*, 102 Fed. App'x 374, 382-83 (5th Cir. 2004) (holding that because the copyright licensee's hiring of independent contractors did "not appear to be a transfer of the rights contained in the" license, the use was "consistent with the license and is not an impermissible" transfer); *Hogan Sys., Inc. v. Cybresource, Int'l*, 158 F.3d 319, 323 (5th Cir. 1998) (finding that bank's use of independent contractors to work on licensed software was not a transfer of the license because "all of the work being done inures to the benefit" of the bank).

[54] *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) (citing *R+L Carriers*, 681 F.3d at 1334; *McZeal*, 501 F.3d at 1357).

[55] *Id.* at 1287.
   Here, we find that K-Tech's amended complaints in both actions satisfy these standards. DirecTV and TWC know what K-Tech's patents claim, and they know what K-Tech asserts their systems do, and why. K-Tech has alleged that DirecTV and TWC must and do modify or "translate" digital signals they receive, and it has alleged that they do so using K-Tech's patented methods and systems. We find these allegations adequate to satisfy Form 18 and, thus, to satisfy the pleading standards that govern these actions.

and, thus, to satisfy the pleading standards.[56]

### 2. Indirect Infringement

As an initial matter, the court must note that there can be no inducement or contributory infringement under Sections 271(b) and (c) absent an underlying act of direct infringement. Because the court found dismissal warranted on the infringement claims directed towards the customers, except as to Ameriprise, dismissal of the indirect infringement claims except as to Ameriprise is warranted on this independent basis.

#### i. Induced Infringement

With respect to inducement of Ameriprise, to survive Versata's Rule 12 motion on its Section 271(b) induced infringement claims, XimpleWare separately must allege facts plausibly showing the Versata Defendants specifically intended that Ameriprise infringe the XimpleWare's patents and had knowledge that Ameriprise's acts constituted infringement.[57] Knowledge of infringement requires knowledge of the contested patents.[58] The complaint's failure to allege even the Versata Defendants' knowledge of the asserted patents thus provides sufficient grounds to dismiss XimpleWare's claims for induced infringement.[59]

---

[56] *See* Docket No. 18 at ¶73 ("Defendants have infringed, and are still infringing on XimpleWare's intellectual property rights by making, selling, and using the DCM product that practices the XimpleWare Patents, and the Defendants will continue to do so unless this Court enjoins them."); *see also id.* at ¶¶ 68-69, 84. The Versata entities' direct knowledge of the general nature of XimpleWare's claims through the parallel copyright case further undermines their grumblings about inadequate notice. *See XimpleWare, Corp v. Versata Software, Inc. et al.*, Case No. 3:13-cv-05160-SI (N.D. Cal).

[57] *See In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("Liability under § 271(b) 'requires knowledge that the induced acts constitute patent infringement.'") (quoting *SEB*, 131 S.Ct. 2060, 2068 (2011)) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.").

[58] *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006)

[59] *See id.*

13
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

### ii. Contributory Infringement

Here, too, the complaint does not allege the Versata Defendants' knowledge of XimpleWare's patents.  XimpleWare also has not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."[60]  Dismissal is warranted.

### 3. Willfulness

As laid out above, XimpleWare has not pleaded any defendant's knowledge of the asserted patent.  Because "a party cannot be found to have 'willfully' infringed a patent of which the party had no" knowledge,[61] dismissal of the willfulness allegation is warranted.[62]

In sum, the operative complaint falls short of satisfying the pleading standards as to a number of its claims, and yet, the court is not yet persuaded that amendment would be futile.  XimpleWare shall have fourteen days to amend its complaint.

**IT IS SO ORDERED.**

Dated: May 16, 2014

PAUL S. GREWAL
United States Magistrate Judge

---

[60] *In re Bill of Lading*, 681 F.3d at 1337.

[61] *Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990).

[62] *See MyMedicalRecords, Inc. v. Jardogs, LLC*, Case No. 2:13-cv-03560-ODW, 2014 WL 32157, at *3 (C.D. Cal. Jan. 6, 2014) ("California federal courts have taken the view that a plaintiff must plead presuit knowledge in order to adequately plead willful infringement.") (citing *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.,* Case No. 3:11-04049-JW, 2012 WL 1030031, at *4 (N.D. Cal. Mar. 22, 2012) ("To sufficiently plead a claim for willful infringement, a patentee must make out the barest factual assertion of knowledge of an issued patent." (quotation and citation omitted).

14
Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS