1   Jack Russo (Cal. Bar No. 96068)
    Christopher Sargent (Cal. Bar No. 246285)
2   Ansel Halliburton (Cal. Bar No. 282906)
    COMPUTERLAW GROUP LLP
3   401 Florence Street
    Palo Alto, CA 94301
4   (650) 327-9800
    (650) 618-1863 fax
5   jrusso@computerlaw.com
    csargent@computerlaw.com
6   ahalliburton@computerlaw.com

7   Attorneys for Plaintiff
    XIMPLEWARE CORP.

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12 **XimpleWare Corp.**, a California Corporation, | Case No. 5:13-cv-05161-PSG |
| 13 | |
| Plaintiff; | **SECOND AMENDED COMPLAINT FOR:** |
| 14 | |
| v. | **(1) DIRECT PATENT INFRINGEMENT** |
| 15 | **(2) INDUCING PATENT INFRINGEMENT** |
| **Versata Software, Inc., f/k/a Trilogy** | **(3) DECLARATORY RELIEF** |
| 16 **Software, Inc.,** a Delaware corporation; | |
| **Trilogy Development Group, Inc.,** a | **Jury Trial Demanded** |
| 17 California corporation; **Ameriprise** | |
| **Financial, Inc.,** a Delaware corporation; | |
| 18 **Ameriprise Financial Services, Inc.,** a | |
| Delaware corporation; **Aurea Software, Inc.,** | |
| 19 **a/k/a Aurea, Inc.,** a Delaware corporation; | |
| **Pacific Life Insurance Company**, a | |
| 20 Nebraska corporation; **United HealthCare** | |
| **Services, Inc.,** a Minnesota corporation; | |
| 21 **Metropolitan Life Insurance Company**, a | |
| New York corporation; **The Prudential** | |
| 22 **Insurance Company of America**, a New | |
| Jersey corporation; **Wellmark, Inc.,** an Iowa | |
| 23 corporation, **Waddell & Reed Financial,** | |
| **Inc.,** a Delaware corporation; and **Aviva USA** | |
| 24 **Corporation**, an Iowa corporation, | |
| 25 Defendants. | |

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

Plaintiff XimpleWare Corp. alleges the following against Defendants Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Aurea Software, Inc. a/k/a Aurea, Inc. (collectively "<u>Versata</u>" or the "<u>Versata Defendants</u>"); against Ameriprise Financial, Inc., Ameriprise Financial Services, Inc. (the "<u>Ameriprise Defendants</u>"); and against Pacific Life Insurance Company, United HealthCare Services, Inc., Metropolitan Life Insurance Company, The Prudential Insurance Company of America, Wellmark, Inc., Waddell & Reed Financial, Inc., and Aviva USA Corporation (the "<u>Customer Defendants</u>"; and the Versata Defendants, Ameriprise Defendants, and the Customer Defendants are collectively the "<u>Defendants</u>"):

## NATURE OF ACTION

1.     This action involves claims of patent infringement under 35 U.S.C. § 271 *et seq.* and declaratory relief, including but not limited to whether certain defendants have falsely purported to grant patent licenses for Plaintiff's patented computer software to each of the other defendants, and whether all such defendants do not have and have never been granted any license under any of the patents validly issued to and properly and exclusively owned by Plaintiff.

## PARTIES

2.     Plaintiff XimpleWare Corp. ("<u>XimpleWare</u>") is a corporation organized under the laws of, and registered to do business in, California, with its principal place of business in Milpitas, California.

3.     Plaintiff XimpleWare is the designer, developer, and distributor of advanced computer software and, as an enterprise that practices its own patents, it has delivered to the marketplace advanced computer software that provides enterprises, Fortune 5000 corporations, firms, and other businesses with an advanced data processing solution for challenging data processing problems. Plaintiff XimpleWare has a number of licensed customers including Matrikon, Inc., Smith & Tinker, Inc., United Stationers Technology Services LLC, and Zoosk, Inc.

4.      Defendant Versata Software, Inc., f/k/a Trilogy Software, Inc. ("Versata") is a private corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business in Austin, Texas.

5.      Defendant Trilogy Development Group, Inc. ("Trilogy") is a corporation organized under the laws of California, with its principal place of business in Austin, Texas. On information and belief, Trilogy acquired Defendant Versata in or about February 2006, and Trilogy is now the parent company of Versata and its subsidiaries.

6.      Defendant Aurea Software, Inc. a/k/a Aurea, Inc. ("Aurea") is a corporation registered to do business in California, organized under the laws of Delaware with its principal place of business in Austin, Texas. On information and belief, Aurea merged with Trilogy and Versata in October, 2013.[1]

7.      Defendant Ameriprise Financial, Inc. is a corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. On information and belief, Ameriprise is a leading diversified financial services provider, providing a range of financial planning products and is a customer of Versata and Trilogy.

8.      Defendant Ameriprise Financial Services, Inc. is a corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. On information and belief, Defendant Ameriprise Financial Services, Inc. is a subsidiary of Defendant Ameriprise Financial, Inc. (together, Ameriprise Financial, Inc. and Ameriprise Financial Services Inc. shall be referred to as "Ameriprise").

9.      Defendant Pacific Life Insurance Company ("Pacific Life") is a Nebraska corporation with its principal place of business in Newport Beach, California. On information and belief, Pacific Life is a customer of Versata and Trilogy.

10.     Defendant United HealthCare Services, Inc. ("UHS") is a public corporation registered to do business in California organized under the laws of Minnesota with its principal

Computerlaw Group LLP
www.computerlaw.com℠

---

[1] http://www.aurea.com/pressrelease/20131013

1 place of business in Minnetonka, Minnesota. On information and belief, UHS is a diversified

2 managed health care company and a customer of Versata and Trilogy.

3      11.    Defendant Metropolitan Life Insurance Company ("<u>MetLife</u>") is a public

4 corporation registered to do business in California organized under the laws of New York with its

5 principal place of business in New York, New York. On information and belief, MetLife is a

6 global provider of insurance, annuities, and employment benefit programs and is a customer of

7 Versata and Trilogy.

8      12.    Defendant The Prudential Insurance Company of America ("<u>Prudential</u>") is a

9 public corporation registered to do business in California organized under the laws of New

10 Jersey with its principal place of business in Newark, New Jersey. On information and belief,

11 Prudential provides insurance and financial services and is a customer of Versata and Trilogy.

12      13.    Defendant Wellmark, Inc. ("<u>Wellmark</u>") is a corporation organized under the laws

13 of Iowa, operating under the fictitious names "Blue Cross and Blue Shield of Iowa" and

14 "Wellmark Blue Cross and Blue Shield." Wellmark has its principal place of business in Des

15 Moines, Iowa. On information and belief, Wellmark is an insurance company and a customer of

16 Versata and Trilogy.

17      14.    Defendant Waddell & Reed Financial, Inc. ("<u>W&R</u>") is a public corporation

18 registered to do business in California, organized under the laws of Delaware with its principal

19 place of business in Overland Park, Kansas. On information and belief, W&R provides asset

20 management and financial planning services and is a customer of Versata and Trilogy.

21      15.    Defendant Aviva USA Corporation ("<u>Aviva</u>") is a company organized under the

22 laws of Iowa with its principal place of business in West Des Moines, Iowa. On information and

23 belief, Aviva is a subsidiary of Aviva, plc., a multinational insurance company headquartered in

24 London, United Kingdom, and is a customer of Versata and Trilogy.

25      16.    Plaintiff is informed and believes and on that basis alleges (collectively

26 hereinafter "<u>on information and belief</u>"), that at all relevant times Trilogy was and is the

27 operating entity of, and has effective, if not actual, control over the business decisions made by

28 its subsidiaries, Versata and Aurea.

Computerlaw Group LLP
www.computerlaw.com℠

17.     On information and belief, at all relevant times, Versata and Aurea were the mere solely controlled instrumentalities of Trilogy and functioned as Trilogy's *alter egos*, and all undertakings by Versata and Aurea were known by, sanctioned, or done at the direction and under the sole control of Trilogy, or by others serving under Trilogy's direction and/or sole control.

18.     On information and belief, at all relevant times, Trilogy, Versata, Aurea, and a number of other entities have acted and continue to act in conspiracy to obscure Versata's liability for Patent infringement, breaches of contract, and other wrongful conduct. On information and belief, those acts consist of, but are not limited to, the comingling of corporate funds and assets; failure to segregate funds and assets of the separate entities; concealment and misrepresentation of the identity and ownership of the corporations; disregard for formalities and failure to maintain arms' length relationships among the various entities; the use of the corporate entity to procure labor, services, or merchandise for another entity; the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; contracting with one another with intent to avoid performance by use of a corporate entity as a shield against liability of another entity; and the use of a corporation to transfer to it the existing liability of another entity.

19.     By reason of the foregoing, this Court should pierce the corporate veils of Versata and Aurea, and hold Trilogy or any other parent company or controlling persons or entities liable for Versata's monetary and other obligations as determined at trial.

## JURISDICTION AND VENUE

20.     This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Federal courts have exclusive jurisdiction in patent cases, and because those claims are Federal questions.

21.     This Court has personal jurisdiction over all defendants because all Defendants do substantial business in this District.

22.     Venue is proper, under 28 U.S.C. §§ 1331, 1391(c), 1391(d), and 1400(b). This action raises federal questions (patent infringement); substantial part of the events giving rise to

Computerlaw Group LLP
www.computerlaw.com℠

1  this action occurred in this District; the creation, infringement, and sale of software at issue

2  involved corporations registered to do business in California with California subsidiaries,

3  branches, and partners found in and doing business in this district; and at least one act of

4  infringement took place in this District.

5

6                          **BACKGROUND FACTS**

7                          **XML Parsing**

8         23.    A parser is a piece of software that reads certain electronic files and makes the

9  information from those files available to applications and programming languages, acting as a

10 go-between as underlying code which can be written in any number of programming languages

11 and what a user sees when the program runs.

12        24.    Extensible Markup Language (known as XML) is a set of rules for encoding

13 documents electronically. Known as a metalanguage, XML allows one to design a markup

14 language which is in turn used for the easy interchange of documents on the World Wide Web.

15 XML is itself a subset of a standard called SGML, and can be used to design a tagging scheme

16 that allows elements of a document to be marked according to their content rather than their

17 format.

18        25.    Information stored in XML documents can be used more effectively when

19 parsed—read line by line or node by node to fetch pieces of information for the program to read

20 and translate. In essence, parsing is the act of analyzing a set of characters or data and then

21 determining, recognizing, deciphering, or acquiring the significant data and commands from a

22 sequence of programming code, and translating the code which allows the program to do the job

23 for which it was designed.

24                          **Formation of XimpleWare**

25        26.    In October 2002, Zhengyu "Jimmy" Zhang founded XimpleWare (the

26 "Company") with a since-departed co-founder Hui Tian. Mr. Ying Shum (who has since passed

27 away) was an advisor to the Company during its early stages. Using experience gained from

28 fifteen years in the software engineering field, Mr. Zhang started XimpleWare with the goal of

Computerlaw Group LLP
www.computerlaw.com℠

achieving maximum efficiency for XML processing by using dedicated integrated circuits as a system on a chip (SOC). Mr. Tian left the venture in 2003, and since then Mr. Zhang has handled all creative and managerial responsibilities at XimpleWare.

27.     Mr. Zhang chose the name "XimpleWare" for his new venture to evoke the efficiency, speed, and simplicity with which his innovative source code parses XML. The name also included the letters X-M-L, further identifying XimpleWare's goal and product in the marketplace.

28.     Mr. Zhang began writing the XimpleWare Source code (the "<u>Source Code</u>") in 2004, and has since put in over 10,000 work hours of computer programming into developing and improving the XimpleWare product.

29.     In its nascent stages, XimpleWare was funded entirely by seed money from friends and family of the original founders, mostly from Mr. Zhang and his parents. Mr. Tian still holds a minority stake in the company, but apart from Mr. Zhang, Mr. Tian, and Ying Shum, there are no other owners, venture capital groups, angel investors, or parties with an interest in XimpleWare.

## Open Source Software

30.     Open source software is software whose source code is available free of charge for the public to use, copy, modify, sublicense, or distribute. While some developers choose to provide their product entirely free of charge, many developers and companies—including large public companies like Oracle and IBM—make use of open source licensing and its collaborative nature to create or incorporate code into products that can be licensed for profit outside the open source community.

31.     By licensing one's source code as part of the open source community, or making modifications to someone else's source code under an open source license, the creator retains certain protections, depending on the permissiveness of the particular license, from improper use of his or her intellectual property. To that end, most, if not all, open source licenses apply certain requirements and restrictions for the method and manner in which code extracted from an open source repository can be used, and attaches conditions to any such use.

Computerlaw Group LLP
www.computerlaw.com℠

32.     There are many commonly used open source licenses, including the GNU General Public License, the BSD License, and the Apache License.

33.     Due to the fundamental properties of XML technology, XML parsing innovations are very hard to sell. A parser is not an end-user product, *i.e.*, is a component that must be integrated into another existing product, analogous to how an engine is a component that must be integrated into a car—it has little utility on its own, but matters a great deal to the larger product. XimpleWare therefore made the business decision to license its Source Code under the GNU General Public License version 2 ("GPL"). A copy of the GPL is attached to this Complaint as **Exhibit 1**. By licensing its technology under the GPL, XimpleWare enabled potential commercial licensees to evaluate XimpleWare's technology before going into commercial production, and allowed free non-commercial use of its technology, which would likely spur adoption in the overall market for high-efficiency XML processing software.

34.     The GPL requires, among other things, (1) that any changes made to the code carry notices stating that the files were changed, and the date of all changes; (2) any code created or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices must print or display when the code is run; and (4) that when distributed, the program must be accompanied by the complete machine-readable source code.

35.     The text of the GPL contains a lengthy "Preamble" section. This preamble is not a legally operative part of the GPL, as is generally understood in the open source community. For example, Lawrence Rosen, an attorney and noted open source expert, states in a 2004 book:

> The preamble, of course, is not an operative part of the GPL license. It is not among its *terms and conditions*. There is nothing in its words that must be obeyed. It is merely a helpful preface so that you can better understand the GPL in its context.

Lawrence Rosen, Open Source Licensing: Software Freedom And Intellectual Property Law 109 (Prentice Hall 2004) (emphasis in original).

36.     XimpleWare chose the GPL approach because it is one of the most restrictive open source licenses available, requiring that any derivative code incorporating GPL-protected

Computerlaw Group LLP
www.computerlaw.com℠

code must be returned to the open source community in its entirety. This concept is often referred to as "copyleft," which the Free Software Foundation explains succinctly on its "Frequently Asked Questions" page for the GPL:

> [Q:] You have a GPL'ed program that I'd like to link with my code to build a proprietary program. Does the fact that I link with your program mean I have to GPL my program? [A:] Yes.

Frequently Asked Questions about version 2 of the GNU GPL, Free Software Foundation, http://www.gnu.org/licenses/old-licenses/gpl-2.0-faq.html (last accessed Dec. 16, 2013) (archived at http://perma.cc/LLM9-3SED). In other words, if Developer A creates Product A and licenses it under the GPL, and Developer B creates Product B which incorporates Product A, then Developer B must also license Product B under the GPL.

37.    In general, a computer cannot run source code directly. Before a computer can run a program, its source code must be translated into machine-readable form called "object code"[2] which is also sometimes referred to as a "binary" or "binaries" because object code is not human-readable text, but rather machine-readable binary code.

38.    The GPL also requires that any distribution of the binary version of a GPL-licensed software must be accompanied by either source code or an offer to provide source code. This is explained clearly in Section 3 of the GPL, as well as the Free Software Foundation's GPL "Frequently Asked Questions" page:

> [Q:] I downloaded just the binary from the net. If I distribute copies, do I have to get the source and distribute that too?

> [A:] Yes. The general rule is, if you distribute binaries, you must distribute the complete corresponding source code too. The exception for the case where you received a written offer for source code is quite limited.[3]

---

[2] "Object Code," Merriam-Webster.com, http://www.merriam-webster.com/dictionary/object%20code ("a computer program after translation from source code usually into machine language by a compiler") (last accessed Dec. 16, 2013).

[3] Frequently Asked Questions about version 2 of the GNU GPL, Free Software Foundation, http://www.gnu.org/licenses/old-licenses/gpl-2.0-faq.html (last accessed Dec. 16, 2013) (archived at http://perma.cc/LLM9-3SED).

Computerlaw Group LLP
www.computerlaw.com℠

39.     The GPL requires strict compliance, and, under its Section 4, any failure to comply with **any** of the GPL's multiple conditions means there is no license granted and this means any use, distribution, or other exploitation is not licensed and all rights the violator could have obtained under the GPL are voided:

> You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License…

GPL at § 4.

40.     The GPL does not grant a patent license. The only mention of patents in the operative text of the GPL are in Sections 7 and 8. Those Sections state that if any conditions on a licensee's use are imposed by a patent, then the licensee may not distribute the licensed program at all (Section 7), and allowing a licensor to place geographic exclusions on the license for countries in which there are patent or other restrictions (Section 8). Neither of those Sections grant a patent license.

## **The XimpleWare Product**

41.     The complete XimpleWare software product, known as "VTD-XML" or "VTD-XML Extended" (collectively, the "Product"), is made up of a number of constituent parts, each with individual functions, and is written in several different programming languages. Most of the code, however, is written in Java, which is one of the most popular programming languages in use today.

42.     XML is ubiquitous in today's business world. For example, since 2007, the file formats for Microsoft Office are based on XML,[4] and many web pages are coded in XML.[5]

---

[4] Tom Ngo, "Office Open XML Overview", Ecma International, http://www.ecma-international.org/news/TC45_current_work/OpenXML%20White%20Paper.pdf (last accessed Sep. 10, 2013) (archived at http://perma.cc/0fyzpuJ6Vzg).

[5] Murray Altheim and Shane McCarron, eds., XHTML™ 1.1 - Module-based XHTML - Second Edition, W3C Recommendation, World Wide Web Consortium, Nov. 23, 2010, http://www.w3.org/TR/xhtml11/ (last accessed Sep. 10, 2013) (archived at http://perma.cc/05zB2mzwJW8).

Computerlaw Group LLP
www.computerlaw.com℠

43.     The XimpleWare Source Code and Product reads and parses XML at a rate estimated to be five to ten times faster than other current XML parsing programs, effecting greater efficiency and speed. It also provides indexing and incremental capabilities that are crucial to many high performance XML applications and are not available in any other XML parsing libraries. Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs.

44.     The Product is an enabler for any program that uses XML in its applications, but to see the upside in the parsing speed, customers have to try it.

45.     XimpleWare has had interest and licensing discussions with several industry leaders, and has established its VTD-XML software as a leading technology in XML parsing.

**The XimpleWare Source Code**

46.     Over the course of over ten years, Mr. Zhang updated and improved the Source Code and Product (and still does), checking out sections of code to work on and then checking it back into an open source database called SourceForge. SourceForge is a community-based website where software developers can publish source code to a global audience, and can join and collaborate on open source projects.[6]

47.     One of the principal tools SourceForge provides is version control systems. A version control system is a computer program that manages a set of source code. Programmers use version control systems by "checking out" a copy of the source code to their own computer, making changes, and then submitting those changes back into the version control system in a process called "checking in." Each check-in is documented in the version control system with time, date, and contributor information, as well as comments from the programmer describing his

Computerlaw Group LLP
www.computerlaw.com℠

---

[6] SourceForge "About" page, http://sourceforge.net/about (last accessed Sep. 10, 2013) (noting SourceForge has "3.4 million developers [who] create powerful software in over 324,000 projects") (archived at http://perma.cc/0fwQ1xw51i1).

or her changes. With a version control system, it is possible to review all changes to a set of source code and to know who made those changes.

48.     SourceForge also provides a system where programmers not affiliated with a project may submit suggested changes to members of the project. The members may then choose to check those changes in to the version control system, or to reject them. As with any other check-in, time, date, contributor, and other information are logged in the version control system.

49.     One version control system offered by SourceForge is the Concurrent Versions System, commonly known as "CVS". Like other version control systems, CVS tracks who made which changes to the managed source code, and CVS keeps a log of those revisions.

50.     XimpleWare placed its Source Code on SourceForge, and managed that Source Code in SourceForge's CVS system.

### The XimpleWare Issued Patents

51.     XimpleWare applied for, and the United States Patent and Trademark Office issued, three patents (the "Patents"):

    A.  U.S. Patent No. 7,133,857, issued Nov. 7, 2006, titled "Processing structured data" (the "'857 Patent")
    B.  U.S. Patent No. 7,620,652, issued Nov. 17, 2009, titled "Processing structured data" (the "'652 Patent")
    C.  U.S. Patent No. 7,761,459, issued July 20, 2010, titled "Processing structured data" (the "'459 Patent")

52.     All of the Patents received a term extension to February 2024 under 35 U.S.C. § 154(b). The named inventors on all of the Patents are Jimmy Zhang and Hui Tian, and all right, title, and interest are assigned to XimpleWare.

53.     The first patent (the '857 Patent), filed in 2002 and issued in 2006, is titled "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering methods, apparatuses, and program storage devices for "efficiently processing a structured data file" or "efficiently processing structured data"—including XML. The '857 Patent has been cited by five other issued U.S. patents—including patents issued to IBM, HP, and Canon—and by three published U.S. patent applications.

Computerlaw Group LLP
www.computerlaw.com℠

54.      The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8 independent claims) for methods, apparatuses, and program storage devices, and focuses on efficiently processing structured data like XML. The '652 Patent has been cited by two issued U.S. patents by IBM and Canon and by one published U.S. patent application.

55.      The '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent claims) for methods, apparatuses, hardware devices, and program storage devices, and again focuses on efficiently processing structured data like XML. The '459 Patent has been cited by two issued U.S. patents and one published U.S. patent application.

56.      There has been no challenge to any of the XimpleWare Patents or any other XimpleWare intellectual property rights.

57.      The XimpleWare Source Code and Product practice the XimpleWare Patents.

58.      XimpleWare owned the three XimpleWare Patents throughout the period of the Defendants' infringing acts, and still owns the patents. XimpleWare uses the patent numbers on its Product and in its documentation to give actual and constructive notice of the existence of the XimpleWare patents.

59.      XimpleWare's SourceForge project page also clearly indicates that the VTD-XML software is licensed under the GPL; the XimpleWare web site has always made clear that any and all commercial projects and those involving any distribution, requires a commercial license under the commercial terms and conditions to be concluded with XimpleWare, and that generally requires a signed written agreement between the parties and payment of commercial royalties to XimpleWare. Multiple other commercial parties who could not come within the GPL's strict conditions have agreed to sign and have signed commercial licenses with XimpleWare and the custom and practice in the industry is for the proposed licensee to do appropriate due diligence and to assure that his, her or its project is strictly within the GPL's conditions or else to contact XimpleWare to discuss the requirements for commercial licensing.

**Independent Contractors in the Financial Services Industry**

Computerlaw Group LLP
www.computerlaw.com℠

60.     According to industry publications, "For many core financial products and services, independent distribution is the leading sales channel in the industry. It accounts for half of life insurance new annualized premium and 40 percent of annuity business written."[7]

61.     The majority of Ameriprise financial advisors are not Ameriprise employees. According to Ameriprise's own 2012 Annual Report, filed publicly with the U.S. Securities and Exchange Commission, Ameriprise operates a "nationwide network of more than 9,700 advisors," of which "more than 7,400 are independent franchisees or employees or contractors of franchisees."

### Defendants Copy XimpleWare's Patented Source Code

62.     In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation").

63.     According to documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for misappropriation, among other claims.

64.     During the prosecution of the Texas Litigation, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's Source Code in the source code of Versata's DCM product, and with said XimpleWare Source code, none of the conditions of the GPL license had been met. There was also no evidence of any commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in Versata's DCM product.

65.     Based upon documents XimpleWare received from Ameriprise, for months and without ever contacting XimpleWare to check on the validity of its alleged reliance, Versata asserted a theory in the Texas Litigation that XimpleWare's Source Code was licensed under an Oracle-based exception to the GPL known as the "classpath exception." The "classpath exception" is an Oracle-based exception to the GPL that has been promulgated by Oracle

---

[7] Donna Chafin and Emily Tracey, "The Independent Advisor: One Size Does Not Fit All", INSURANCENEWSNET MAGAZINE (Feb. 2014), http://www.insurancenewsnetmagazine.com/article/the-independent-advisor-one-size-does-not-fit-all-2660 (archived at http://perma.cc/9FVZ-PWXS).

Computerlaw Group LLP
www.computerlaw.com℠

Corporation (www.oracle.com) of Redwood City, California (owner of the Java programming language) for certain Java-related software packages. XimpleWare has never used and never authorized this exception or any exception other than commercial licensing directly with XimpleWare; neither Oracle nor any other company is authorized to make any statement on behalf of XimpleWare.

66.     The only copyright or license notices that XimpleWare has ever placed on its VTD-XML Source Code give notice that the Source Code is licensed under the GPL for those strictly complying with all conditions of the GPL, and that it is otherwise commercially available through license directly from XimpleWare. XimpleWare has never utilized the "classpath exception," nor has it ever made any exceptions to licensing its Source Code under the unaltered GPL other than through paid commercial licenses obtained directly from XimpleWare.

67.     None of the defendants in this case did, have done, or have attempted to do any appropriate due diligence with XimpleWare, and therefore none of the Defendants in this case can assert truthfully that they are innocent infringers or that they otherwise relied reasonably in any way in commencing, continuing, or refusing to discontinue their respective infringements.

68.     On October 23, 2013, counsel for XimpleWare gave formal notice of the XimpleWare patents to counsel for Versata. On information and belief, both Versata and Ameriprise knew about the XimpleWare Patents even before that date, and have been on at least inquiry notice since Ameriprise's assertion against Versata in the Texas Litigation of defenses based on XimpleWare's contractual and copyright rights. Based on those assertions, both Versata and Ameriprise should have conducted proper diligence on XimpleWare, in which they would have discovered the XimpleWare patents. Versata's willfulness is also evidenced by its attempts in the Texas Litigation to conceal its unlicensed copying of VTD-XML into its DCM software, as well as its lack of candor and progress in patching DCM to remove VTD-XML.

69.     Versata's commercial distribution of the XimpleWare Product or Source Code outside the terms of the GPL was knowing and willful. According to documents filed in the Texas Litigation, Versata maintained in the course of business a list of open source software components that it included in its DCM product, and that list included VTD-XML as well as the

Computerlaw Group LLP
www.computerlaw.com℠

fact that VTD-XML and several other components were licensed under the GPL—without any mention of the "classpath exception."

70.     XimpleWare has never granted Versata any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

71.     The only license the Versata Defendants have ever had was the GPL. However, by failing to meet any of the required conditions of the GPL license, no license was granted to any of the Versata Defendants and any alleged rights any of them had or purported to have to XimpleWare's VTD-XML computer software were void *ab initio* and terminated instantly and automatically, and all distributions and other exploitations including all attempts to sublicense were unauthorized, void, and without effect, and each constituted a wilful infringement of XimpleWare's rights.

72.     On information and belief, Versata has distributed thousands of unauthorized copies of the Product or the Source Code to a number of customers like the Customer Defendants and Ameriprise Defendants, and Versata has illegally collected revenues on the sale and distribution of the derivative DCM product incorporating XimpleWare's Source Code, in violation of XimpleWare's Patents. XimpleWare estimates Versata's total sales of the infringing DCM product to exceed $300,000,000.

73.     On information and belief, Ameriprise distributed DCM and VTD-XML to its thousands of non-employee financial advisors. According to its 2012 Annual Report, "The support [Ameriprise] offer[s] to [its] franchisee advisors includes generalist and specialist leadership support, **technology platforms and tools**, training and marketing programs" (emphasis added). On information and belief, DCM is among the "technology platforms and tools" that Ameriprise provides its outside advisors.

74.     On information and belief, when Ameriprise made its outside distributions of DCM and VTD-XML, it did so under a commercial license (and not the GPL) without any attribution to XimpleWare, without any XimpleWare copyright notice, without any XimpleWare Source Code, and without any offer to convey the XimpleWare Source Code—all in violation of the GPL and all of which were void under the GPL.

Computerlaw Group LLP
www.computerlaw.com℠

75.     According to its website, "Prudential [Insurance Company of America] sells its products through both **independent** and Prudential financial professionals." (emphasis added) On information and belief, these "financial professionals", some of whom are "independent" (*i.e.*, non-employees of Prudential), are the beneficiaries of the DCM software, which calculates their compensation.

76.     Among the risk factors discussed in United Health's recent 10-Q quarterly report, filed with the U.S. Securities Exchange Commission on May 6, 2014, United Health stated that "our ability to attract, retain and provide support to a network of **independent producers** (i.e., brokers and agents) and consultants" could materially impact the company's financial performance. (emphasis added) On information and belief, these "independent producers" (*i.e.*, non-employees of United Health) are the beneficiaries of the DCM software, which calculates their compensation.

77.     In its most recent 10-Q quarterly report, filed with the U.S. Securities Exchange Commission on May 15, 2014, Metropolitan Life Insurance Company discussed its relationships with non-employee: "The Company has entered into various agreements **with affiliates** for services necessary to conduct its activities. Typical services provided under these agreements include personnel, policy administrative functions and **distribution services**." (emphasis added) On information and belief, these "affiliates" (*i.e.*, non-employees of Metropolitan Life) are the beneficiaries of the DCM software, which calculates their compensation.

78.     In its most recent 10-Q quarterly report, filed with the U.S. Securities Exchange Commission on May 2, 2014, Waddell & Reed Financial, Inc. discussed its "advisors, who are **independent contractors**". (emphasis added) Similarly, according to a prior filing, a 10-K annual report for 2013, Waddell stated: "Our retail products are distributed through third-parties such as other broker/dealers, registered investment advisors and various retirement platforms, (collectively, the 'Wholesale channel') or through our sales force of independent financial advisors (the 'Advisors channel')." On information and belief, these "independent contractor" "advisors" are the beneficiaries of the DCM software, which calculates their compensation.

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

79.     Various documents show Pacific Life's use of non-employee "producers", including a "Contract Summary" document which states: "We pay the independent producer or the independent producer's third party selling firm for selling the contract to you."[8] On information and belief, these "independent producer[s]" are the beneficiaries of the DCM software, which calculates their compensation.

80.     Aviva USA also contracts with non-employee producers, as shown by forms published on its website, including an "Independent Producer Contract Appointment Application and Agreement."[9] On information and belief, these "independent producer[s]" are the beneficiaries of the DCM software, which calculates their compensation.

81.     Wellmark also contracts with non-employee producers or "brokers." Wellmark's online agent directory states that "All agents represented by Wellmark on this website are authorized independent agents for Wellmark…".[10] On information and belief, these "independent agents" are the beneficiaries of the DCM software, which calculates their compensation.

82.     XimpleWare has never granted any Defendant in this case any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

83.     Defendants have infringed, and are still infringing on XimpleWare's intellectual property rights by making, selling, and using the DCM product that practices the XimpleWare Patents, and the Defendants will continue to do so unless this Court enjoins them.

## FIRST CLAIM FOR RELIEF

### DIRECT PATENT INFRINGEMENT

### (AGAINST ALL DEFENDANTS)

84.     XimpleWare incorporates the allegations in paragraphs 1–83 as if set forth here in full.

---

[8] http://www.annuities.pacificlife.com/public/forms/product_required/cs1181.pdf (last accessed May 30, 2014)

[9] http://ameruslive.amerus.com/Pdf/indylifeline/forms/61010.pdf?CFID=14808009&CFTOKEN=59149273 (last accessed May 30, 2014).

[10] http://www.wellmark.com/AgentFinder/Search.aspx (last accessed May 30, 2014)

85.     XimpleWare designs and licenses software designed to more effectively and more efficiently parse XML in an almost limitless range of products and applications.

86.     XimpleWare has made substantial investments of time and money, as well as great efforts over a period of ten or more years developing a faster, more efficient way to parse XML. These investments in research and development have, over the years, yielded many innovations, including the innovations disclosed and claimed in the Patents.

87.     The '857, '652, and '459 were duly and legally issued to XimpleWare, as assignee of the inventors named therein, for an invention entitled "Processing Structured Data." True and correct copies of the Patents are attached as **Exhibits 2, 3, and 4**, respectively.

88.     The Patents are valid and enforceable.

89.     At all material times since the original issue dates, XimpleWare has been the owner of the entire right, title, and interest in the Patents.

90.     XimpleWare's Product as well as its Source Code practices each of the independent claims of the Patents.

91.     On information and belief, Defendants have infringed and continue to infringe XimpleWare's Patents and each of them by making, using, selling, and/or offering for sale in the United States a number of products that practice the claims contained in the Patent, and will continue to do so unless enjoined by this Court.

92.     Without entering a commercial license with XimpleWare and without strict compliance with any of the conditions for the GPL license, the Versata Defendants incorporated the XimpleWare Product and/or Source Code into a number of their own products (the "Versata Products"), including but not limited to the Versata DCM product. Therefore, the Versata Products **necessarily** practice **at least** independent Claims 1 and 7 the '857 Patent, independent Claims 1 and 9 of the '652 Patent, and independent Claim 1 of the '459 Patent.

93.     The Versata Products and each of them literally infringe because every element of each of those Claims is included in DCM, and are necessarily included in any other product into which Defendants incorporated the XimpleWare Source Code or Product. The Versata Defendants used and sold its infringing products in the United States, and did so willfully.

Computerlaw Group LLP
www.computerlaw.com℠

94.     On information and belief, and without entering a commercial license with XimpleWare and without strict compliance with any of the conditions for the GPL license, the Ameriprise Defendants, Customer Defendants, and others purchased the Versata Products from the Versata Defendants without authorization. The Ameriprise Defendants and Customer Defendants infringed and continue to willfully infringe the Patents by using the infringing Versata Products, incorporated into the Ameriprise Defendants' and Customer Defendants' software systems which those Defendants used and continue to use in their daily course of business.

95.     On information and belief, and without entering a commercial license with XimpleWare and without strict compliance with any of the conditions for the GPL license, the Ameriprise Defendants and Customer Defendants have distributed without authorization DCM and VTD-XML to thousands of non-employee independent contractor or franchisee advisors or "producers."

96.     Defendants' conduct constitutes direct infringement of XimpleWare's patent rights under 35 U.S.C. § 271(a).

97.     The Versata Defendants' patent infringement was and is knowing and willful. The GPL, a copy of which must be included with all GPL-licensed source code, was always included with every version of the XimpleWare Source Code available on SourceForge. XimpleWare's SourceForge project page—which XimpleWare has records of the Versata Defendants visiting—clearly indicates that VTD-XML is licensed under the GPL. Further, according to documents filed in the Texas Litigation, Versata maintained in the course of business a list of open source software components that it included in its DCM product, and that list included VTD-XML, and included the fact that VTD-XML was licensed under the GPL version 2. Therefore, Defendants actually knew or reasonably should have known that the Source Code was the work of XimpleWare, for which Defendants did not have a commercial license, and Defendants did in fact copy, adapt, and distribute works practicing the XimpleWare parents, derived from the Source Code in either source or compiled form without authorization from XimpleWare. No Defendants have ever obtained a commercial license from XimpleWare. The Versata Defendants

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

Computerlaw Group LLP
www.computerlaw.com℠

1  were on actual notice before the filing of this lawsuit, and were on inquiry notice long before

2  given Ameriprise's assertions in the Texas Litigation of defenses based on Versata's

3  incorporation of unlicensed XimpleWare software into DCM.

4      98.    Defendants' direct infringement of XimpleWare's exclusive patent rights has

5  damaged, and/or will damage XimpleWare's business, causing irreparable harm for which there

6  is no adequate remedy at law, unless Defendants are enjoined by this Court pursuant to 35 U.S.C.

7  § 283.

8      99.    Defendants' direct infringement of XimpleWare's Patents is the direct and

9  proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory

10  damages in an amount to be determined at trial.

11      100.    Defendants' direct infringement of the Patents entitles XimpleWare to preliminary

12  and permanent injunctive relief pursuant to 35 U.S.C. § 283, an award of all damages sustained

13  by XimpleWare as a result of Defendants' infringement, and enhanced damages adequate to

14  compensate for Defendants' collective and willful infringement of XimpleWare's patent rights

15  together with attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284 and 285.

16  <u>**SECOND CLAIM FOR RELIEF**</u>

17  **INDUCING PATENT INFRINGEMENT**

18  **(AGAINST VERSATA DEFENDANTS)**

19      101.    XimpleWare incorporates the allegations in paragraphs 1–83 as if set forth here in

20  full.

21      102.    The Versata Defendants have infringed and induced infringement of the '857,

22  '652, and '459 Patents.

23      103.    The Versata Defendants deliberately downloaded the XimpleWare Source Code

24  from the SourceForge open source repository and incorporated it into DCM and a number of

25  other products. On information and belief, the Versata Defendants then sold those products to a

26  number of customers, without authorization, including, but not necessarily limited to, the

27  Ameriprise Defendants who incorporated those products into their own internal systems, which

28  the Ameriprise Defendants used and continue to use in the daily course of business without any

1 | authorization and without entering a commercial license with XimpleWare and without strict

2 | compliance with any of the conditions for the GPL license.

3 | 104. Because the XimpleWare Patents cover the main algorithms and functionality of

4 | VTD-XML, and because VTD-XML implements the XimpleWare Patents, there are no

5 | substantial non-infringing uses of VTD-XML.

6 | 105. Without entering a commercial license with XimpleWare and without strict

7 | compliance with any of the conditions for the GPL license, the Versata Defendants, in violation

8 | of 35 U.S.C. § 271(b), have knowingly aided, abetted, and actively induced the Ameriprise

9 | Defendants, Customer Defendants, and others to infringe XimpleWare's Patents.

10 | 106. The Versata Defendants have committed contributory infringement of

11 | XimpleWare's exclusive rights, which has damaged and will continue to damage XimpleWare's

12 | business, causing irreparable harm for which there is no adequate remedy at law, unless it is

13 | enjoined by this Court pursuant to 35 U.S.C. § 283.

14 | 107. The Versata Defendants' infringement of XimpleWare's exclusive patent rights

15 | has damaged, and/or will damage XimpleWare's business, causing irreparable harm for which

16 | there is no adequate remedy at law, unless Defendants are enjoined by this Court pursuant to 35

17 | U.S.C. § 283.

18 | 108. The Versata Defendants' willful contributory infringement of XimpleWare's

19 | Patents is the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled

20 | to compensatory damages in an amount to be determined at trial.

21 | 109. The Versata Defendants' infringement of the Patents entitles XimpleWare to

22 | preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283, an award of all

23 | damages sustained by XimpleWare as a result of Defendants' infringement, and enhanced

24 | damages adequate to compensate for Defendants' collective and willful infringement of

25 | XimpleWare's patent rights together with attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284

26 | and 285.

27 |

28 |

Computerlaw Group LLP
www.computerlaw.com℠

### THIRD CLAIM FOR DECLARATORY RELIEF

### (AGAINST ALL DEFENDANTS)

110. XimpleWare incorporates the allegations in paragraphs 1–83 as if set forth here in full.

111. XimpleWare owns each and every of the three issued Patents.

112. XimpleWare has the superior, and indeed only, right to continue to use, make, sell, or offer for sale its Source Code, subject to the GPL, as the lawful owner of the Patents.

113. Versata improperly downloaded and exploited XimpleWare's Source Code without a commercial license with XimpleWare, and without strict compliance with any of the conditions for the GPL license, all to XimpleWare's detriment. On information and belief, Versata has incorporated the Source Code into its DCM product, and sold it to, among others, Ameriprise and a number of other companies.

114. XimpleWare requests that this Court declare that United States Patents Nos. 7,133,857, 7,620,652, and 7,761,459 and each of them are valid and enforceable.

115. XimpleWare also requests a declaration from the Court confirming that the GPL does not confer a patent license, which, as far as XimpleWare is aware, is a question of first impression in any court. As discussed above, there is no express patent grant in the GPL, and whether the GPL confers any implied license is a matter of debate in the open source community as well as a matter of public concern. The open source community, the public, and all the parties before the Court would benefit from a clear resolution of this question.

116. XimpleWare also requests a declaration from the Court that any purported grant of patent licenses for XimpleWare's patented computer software by any Defendant to any other of the Defendants are invalid, and that no such Defendants have ever been granted any license under any of the patents validly issued to and properly and exclusively owned by Plaintiff.

117. The requested declaration is necessary and appropriate at this time to affirm XimpleWare's rights to exclusive use and sale of its protected intellectual property rights under federal patent law.

118. Plaintiff has no adequate remedy at law.

Computerlaw Group LLP
www.computerlaw.com™

1

**PRAYER FOR RELIEF**

2        XimpleWare prays for judgment against all Defendants, and each of them, and those

3    persons in control of or acting in concert with them as follows:

4        A.        On the First Claim for Relief, for preliminary and permanent injunctive relief

5    enjoining the manufacture, production, marketing, or sale by Defendants, or any of them, of any

6    product practicing the '857, '652, and/ or '459 Patents; for all damages sustained by XimpleWare

7    as a result of Defendants' infringement; and for an award to XimpleWare of enhanced damages

8    adequate to compensate for Defendants' collective infringement, up to and including trebling of

9    XimpleWare's damages for the Versata Defendants' willful infringement.

10       B.        On the Second Claim for Relief, for preliminary and permanent injunctive relief

11   enjoining the Versata Defendants or any of them from contributing to the manufacture,

12   production, marketing, or sale of any product practicing the '857, '652, and/ or '459 Patents; for

13   all damages sustained by XimpleWare as a result of the Versata Defendants' infringement; and

14   for an award to XimpleWare of enhanced damages adequate to compensate for the Versata

15   Defendants' collective and willful infringement, up to and including trebling of XimpleWare's

16   damages for the Versata Defendants' willful infringement.

17       C.        On the Third Claim for Relief, for a declaration that:

18                 1.        XimpleWare is the sole owner of the XimpleWare Patents;

19                 2.        the XimpleWare Patents are valid and enforceable;

20                 3.        the GPL does not confer a patent license; and

21                 4.        as such, XimpleWare has the exclusive right to make sell, offer for sale,

22   distribute, and copy and otherwise exploit the XimpleWare Product and Source Code.

23       D.        On all Claims for Relief, for a constructive trust of all benefits Defendants gained,

24   and disgorgement of all revenues and profits associated with Defendants' licensing or sale of

25   products containing the XimpleWare Source Code.

26       E.        For costs of suit including any applicable interest and reasonably attorneys' fees

27   as allowed by law.

28       F.        For such other, further, and different relief as the Court deems just and proper.

*Second Amended Complaint*                          23                          Case No. 5:13-cv-05161-PSG

Computerlaw Group LLP
www.computerlaw.com℠

**J**URY **T**RIAL **D**EMAND

Plaintiff hereby demands a trial by jury on each and every cause of action which is triable by or which may otherwise be tried by jury in this action.

COMPUTERLAW GROUP LLP

Dated: May 31, 2014                     By:     /s/ Jack Russo
                                                Jack Russo
                                                Christopher Sargent
                                                Ansel Halliburton

                                                Attorneys for Plaintiff
                                                XIMPLEWARE CORP.

Computerlaw Group LLP
www.computerlaw.com℠

Second Amended Complaint                 24                 Case No. 5:13-cv-05161-PSG