Clayton C. James (Cal. Bar No. 287800)
clay.james@hoganlovells.com
Srecko Vidmar (Cal. Bar No. 241120)
lucky.vidmar@hoganlovells.com
HOGAN LOVELLS US LLP
Three Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

Attorneys for UNITED HEALTHCARE SERVICES, INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

XIMPLEWARE CORP.,

Plaintiff,

v.

VERSATA SOFTWARE, INC. *ET AL.*,

Defendants.

Case No.: 5:13-cv-05161-PSG

**NOTICE OF MOTION AND MOTION BY UNITED HEALTHCARE SERVICES, INC. TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

<u>Hearing Schedule</u>:

Before: Hon. Paul S. Grewal
Date: Tuesday, August 12, 2014
Time: 10:00 a.m.
Location: U.S. Courthouse, San Jose, Courtroom 5

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 12, 2014[1] at 10:00 a.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Paul S. Grewal, United States Magistrate Judge, United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California 95113, Defendant United HealthCare Services, Inc. ("UHC") will, and hereby does, move this Court to dismiss the claims against it asserted by XimpleWare Corporation in its Second Amended Complaint (Docket No. 88).

UHC's Motion to Dismiss Plaintiff's First Claim for Relief is made under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure of Plaintiff's Second Amended Complaint to state a claim upon which relief can be granted. UHC's Motion to Dismiss Plaintiff's Third Claim for Relief is made under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as the lack of case or controversy at the time of the filing of Plaintiff's complaint divests this Court of subject-matter jurisdiction over Plaintiff's request for a declaratory judgment, and Plaintiff's Complaint fails to state a claim seeking a judicial resolution of the rights or legal relationships of the parties and, instead, asks the Court for a freeform interpretation of a standard licensing agreement and a statement regarding general principles of patent licensing.

UHC's Motion is based on this Notice, the Memorandum of Points and Authorities below, the allegations in and exhibits to Plaintiff's Second Amended Complaint, matters of which the Court takes judicial notice, the complete files and records of this action, and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing, oral argument relating to this Motion, and any pertinent testimony presented at any hearing by the Court.

---

[1] UHC has served on Plaintiff a Motion for Sanctions under Fed. R. Civ. P. 11, and is awaiting whether Plaintiff will, on its own, dismiss its baseless claims against UHC. For the convenience of the Court and the Parties, if UHC is forced to file its Rule 11 Motion, it will notice a hearing for the same date as the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff has had three opportunities to plead a facially plausible claim for patent infringement against United HealthCare Services, Inc. ("UHC"). (Dkt. Nos. 1, 18, and 88). Plaintiff's latest attempt comes after full briefing on multiple motions to dismiss[2], a lengthy hearing in which Plaintiff had ample opportunity to explain the factual basis for its claims but instead admitted it had none, followed by this Court dismissing all claims against UHC. (Dkt. 85). Rather than buttressing the factual support for Plaintiff's theory of patent infringement by UHC, the Second Amended Complaint (Dkt. 88, "SAC") serves only to emphasize that there is no legal or factual basis for any of Plaintiff's claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotations omitted).

In deciding a Rule 12(b)(6) motion, the court must assume that the plaintiff's allegations are true and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996). Although factual allegations are taken as true, legal conclusions and speculative or conclusory statements are given no deference.

[2] Motions to dismiss were filed by Versata Software ("Versata") and the various customers ("Customer Defendants") who received software from Versata containing computer code provided by Plaintiff to Versata under the terms of the General Public License ("GPL") version 2.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition to the allegations in the complaint, the court may consider attachments to the complaint and matters of public record that are subject to judicial notice, without converting the motion into a motion for summary judgment. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); see also 5B Charles Alan. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2009).

## III. PROCEDURAL BACKGROUND

Plaintiff filed its first Amended Complaint on December 17, 2013, attempting to state a claim for patent infringement, along with a request for declaratory judgment that was more akin to a request for an advisory opinion on issues of law, neither of which was ripe for dispute at the time that complaint was filed. (Dkt. 18.) UHC filed a Motion to Dismiss (Dkt. 33), seeking to dismiss the patent infringement claim under Fed.R.Civ.P. 12(b)(6) for failure to state a claim and to dismiss the declaratory judgment claim under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff filed a response arguing that it had stated a claim for patent infringement, but failed to address the declaratory judgment issue. (Dkt. 43) This Court held an extensive hearing on March 11, 2014. At the hearing, Plaintiff's attorney admitted that he and his firm had performed no pre-suit investigation regarding any infringement by UHC,[3] and also again failed to address the motion to dismiss Plaintiff's declaratory judgment claim.

This Court subsequently dismissed Plaintiff's claims against UHC, with leave to re-plead. (Dkt. 85). In so doing, the Court agreed with UHC that: (1) mere use of Versata's software by UHC cannot constitute patent infringement, because the GPL seeks to protect innocent licensees from a breach by an intermediate licensor by giving them a direct license with the original licensor; and, (2) Plaintiff's conclusory allegations of distribution of Versata's software by UHC

---

[3] During the hearing on defendants' motions to dismiss, Plaintiff's counsel admitted that he had performed no pre-suit investigation into whether UHC and the other Customer Defendants, with the exception of Ameriprise, had distributed its software. (Dkt. 72, at 33-34). Instead, by Plaintiff's own admission, it sued UHC based on the speculation that "this is the way all of these folks operate." (*Id*. at 33, ll. 21-22). Plaintiff's counsel went on to lament the supposed burden that Plaintiff would suffer were it required to actually comply with Rule 11 requirements for an adequate pre-suit investigation, calling it a "sorry exercise" (*Id*. at 33, l. 23)

were insufficient to support a claim for patent infringement.

On May 30, 2014, after having two and a half months to try to develop the factual basis for a claim against UHC that it admitted it did not have as of the time of the hearing, Plaintiff filed its Second Amended Complaint (Dkt. 88, "SAC"). The SAC repeats virtually all of the allegations from its previous complaint that this Court held were insufficient to state a claim. The only new allegation dealing with UHC appears in paragraphs 60 and 76. As discussed in more detail below, however, nothing in these paragraphs, even upon the most charitable reading in favor of Plaintiff, supports a claim of patent infringement against UHC. And, the SAC, like the original complaint, still does not comport with the requirements for a valid declaratory judgment claim.

## IV. ARGUMENT

### A. Plaintiff's Assertion of a Patent Infringement Claim Against UHC Fails to State a Claim Under Rule 8.

#### *i. UHC is Free to Run Software Released Under the GPL.*

In paragraph 94 of the SAC, Plaintiff asserts that UHC (grouped together with the other "Customer Defendants") infringes the asserted patent "by *using* the infringing Versata Products." (Dkt. 88, para 94, emphasis added). That assertion is directly contrary to this Court's Order dismissing Plaintiff's previous complaint against UHC, which rested on that identical allegation. (*See* Dkt. 18, para. 84). As this Court recognized, there is simply no dispute that the GPL does not even purport to restrict the use of software distributed under that license. In fact, it expressly disclaims any such restriction. As this Court noted in its opinion dismissing Plaintiff's claims, the GPL plainly states that the "act of running the Program is not restricted." (Dkt. 18, Exhibit 1, Section 0). Thus, Plaintiff's reliance on UHC's use of the Versata software fails to state a claim for patent infringement.

#### *ii. Plaintiff Has, Once Again, Failed to Allege Any Distribution of the Versata Software by UHC.*

This Court was clear regarding the key deficiency in Plaintiff's attempt to state a patent claim against UHC and the other customers. As the Court said,

> the only real issue to resolve is whether XimpleWare has sufficiently alleged that its software was "distributed" by the customers when they shared the software with their independent contractors, franchisees, and producers.

(Dkt. 85, at 10). As stated above, Plaintiff's counsel admitted at the hearing that not only did Plaintiff have no basis for alleging any wrongful distribution by UHC, but at that point they had not even investigated it. Now, after having two and a half months to further investigate its claim, Plaintiff has again failed to effectively allege a plausible claim—meaning a claim that is not founded merely on speculation, supposition and conjecture—that UHC distributed the Versata software to anyone, let alone to any identified third-party.

The allegations against UHC in Plaintiff's SAC are no more detailed or less conclusory than those that this Court characterized dismissively (literally) as "classic *Iqbal* and *Twombly* territory." (Dkt. 85 at 11.) In fact, of the 118 paragraphs in the SAC, 104 are verbatim or nearly-verbatim copies from the previous complaint. That includes paragraph 95, which is substantively identical to the allegation that this Court already held to be legally insufficient to state a claim, including its bundling of defendants into a single non-specific and conclusory allegation regarding distribution.

The only new allegations in the SAC that even arguably relate to UHC are paragraphs 60 and 76. But, neither of those paragraphs alleges any actual distribution by UHC.

Paragraph 60 quotes an unnamed "industry publication" unrelated to UHC as stating that:

> "For many core financial products and services, independent distribution is the leading sales channel in the industry. It accounts for half of life insurance new annualized premium and 40 percent of annuity business written."

This paragraph does not even suggest, let alone support, a plausible claim against UHC. It does not mention software. It does not mention software distribution. It does not name UHC. It does not name any distributors used by UHC. It does not even identify the supposed "industry publication" from which the quote was derived or even the alleged industry to which it supposedly applies in concluding that independent distribution is used for "many core financial products and services." The most that can be said for this allegation is that it suggests—without

alleging any actual facts—that because the Customer Defendants are in the insurance industry, and because insurance policies might be characterized as a "financial product or service," then the defendants may use independent contractors. That syllogism is as uncontroversial as it is irrelevant to this case.

The one and only paragraph in the SAC that states any "facts" specific to UHC is Paragraph 76. It alleges:

> "Among the risk factors discussed in United Health's recent 10-Q quarterly report, filed with the U.S. Securities Exchange Commission on May 6, 2014, United Health stated that "our ability to attract, retain and provide support to a network of independent producers (i.e., brokers and agents) and consultants" could materially impact the company's financial performance."

Setting aside that this quote comes not from UHC but from a "Forward-Looking Statement" in a corporate parent's SEC filing, it does not refer even vaguely to software use or software distribution, let alone to XML parsing, or to Ximpleware, or to Versata, or to any identified third-party to whom UHC supposedly distributed their software.

Worse yet, after this Court was crystal clear that the viability of Plaintiff's claims hinges on distribution, Plaintiff simply does not allege any such distribution of any software, to any third-party, let alone a distribution of Versata software containing Ximpleware code to any identified third-party, which would be the bare minimum required to even arguably state a claim under *Twombly* and *Iqbal.* Instead, Paragraph 76 merely states:

> "On information and belief, these "independent producers" (i.e., non-employees of United Health) are the beneficiaries of the DCM software, which calculates their compensation."

Plaintiff does not identify what it means by "beneficiaries," but it certainly does not come close to effectively alleging UHC distributed Plaintiff's software to anyone. Rather, that allegation—the only allegation in the entire SAC that even attempts to describe in even general terms any distribution by UHC—is factually and legally vacuous and fails as a matter of law. Having just had its patent infringement claim dismissed, and having been given another chance by the Court with the admonition to focus on "the real issue" of whether the software was

distributed by UHC, Plaintiff can only muster a vague allegation that UHC's "independent producers" are in some unexplained way "beneficiaries" of the subject software because their commissions allegedly are calculated by it. It notable that Plaintiff does _not_ allege that UHC _ever_ provided any third-party with a single copy of code containing Ximpleware software. Plaintiff also carefully couches its assertion under the cover of an "on information and belief" qualifier, by which it almost surely means that it has no actual evidence and is simply speculating. Such pleading fails as a matter of law, as the Central District of California recently observed in *Tarantino v. Gawker Media*, LLC, 2014 WL 2434647, at *5 n.4 (C.D. Cal. 2014):

> [A]ll of Plaintiff's allegations related to his contributory infringement claim are based on information and belief, and such allegations are insufficient as a matter of law. *See, e.g., Vivendi SA v. T–Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir.2009) (finding insufficient allegations based "upon information and belief" where no further facts were alleged); *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar.13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."); *Simo-nyan v. Ally Fin. Inc*., 2013 WL 45453, at *2 (C.D. Cal. Jan.3, 2013) (noting that "factual allegations ... based on ' information and belief' and contain[ing] nothing more than a rote recitation of the required elements of each respective claim ... fall well short of the requirements set forth in *Iqbal* "); *U.S. v. Center for Diagnostic Imagining*, Inc., 787 F.Supp.2d 1213, 1221 (W.D.Wash.2011) (holding that "[a] plaintiff relying on ' in-formation and belief' must state the factual basis for the belief").

Plaintiff's allegations against UHC end with the entirely conclusory assertion in Paragraph 95 that the "Customer Defendants," again lumped together as a group, "have distributed without authorization DCM and VTD-XML to thousands of non-employee independent contractor or franchisee advisors or "producers." This is the same kind of non-specific, boilerplate allegation that this Court specifically rejected as "class *Twombly* and *Iqbal* territory." Therefore, Plaintiff has once again failed to properly plead any distribution by UHC of the Versata software.

***iii.*** ***_Use of the Software by Contractors is Not "Distribution" for Purposes of the GPL._***

Even if Plaintiff did allege effectively that UHC shared the software with its employees, contractors or agents, this would not implicate the act of "distribution" under the GPL. From its development at common law to its codification in the Copyright Act, the term "distribution" has

always required circulation of the material to the public at large. *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 299-300 (3d Cir. 1991) (describing the nature of the right of "distribution" at common law); 17 U.S.C. § 106(3) (distribution must be "to the public"). Use of software by employees or contractors does not constitute a distribution or transfer or rights in the software that would implicate obligations under the GPL. *Womack+Hamilton Architects, L.L.C. v. Metric Holdings Ltd. P'ship*, 102 Fed. App'x 374, 382-83 (5th Cir. 2004) (copyright licensee's hiring of independent contractors "does not appear to be a transfer of the rights contained in the license"); *Hogan Sys., Inc. v. Cybresource, Int'l*, 158 F.3d 319, 323 (5th Cir. 1998) (finding that bank's use of independent contractors to work on licensed software was not a transfer of the license because "all of the work being done inures to the benefit of [the bank]").

Because Plaintiff does not (nor could it) allege that UHC distributed the Versata software to any third party unrelated to UHC, the GPL placed no distribution-related obligations on UHC. As such, Paragraph 95 of the SAC also fails to state a claim for patent infringement against UHC.

***iv. The Mere "Running" or Use of GPL Software is Not Restricted, Regardless of Distribution.***

This Court's Order dismissing Plaintiff's claims against UHC begins with this observation: "Think of the millions of lines of source code licensed in this country and around the world under the terms of version 2 of Richard Stallman's GNU General Public License." UHC respectfully submits that the users of those millions of lines of code would be in for a nasty shock were they to realize that under Plaintiff's novel interpretation of the GPL, they could be liable for patent infringement based on an unknown upstream breach, even if they received their distribution in binary form, had no reason or ability to review the source code to determine whether it contained GPL code, and had no knowledge whatsoever that their licensor had breached any provision of the GPL. Yet, that is Plaintiff's theory, in a nutshell. For that reason, UHC respectfully submits that in order for the protections of downstream licensees in Sections 6 and 7 of the GPL to make any sense, the "remain in full compliance" condition must be interpreted to refer to *independent breaches*, not to breaches that were wholly derivative of a

breach by an upstream licensor.[4]

But, the Court does not have to reach that issue in order to find that UHC cannot be liable for mere use of the software even if Plaintiff had effectively pleaded a distribution, which it has not. This is so because the plain language of Section 0 of the GPL is very careful to distinguish the acts that it covers and those that it does not. Specifically, while acts of acts of copying, distribution, and modification are "licensed" (and thereby potentially subject to a breach), the "act of running the Program is not restricted." (emphasis added.)

In other words, the GPL simply does not purport to restrict mere use. In fact, it affirmatively disclaims any such exclusionary right. For purposes of this motion, it is not necessary to characterize Section 0's plain statement that running the software is not restricted. However, whether it is termed a disclaimer, a waiver, or a statement estopping the licensor from later claiming such a restriction, GPL's language could not be clearer: running the software is categorically unrestricted. That is the trade-off that comes with distributing under the GPL. The developer gets to proliferate its software widely and freely, but it also tells the world of potential users of that software that the developer does not purport to restrict mere running of the program.

Now, Plaintiff may argue that this would insulate licensees who do subsequently distribute the GPL software from liability. That is not true. They might still be liable for breach of contract or for copyright liability based on their own actual distribution or copying that is independent of mere use, but they cannot be liable for patent infringement based on simply using the program – not when Section 0 of the GPL affirmatively and clearly disclaims any restriction on that use.

***v. Plaintiff's Patent Infringement Claims do not Comport With Form 18 or This Circuit's Pleading Requirements.***

If Plaintiff's claims involved standard allegations of direct patent infringement, the pleading standard would be set by Form 18 of the Federal Rules of Civil Procedure, which requires: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a

statement that the defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; (4) a statement that the plaintiff has given defendant notice of its infringement; and (5) a demand for an injunction and damages.

But, Plaintiff's SAC hardly presents such a straightforward claim. Instead, Plaintiff's claim is, in essence, grounded on allegations of breach of contract, and it hinges on vague and conclusory allegations that UHC has breached the GPL by distributing Plaintiff's software to third-parties and, on that basis, that its use of the software – which would otherwise be covered by the license – now constitutes patent infringement. Thus, it was the Plaintiff who elected to base its complaint on the effect of the use and distribution of software under the GPL.

Yet, Plaintiff's SAC provides not a single detail regarding such supposed distribution by UHC, instead couching its allegations in the most conclusory terms, and even those are qualified with "upon information and belief." And, Plaintiff never identifies a single such piece of information. The SAC does not identify: when UHC licensed the software or on what terms; how UHC supposedly uses Versata's software; whether UHC received the code in source code or object form and in what form it allegedly distributed it; any UHC product or service into which it is supposedly incorporated, a single party to whom such software was allegedly distributed, the nature of that third-party's business relationship with UHC; or, a single detail regarding the who, where, when and how of the supposed distribution.

The existence of Form 18 in no way relaxes the principle of Rule 8, that the potential infringer be placed on notice of what activity or device is being accused of infringement. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013). The complaint must state facts sufficient to place the alleged infringer on notice as to what he must defend. *Id.* Plaintiff's SAC fails to provide adequate notice of how UHC supposedly infringes the asserted patents having in mind the existence of the GPL, which Plaintiff itself expressly

alleged. As such, it fails to comply with *Twombly* and *Iqbal's* requirement that Plaintiff state sufficient factual detail to raise a plausible claim that UHC is liable for patent infringement because it distributed Versata's software in breach of the GPL. And, given that Plaintiff's claims of patent infringement are inextricably bound up with the effect of the GPL, UHC submits that the relaxed pleading standard of Form 18 does not apply or must be modified to fit this context.

**B. Plaintiff Fails to State any Basis for a Declaratory Judgment Claim**

Plaintiff's SAC seeks a declaratory judgment that (a) the asserted patents are valid (para. 114); (b) the GPL does not confer a patent license (para. 115); and (c) that any grant of a patent license by one defendant to another is invalid (para. 116). Each of these requests lacks a legal and factual basis.

First, Plaintiff's declaratory judgment claims fail for the simple reason that Plaintiff has not stated any statutory basis for them. Fed.R.Civ.P. 8(a)(1) requires that each complaint contain "a short and plain statement of the grounds for the court's jurisdiction." Nowhere in Plaintiff's original complaint or in the SAC is there any statement regarding the basis for its declaratory judgment claims.

Second, Plaintiff's request for a declaration that the patents are valid fails for the simple reason that Plaintiff abandoned or waived it during the course of briefing and argument on the first motions to dismiss. UHC's motion squarely addressed the declaratory judgment claim and sought its dismissal. (Dkt. 33, at 9). Plaintiff did not respond to that portion of UHC's motion. UHC's counsel raised that portion of the motion again at the hearing. (Dkt. 72, at 24-25). Plaintiff again failed to respond.

With respect to the substance of Plaintiff's claims, as UHC argued in its initial motion, no declaratory judgment jurisdiction exists over the issue of patent validity because, at the time this action was filed, UHC did not know of the existence of the Plaintiff, much less of its patents. Plaintiff does not allege (nor could it) that UHC was aware of the asserted patents before this action was filed. Therefore, Plaintiff does not and cannot allege that at the time it filed its

complaint there was a "real and substantial" dispute over the validity of those patents that was "definite and concrete, touching the legal relations of parties having adverse legal interests." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Therefore, no actual controversy existed at the time of the filing of the complaint and the Court lacks subject-matter jurisdiction to hear Plaintiff's declaratory judgment claim against UHC. 28 U.S.C. § 2201(a); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 392 n.12 (3d Cir. 1991) ("It is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint.

Third, with respect to Plaintiff's request for declaratory relief related to the scope of the GPL and defendants' ability to convey patent licenses, those claims fail because they do not meet the statutory requirements for a declaratory judgment. This Court's declaratory judgment jurisdiction is set by 18 U.S.C. § 2201, which requires an actual controversy regarding "the rights and other legal relations of any interested party seeking such declaration." Perhaps knowing that its claims do not meet that statutory standard, and as noted above, Plaintiff's complaint does not contain any statement regarding the statutory basis for its claim. Whatever it is Plaintiff is asking for with its declaratory judgment claim, it is not a resolution of the rights or legal relations of the parties. Instead, Plaintiff simply seeks an advisory legal opinion regarding the GPL and the law of patent licensing. And, UHC has never asserted that it was granted any patent licenses by any other defendants in this action. Therefore, there was not, at the time Plaintiff's Complaints were filed, any basis for asserting that there was an actual controversy on this purely legal issue.

For these reasons, Plaintiff's claims for declaratory relief should be dismissed.

### C. Plaintiff's Claims for Willful Infringement Fail Because Plaintiff Does Not Allege Pre-Suit Knowledge of its Patents by UHC.

A party cannot be found to have "willfully" infringed a patent of which the party had no knowledge. *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.* 897 F.2d 508, 511 (Fed. Cir. 1990). In this Circuit, it is well-established that a plaintiff must plead pre-suit knowledge in order to plead willful infringement. *MyMedicalRecords, Inc. v. Jardogs, LLC,* 2014 U.S. Dist. LEXIS

1146 (C.D. Cal. 2014). Plaintiff has not pleaded that UHC, or any other defendant, had any pre-suit knowledge of Plaintiff's asserted patents. Nor has Plaintiff alleged that UHC has been objectively reckless with respect to infringement of any asserted patent. The SAC also fails to allege that UHC knew or should have known of an objectively high risk that its actions would result in infringement of a valid patent, and thus its allegations of willful infringement must be dismissed. *See, In re Seagate Tech., LLC,* 49 F.3d 1360, 1371 (Fed. Cir. 2007).

**V. CONCLUSION**

UHC respectfully requests that each of Plaintiff's claims against UHC be dismissed with prejudice.

Respectfully submitted on June 12, 2014.

HOGAN LOVELLS US LLP

By: *s/ Clayton C. James*
Clayton C. James

Attorneys for Defendant
UNITED HEALTHCARE SERVICES, INC.