1   Jack Russo (Cal. Bar No. 96068)
    Christopher Sargent (Cal. Bar No. 246285)
2   Ansel Halliburton (Cal. Bar No. 282906)
    COMPUTERLAW GROUP LLP
3   401 Florence Street
    Palo Alto, CA 94301
4   (650) 327-9800
    (650) 618-1863 fax
5   jrusso@computerlaw.com
    csargent@computerlaw.com
6   ahalliburton@computerlaw.com

7   Attorneys for Plaintiff
    XIMPLEWARE CORP.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California          Case No. 5:13-cv-5161 PSG
    Corporation,
13                                              **XIMPLEWARE'S CORRECTED OPPOSITION
                        Plaintiff;              TO MOTION TO DISMISS BY UNITED
14                                              HEALTHCARE SERVICES**
               v.
15
    **Versata Software, Inc., f/k/a Trilogy**
16  **Software, Inc.,** a Delaware corporation;  Date:        August 12, 2014
    **Trilogy Development Group, Inc.,** a       Time:        10:00 a.m.
17  California corporation; **Ameriprise**       Location:    Courtroom 5
    **Financial, Inc.,** a Delaware corporation;  Judge:       Hon. Paul S. Grewal
18  **Ameriprise Financial Services, Inc.**, a
    Delaware corporation; **Aurea Software, Inc.**
19  **a/k/a Aurea, Inc.,** a Delaware corporation,
    **Pacific Life Insurance Company,** a
20  Nebraska corporation; **United HealthCare**
    **Services**, a Minnesota corporation;
21  **Metropolitan Life Insurance Company**, a
    New York Corporation; **The Prudential**
22  **Insurance Company of America**, a New
    Jersey corporation; **Wellmark, Inc.,** an Iowa
23  corporation, **Waddell & Reed Financial,**
    **Inc.,** a Delaware corporation; and **Aviva USA**
24  **Corporation**, an Iowa corporation,

25                      Defendants.

26

27

28

*Computerlaw Group LLP*
*www.computerlaw.com℠*

1

## TABLE OF CONTENTS

2  INTRODUCTION ................................................................................................ 1

3  STATEMENT OF FACTS ................................................................................... 2

4  STANDARD OF REVIEW .................................................................................. 5

5  ARGUMENT ........................................................................................................ 6

6  I.   DEFENDANT UHS RECEIVED UNLICENSED INFRINGING SOFTWARE
7       FROM INCEPTION FROM VERSATA; AFTER NOTICE AND AFTER SUIT,
         WILLFUL INFRINGEMENT CONTINUED BECAUSE PROMISED
8        REPLACEMENT OF THE INFRINGING SOFTWARE DID NOT OCCUR. ............... 6

9  II.  XIMPLEWARE LICENSES ITS SOFTWARE UNDER
         STRICT AND SPECIFIC CONDITIONS ONLY
10       THAT UHS HAS FAILED TO MEET IN MANY WAYS. ............................................ 8

11       A.   UHS Did Not Comply with Many Restrictions on Use,
               Including Notice and Attribution, as Well as Copying and Distribution. ............. 8

12       B.   The Terms of the GPL Simply Do Not Excuse or Justify
13            Past, Present, and/or Continuing Patent Infringement ........................................... 9

14 III.  DEFENDANTS' USE AND DISTRIBUTION ARE IN
         VIOLATION OF BOTH THE GPL AND THE PATENT ACT. ................................... 10

15       A.   The GPL Does Not Contain a Patent License. .................................................... 10

16            1.   Reading Solely Within the Four Corners of the GPL,
                    There Is a Clear Intention that No Patent License Is Granted. ............... 10
17
               2.   The GPL's Preamble Does Not Grant a Patent License. ........................ 11
18
         B.   The Defendants Cannot Rely Upon Any Form of Implied License Defense. ..... 12
19
         C.   Even If the Court Were to Find a License Was Granted, and It
20            Should Not, the Second Amended Complaint Alleges
               Distribution by UHS in Further Violation of the Terms of the GPL. ................... 13
21
22 IV.   PLAINTIFF PROPERLY ALLEGES CLAIMS FOR WILLFUL INFRINGEMENT. ... 14

23       A.   XimpleWare Alleged Constructive Notice
               Sufficient to Support Its Claim for Willful Infringement. ................................... 14

24       B.   Dismissal of XimpleWare's Willful Infringement Claims Is Premature. ............ 15

25       C.   Defendant UHS's Failure to Act with Proper Diligence
               Also Supports XimpleWare's Claim for Willful Infringement. ........................... 17
26
27 V.    THE SECOND AMENDED COMPLAINT SATISFIES THE
         REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE. ................ 18

28

Computerlaw Group LLP
www.computerlaw.com℠

A.      The Second Amended Complaint Contains
        Sufficiently Specific Infringement Allegations Under Rule 12. .......................... 18

B.      The Second Amended Complaint Properly Follows Form 18. ........................... 19

C.      Plaintiffs May Assert Alternative Theories as a Matter of Law. ......................... 20

VI.   DEFENDANT'S MOTION PROVES THE
      VALIDITY OF THE DECLARATORY RELIEF CLAIM. .............................. 21

VII.  AT MINIMUM, LEAVE TO AMEND SHOULD BE LIBERALLY GRANTED. ......... 22

CONCLUSION          ............................................................................................. 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Computerlaw Group LLP**
www.computerlaw.com℠

1

<u>**TABLE OF AUTHORITIES**</u>

2

**CASES**

3

<u>American Medical Sys. Inc., v. Medical Eng'g Corp.</u>,

4

    6 F.3d 1523 n.18 (Fed. Cir. 1993) .................................................................15

5

<u>Ascon Properties, Inc. v. Mobil Oil Co.</u>,

6

    866 F.2d 1149, 1159 (9th Cir. 1989) .............................................................22

7

<u>Ashcroft v. Iqbal</u>,

8

    566 U.S. 662 (2009) .......................................................................................5

9

<u>Bell Atlantic Corp. v. Twombly</u>,

10

    55 U.S. 544 (2007)....................................................................................5, 16

11

<u>Cherokee Water Co. v. Freeman</u>,

12

    33 S.W.3d 349 (Tex. App. 2000)...............................................................1, 13

13

<u>Guillen v. Bank of America Corp.</u>,

14

    2011 WL 4071996 (N.D. Cal. 2011) ..............................................................5

15

<u>Hagan Sys. v. Cybresource Int'l</u>,

16

    158 F.3d 319 (5th Cir. 1998) ........................................................................ 14

17

<u>Hillis v. Heineman</u>,

18

    626 F.3d 1014 (9th Cir. 2009) ......................................................................21

19

<u>In re Seagate Tech.</u>, *LLC*,

20

    497 F.3d 1360 (Fed. Cir. 2007) ...............................................................15, 17

21

<u>Intellect Wireless Inc. v. Sharp Corp.</u>,

22

    2012 U.S. Dist. LEXIS 31669 ......................................................................19

23

<u>Jacobson v. Simmons Real Estate</u>,

24

    23 Cal. App. 4th 1285 (1994) ..................................................................10, 11

25

<u>Jensen v. Traders & General Ins. Co.</u>,

26

    52 Cal. 2d 786 (1959) ................................................................................. 10

27

<u>Johnson v. Oregon Dept. of Human Resources Rehab. Div.</u>,

28

    141 F.3d 1361 (1998) ...................................................................................20

Computerlaw Group LLP<br>www.computerlaw.com℠

Lacey v. Maricopa County,
  693 F.3d 896 (9th Cir. 2012) ........................................................... 5

Loops, LLC v. Amercare Prods.,
  636 F. Supp. 2d 1128 (W.D. Wash. 2008) ............................... 15, 16

Maldonado v. Fontanes,
  586 F.3d 263 (1st Cir. 2009) .......................................................... 16

Matthews v. Starritt,
  252 Cal. App. 2d 884 (1967) ........................................................... 8

Mendiondo v. Centinela Hosp. Med. Ctr.,
  521 F.3d 1097 (9th Cir. 2008) ......................................................... 6

Met-Coil Systems Corp. v. Korners Unlimited, Inc.,
  803 F.2d 684 (Fed. Cir. 1986) ....................................................... 12

Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,
  692 F.3d 983 (9th Cir. 2011) ......................................................... 20

New Hampshire v. Maine,
  532 U.S. 742 (2001) ................................................................. 20, 21

OSU Student Alliance v. Ray,
  699 F.3d 1053 (9th Cir. 2012) ......................................................... 5

Pegram v. Herdrich,
  530 U.S. 211, 227 n.8, 120 S. Ct. 2143 (2000) ............................. 20

Pierce v. Merrill,
  128 Cal. 464 (1900) ....................................................................... 10

Realtime Data, LLC v. T-Mobile USA, Inc.,
  936 F. Supp. 2d 795 (E.D. Tex. 2013) ........................................... 12

Rembrandt Soc. Media LP v. Facebook, Inc.,
  950 F. Supp. 2d 876 (E.D. Va. 2013) .............................................. 7

Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
  81 F.3d 355 (3rd. Cir. 1996) .......................................................... 20

Computerlaw Group LLP
www.computerlaw.com℠

1  Safeco Ins. Co. v. Robert S.,
2      26 Cal. 4th 764 (2001) ....................................................................10, 13, 17
3  Safeco Insurance Company of America v. Burr,
4      551 U.S. 47 S. Ct. 2201 (2007)....................................................................10
5  Scheuer v. Rhodes,
6      416 U.S. 232 94 S. Ct. 1683 (1974)..............................................................16
7  Schreiber Distributing v. Serv-Well Furniture Co.,
8      806 F.2d. 1393 (9th Cir. 1986) .....................................................................22
9  Schwab v. Bridge,
10     26 Cal. App. 204 (1915)..................................................................................8
11 Skilstaf, Inc. v. CVS Caremark Corp.,
12     669 F.3d 1005 (9th Cir. 2012).........................................................................5
13 Sun Microsystems, Inc. v. Versata Enters.,
14     630 F. Supp. 2d 395, 411 (D. Del. 2009) .....................................................12
15 Swipe Innovations, LLC v. NCR Corp.,
16     2013 U.S. Dist. LEXIS 164060 (N.D. Ga. November 18, 2013) .....................7
17 Symantec Corp. v. Veeam Software Corp.,
18     2012 U.S. Dist. LEXIS 75729 .......................................................................19
19 TV Interactive Data Corp. v. Sony Corp.,
20     2012 U.S. Dist. LEXIS 171526 (N.D. Cal. December 3, 2012).......................7
21 United States v. C.I.T. Constr. Inc.,
22     944 F.2d 253 (5th Cir. 1991)......................................................................5, 21
23 Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,
24     103 F.3d 1571 (Fed. Cir. 1997) .....................................................................12
25
26
27
28

**STATUTES AND RULES**

35 U.S.C. Section 287(a) ..................................................................................15

35 U.S.C. 271(a) ..............................................................................................17

18 U.S.C. section 2201 .....................................................................................21

FED. R. CIV. P. RULE 8 ..............................................................................*passim*

FED. R. CIV. P. RULE 8(d)(2) ...........................................................................21

FED. R. CIV. P. RULE 8(d)(3) ...........................................................................21

FED. R. CIV. P. RULE 84 ...................................................................................19

FED. R. CIV. P. Civil Form 18...........................................................................19

Cal. Civ. Code §1639 .......................................................................................11

CAL. CODE CIV. P. § 1858 ................................................................................10

**SECONDARY SOURCES**

Berkeley Technology Journal Vol. 25:1955 "Iqbal-ing Seagate: Plausibility Pleading of Willful

Patent Infringement" Damon C. Andrews. p. 1966 ...........................................16

Lawrence Rosen, Open Source Licensing: Software Freedom And Intellectual Property Law 109

(Prentice Hall 2004)..........................................................................................11

**Computerlaw Group LLP**
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INTRODUCTION

Can a user of unlicensed, patented technology continue to use that technology after it has been promised in open court that its use will end, and then fail to actually stop the use of the patented technology? Of course not, yet the Defendant United Healthcare Services ("UHS") continues to believe the GPL open source license gives it immunity from proper patent infringement claims even when they have not ceased to use the technology after notice, after litigation and after promising the exact opposite course of conduct to this Court. Equity demands that this Defendant account for its past, present and future wrongful and willful use of Plaintiff's patented technology.

Here, Versata and its affiliates developed specialized enterprise software called DCM and sell it to financial services and insurance companies to help them run their businesses. Defendants Versata Software Inc., Trilogy Development Group Inc., and Aurea Software, Inc. (collectively, "Versata") incorporated Plaintiff XimpleWare Corp.'s ("XimpleWare") VTD-XML software into Versata's own DCM product which was then sold and distributed to customers including UHS. XimpleWare's software is available for licensing, among other ways, as open source under a license called the General Public License, or GPL. However, under the GPL, software may be licensed only if very specific and strict conditions precedent have been met. Further, the GPL does not confer any patent license at all nor has any other form of patent license been granted by XimpleWare to UHS (or any of the Defendants for that matter). Additionally, UHS did not meet the preconditions of the GPL by using XimpleWare's software in DCM without proper attribution, without including source code, and without entering into a commercial license with XimpleWare. Because the GPL does not have a patent license and because UHS failed to meet the preconditions of the GPL, it never had license to XimpleWare's patents, and also could never have properly sublicensed XimpleWare's patents to its consultants and other users of DCM.

UHS has practiced XimpleWare's patents without a license and without payment, and that has been fully and clearly alleged in the Second Amended complaint. Therefore, the Court should deny this Motion and allow this case to proceed on its merits.

1

<strong><u>STATEMENT OF FACTS</u></strong>

2       1.      Plaintiff XimpleWare had spent over a decade developing and fine-tuning its

3   copyrighted software product, known as "VTD-XML" or "VTD XML Extended" (collectively,

4   the "<u>Product</u>"), which reads and parses XML code at a range estimated to be five to ten times

5   faster than other current XML parsing programs, effecting greater efficiency and speed. Second

6   Amended Complaint ("<u>SAC</u>") ¶ 43.

7       2.      The Product provides indexing and incremental capabilities that are crucial to

8   many high performance XML applications and are not available in any other XML parsing

9   libraries. Efficiency and speed are critical in many applications of XML, especially in large scale

10  enterprise data interchange applications where entire server computers are dedicated to handling

11  streams of XML data. If XML data can be processed faster, then fewer servers are needed, less

12  leased space in data centers is needed for those servers, and less energy is required to power

13  those servers—altogether greatly reducing computing needs and costs. SAC 43.

14      3.      XimpleWare made the business decision to license its Product and related source

15  code under an "open source" license known as the GNU General Public License version 2

16  ("<u>GPL</u>"). The GPL requires, among other things, that: (1) any changes made to the code carry

17  notices stating that the files were changed, and the dates of all changes; (2) any code created or

18  derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices

19  must print or display when the code is run; and (4) when distributed, the program must be

20  accompanied by the complete machine-readable source code. Am. Compl., Ex. 1. All four

21  conditions must be met. SAC ¶ 34.

22      4.      The GPL requires strict compliance: Under its Section 4, any failure to comply

23  with **any** of the GPL's multiple conditions means there is no license and this means any use,

24  distribution, or other exploitation is not licensed, and all rights the violator could have obtained

25  under the GPL are voided. SAC ¶¶ 30–39.

26      5.      XimpleWare chose the GPL approach because it is one of the most restrictive

27  licenses available, requiring that any derivative code incorporating GPL-protected code must be

28  returned to the open source community in its entirety. In other words, if Developer A creates

Computerlaw Group LLP
www.computerlaw.com℠

1   Product A and licenses it under the GPL, and Developer B creates Product B which incorporates

2   Product A, then Developer B must also license Product B under the GPL. SAC ¶ 36.

3       6.      XimpleWare is the owner of all right, title, and interest in all patents related to the

4   Product and related source code, including but not limited to U.S. Patent Nos. 7,133,857,

5   7620,652, and 7,761,459. SAC ¶¶51–52.

6       7.      All versions of the Source Code have appropriate copyright notices printed on or

7   affixed conspicuously to the first page of each work, as required by the GPL. XimpleWare uses

8   the GPL-required copyright notices on its Product and its documentation to give actual and

9   constructive notice of the existence of XimpleWare copyrights. SAC ¶¶45–48.

10      8.      The first patent (the '857 Patent), filed in 2002 and issued in 2006, is titled

11  "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering

12  methods, apparatuses, and program storage devices for "efficiently processing a structured data

13  file" or "efficiently processing structured data"—including XML. The '857 Patent has been cited

14  by five other issued U.S. patents—including patents issued to IBM, HP, and Canon—and by

15  three published U.S. patent applications. SAC ¶53.

16      9.      The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8

17  independent claims) for methods, apparatuses, and program storage devices, and focuses on

18  efficiently processing structured data like XML. The '652 Patent has been cited by two issued

19  U.S. patents by IBM and Canon and by one published U.S. patent application. SAC ¶ 54. The

20  '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent

21  claims) for methods, apparatuses, hardware devices, and program storage devices, and again

22  focuses on efficiently processing structured data like XML. The '459 Patent has been cited by

23  two issued U.S. patents and one published U.S. patent application. SAC ¶55.

24      10.     The XimpleWare Source Code and Product practice the XimpleWare Patents and

25  XimpleWare owns and owned the three XimpleWare Patents throughout the period of the

26  Defendants' infringing acts. XimpleWare uses the patent numbers on its Product and in its

27  documentation. SAC ¶58.

28

Computerlaw Group LLP
www.computerlaw.com℠

11.     XimpleWare's SourceForge project page also clearly states that the VTD-XML software is licensed under the GPL; the XimpleWare web site has always made clear that any and all commercial projects, and those involving any distribution, require a commercial license under the commercial terms and conditions to be concluded with XimpleWare, and that generally requires a signed written agreement between the parties and payment of commercial royalties to XimpleWare. Multiple other commercial parties who could not come within the GPL's strict conditions have agreed to sign and have signed commercial licenses with XimpleWare and the custom and practice in the industry is for the proposed licensee to do appropriate due diligence and to assure that his, her or its project is strictly within the GPL's conditions or else to contact XimpleWare to discuss the requirements for commercial licensing. SAC ¶59.

**The Texas Litigation**

12.     In the Summer of 2013, XimpleWare first learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation"). According to documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata product. Versata then sued for misappropriation, among other claims. During the prosecution of the Texas Litigation, based on published pleadings in the pending litigations in Federal and State Court, XimpleWare discovered that XimpleWare's Source Code in Versata's DCM product, and with said XimpleWare Source code, none of the conditions of the GPL license had been met. There was also no evidence of any commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in Versata's DCM product. SAC ¶¶62–64.

13.     Counsel for XimpleWare researched and requested various publicly filed documents from the Travis County, Texas Clerk of the Court, filed by both Versata and Ameriprise in that Texas Litigation in support of its claims alleged in the pleadings in this action.

14.     According to the same set of documents, Versata maintained in the course of business a list of open source software components that it included in its DCM Product, and that list included VTD-XML. Versata then distributed its DCM product to customers, including

Computerlaw Group LLP
www.computerlaw.com℠

Ameriprise, in violation of the GPL and XimpleWare's copyrights and patents. XimpleWare has never granted Defendants any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code. The only license that the Versata Defendants purported to have was from the GPL. SAC ¶¶70–71.

15.     Defendant United Healthcare Services Inc. is a public corporation registered to do business in California organized under the laws of Minnesota with its principal place of business in Minnetonka, Minnesota. SAC ¶ 10.

16.     Among the risk factors discussed in United Health's recent 10-Q quarterly report, filed with the U.S. Securities and Exchange Commission on May 6, 2014, United Health stated that "our ability to attract and retain and provide support to a network of **independent producers** (*i.e.,* brokers and agents) and consultants" could materially impact the company's financial performance. (Emphasis added.) On information and belief, these "independent producers" (*i.e.,* non-employees of United Health) are the beneficiaries of the DCM software, which calculates their compensation. SAC ¶76.

## STANDARD OF REVIEW

Though the Rule 12(b)(6) test has been revised in recent years, the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 55 U.S. 544 (2007) clarified that "once a claim has been stated adequately, it may be supported by showing **any** set of facts consistent with the allegations in the complaint." <u>Bell</u>, 55 U.S. at 563 (emphasis added). Thus, when deciding a motion to dismiss, Federal Courts must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." <u>Skilstaf, Inc. v. CVS Caremark Corp.</u>, 669 F.3d 1005, 1014 (9th Cir. 2012); <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1058 (9th Cir. 2012); <u>see</u> <u>also</u> <u>Guillen v. Bank of America Corp.</u>, 2011 WL 4071996 (N.D. Cal. 2011).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 911 (9th Cir. 2012) (*quoting* <u>Ashcroft v. Iqbal</u>, 566 U.S. 662 (2009)). A complaint meets this standard when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Dismissal

Computerlaw Group LLP
www.computerlaw.com℠

under Rule 12(b)(6) is appropriate **only** where the complaint lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>,

521 F.3d 1097, 1104 (9th Cir. 2008) (emphasis added).

ARGUMENT

**I.**   **DEFENDANT UHS RECEIVED UNLICENSED INFRINGING SOFTWARE FROM INCEPTION FROM VERSATA; AFTER NOTICE AND AFTER SUIT, WILLFUL INFRINGEMENT CONTINUED BECAUSE <u>PROMISED REPLACEMENT OF THE INFRINGING SOFTWARE DID NOT OCCUR</u>.**

Defendant UHS failed to act in a good faith or reasonable manner and instead it has

continued to illegally exploit XimpleWare's patents without permission or payment. It has done

so despite promises, on the unequivocal judicial record before this Court that it, along with other

Versata Defendants would cease use of the infringing software in order to avoid entry of a

temporary restraining order. Specifically, the CEO of Versata, Scott Brighton, signed a

declaration under oath in opposition to Plaintiff's application for a Temporary Restraining Order

("<u>TRO Application</u>")[1] promising to install a non-infringing patch and removing all XimpleWare

source code from the DCM product. Mr. Brighton testified that:

> I have instructed my development team to remove references to XimpleWare from all versions of DCM. My Team patched DCM version 3.9 on November 22, 2013. My development team informs me that if a DCM version 3.9 customer installs this patch pursuant to the instructions contained within the patch, references to XimpleWare are entirely eliminated.
>
> "My development team is now working on patching other versions of DCM, including the current version that we market, and we are in the process of developing and delivering the patches."

<u>See</u> RJN Ex. 1, Declaration of Scott Brighton, Copyright Case Dkt. 37-4 ¶¶5–6. Further, in its

Opposition to Plaintiff's same TRO Application, Versata represented that a "restraining order is

not necessary because Versata has already taken the commercial decision to eliminate

XimpleWare and a software patch has already been issued to Ameriprise, eliminating

XimpleWare, and patches to Versata's other customers [including UHS] are forthcoming." RJN

Ex. 2, Versata Opposition to Plaintiff's TRO Application, Copyright Case Dkt. 37, p. 9 lns. 4–9.

---

[1] This Opposition was filed in a related case currently before Judge Ilston in this district, Case No. 3:13-cv-05160 SI (the "<u>Copyright Case</u>").

Computerlaw Group LLP
www.computerlaw.com℠

1    These admissions are in the public record, in a related case, and neither Versata nor UHS

2    has done anything or represented that they have actually taken the step of eliminating

3    XimpleWare since those documents were filed. There is no suggestion that UHS has acted in any

4    way to ensure it received the promised patch to end the infringing and improper uses of

5    XimpleWare's software, as all notions of good faith and fair dealing would require. Instead, UHS

6    has chosen to continue to willfully infringe XimpleWare's patents for an addition, seven (7)

7    months since those papers were filed in December 2013.

8    In the face of clear statements under oath before this Court that they would act otherwise,

9    UHS and Versata have failed to cease their infringing and improper use of XimpleWare's

10   software. There has been no representation since the filing of those papers that a patch was ever

11   issued by Versata or received by UHS. The continued use of the XimpleWare VTD-XML

12   constitutes ongoing, post-suit infringement, which must be actionable against UHS.

13   The GPL is not an immunity for such post-suit infringement actions.[2] Even if UHS is able

14   to somehow establish that it was not on notice of Plaintiff's patents prior to litigation, it flies in

15   the face of clear and applicable precedent to argue that they are not now on notice, or have not

16   been on actual notice since the filing and service of this lawsuit in November 2013. See TV

17   Interactive Data Corp. v. Sony Corp., 2012 U.S. Dist. LEXIS 171526 (N.D. Cal. December 3,

18   2012) (damages limited to **post-suit** inducement); Swipe Innovations, LLC v. NCR Corp., 2013

19   U.S. Dist. LEXIS 164060 (N.D. Ga. November 18, 2013) citing Rembrandt Soc. Media LP v.

20   Facebook, Inc., 950 F. Supp. 2d 876, 881 (E.D. Va. 2013) (post-suit knowledge [i.e. knowledge

21   provided by the filing of the lawsuit] satisfies the knowledge element for indirect infringement).

22   Promises have been made under oath before this Court that successfully stopped the

23   issuance of a TRO that continued uses and misappropriations of XimpleWare's code would end,

24   but as of yet no such cure has come to pass. On this basis alone, UHS's Motion should be denied

25

26   [2] Infringing software does not become non-infringing through the GPL, nor does anything in the
     GPL allow continued infringement post-notice. Judge Grewal, in his May 15, 2014 Order

27   following the hearing on previous Motions to Dismiss from Versata and Ameriprise, ruled that
     the claims at least to Ameriprise were sufficient to establish a claim for infringement, meaning

28   that notice had been given. See Dkt. 85 11:12–12:7.

Computerlaw Group LLP
www.computerlaw.com℠

1   in its entirety, and at minimum, XimpleWare be allowed to recover its damages since the filing of

2   Mr. Brighton's declaration.

3   **II.    XIMPLEWARE LICENSES ITS SOFTWARE UNDER STRICT AND
        SPECIFIC CONDITIONS ONLY THAT UHS HAS FAILED TO MEET IN MANY WAYS.**

4

5        **A.    UHS Did Not Comply with Many Restrictions on Use,
                Including Notice and Attribution, as Well as Copying and Distribution.**

6        UHS did not comply with the conditions precedent to any license under the GPL,

7   including (a) copyright notices, (b) disclaimers of warranties, (c) notices referencing the GPL

8   license, and (d) when distributed, the program must be accompanied by the complete machine-

9   readable source code. The GPL does not provide "free" software for unlimited commercial use.

10  Rather, it allows certain persons to use source code under very strict terms that require returning

11  code to the open source community, and maintaining it **at all times**. For example, the GPL

12  states:

13          You may copy and distribute verbatim copies of the Program's source code as you
            receive it, in any medium, **provided that** you conspicuously and appropriately publish on
14          each copy an appropriate **copyright notice** and **disclaimer of warranty**; **keep intact all
            the notices that refer to this License** and to the absence of any warranty; and give any
15          other recipients of the Program a copy of this License along with the Program.

16  GPL at § 1 (emphasis added). Another conditional is expressed in section 2:

17          If the modified program normally reads commands interactively when run, you **must**
            cause it, when started running for such interactive use in the most ordinary way, **[1] to**
18          **print or display an announcement including an appropriate copyright notice [2] and**
            **a notice that there is no warranty** (or else, saying that you provide a warranty) and that
19          users may redistribute the program [3] under these conditions, and [4] telling the user
            how to view a copy of this License.
20

21  GPL at § 2(c) (emphasis and brackets added).

22          The illegally copied and illegally distributed code did not contain the required notices and

23  disclaimers and that can never be GPL-compliant under these provisions. The use of the words

24  "**provided that**" in the license term in Section 1 of the GPL means the required notices are a

25  condition precedent to the grant of a license, not merely a condition of it. Conditional language

26  such as "provided" has long been upheld to create a condition precedent. Schwab v. Bridge, 27

27  Cal. App. 204 (1915); see also Matthews v. Starritt, 252 Cal. App. 2d 884, 887 (1967) (finding

28

Computerlaw Group LLP
www.computerlaw.com℠

1    that "'Subject to' means subordinate to [citations] and is generally interpreted as a condition

2    precedent." [citations omitted]).

3         UHS failed to comply with these conditions precedent to a license under the GPL because

4    it either removed or never included: (a) XimpleWare's copyright notices, (b) the GPL warranty

5    disclaimer, (c) a full copy of the modified code, or (d) the notice of the GPL license itself as

6    alleged in the Second Amended Complaint. SAC ¶ 34, 64. Any one of these failures is fatal. GPL

7    § 1. The software that used and distributed did not contain the requisite notices and disclaimers.

8    SAC ¶ 64. For this reason alone, XimpleWare has more than adequately pled and established that

9    UHS violated the GPL because no license ever existed—which means that no use, including the

10   running or execution of the software by UHS, was ever authorized, licensed, or otherwise

11   compliant with the GPL.

12        Accordingly, the argument that the language of the GPL intends to give a "free" patent

13   license to all is irrelevant, incorrect, and misleading, and the Motions to Dismiss must be denied.

14       **B.**     **The Terms of the GPL Simply Do Not Excuse or**
15              **<u>Justify Past, Present, and/or Continuing Patent Infringement.</u>**

16        The language of the GPL specifically provides that users and distributors are bound by

17   obligations under the GPL and relevant patent licenses simultaneously:

18         7.     If, as a consequence of a court judgment or allegation of patent infringement or

19         for any other reason (not limited to patent issues), conditions are imposed on you
           (whether by court order, agreement or otherwise) that contradict the conditions of this

20        License, they do not excuse you from the conditions of this License. **If you cannot
           distribute so as to satisfy simultaneously your obligations under this License and**

21        **any other pertinent obligations, then as a consequence you may not distribute the
           Program at all.** For example, if a patent license would not permit royalty-free

22        redistribution of the Program by all those who receive copies directly or indirectly
           through you, then the only way you could satisfy both it and this License would be to

23        refrain entirely from distribution of the Program.

GPL v2, § 7 (emphasis added).

24

25        The inclusion of language such as "if a patent license" can only be interpreted as making

26   reference to a hypothetical *separate* patent license, not to a non-existing implied license which

27   the GPL expressly states is not included in the grant or otherwise existing as a result of alleged

28

Computerlaw Group LLP
www.computerlaw.com℠

1   (but non-existing compliance with an implied license due to compliance with the provisions of

2   the GPL. GPL v2, §7.

3   **III.   DEFENDANTS' USE AND DISTRIBUTION ARE IN
        VIOLATION OF BOTH THE GPL AND THE PATENT ACT.**

4   **A.     The GPL Does Not Contain a Patent License.**

5

6   UHS does not, and could never have had, any license to practice the XimpleWare patents,

    as no such license is granted under the GPL, which is the only open source license under which

7   XimpleWare provides its software that practices the patents. Thus, even if the Court were to

8   assume that UHS complied with its obligations under the GPL—which it has not, and the Second

9   Amended Complaint alleges very specifically that they have not based on documents from a

10  related federal case (SAC ¶¶ 64–67)—**the GPL does not grant a patent license**.

11

12  **1.     Reading Solely Within the Four Corners of the GPL,
             There Is a Clear Intention that No Patent License Is Granted.**

13  The GPL states in no uncertain terms that "if a patent license would not permit royalty-

14  free redistribution of the [VTD-XML] by all those who receive copies directly or indirectly

15  through you, then the only way you could satisfy both it and this License would be to **refrain**

16  **entirely from distribution of the program.**" GPL §7 (emphasis added). Here, Plaintiff alleges

17  that was no separate license that could have granted "royalty-free distribution"; in fact Plaintiff

18  alleges that there was no agreement for licensing or distribution at all.

19  Applicable law requires that a contract—in this case the GPL—be interpreted according

20  to the plain language of the contract and the parties' intent at the time of contracting. CAL. CIV.

21  CODE § 1636–1638 (2014); see also Pierce v. Merrill, 128 Cal. 464, 472 (1900).[3] There exists a

22  fundamental principle that, in interpreting contracts, courts "are not to insert what has been

23  omitted." Safeco Ins. Co. v. Robert S., 26 Cal. 4th 758, 764; see also CAL. CODE CIV. P. § 1858;

24  Jensen v. Traders & General Ins. Co., 52 Cal. 2d 786, 790(1959); Jacobson v. Simmons Real

25

26  [3] The GPL does not contain a choice of law clause. XimpleWare and the Court are both in
    California, and so California law is cited here. However, other jurisdictions are in accord. For
27  example, under Texas law, "A court's primary goal when construing a [contract] is to ascertain
    the true intention of the parties as expressed within the four corners of the instrument." Cherokee
28  Water Co. v. Freeman, 33 S.W.3d 349 (Tex. App. 2000).

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1   Estate, 23 Cal. App. 4th 1285, 1294 (1994). And when a contract is reduced to writing—as it is

2   in this case—the parties' intention is ascertained from the writing alone. CAL. CIV. CODE § 1639.

3       The intent that the writers of the GPL, and of XimpleWare when it chose GPL as the

4   license for its products, may only be construed from the within the four corners of the express

5   terms of the GPL and not any added terms Defendant now seeks to add such as a patent license.

**2.      The GPL's Preamble Does Not Grant a Patent License.**

7       The Preamble of the GPL does not contain an express license, and is not a legally

8   operative part of the contract, and therefore cannot provide any license defense to UHS. The

9   GPL's lengthy "Preamble" is generally understood in the open source community to be a set of

10  non-binding recitals. The Preamble's own terms make it clear that the operative language is in

11  the subsequent sections, stating in its last sentence, "[t]he precise terms and conditions for

12  copying, distribution and modification follow." Its placement at the close of the preamble serves

13  as both an actual and symbolic division between the relevant and irrelevant language contained

14  in the document. This is further confirmed in the secondary literature. Lawrence Rosen, an

15  attorney and noted open source expert, states in a 2004 book:

16      The preamble, of course, is **not** an operative part of the GPL license. It is not among its
        *terms and conditions*. There is nothing in its words that must be obeyed. It is merely a
17      helpful preface so that you can better understand the GPL in its context.

18  Lawrence Rosen, Open Source Licensing: Software Freedom And Intellectual Property Law 109

19  (Prentice Hall 2004) (emphasis added).

20      As this is a Motion to Dismiss, the allegations in the Second Amended Complaint must

21  be accepted as true. While the Court may consider certain types of contracts attached to

22  pleadings, non-binding language such as the Preamble cannot override the clear allegations of

23  the Complaint, let alone the actual terms and conditions of the GPL. Those terms and

24  conditions—whose breach and non-compliance by all Defendants is clearly pled—are

25  controlling and are fully govern here.

26

27

28

1   There was never any license from XimpleWare, there was never any implicit patent

2   license for use under the GPL, and any and all use and distribution, as alleged by Plaintiff, was

3   and continues to be an infringement of XimpleWare's patents.

4   **B.       The Defendants Cannot Rely Upon Any Form of Implied License Defense.**

5   Not only does the GPL not contain an express license, no implied license can be found as

6   a matter of law.

7   <u>First</u>, Defendants carry the burden of proof on any question of an implied license, and

8   they cannot meet any such burden here. <u>Met-Coil Systems Corp. v. Korners Unlimited, Inc.</u>, 803

9   F.2d 684, 687 (Fed. Cir. 1986) (finding that "[a]s the alleged infringer, Korners has the burden of

10  showing the establishment of an implied license").

11  <u>Second</u>, the Federal Circuit has only allowed implied licenses under certain, specific

12  circumstances. Summarizing the case law and literature, the Federal Circuit stated: "implied

13  licenses arise by acquiescence, by conduct, by equitable estoppel (estoppel *in pais*), or by legal

14  estoppel." <u>Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.</u>, 103 F.3d 1571, 1580 (Fed. Cir. 1997).

15  In that same decision, the Federal Circuit noted in reference to a case that found an implied

16  license that, "judicially implied licenses are rare under any doctrine." <u>Wang Labs</u>, 103 F.3d at

17  1581. In other contexts, the test for an implied license has been described as a two factor test:

18  "To prove an implied license defense, T-Mobile must demonstrate by a preponderance of the

19  evidence both: (1) that the patentee sells an article that has no non-infringing uses; and (2) that

20  the circumstances of the sale plainly indicate that a grant of license should be inferred." <u>Realtime</u>

21  <u>Data, LLC v. T-Mobile USA, Inc.</u>, 936 F. Supp. 2d 795, 800–801 (E.D. Tex. 2013).

22  Here, no test or applicable theory supports the finding an implied license. One of the key

23  facts barring any finding of a license is that there was no consideration provided by any

24  Defendant to XimpleWare nor was any sale consummated, and such consideration is an essential

25  element. <u>Sun Microsystems, Inc. v. Versata Enters.</u>, 630 F. Supp. 2d 395, 411 (D. Del. 2009)

26  (opining that an "essential element of an implied license by conduct or one by legal estoppel is

27  that the plaintiff receive consideration from the defendant in exchange for the granting of the

28  right"). For the two factors test, there has been no sale of an article, such that the first prong fails.

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

For the second prong, as described above, the circumstances plainly indicate that no such license should be inferred. The GPL contains a section discussing issues of patent infringement at Section 7, and yet the GPL does not contain any express patent license at all. Had the authors of the GPL wanted a patent license—and it is clear they were aware of patents, patent law, and issues of patent infringement—they would have chosen to include a patent license. They did not. Where the authors made such a clear election to not include an express license, it would be improper to imply such a license into the agreement. See Pierce v. Merrill, 128 Cal. 464, 472 (1900); Safeco Ins. Co. v. Robert S., 26 Cal. 4th 758, 764; CAL. CODE CIV. P. § 1858; Jensen v. Traders & General Ins. Co., 52 Cal. 2d 786, 790(1959); Jacobson v. Simmons Real Estate, 23 Cal. App. 4th 1285, 1294 (1994); Cherokee Water Co. v. Freeman, 33 S.W.3d 349 (Tex. App. 2000).

The GPL does not contain an express or an implied license to XimpleWare's patents. The Second Amended Complaint clearly alleges (and Defendants do not dispute) that there is no commercial agreement between Defendants and XimpleWare. Accordingly, Defendants use of the patented technology, as clearly and fully alleged in the Second Amended Complaint, states a valid claim for relief, and Defendants' motions should be denied.

**B.    Even If the Court Were to Find a License Was Granted,
And It Should Not, The Second Amended Complaint Alleges
Distribution by UHS in Further Violation of the Terms of the GPL.**

In its recent Order in this case this Court ruled that "XimpleWare's direct infringement claims against Versata's customers turn on whether the customers' distribution is licensed under the GPL." Dkt. 85 p.10 lns. 9–12. In full compliance with the Order, in its Second Amended Complaint Plaintiff cites excerpts from UHS's own SEC filings describing to the distribution of materials to independent contractors who benefit from the use of the DCM software, for example:

> Among the risk factors discussed in United Health's recent 10-Q quarterly report, filed with the U.S. Securities and Exchange Commission on May 6, 2014, United Health stated that "our ability to attract and retain and provide support to a network of **independent producers** (*i.e.,* brokers and agents) and consultants" could materially impact the company's financial performance. (Emphasis added.) On information and belief, these "independent producers" (*i.e.,* non-employees of United Health) are the beneficiaries of the DCM software, which calculates their compensation. SAC ¶76.

Computerlaw Group LLP
www.computerlaw.com℠

1    These activities described under oath to the public are in violation of the GPL—as it has

2    been established at length above, the GPL does not grant a license to distribute software licenses

3    under the GPL without strict compliance of the notice and other terms that are the heart of the

4    process of open source, GPL licensing.

5    UHS's reliance on <u>Hagan Sys. v. Cybersource Int'l</u>, 158 F.3d 319 (5th Cir. 1998) on page

6    9 of its Motion is misguided for two reasons: first, there was no license to transfer because the

7    GPL did not confer a license; and second, it has been alleged that the independent contractors

8    **did benefit** according to their various statements. Specific allegations have been made, based on

9    admissible evidence in the form public statements under oath that distribution occurred to

10   independent producers by UHS, far in excess of the requirements of Rule 8 and <u>Iqbal/Twombly</u>.

11   Accordingly, Defendants' Motions should be denied.

12   **IV.    PLAINTIFF PROPERLY ALLEGES CLAIMS FOR WILLFUL INFRINGEMENT.**

13   Defendant UHS was on actual and constructive notice of XimpleWare's Patents, as

14   properly alleged in the Second Amended Complaint, and so the Motion to Dismiss the claims for

15   willful infringement should be rejected.

     **A.    XimpleWare Alleged Constructive Notice
16          Sufficient to Support Its Claim for Willful Infringement.**

17   XimpleWare has fully and sufficiently pled that UHS was on actual notice of

18   XimpleWare's Patents. Specifically, XimpleWare alleges:

19
     XimpleWare owned [and owns] three XimpleWare Patents throughout the period of the
20   Defendants' infringing acts, and still owns the patents.  XimpleWare uses the patent
     numbers on its Products and in its documentation to give **actual and constructive notice**
21   **of the existence of the XimpleWare Patents.**

22   SAC ¶58 (emphasis added).

23   Pursuant to 35 U.S.C. Section 287(a), a party alleging infringement can only recover

24   damages if the infringing party had notice of the patent. The statute specifically provides:

25   Patentees, and persons making, offering for sale, or selling within the United
     States any patented article for or under them, or importing any patented article
26   into the United States, may give notice to the public that the same is patented,
     either by fixing thereon the word "patent" or the abbreviation "pat.", together with
27   the number of the patent, or when, from the character of the article, this cannot be
     done, by fixing to it, or to the package wherein one or more of them is contained,
28

Computerlaw Group LLP
www.computerlaw.com℠

a label containing a like notice. *In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement,* except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. §287(a). Here, all of XimpleWare's products and code have been properly marked, and XimpleWare's Second Amended Complaint alleges as much. SAC ¶58. Based on the language of Section 287, the issue of proper notice is a question of fact. See Loops, LLC v. Amercare Prods., 636 F. Supp. 2d 1128, 1133 (W.D. Wash. 2008). "Section 287(a) requires a party asserting infringement to prove either constructive notice (**through marking**) or actual notice in order to avail itself of damages." American Medical Sys. Inc., v. Medical Eng'g Corp., 6 F.3d 1523, 1537, n.18 (Fed. Cir. 1993).

### B.     Dismissal of XimpleWare's Willful Infringement Claims Is Premature.

As set forth in the foregoing (see pp. 1–14, *supra*), Defendant UHS after notice, after litigation, after failed promises to replace the infringing software, continued to willfully use Plaintiff's computer software in direct and willful infringement of Plaintiff's patents; there can be no stronger showing of willful infringement than the intentional continuation of the infringement in the face of notice, in the face of litigation, and in the face of (repeated) failed promises that the infringing software would be replaced.  See RJN Ex. 1, Declaration of Scott Brighton, Copyright Case Dkt. 37-4 ¶¶5–6. RJN Ex. 2, Versata Opposition to Plaintiff's TRO Application, Copyright Case Dkt. 37, p. 9 lns. 4–9.

Following the Federal Circuit's ruling In re Seagate Tech., *LLC*, 497 F.3d 1360 (Fed. Cir. 2007), to succeed on a claim of willful infringement, a plaintiff must demonstrate that the objectively defined risk of infringement, "determined by the record developed in the infringement proceedings," is "either known or so obvious that it should have been known to the accused infringer." Seagate, 497 F.3d at 1371.

Further, applicable law does not require XimpleWare to plead, as it would be impossible, that which has not yet come to light through discovery. The Seagate ruling set a framework in which, absent substantial knowledge about the actions of the alleged infringer before a suit was

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1   filed, a plaintiff must rely exclusively on discovery procedures to produce a record to meet the

2   reckless standard for *proving* willful infringement. Id.[4] In the wake of the Seagate decision,

3   XimpleWare is expected simultaneously to plead allegations of willfulness to warrant discovery,

4   while relying on discovery proceedings to expose the alleged willful conduct. No documents in

5   this case have been exchanged, nor have there been any responses to discovery requests entered,

6   meaning that it is "premature at this stage of the proceedings to conclusively find that

7   Defendants' actions did not constitute willful infringement…[and] the Court's mandate at this

8   stage of the proceedings is to assume that all allegations in plaintiff's [Second Amended]

9   complaint are true." Loops, 636 F. Supp. 2d at 1135; see also Bell Atlantic Corp. v. Twombly,

10   550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

11        The United States Supreme Court has further ruled that a well-pled complaint may

12   proceed even if it appears even "that recovery is very remote and unlikely," which is not the case

13   here; Plaintiff has gone into great detail in its Second Amended Complaint to outline the extent

14   of Defendants' ongoing infringement and misappropriation of XimpleWare's source code.

15   Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974). Scheuer holds especially true

16   where, as in this case, the infringement is ongoing following actual and constructive notice is

17   given. See Loops, 636 F. Supp. 2d at 1135.

18        Federal Rule of Civil Procedure 8(e) states that "[p]leadings must be construed so as to

19   do justice." FED. R. CIV. P. 8(e). That subsection instructs a court, unsure of how to apply

20   Seagate's plausibility standard, to be lenient with a plaintiff's complaint. See Maldonado v.

21   Fontanes, 586 F.3d 263, 268 (1st Cir. 2009) (finding that "courts draw on [their] judicial

22   experience[s] and common sense" when reviewing complaints (quoting Twombly, 550 U.S. at

23   556)). Here, common sense as well as those records that have come to light from related

24   litigation and Defendants' own websites (as pled in the SAC ¶¶75–81) **at least** meet the standard

25   to defeat a motion to dismiss under Federal Rules 8 and 12.

26

27

---

28   [4] See also Berkeley Technology Journal Vol. 25:1955 "Iqbal-ing Seagate: Plausibility Pleading of Willful Patent Infringement" Damon C. Andrews. p. 1966.

Regardless of notice prior to XimpleWare's Complaint in November 2013, XimpleWare has explicitly pled in its Second Amended Complaint that there is ongoing use by all Defendants of XimpleWare's source code and product as incorporated in the DCM product (SAC ¶83). There can be no argument that UHS has been on notice of the XimpleWare Patents since at least December 2013, and further use constitutes infringement under 35 U.S.C. 271(a).

UHS's filings with the Securities and Exchange Commission demonstrate the high likelihood that UHS infringes XimpleWare's patents through improper, unlicensed used of the DCM product; all of which is properly and extensively alleged in the SAC, and it continues to do so after notice without regard for XimpleWare's patent rights. (SAC 62–83).

### C.    Defendant UHS's Failure to Act with Proper Diligence Also Supports XimpleWare's Claim for Willful Infringement.

Plaintiff also alleges in the Second Amended Complaint that, based on all of the new and returning allegations contained therein, "[n]one of the defendants in this case did, have done, or have attempted to do any appropriate due diligence with XimpleWare, and therefore none of the Defendants in this case can assert truthfully that they are innocent infringers or that they otherwise relied reasonably in any way in commencing, continuing, or refusing to discontinue their respective infringements." SAC ¶ 60. Plaintiff alleges that all parties knew, had reason to know, or reasonably should have known that the DCM product contained open source source code, which instills an obligation to investigate what code might be protected and solely distributed under licenses such as the GPL. None of that occurred. In <u>Seagate</u>, the Federal Circuit established a two-part test for what has become the willfulness "objective recklessness" standard. A plaintiff must show that the infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and then it must also show "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known to the accused infringer or so obvious that it should have been known to the accused infringer." <u>In re Seagate Tech.</u>, 497 F.3d at 1371 citing <u>Safeco Insurance Company of America v. Burr</u>, 551 U.S. 47, 127 S. Ct. 2201, 2215 (2007).

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

In the current software business world, the industry standard in software licensing agreements "is for the proposed licensee to do appropriate due diligence and to assure that his, her or its project is strictly within the GPL's conditions or else to contact [the licensor/owner/creator] to discuss the requirements for commercial licensing. SAC ¶59. Defendant UHS failed to carry out such due diligence, constituting the "objective recklessness" described in Seagate, thereby establishing willful infringement.

For all the foregoing reasons, this Court should deny UHS's Motions to Dismiss, and allow this case to proceed on Plaintiff's properly-pled Second Amended Complaint, as filed.

**V.   THE SECOND AMENDED COMPLAINT SATISFIES THE REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

**A.     The Second Amended Complaint Contains Sufficiently Specific Infringement Allegations Under Rule 12.**

In its Second Amended Complaint, Plaintiff alleges with specificity that the GPL **does not grant an automatic license, nor does it grant a patent license.** SAC ¶ 40. Defendants have executed exactly none of the conditions of the GPL that might even possibly confer a license to the XimpleWare patents, and therefore **do not have a license** that would allow any use or any distribution of any technology practicing XimpleWare's patents, including XimpleWare's Product. SAC ¶¶34, 39, 70. Even further, the GPL does not grant a **patent license** at all, so **even if the Defendants had been granted a license under the GPL,** it would still require an explicit license to use, sell, offer for sale, or otherwise distribute its DCM product containing XimpleWare source code. SAC ¶¶62–83.

These allegations are more than sufficient to allege, under the Iqbal/Twombly standards and Rule 8 of the Federal Rules of Civil Procedure, that not only did UHS not have a license to practice the XimpleWare patents (Second Amended Complaint, ¶70–71), but that infringing use did occur (SAC ¶¶ 73, 76, 84–100), and that the DCM does practice XimpleWare's patents through a wholesale misappropriation of XimpleWare's VTD-XML (SAC ¶64).  Thus, XimpleWare has sufficiently pled its claims for direct infringement, as well as the dependent claims for indirect and contributory patent infringement based on Defendants' affirmative and admitted distribution of the DCM.

### B.   The Second Amended Complaint Properly Follows Form 18.

Plaintiff's Second Amended Complaint fully satisfies Form 18 of the Federal Rules of Civil Procedure, which requires: (1) a statement of jurisdictional basis, (2) a statement that the plaintiff owns a patent or patents, (3) an allegation that the patent or patents were infringed through the "making, selling, and using [of a product] that embodies the patented invention, (4) an allegation that the plaintiff has given defendant(s) proper notice of infringement, and (5) a demand for injunctive relief and/or damages. FED. R. CIV. P. Civil Form 18. Such requirements are intended to "illustrate the simplicity and brevity that these rules contemplate." FED. R. CIV. P. Rule 84.

Plaintiff successfully met each of these requirements in its First Amended Complaint and continues to comply with these requirements as alleged in the Second Amended Complaint. See Order on Mots. to Dismiss (Dkt. 85) ("XimpleWare's allegations…are adequate to satisfy Form 18, and, thus, to satisfy the pleading standards").

Now, other Defendants have brought their respective Motions to Dismiss, and the only remaining challenge to the pleadings based on Form 18 is whether Defendants were given proper notice of their infringement. Even if Defendants had no knowledge of the patents-in-suit prior to the commencement of this suit—contrary to the allegations the Second Amended Complaint at paragraph 97 which must be accepted as true for this motion—the filing of the Complaint necessarily constitutes proper notice of the patents and thus infringement beginning *at least* at the time of filing of the complaint. Symantec Corp. v. Veeam Software Corp., 2012 U.S. Dist. LEXIS 75729; see also Intellect Wireless Inc. v. Sharp Corp., 2012 U.S. Dist. LEXIS 31669 (finding "knowledge of the patent as of the time of the suit's commencement can satisfy the knowledge requirement for conduct that post-dates the date of the complaint").

The allegations and factual statements in the Second Amended Complaint have already shown successfully that Form 18's requirements were met, and because these statements and allegations remain in the Second Amended Complaint, along with substantial additional allegations, there is no basis under applicable law to dismiss the Second Amended Complaint.

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

C.   **Plaintiffs May Assert Alternative Theories as a Matter of Law.**

Plaintiff has the right to assert alternative and contradictory legal theories, and is not bound to arguments with which the Court has not agreed. "[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) *quoting* Pegram v. Herdrich, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143 (2000). "It is an equitable doctrine invoked 'not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of  general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 993 (9th Cir. 2011).

The test of Judicial Estoppel is three-part, and the Supreme Court has identified several factors for courts to consider in deciding if its imposition is proper:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire, 532 U.S. at 750–751. The Ninth Circuit has identified another relevant factor for courts to consider which is **the question of** whether the party to be estopped acted inadvertently or with any degree of intent. Johnson v. Oregon Dept. of Human Resources Rehab. Div., 141 F.3d 1361, 1369. In Johnson, the Ninth Circuit held that judicial estoppel applied **only** when a party's position is "tantamount to a knowing representation to or even fraud on the court.**"** Id. *quoting* Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362-63 (3rd. Cir. 1996). Here, Plaintiff has asserted consistent positions or is following the instructions of the Court to clarify its claims, including its allegations that the GPL does not confer any patent license, which is another way of supporting the previously alleged claims.

Plaintiff would only be barred from asserting alternative and conflicting legal theories had Plaintiff been successful on the prior theories with which Defendants claim its new theories

Computerlaw Group LLP
www.computerlaw.com℠

1   are inconsistent. "Absent success in a prior proceeding, a party's later inconsistent position

2   introduces 'no risk of inconsistent court determinations,' and thus poses little threat to judicial

3   integrity." New Hampshire, 532 U.S. at 750–751 *quoting* United States v. C.I.T. Constr. Inc., 944

4   F.2d 253, 259 (5th Cir. 1991).

5         Further, Rule 8 of the Federal Rules of Civil Procedure expressly allows plaintiffs to

6   make alternative and inconsistent pleading: "A party may set out 2 or more statements of a claim

7   or defense alternatively or hypothetically, either in a single count or defense or in separate ones.

8   If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

9   FED. R. CIV. P. RULE 8(d)(2). This is precisely what Plaintiff did in its Second Amended

10  Complaint. The Ninth Circuit agrees: "parties may argue alternative positions without waiver."

11  Hillis v. Heineman, 626 F.3d 1014, 1018-19 (9th Cir. 2009) (internal quotations omitted).

12        Further still, Rule 8(d)(3) allows unequivocally "[a] party to state as many separate

13  claims or defenses as it has, regardless of consistency." FED. R. CIV. P. RULE 8(d)(3).

14  XimpleWare is well within its rights to bring alternate argumentation and theory at this stage.

15  The Court should give no consideration to any Defendant's attempts to bar such avenues for

16  relief.

17  **VI.   DEFENDANT'S MOTION PROVES THE VALIDITY OF THE DECLARATORY RELIEF CLAIM.**

18        The very issues XimpleWare has and is seeking declaratory relief on form the basis of

19  this motion, showing that there is an actual case or controversy on the points upon which

20  XimpleWare sought declaratory relief. Indeed, the very first paragraph of argument made by

21  Defendant UHS in its motion that there are no restrictions on its use of the software, contrary to

22  the terms of the GPL and contrary to declaratory relief sought by XimpleWare here. See UHS's

23  Motion to Dismiss, Dkt. 89, p. 5, lns. 13-24.

24        In the event UHS concedes on the record and stipulates to a declaratory judgment on each

25  point, then there will no longer be any such controversy. Of course, no such stipulation exists or

26  has been offered. The docket of this case, as well as the Second Amended Complaint, establish

27  an actual case or controversy sufficient to meet the requirements of 18 U.S.C. section 2201.

28

**VII.    AT MINIMUM, LEAVE TO AMEND SHOULD BE LIBERALLY GRANTED.**

The Ninth Circuit has held that "if a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d. 1393, 1401 (9th Cir. 1986). Even if the Court finds any reason to grant the UHS's motion to dismiss, it is well-established that the proper remedy is to permit Plaintiff to amend the claims for relief at issue. Leave to amend should **only** be denied in extreme circumstances where it would cause undue prejudice, or where it would be impossible to cure the defect with an amendment, *e.g.*, where a statute had not been enacted at the time of the alleged facts. Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1159 (9th Cir. 1989) (denial of leave to amend proper where sought amendment was tardy, and amendment would be futile because statute was not even enacted at time of alleged facts). UHS has not answered the Second Amended Complaint.

<u>CONCLUSION</u>

Defendant UHS does not have any explicit or implicit license under the GPL or otherwise to use, sell, offer for sale, distribute, or otherwise exploit in any manner the XimpleWare VTD-XML patented software product which practices the XimpleWare Patents, and therefore infringes XimpleWare's patents. UHS has also continued to use, distribute, and otherwise exploit infringing software that practice the patents after notice and after this litigation and have not taken sufficient action to cure that conduct despite clear statements made in Court. Accordingly, Defendant's Motions should be denied in their entirely; alternatively, if the Court believes that the post-lawsuit unlicensed wilful infringement needs to be pleaded with greater specificity then leave to amend should be granted to Plaintiff for Plaintiff to do so against all of the moving Defendants.

//

//

//

//

Computerlaw Group LLP
www.computerlaw.com℠

1

2                                                 Respectfully Submitted,

3                                                 COMPUTERLAW GROUP LLP
   Dated: June 26, 2014

4                                         By:    /s/ Jack Russo_____
                                                 Jack Russo
5                                                 Christopher Sargent
                                                 Ansel Halliburton

6                                                 Attorneys for Plaintiff
7                                                 XIMPLEWARE CORP.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28