Clayton C. James (Cal. Bar No. 287800)
  clay.james@hoganlovells.com
Srecko Vidmar (Cal. Bar No. 241120)
  lucky.vidmar@hoganlovells.com
HOGAN LOVELLS US LLP
Three Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:  (415) 374-2300
Facsimile:  (415) 374-2499

Attorneys for UNITED HEALTHCARE SERVICES, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| XIMPLEWARE CORP.,<br><br>Plaintiff,<br><br>v.<br><br>VERSATA SOFTWARE, INC. *ET AL.*,<br><br>Defendants. | Case No.: 5:13-cv-05161-PSG<br><br>**UNITED HEALTHCARE SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br><u>Hearing Schedule:</u><br><br>Before:   Hon. Paul S. Grewal<br>Date:      Tuesday, August 12, 2014<br>Time:      10:00 a.m.<br>Location: U.S. Courthouse, San Jose, Courtroom 5 |

Nothing in the Plaintiff's Opposition to the Motion to Dismiss by United HealthCare Services, Inc. ("UHC") changes the following facts flowing directly from Plaintiff's Second Amended Complaint (Dkt. 88, "SAC"):

1. Plaintiff chose to make its software available to the world, including UHC, under the terms of version 2 of the General Public License ("GPL").

2. Under the GPL, UHC has an unrestricted right to use the covered software.

3. Plaintiff has not stated any plausible facts supporting the allegation that UHC has modified or distributed the covered software, such that other conditions of the GPL might be implicated.

As such, Plaintiff is barred under the terms of the GPL from seeking to restrict UHC's use of the covered software. As a result, Plaintiff's SAC cannot, as a matter of law, support a claim for patent infringement against UHC.

### I. Plaintiff Has Not Alleged Any Distribution of GPL-Covered Software by UHC.

In the course of dismissing Plaintiff's previous inadequately pleaded complaint, this Court was clear regarding the only real issue to be resolved and even identified the deficiency that Plaintiff must fix if it chose to amend. Specifically, the Court stated that

> the only real issue to resolve is whether XimpleWare has sufficiently alleged that its software was "distributed" by the customers when they shared the software with their independent contractors, franchisees, and producers.

(Dkt. 85 at 10). Yet, Plaintiff devotes less than one page of its twenty-two page Opposition to the subject of distribution of the covered software by UHC. (Dkt. 97, "Opposition", at 13-14). There, Plaintiff merely regurgitates paragraph 76 of the SAC, which states only the following:

> Among the risk factors discussed in United Health's recent 10-Q quarterly report, filed with the U.S. Securities Exchange Commission on May 6, 2014, United Health stated that "our ability to attract, retain and provide support to a network of independent producers (i.e., brokers and agents) and consultants" could materially impact the company's financial performance. On information and belief, these "independent producers" (i.e., non-employees of United Health) are the beneficiaries of the DCM software, which calculates their compensation.

(Dkt. 88 ¶ 76).

This assertion does not mention *any* software much less *distribution* of any software by UHC, let alone UHC's distribution of *Plaintiff's* software, or anything else that might support Plaintiff's allegations that UHC violated any obligations under the GPL, which was the sole issue that this Court specifically directed Plaintiff to address in its amended complaint. Nor does Plaintiff's Opposition illuminate how an allegation that a contractor is a "beneficiary" of software equates to breach of a license restricting distribution and modification. In fact, neither Plaintiff's SAC nor its Opposition do anything to resolve, or even address, the concern that caused this Court to dismiss Plaintiff's previous attempt to state a patent infringement claim against UHC. As with its first attempt, Plaintiff's latest allegations are, in the Court's entirely appropriate formulation, "classic *Iqbal* and *Twombly* territory." (Dkt. 85 at 11.)

On this basis alone, the Court should dismiss Plaintiff's SAC with prejudice.

## II.     The GPL Contains No Conditions On Mere Use of Covered Software.

Unable to muster any facts to support an allegation that UHC distributed its software, Plaintiff spends the remaining twenty-one pages of its Opposition trying to make a patent infringement claim out of mere use of the software that Plaintiff chose to make available to the world under the GPL. The GPL, however, could not be any clearer that "[t]he act of running the Program is not restricted." (Dkt. 18, Exhibit 1, Section 0). This provision is not in the Preamble of the GPL (which Plaintiff repeatedly disclaims);[1] it is in Section 0, which sets out the overall rights and obligations granted under the license.

Plaintiff cites GPL Sections 1 and 2 as ostensibly restricting UHC's mere use of the covered software. By their own terms, however, these sections do not deal with *use* of software

---

[1] The GPL Preamble aptly demonstrates the extent to which Plaintiff seeks the benefits of the GPL while disclaiming its obligations and restrictions. For example, the Preamble clarifies two important points: (1) "if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have"; and (2) "we have made it clear that any patent must be licensed for everyone's free use or not licensed at all." Given that these provisions eviscerate Plaintiff's case, it is self-evident why Plaintiff insists that these provisions are not binding on it. (Dkt. 97 at 11). But, Plaintiff's case lacks legal or factual foundation even without the damning provisions of the GPL Preamble.

at all. Section 1 spells out the conditions that apply if the covered software is copied or distributed: "[y]ou may *copy and distribute* verbatim copies of the Program's source code as you receive it, in any medium, provided that … ." (*Id.*, Section 1 (emphasis added)). Section 2 specifies the obligations that apply if the covered software is modified before distribution: "[y]ou may *modify* … the Program … and copy and distribute such modifications … provided that … ." (*Id.*, Section 2 (emphasis added)). The GPL places *no* obligations on UHC in exchange for mere use of the covered software. As the license itself says, such use is "not restricted." (Dkt. 18, Exhibit 1, Section 0).

### III. In Order to Dismiss Plaintiff's Claims against UHC, this Court Need Not Decide Whether the GPL Contains a Full Patent License.

There is no reason for the Court to decide a purely advisory question of whether the GPL contains a full patent license. Instead, the issue is whether, by opting to release its software under the GPL, Plaintiff gave up its right to seek compensation for the mere *use* of that software, including compensation for any patent royalties that Plaintiff may otherwise be entitled to. That result is the same whether couched as a license, waiver, or estoppel. In fact, in its Opposition, Plaintiff notes that licenses may arise not only expressly, but also by acquiescence, conduct and estoppel. (Dkt. 97 at 12.) Plaintiff chose to distribute its software to the public under the GPL for its own commercial reasons. In so doing, Plaintiff represented to the consuming public that mere use of its software was "not restricted." (Dkt. 18, Exhibit 1, Section 0). Plaintiff cannot wish that representation away now that it inconveniences its litigation strategy. Plaintiff's arguments amount to a "bait and switch," seeking to recover payment for mere use that Plaintiff, through its adoption of the GPL, told the world would be unrestricted.[2]

---

[2] Plaintiff cites a series of cases for the proposition that the absence of an express patent license in the GPL makes it improper for the Court to dismiss the patent infringement claim against UHC. (Dkt. 97 at 13). None of the cited cases support this conclusion. In fact, none of the cases has anything to do with implied licenses specifically. They stand for the uncontroversial proposition that a court cannot insert terms into an otherwise unambiguous contract or instrument. As discussed in UHC's Motion and in this Reply, the GPL expressly and unambiguously authorizes UHC to perform the act that constitutes the patent infringement alleged by the Plaintiff, *viz*. to use Plaintiff's software. As such, the cited cases squarely support UHC's position.

In addition to wishing away the past, Plaintiff seeks to pick and choose the parts of the GPL it likes, while disregarding the rest. First, Plaintiff argues that UHC's right to use the software is not supported by adequate consideration because the software at issue was not sold. (Dkt. 97 at 12). This is contrary to black letter law of contracts that monetary consideration is not required. *Steiner v. Thexton*, 226 P.3d 359, 366 (Cal. 2010) ("We emphasize either [benefit or prejudice] alone is sufficient to constitute consideration; it is not necessary to the existence of a good consideration that a benefit should be conferred upon the promisor. It is enough that a prejudice be suffered or agreed to be suffered by the promisee.") (citations omitted); *Harris v. Time, Inc.*, 237 Cal. Rptr. 584, 587 (Ct. App. 1987) ("Courts will not require equivalence in the values exchanged or otherwise question the adequacy of the consideration. If a performance is bargained for, there is no further requirement of benefit to the promisor or detriment to the promisee.") (citations omitted). Thus, extracting any form of prejudice from the promisee in a bargained for exchange is adequate consideration.

This is not only black letter law of contracts generally; it is also settled law as applied to open-source licenses. *Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008) ("The lack of money changing hands in open source licensing should not be presumed to mean that there is no economic consideration, however. There are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under public licenses that range far beyond traditional license royalties."). Adequate consideration in the GPL is found not only in the obligations governing copying, modification, and distribution of software that it imposes, but also in increased market share, enhanced reputation, and the potential for free and rapid improvements by the public, all benefits that accrue to Plaintiff in exchange for each user's acceptance of the software under the GPL. *Id.* Thus, the commitments that Plaintiff made in the GPL are supported by consideration and binding upon it.

Second, in its Opposition, Plaintiff states that, notwithstanding the provisions of the GPL, UHC "would still require an explicit license" to Plaintiff's patents in order to use the covered software. (Dkt. 97 at 18, ll. 17-20). In other words, Plaintiff argues that the GPL itself is *never* a

1  sufficient instrument to convey a right to use the software.  Instead, in the world according to
2  Plaintiff, potential users of open-source software would have to investigate each GPL-covered
3  piece of software to determine whether it is potentially covered by a patent.  Then, the end user
4  would have to seek a separate explicit patent license in order to freely use the software – a right
5  which the GPL already explicitly grants.  Thankfully, this is not the world we live in.

6  Finally, a word about Section 7 of the GPL, an apparent favorite of Plaintiff's.  While that
7  section does mention patents, it has nothing to do with the issues at hand.  By its very terms,
8  Section 7 only applies where the licensee *distributes* the software in a way that may subject it to
9  patent-related obligations.[3]  As mentioned, there is no facially plausible allegation that UHC ever
10 distributed Plaintiff's software.  As such, Section 7 has no direct bearing on the resolution of
11 UHC's Motion.  More importantly, however, Plaintiff should have carefully examined Section 7
12 of the GPL *before* distributing its software under the GPL.  That section clearly cautions anyone
13 about to distribute software under the GPL of the consequences related to patent rights.  If there
14 will be patent issues, Section 7 says, don't distribute under the GPL.  Yet, Plaintiff did so
15 anyway.  If Plaintiff wanted to maintain its right to enforce its patents, it had a choice not to use
16 the GPL.  Having made a different choice, Plaintiff has to live with the entirely foreseeable
17 consequences.

---

[3] Section 7 provides, in pertinent part:

> If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot *distribute* so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not *distribute* the Program at all. For example, if a patent license would not permit royalty-free *redistribution* of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from *distribution* of the Program.

(emphasis added).

### IV. **Plaintiff's Appeal to Principles of Equity and Good Faith Does Not Salvage Its Improperly Pleaded Patent Infringement Claim.**

Plaintiff's Opposition opens with a plea to equity because, according to Plaintiff, UHC broke a commitment made to this Court under oath (Dkt. 97 at 1), because UHC supposedly failed to "install a non-infringing patch" after promising the Court that it would do so. (*Id*. at 6). The only support Plaintiff offers for this proposition is a sworn declaration by the CEO of co-defendant Versata. *Id*. Plaintiff has not pointed to *anything* (nor could it) showing that Versata's CEO made his statements on UHC's behalf or with UHC's approval. Nor does Plaintiff explain how UHC has control over its vendor's patch process. If anything, Plaintiff's reliance on these statements makes clear that this entire case is about a dispute between Plaintiff and Versata, and Plaintiff's harassment of UHC and other customers of Versata is a mere side-show for the improper purpose of using the customer claims to pressure Versata.[4]

This remains a case of patent infringement in which there is no dispute that Plaintiff gave UHC the right to use Plaintiff's software without further interference. Irrespective of Versata's plans to patch the software, UHC continues to enjoy the benefits of the GPL, which Plaintiff, of its own free will, chose to use. One of those benefits, as discussed above, is the right of unrestricted use of the covered software.

### V. **Plaintiff Has Not Alleged a Plausible Claim of Willful Infringement.**

While the issue of willfulness is likely to be moot because Plaintiff has not effectively alleged a claim for infringement in the first place, Plaintiff's Opposition again skates very close to Rule 11 territory on this topic. Plaintiff tacitly admits that UHC had no actual pre-suit knowledge of the asserted patents. Instead, Plaintiff relies on the marking of its software with patent numbers as "constructive notice" to UHC. Even assuming for the purposes of this motion that Plaintiff's marking was proper, the law is clear that "the issue of willfulness turns on the actual

---

[4] UHC served Plaintiff with a motion for Rule 11 sanctions on June 12, 2014. Assuming that Plaintiff does not voluntarily withdraw its baseless claims, UHC will file its motion on July 7, 2014, seeking to recover in full the fees and costs incurred in this case.

knowledge of the infringer, and is unrelated to the adequacy of constructive notice by the patentee." *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). As the Federal Circuit has made clear, "[a]ctual notice of another's patent rights triggers an affirmative duty of due care. Constructive notice, as by marking a product with a patent number, is insufficient to trigger this duty." *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (citations omitted).

Plaintiff relies on 35 U.S.C. § 287 and cases interpreting it for the proposition that constructive notice by marking can trigger a duty of care necessary for an allegation of willfulness. (Dkt. 97 at 14-15). However, Section 287 says nothing about willful infringement. In fact, Section 287 is about "[l]imitation on damages" rather than their enhancement as a result of willfulness. Moreover, the cases cited by Plaintiff are directly contrary to its arguments to the Court. Plaintiff cites a section of *Loops, LLC v. Amercare Products, Inc.*, 636 F. Supp. 2d 1128, 1133 (W.D. Wash. 2008), which discusses limitation on damages under Section 287. Plaintiff does not cite a later portion of the case dealing with willful infringement, where the *Loops* decision makes it clear that constructive notice does not play into the issue of willfulness. *Id.* at 1334 ("The Court acknowledges, however, that the *State Industries* case was determining whether the infringing party's conduct was willful, and not specifically discussing constructive notice for purposes of 35 U.S.C. § 287(a).").

The same is true of *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1537 n.18 (Fed. Cir. 1993). Plaintiff quotes from the portion of the decision dealing with whether Plaintiff's damages should be limited under Section 287 because of a failure to mark. However, in an earlier section of the opinion dealing with willfulness, the Court never mentioned marking because the accused infringer's actual knowledge of the patent was not in dispute. *Id.* at 1528, 1530-31. Thus, neither case cited by Plaintiff stands for the proposition for which Plaintiff cited it, and it is clear that Plaintiff has not alleged sufficient facts to support a claim for pre-suit willfulness by UHC.

Plaintiff's allegation of willfulness is also defective with respect to UHC's post-suit

conduct. Under either the objective or subjective prongs of the willfulness test, *see In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), UHC's use of Plaintiff's software is covered by the provisions of the GPL in which Plaintiff promised not to restrict such use, as discussed above. As such, even if infringement by UHC were to be found, UHC's good-faith subjective reliance on the provisions of the GPL negates the "bad faith" that is required to support a finding of willfulness. *Id.* at 1368.

Therefore, Plaintiff's assertion of willful infringement against UHC should be dismissed.

## VI. **Plaintiff's Declaratory Judgment Claims Are Fatally Defective.**

Plaintiff's Opposition addresses its declaratory judgment claims against UHC in a grand total of ten lines. (Dkt. 97 at 21). Rather than dealing with the relevant arguments in UHC's Motion, Plaintiff cavalierly offers to resolve the matter if UHC "concedes on the record and stipulates to a declaratory judgment on each point." *Id*. On the contrary, the way to resolve Plaintiff's declaratory judgment claims, which lack statutory jurisdictional basis, as well as legal and factual support, is to dismiss them.

## VII. **Another Opportunity to Amend the Complaint Will Not Help.**

Each successive amendment of Plaintiff's complaint and each of Plaintiff's successive attempts to support its claims have served only to make it abundantly clear that Plaintiff has no patent infringement claim against UHC. Having had multiple opportunities to allege a plausible claim of distribution by UHC, Plaintiff has offered only speculation and conclusory assertions. Therefore, for the reasons set out in UHC's Motion and the grounds discussed above, UHC respectfully requests that each of the claims against UHC in Plaintiff's SAC be dismissed with prejudice.

Respectfully submitted on July 3, 2014.    HOGAN LOVELLS US LLP

By:     *s/ Clayton C. James*
        Clayton C. James

Attorneys for Defendant
UNITED HEALTHCARE SERVICES, INC.