```
1                IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5

   XIMPLEWARE, INC.,              )  CV-13-5161-PSG
6                                 )
                    PLAINTIFF,    )  SAN JOSE, CALIFORNIA
7                                 )
             VS.                  )  SEPTEMBER 9, 2014
8                                 )
   VERSATA SOFTWARE, INC. ET AL,  )  PAGES 1-49
9                                 )
                  DEFENDANT.      )
10                                )

11

12                  TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PAUL S. GREWAL
13               UNITED STATES MAGISTRATE JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:     COMPUTER LAW GROUP, LLP
                            BY:  JACK RUSSO
17                          401 FLORENCE STREET
                            PALO ALTO, CA 94301
18

19   FOR THE DEFENDANT:     VALOREM LAW GROUP
     VERSATA                BY:  DAVID C. BOHRER
20                          60 SOUTH MARKET STREET, SUITE 1250
                            SAN JOSE, CA 95113
21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1      FOR THE DEFENDANT:      PAUL HASTINGS LLP
        WADDELL & REED          BY: ROBERT M. MASTERS
 2      FINANCIAL               875 15TH STREET, NW
                                WASHINGTON, DC 20005

 3

 4      FOR THE DEFENDANT:      AHMAD, ZAVITSANOS P.C.
                                BY:  ALISA ANNE LIPSKI
 5                              1221 MCKINNEY, SUITE 3460
                                HOUSTON, TX 77010

 6

 7      FOR THE DEFENDANT:      HOGAN LOVELLS US, LLP
                                BY:  CLAYTON COLE JAMES
 8                              1200 17TH STREET, SUITE 1500
                                DENVER, CO 80202

 9

10      FOR THE DEFENDANT:      DORSEY & WHITNEY, LLP
                                BY:  CASE COLLARD
11                              1400 WEWATTA ST, SUITE 400
                                DENVER, CO 80202

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SAN JOSE, CALIFORNIA                    SEPTEMBER 9, 2014

2                    P R O C E E D I N G S

3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

4    WERE HELD:)

5              THE CLERK:  YOUR HONOR, CALLING XIMPLEWARE VERSUS

6    VERSATA SOFTWARE, INC. FORMERLY KNOWN AS TRILOGY SOFTWARE, INC.

7    CASE NUMBER CV-13-5161-PSG.

8          MATTER ON FOR DEFENDANT'S MOTION TO DISMISS.

9          PLEASE STATE YOUR APPEARANCES.

10              MR. RUSSO:  GOOD MORNING, YOUR HONOR.

11      JACK RUSSO FOR COMPUTER LAW GROUP FOR PLAINTIFF XIMPLEWARE.

12              THE COURT:  MR. RUSSO, GOOD MORNING.  WELCOME BACK.

13              MR. RUSSO:  THANK YOU.

14              MR. MASTERS:  GOOD MORNING, YOUR HONOR.

15      ROBERT MASTERS ON BEHALF OF WAD REED FINANCIAL.

16              THE COURT:  MR. MASTER'S, GOOD MORNING.

17              MR. BOHRER:  GOOD MORNING, JUDGE.

18        DAVID BOHRER ON BEHALF OF VERSATA TRILOGY.  THERE ARE TWO

19    OR THREE CUSTOMER DEFENDANTS.

20        MOST IMPORTANTLY, I'M HERE WITH MY CO-COUNSEL, ALISA

21    LIPSKI, WHO WILL BE ARGUING ON THE MERITS.

22              THE COURT:  GOOD MORNING TO EACH OF AS WELL.

23              MR. JAMES:  CLAYTON JAMES, YOUR HONOR, UNITED

24    HEALTHCARE SERVICES.

25              THE COURT:  AND ON THE TELEPHONE.

1    MR. COLLARD:  WE HAVE CASE COLLARD OF DORSEY WHITNEY

2    REPRESENTING AMERIPRISE.

3         THE COURT:  ALL RIGHT.

4    WELL, WE HAVE MANY DEFENDANTS LOOKING TO DISMISS MANY

5    CLAIMS.  I AM OPEN TO TAKING THESE UP IN ANY PARTICULAR ORDER

6    YOU ALL MAY HAVE AGREED UPON, BUT IF YOU DIDN'T AGREE ON A

7    PARTICULAR ORDER, I JUST AS SOON START WITH THE VERSATA MOTION

8    THEN WE CAN TURN TO THE CUSTOMER MOTIONS IF THAT MAKES SENSE.

9         MS. LIPSKI, YOU ARE STANDING.

10        MS. LIPSKI:  YES, YOUR HONOR.

11        THE COURT:  GOOD MORNING, AGAIN.

12        MS. LIPSKI:  YOUR HONOR, AS YOU KNOW YOU HAVE ALREADY

13   RULED ON A PRIOR MOTION TO DISMISS BY VERSATA.  YOU DISMISSED

14   THE CLAIMS FOR WILLFULNESS AND INDIRECT INFRINGEMENT.

15        VERSATA DID NOT FILE A MOTION FOR RECONSIDERATION SINCE

16   THE VERSATA'S MOTION TO DISMISS THE DIRECT INFRINGEMENT CLAIMS

17   WAS DENIED WE ARE NOT TRYING TO REVISIT THAT ISSUE WE ARE

18   SIMPLY TALKING ABOUT WHAT WAS DENIED.

19        THE COURT:  SO I DID WANT TO JUST BEFORE WE GET INTO

20   THE HEART OF THIS, JUST CONFIRM MY READ OF THE PAPERS WHICH IS,

21   EVEN IF I WERE TO GRANT EVERYTHING THE DEFENDANTS WERE ASKING

22   FOR, THERE ARE DIRECT INFRINGEMENT CLAIMS WHICH ARE GOING

23   FORWARD HERE TODAY.

24        MS. LIPSKI:  YES, YOUR HONOR.

25        THE COURT:  AND I'M NOT SUGGESTING I REACH THAT

```
1        CONCLUSION, I JUST WANT TO UNDERSTAND WHAT'S UNDISPUTED.
2                MS. LIPSKI:  YES.  WE ARE NOT ASKING TO DISMISS THOSE
3        CLAIMS, YOUR HONOR.
4                THE COURT:  GO AHEAD.
5                MS. LIPSKI:  WITH RESPECT TO WILLFULNESS I BELIEVE
6        THAT'S ACTUALLY BEEN ALLEGED AGAINST ALL OF THE DEFENDANTS.
7        IT'S NOT ENTIRELY CLEAR BUT THAT IS SOME OTHER RELIEF THEY ASK
8        FOR AT THE END OF THEIR COMPLAINT.
9            WE DON'T BELIEVE THAT THEY CAN SHOW WILLFULNESS FOR A
10       VARIETY OF REASONS.  THEY HAVEN'T SHOWN VERSATA HAD ACTUAL
11       KNOWLEDGE OF THE PATENTS AND THEY ACTUALLY HAVEN'T SHOWN, THEY
12       ARGUE THAT VERSATA SHOULD HAVE KNOWN ABOUT THE PATENTS AFTER
13       THE FILING OF THE COMPLAINT.  HOWEVER, THEY HAVEN'T SHOWN THAT
14       THERE'S BEEN ANY INFRINGEMENT BY VERSATA SINCE THE FILING OF
15       THE COMPLAINT.
16           AND IN FACT, THEY HAVE EVIDENCE THAT SHOWS OTHERWISE.
17       THEY DID MOVE AS YOU KNOW THERE'S A CONCURRENT COPYRIGHT CASE
18       IN FRONT OF JUDGE ILLSTON.  THEY DID MOVE FOR A TRO IN THAT
19       CASE.
20               THE COURT:  THAT WAS OVER THE WEEKEND OR LAST WEEK AT
21       SOME TIME?
22               MS. LIPSKI:  THEY RENEWED THEIR MOTION EARLY
23       SATURDAY, YOUR HONOR.
24           AND JUST TO GIVE YOU A LITTLE BIT OF BACKGROUND, WE DID --
25       THE CUSTOMER DEFENDANTS THAT I REPRESENT THAT I WILL BE TALKING
```

1    TO YOU ABOUT LATER, DID SERVE A RULE 11 MOTION BASED ON THE

2    SECOND AMENDED COMPLAINT, THEN APPROXIMATELY 12 HOURS LATER IS

3    WHEN THE MOTION WAS RENEWED FOR THE TRO IN THE COPYRIGHT CASE.

4    WE BELIEVE THEY MAY BE RELATED.

5         SO WITH RESPECT TO WILLFULNESS, THEY HAVEN'T ALLEGED

6    KNOWLEDGE, THEY HAVEN'T ALLEGED ANY REASON THEY HAVE TO BELIEVE

7    THAT INFRINGEMENT HAS BEEN CONTINUING SINCE THEY FILED THEIR

8    COMPLAINT.

9         WITH RESPECT TO INDIRECT INFRINGEMENT, THEY'VE ALLEGED

10   BOTH INDUCEMENT AND CONTRIBUTORY INFRINGEMENT.  THEY HAVEN'T

11   ALLEGED THAT VERSATA HAD ANY INTENT TO INDUCE THE CUSTOMER

12   DEFENDANTS TO INFRINGE THESE PATENTS.

13        SO FOR EXAMPLE, I THINK TYPICALLY SOMETHING THAT YOU

14   WOULD EXPECT TO SEE IS SOME SORT OF INSTRUCTIONS FROM VERSATA

15   TO THE DEFENDANTS ON HOW TO PERFORM THE PATENTED METHOD.

16   THERE'S NO ALLEGATIONS OF THAT AT ALL.

17             THE COURT:  MS. LIPSKI, IS IT YOUR VIEW THAT UNDER

18   THE CURRENT STATE OF THE CASE LAW FROM THE FEDERAL CIRCUIT AND

19   ELSEWHERE THAT THERE HAS TO BE SOMETHING MORE THAN JUST THE

20   ALLEGATION OF INTENT UNDER TWOMBLY AND IQBAL THAT THEY HAVE TO

21   LAY OUT THE SOURCE OF THE INTENT OR THE EVIDENCE OF THE INTENT

22   IN THE COMPLAINT ITSELF.

23             MS. LIPSKI:  CORRECT, YOUR HONOR.

24        WE ARE FIRMLY IN IQBAL TWOMBLY NOT AT THE TERRITORY HERE,

25   NOT FORM 18 TERRITORY, I THINK THE FEDERAL CIRCUIT HAS MADE

1    THAT PRETTY CLEAR.

2         WITH RESPECT TO CONTRIBUTORY INFRINGEMENT, THEY DO SAY

3    THEIR PROPRIETARY PIECE OF SOFTWARE VTD-XML HAS NO NON

4    INFRINGING USES.  I DON'T KNOW IF THAT'S TRUE OR NOT.

5         THEY HAVEN'T ALLEGED THE ACCUSED PRODUCT WHICH IS DCM,

6    THAT'S WHAT THEY TALK ABOUT WHEN THEY TALK ABOUT DAMAGES IN THE

7    REST OF THEIR COMPLAINT.  THEY HAVEN'T ALLEGED THAT DCM HAS NO

8    SUBSTANTIAL AMOUNT OF INFRINGING USE.  AND IN REALTY, THAT'S

9    BECAUSE THEY CAN'T.

10        DCM IS A SERIES OF MODULES THAT ARE SOLD APART OR

11   TOGETHER.  CERTAIN OF THOSE DON'T EVEN USE THAT VTD OR INTERACT

12   WITH VTD-XML WHATSOEVER.  SO CLEARLY THE PURPOSE OF THE DCM IS

13   NOT TO PERFORM THIS ALLEGEDLY INFRINGING METHOD.

14             THE COURT:  ALL RIGHT.

15        SO YOUR POINT IS THIS BIG BOX DOES ALL KINDS OF OTHER

16   STUFF, EVEN IF THE LITTLE BOX DOES ONLY ONE THING.  AND YOU

17   DISPUTE THAT IT DOES ONLY ONE THING.

18             MS. LIPSKI:  YES, YOUR HONOR.

19             THE COURT:  OKAY.  GO ON.  I'M SORRY I INTERRUPTED

20   YOU.

21             MS. LIPSKI:  I BELIEVE THOSE ARE THE MAIN POINTS ON

22   WILLFULNESS AND CONTRIBUTORY --

23             THE COURT:  COULD I ASK ONE QUESTION ABOUT

24   WILLFULNESS WHICH IS, IT SEEMS THAT AS A MATTER OF LAW A

25   PLAINTIFF CLAIMING WILLFULNESS INFRINGEMENT CAN RELY UPON

1    POST-COMPLAINT KNOWLEDGE IN TERMS OF PROOF.

2         IN MOST OF THE CASES I LOOKED AT, WE ARE LOOKING AT EITHER

3    SUMMARY JUDGEMENT RECORDS OR TRIAL RECORDS WHERE THERE WAS SOME

4    EVIDENCE THAT FOLLOWING THE FILING OF THE COMPLAINT, WHATEVER

5    ACTIVITY AT ISSUE BEFORE THE COMPLAINT CONTINUED SUCH THAT THE

6    KNOWLEDGE THAT CAME WITH THE COMPLAINT APPLIED.

7              MS. LIPSKI:  YES, YOUR HONOR.

8              THE COURT:  WOULD YOU GENERALLY AGREE WITH THAT?

9              MS. LIPSKI:  YES, YOUR HONOR.

10             THE COURT:  OKAY.

11        WHY ISN'T, AGAIN WE ARE NOT AT TRIAL YET, WE ARE NOT EVEN

12   AT SUMMARY JUDGEMENT WE ARE AT A RULE 12 MOTION, THE LATEST

13   RULE 12 MOTION ANYWAY.

14        WHY AREN'T THE ALLEGATIONS IN THE COMPLAINT FAIRLY READ AS

15   SUGGESTING THAT'S WHAT'S HAPPENED HERE, YOU WERE DOING SOME

16   STUFF BEFORE THE COMPLAINT WAS FILED, THE COMPLAINT GETTING

17   FILED AND THE STUFF YOU WERE DOING BEFORE CONTINUED AFTER, SO

18   THAT WOULD BE WILLFUL.

19             MS. LIPSKI:  THEY HAVEN'T ALLEGED WE HAD ANY ACTUAL

20   OR THAT WE WERE WILLFULLY AVOIDING KNOWLEDGE OF THE PATENT

21   PRIOR TO THE PATENTS IN SUIT.  SO THAT COMPONENT IS REQUIRED

22   FOR WILLFULLNESS.

23             THE COURT:  OKAY.  BUT LET'S TALK ABOUT AFTER THE

24   PATENTS WERE IDENTIFIED IN THE COMPLAINT AS THE PATENTS IN

25   SUIT.

1      WHY WOULDN'T THAT COMPLAINT PROVIDE YOU WITH ADEQUATE

2  NOTICE SUCH THAT THE ACTIVITIES WHICH FOLLOW THAT COMPLAINT

3  WERE TAKEN WILLFULLY TO THE EXTENT THEY INFRINGED, WILLFULLY

4  INFRINGED?

5      MS. LIPSKI:  I THINK IT WOULD, YOUR HONOR, BUT

6  THERE'S NO BEHAVIOR FROM VERSATA OF INFRINGING SINCE THE FILING

7  OF THE COMPLAINT.

8      THE COURT:  OKAY.

9      AND I UNDERSTAND, THE RECORD MAY ULTIMATELY SUPPORT THAT

10  ALLEGATION OR POSITION.  BUT DON'T THE ALLEGATIONS IN THE

11  COMPLAINT, WHICH IS ALL I HAVE TO WORK WITH AT THIS STAGE,

12  SUGGEST IN FACT VERSATA IS DOING STUFF AFTER THAT THEY WERE

13  DOING BEFORE ONLY WITH KNOWLEDGE OF THE PATENTS?

14      MS. LIPSKI:  IT CERTAINLY DOES, I BELIEVE, ATTEMPT TO

15  SUGGEST THAT.

16      I DON'T BELIEVE THAT THOSE ALLEGATIONS WERE MADE ON A GOOD

17  FAITH BASIS BASED ON THE INFORMATION THEY HAVE.

18      THE COURT:  OF COURSE THAT WOULD BE A RULE 11 MOTION,

19  THAT WOULDN'T BE A RULE 12 MOTION.

20      MS. LIPSKI:  I UNDERSTAND, YOUR HONOR.

21      THE COURT:  AND I DON'T WANT TO ESTIMATE YOUR NEXT

22  FILING.

23      OKAY.  I THINK I UNDERSTAND YOUR POSITION ON THE

24  WILLFULNESS ISSUE.  ARE THERE ANY OTHER ISSUES YOU WANT TO

25  RAISE?

```
 1              MS. LIPSKI:  THAT WAS ALL WITH RESPECT TO VERSATA,

 2      YOUR HONOR.

 3              THE COURT:  WHY DON'T I HEAR FROM OTHER PARTIES WHO

 4      WANT TO SPEAK TO THE WILLFULNESS ISSUE THEN WE COULD MOVE ON

 5      FROM THERE.

 6          IS THERE ANYTHING ELSE ANYONE WANTS TO ADD TO WHAT

 7      MS. LIPSKI SAID?

 8              MR. MASTERS:  NO, YOUR HONOR.

 9              THE COURT:  OKAY.  IT SOUNDS LIKE SHE COVERED ALL THE

10      BASIS.

11          MR. RUSSO, I WOULD LIKE TO HEAR FROM YOU ON THIS AND GIVE A

12      CHANCE ARE REBUTTAL THEN WE CAN MOVE ON.

13          GOOD MORNING.

14              MR. RUSSO:  GOOD MORNING, YOUR HONOR.

15          THERE'S A CERTAIN UNIQUENESS TO THIS CASE, YOUR HONOR, THAT

16      I WANT TO UNDERSCORE BECAUSE IT SEEMS TO HAVE LOST PERSPECTIVE.

17              FIRST, WE HAVE A CASE THAT REALLY AROSE AS A RESULT OF

18      ANOTHER CASE.  AMERIPRISE AND VERSATA HAVE BEEN IN BATTLE OR

19      HAD BEEN IN BATTLE FOR SOME NUMBER OF YEARS IN MULTIPLE

20      LAWSUITS.  THEY HAVE SINCE SETTLED AND NOW PERHAPS THEY ARE

21      ALIGNED.

22              HOWEVER, KEEPING IN MIND THE BATTLE THAT OCCURRED BETWEEN

23      THEM AND THE FACT THAT IN THAT BATTLE THERE WERE MULTIPLE

24      CONTENTIONS, MOST OF THEM, NOT ALL A PUBLIC RECORD.  SOME OF

25      THEM WITH EXPERT WITNESS REPORTS AND EXPERT OPINIONS COMPLETELY
```

1    CONTRARY TO POSITIONS THAT NOW ARE BEING ASSERTED WHERE

2    AMERIPRISE WAS ASSERTING AS AGAINST VERSATA, YOU MUST PUT YOUR

3    ENTIRE PRODUCT UP ON THE PUBLIC SOURCE BECAUSE YOU HAVE

4    INTEGRATED PUBLIC SOURCE FROM XIMPLEWARE INTO YOUR PRODUCT.

5          THE COURT:  SO YOU ARE SAYING THAT IN THAT TRAVIS

6    COUNTY STATE COURT ACTION IN TEXAS THERE WERE SPECIFIC CLAIMS

7    AND INDEED EVIDENCE TO SUPPORT THE CLAIMS THAT BY INCORPORATING

8    THE XIMPLEWARE SOFTWARE UNDER THE GPL, THE WHOLE THING GOT

9    TAINTED.

10          MR. RUSSO:  THAT WAS PART ONE.

11          THE COURT:  OKAY.  GO ON TO THE NEXT PART.

12          MR. RUSSO:  PART ONE THERE WAS ALSO A PARALLEL

13   FEDERAL CASE THAT LASTED FOR SOME PERIOD OF TIME AS WELL.

14          THE POINT THAT'S BEING MADE HERE IS OUR CLIENT HAS ALWAYS

15   PUT CLEARLY IN ITS SOFTWARE ITS COPYRIGHT NOTICES, ITS AUTHOR

16   SHIP NOTICES ITS PATENT NOTICES.  IT'S ON THE WEBSITE.  THERE

17   ARE MULTIPLE HITS ON THE WEBSITE.  THIS IS ALL PLEADED.

18          WE BELIEVE THERE WAS ENOUGH IN THE COMPLAINT FROM WHICH

19   IT CAN BE REASONABLY INFERRED PARTICULARLY AS A RESULT OF ALL

20   THE LITIGATION THAT OCCURRED WITH AMERIPRISE, AND ALL THAT WAS

21   EXCHANGED BETWEEN AMERIPRISE AND VERSATA ABOUT XIMPLEWARE,

22   INCLUDING THAT WE WANT TO TAKE XIMPLEWARE'S DEPOSITION BECAUSE

23   WE WANT TO FIND OUT WHAT XIMPLEWARE'S POSITION IS ON A NUMBER

24   OF THINGS INCLUDING THE AMERIPRISE FOLKS SAY, WE DON'T REALLY

25   EVEN KNOW IF THERE HAS BEEN MAYBE SOME FORM OF COMMERCIAL

1    LICENSE OR OTHER PERMISSION TO VERSATA, WE CAN'T GET A STRAIGHT

2    ANSWER ON THAT.

3         ULTIMATELY THAT DEPOSITION DID OCCUR, THEY DID GET

4    INFORMATION FROM XIMPLEWARE, THIS LITIGATION FOLLOWED, WE

5    PLEADED ALL OF THAT IN THE COMPLAINT AND WHAT THEY ARE DOING

6    NOW IS THEY ARE SAYING, WELL, IGNORE ALL THE INFERENCES FROM

7    THE PLEADINGS ABOUT WHAT THE STATE OF KNOWLEDGE WAS FROM THE

8    MANY MONTHS IF NOT YEARS OF LITIGATION WITH AMERIPRISE.

9         NOW WE HAVE SINCE ASKED THEM TO PRODUCE, IN FACT ALL OF

10   THE MATERIAL THAT'S NOT IN THE PUBLIC RECORD ALL THE EXPERT

11   BACK UP ALL THE EXPERT MATERIALS THEY ARE FIGHTING THAT FOR

12   SOME REASON.

13        WE MAY BE BEFORE YOU SOON ON THAT QUESTION IN FORCING A

14   SUBPOENA.  BUT IT'S CLEAR TO US THAT VERSATA KNEW ABOUT

15   XIMPLEWARE, KNEW ABOUT XIMPLEWARE'S WEBSITE, KNEW ABOUT

16   XIMPLEWARE'S NOTICES, KNEW ABOUT THE PATENTS.

17        THEY WOULD HAVE TO BE WILLFULLY BLIND IN THE FACE OF THAT

18   LITIGATION NOT TO HAVE SEEN ALL THIS AND TO HAVE UNDERSTOOD

19   POINTS THAT I WILL MAKE IN THE NEXT PART OF THE ARGUMENT THAT

20   XIMPLEWARE HAD NOT PLACED ITS SOFTWARE INTO THE PUBLIC DOMAIN,

21   HAD NOT FORFEITED ITS PATENT RIGHTS HAD NOT FORFEITED ITS

22   COPYRIGHTS AND THEY WERE IN TREACHEROUS TERRITORY TO BE

23   FIGHTING A LITIGATION AGAINST AMERIPRISE WITHOUT COMING BACK TO

24   XIMPLEWARE AND SAYING WE REALLY SOME GET A COMMERCIAL LICENSE

25   WITH YOU.

```
 1         AND AT SOME POINT WE ARE GOING TO GET TO THIS QUESTION OF

 2    THE GPL AND WHAT IT DOES AND WHAT IT DOESN'T DO.  BUT IT'S

 3    INTERESTING IN REREADING IT, PROBABLY FOR THE THOUSANDTH TIME

 4    THIS MORNING WHILE I WAS LISTENING TO INTERESTING QUESTIONS OF

 5    HOW RULE 64 WORKS ON WRITS OF ATTACHMENT AND THE LIKE, I

 6    FINALLY DISCERNED THE BEST WAY TO READ THE LICENSE.  I'M GOING

 7    TO SUGGEST TO YOU AT SOME POINT.  READ IT FROM THE END

 8    BACKWARDS BECAUSE YOU WILL SEE THINGS LIKE --

 9         THE COURT:  THE WHEN HARRY MET SALLY APPROACH TO THE

10    LICENSE AGREEMENT.

11         MR. RUSSO:  EXACTLY.

12    READ IT BACKWARDS BECAUSE YOU WILL SEE SOMETHING LIKE, IF

13    YOU, MEANING A PARTIES IN THE SHOES OF VERSATA, WISH TO

14    INCORPORATE PARTS OF THE, HERE XIMPLEWARE PROGRAM, INTO OTHER

15    THEY CALL IT FREE PROGRAMS, WHETHER THEY ARE FREE OR NOT, ANY

16    PROGRAMS THAT YOU WISH TO ENGAGE IN FOR DISTRIBUTION, ON

17    CONDITIONS THAT ARE DIFFERENT, WRITE TO THE AUTHOR TO ASK FOR

18    PERMISSION.

19         THAT'S IN PARAGRAPH 10.  THEY ARE DIRECTING THE PROSECUTE

20    POSED PARTY WHO IS GOING TO ENGAGE IN SOME CONDUCT THAT'S

21    DIFFERENT FROM WHAT AMERIPRISE WAS SAYING SHOULD HAVE HAPPENED

22    FROM THE GET GO, WHICH IS MAKE ALL THE SOFTWARE FREE.  PUT IT

23    ALL UP ON PUBLIC SOURCE.  DON'T DO ANYTHING WHICH SUGGESTS YOU

24    ARE GOING TO MAKE MONEY OFF OF IT.

25         SO WE THINK THERE'S ENOUGH THERE, YOUR HONOR.  OBVIOUSLY
```

1   IF WE NEED TO ACTUALLY PLEAD ROAD AND VERSE FROM EACH EXPERT

2   REPORT IDENTIFYING EACH PATENT AND EACH OTHER ITEM OF

3   INTELLECTUAL PROPERTY THAT XIMPLEWARE HAS WE WILL DO THAT IN

4   WHAT WOULD BE OUR AGREED LAST SHOT ON THIS.

5        THIRD AMENDED COMPLAINT USUALLY WE DON'T HAVE TO GO THAT

6   FAR, BUT IF WE HAVE TO DO THAT, WE WILL DO IT.

7             THE COURT:  OKAY.  I HAVE YOUR POSITION ON THAT ISSUE

8   MR. RUSSO, THANK YOU.

9        MS. LIPSKI, DO YOU WANT TO RESPOND BRIEFLY OR TURN TO

10  OTHER ISSUES, I WILL GIVE YOU WHATEVER OPPORTUNITY YOU LIKE.

11            MS. LIPSKI:  JUST VERY BRIEFLY, YOUR HONOR, I'M GOING

12  TO RESPOND TO THE RELEVANT PARTS OF THAT ARGUMENT.

13       THE ISSUE BETWEEN VERSATA AND AMERIPRISE INVOLVE THE

14  OBJECT CODE.  THE OBJECT CODE DOESN'T CONTAIN ANY PATENT

15  NOTICES.

16       SO GOING BACK TO THE NOTICE FUNCTION AND IGNORING FOR A

17  MOMENT HOW RELEVANT OR NOT RELEVANT THAT LITIGATION MAY BE AT

18  THIS STAGE, WE STILL DON'T SEE ANY SORT OF ALLEGATION THAT

19  THERE WAS ACTUAL KNOWLEDGE PRIOR TO FILING OF THE SUIT OF THESE

20  PATENTS.

21            THE COURT:  I APPRECIATE YOUR POINT ABOUT THE OBJECT

22  CODE BEING IN DISPUTE IN THAT LAWSUIT, BUT WASN'T THE SOURCE

23  PROVIDED IN ADVANCE OF THE CODE BEING COMPILED AND THE BINARIES

24  DELIVERED TO AMERIPRISE?  WHAT AM I MISSING IN THAT CHAIN OF

25  EVENTS?

```
 1           MS. LIPSKI:  I BELIEVE ONLY OBJECT CODE WAS PROVIDED

 2   TO AMERIPRISE.

 3        THAT WAS ONE OF THE ISSUES THAT THEY ACTUALLY DE COMPILED

 4   IT TO GET THE SOURCE CODE THAT THEY DID NOT RECEIVE FROM

 5   VERSATA.

 6           THE COURT:  OKAY.  BUT I TAKE IT THOUGH VERSATA

 7   RECEIVED SOURCE CODE FROM XIMPLEWARE, CORRECT?

 8           MS. LIPSKI:  THAT IS -- I DON'T BELIEVE --

 9           THE COURT:  IT MAY NOT BE ALLEGED IN THE COMPLAINT,

10   BUT --

11           MS. LIPSKI:  AS ALLEGED IN THE COMPLAINT, I

12   UNDERSTAND, YOUR HONOR.

13        YOU CAN DOWNLOAD SIMPLY THE OBJECT CODE FROM SOURCE FORGE

14   WITHOUT DOWNLOADING THE SOURCE CODE.  I THINK THERE'S PROBABLY

15   GOING TO BE SOME DEBATE ABOUT WHAT THE SOURCE CODE PAGE

16   ACTUALLY HAD IN TERMS OF PATENT NOTICES, BUT CERTAINLY IT'S

17   POSSIBLE TO DOWNLOAD THE OBJECT CODE WITHOUT THE SOURCE CODE.

18           THE COURT:  WELL, AND THE RECORD WILL ULTIMATELY SHOW

19   WHAT HAPPENED HERE.

20        I WOULD JUST THINK THAT WOULD CREATE ALL SORTS OF

21   INTERESTING ISSUES FOR XIMPLEWARE FOR DISTRIBUTING THE CODE IN

22   OBJECT FORM AND YET CLAIMING THE PROTECTIONS OF THE GPL.

23           MS. LIPSKI:  I THINK IT DOES, YOUR HONOR.

24           THE COURT:  OKAY.  I THINK I HAVE YOUR POSITION.  ALL

25   RIGHT.
```

1          WELL, SINCE WE HAVE BROUGHT UP THE ISSUE OF THE GPL, WHY

2    DON'T WE TURN TO THAT.

3          WHO WANTS TO SPEAK MORE EXHAUSTIVELY ABOUT THE GPL?

4          YOU ARE STILL STANDING, MS. LIPSKI, SO I GUESS IT'S YOU.

5          MS. LIPSKI:  YOUR HONOR, I'M RESPONSIBLE FOR THE

6    MOTION TO DISMISS FILED BY WELLMARK, PACIFIC LIFE, METROPOLITAN

7    LIFE, AVIVA, AS WELL AS PRUDENTIAL WHO HAS NOW BEEN DISMISSED

8    FROM THIS LITIGATION.

9          WHAT'S IMPORTANT TO NOTE ABOUT THE ALLEGATIONS AGAINST

10   THE CUSTOMER DEFENDANTS IS THAT REALLY NOTHING SUBSTANTIVE HAS

11   BEEN ADDED IN THIS AMENDED COMPLAINT.

12         YOUR HONOR IS WELL AWARE OF THE ARGUMENTS MADE WITH

13   RESPECT TO THE GPL IN THE PRIOR MOTION TO DISMISS.  IN THEIR

14   OPPOSITION TO OUR MOTION TO DISMISS THEY TALK ABOUT THE TRO,

15   THEY TALK ABOUT THE COPYRIGHT CASE, BUT WHAT THEY DON'T TALK

16   ABOUT A LOT IS WHAT THEY HAVE ACTUALLY PLED AND THE CHANGES

17   THEY HAVE ACTUALLY MADE TO THEIR COMPLAINT.

18         THEY NOW SEEM TO ARGUE THAT THE GPL HAS NOTHING TO DO

19   WITH PATENTS, THE GPL IS JUST A COPYRIGHT LICENSE.  THAT CAME

20   AS A GREAT SURPRISE TO US BASED ON THE ARGUMENTS IN THEIR PRIOR

21   OPPOSITION AS WELL AS THE FACT THAT THEY ATTACHED THE GPL TO

22   THEIR PATENT COMPLAINT.

23         I'M NOT REALLY SURE WHY WE HAVE BEEN TALKING ABOUT THE

24   GPL SO MUCH AND WHY I SEE THE GPL WHEN I CLOSE MY EYES AT NIGHT

25   IF IT'S NOT REALLY INVOLVED IN THIS CASE.

1       THEY COULD HAVE FILED A MOTION FOR RECONSIDERATION OF

2   YOUR HONOR'S ORDER DISMISSING THEIR CLAIMS, THEY CHOSE NOT TO.

3   I THINK THAT WOULD HAVE BEEN IF THEY HAD AN ISSUE WITH WHAT

4   YOUR HONOR DECIDED IN THE PRIOR MOTION TO DISMISS I THINK THAT

5   WOULD BE THE PROPER PROCEDURE TO FOLLOW.

6       THEY HAVE NOT DONE THAT INSTEAD THEY HAVE COME BACK WITH

7   THE COMPLAINT THAT TALKS ABOUT BENEFICIARIES.  I DON'T KNOW

8   WHAT RELEVANCE THAT HAS TO PATENT LAW.  PARTIALLY THAT IS

9   BECAUSE THE CUSTOMER DEFENDANT THAT IS I REPRESENT EACH SERVED

10  XIMPLEWARE WITH A DECLARATION THAT THEY DO NOT DISTRIBUTE THE

11  SOFTWARE.  SO PERHAPS THEY FELT PREVENTED FROM SAYING THAT

12  BASED ON THOSE DECLARATIONS.

13      BUT I WILL NOTE THAT THEY INCLUDED KIND OF THE VERY

14  GENERAL PHOTOGRAPH THAT WAS SPECIFICALLY REJECTED BY YOUR HONOR

15  IN THE SECOND AMENDED COMPLAINT.  BUT I THINK WE HAVE ALREADY

16  FULLY RESOLVED THAT ISSUE.

17          THE COURT:  SO YOU ARE SAYING THAT THE DECLARATIONS

18  MAKE EXPLICIT, AND LET'S PUT TO THE SIDE FOR THE MOMENT WHETHER

19  OR NOT I CAN CONSIDER THE DECLARATIONS IN THIS POSTURE.

20          MS. LIPSKI:  WHICH IS WHY WE DIDN'T ATTACH THEM,

21  YOUR HONOR.

22          THE COURT:  I UNDERSTAND.

23      BUT YOU ARE SAYING THE DECLARATIONS PROVIDED UNDER OATH

24  MADE CLEAR THAT NONE OF THESE CUSTOMERS ARE DISTRIBUTING

25  ANYTHING.

```
1              MS. LIPSKI:  YES, YOUR HONOR.

2              THE COURT:  AND THERE'S NO CUTE LANGUAGE AROUND THAT,

3     DISTRIBUTION AS WE HAVE BEEN TALKING ABOUT NOW FOR SEVERAL

4     MONTHS IN THE CONTEXT OF THE GPL.

5              MS. LIPSKI:  YES, YOUR HONOR.

6              THE COURT:  OKAY.

7         AND CAN YOU JUST REMIND ME, I APOLOGIZE MS. LIPSKI, IN WHAT

8     CONTEXT, WHAT PROMPTED THE SERVICE OF THESE DECLARATIONS?  IS

9     IT IMMEDIATELY AFTER THE ORDER MY DECLARATIONS WERE SERVED?

10             MS. LIPSKI:  YES, YOUR HONOR.

11             THE COURT:  I GUESS THAT WOULD PROMPT THAT.

12        SO IN AN ATTEMPT TO PROVIDE WHAT IN YOUR VIEW WAS

13    IRREFUTABLE AND SWORN TESTIMONY THAT YOUR CLIENTS DON'T

14    DISTRIBUTE IN ANY WAY, SHAPE OR FORM, YOU SERVE THESE

15    DECLARATIONS.

16        IN RESPONSE TO OR AT LEAST AFTER THAT YOU GET THE AMENDED

17    COMPLAINT AS MY ORDER PERMITTED, BUT THERE WAS REALLY NOTHING

18    ADDED TO THE LANGUAGE OF THE COMPLAINT ON THE DISTRIBUTION

19    ISSUE OTHER THAN TO SAY WHAT?

20             MS. LIPSKI:  OTHER THAN TO SAY THAT, AND I COULD --

21    WE THOUGHT THAT THEY MIGHT INCLUDE INFORMATION SUCH AS THEY HAD

22    INCLUDED FOR AMERIPRISE, THEY DIDN'T.  I WILL JUST GIVE YOU ONE

23    EXEMPLARY PARAGRAPH HERE.

24        ACCORDING TO ITS WEBSITE, PRUDENTIAL SELLS ITS PRODUCTS

25    THROUGH INDEPENDENT, IN BOLD, AND PRUDENTIAL FINANCIAL
```

1    PROFESSIONALS ON INFORMATION AND BELIEF, THESE FINANCIAL

2    PROFESSIONALS, SOME OF WHOM ARE INDEPENDENT, ARE THE

3    BENEFICIARIES OF THE DCM SOFTWARE WHICH CALCULATES THEIR

4    COMPENSATION.

5         THAT'S PARAGRAPH 75 OF THE SECOND AMENDED COMPLAINT,

6    YOUR HONOR.

7              THE COURT:  SO WHY CAN'T I READ THAT LANGUAGE OR THE

8    LANGUAGE IN 78 THAT'S SIMILAR AND SAY OKAY, WHEN THE PLAINTIFF

9    IS SAYING THESE ADVISORS ARE THE BENEFICIARIES OR HOWEVER YOU

10   WANT TO CHARACTERIZE THEM, THAT IS FAIRLY READ AS SAYING THEY

11   ARE THE RECIPIENTS OF THE DISTRIBUTION OR THE DISTRIBUTEES OR

12   WHATEVER THE PROPER LANGUAGE.

13        I'M JUST TRYING TO UNDERSTAND CAN I LOOK TO IQBAL AND

14   TWOMBLY AND CAN SAY THAT'S STILL NOT GOOD ENOUGH, OR DO I AT

15   LEAST HAVE TO OBSERVE AND ACKNOWLEDGE THAT THERE WAS SOME

16   CHANGE IN THE LANGUAGE THAT ATTEMPTED TO LAY OUT IN MORE

17   DETAIL, MAYBE NOT MUCH DETAIL, BUT AT LEAST SOME MORE DETAIL,

18   EXACTLY WHO WAS GETTING THE DISTRIBUTION THAT YOU AND YOUR

19   CLIENTS ARE ALLEGED TO HAVE PERFORMED?

20             MS. LIPSKI:  WELL, I DO BELIEVE THIS IS INSUFFICIENT

21   UNDER IQBAL AND TWOMBLY, IT DOESN'T TALK ABOUT DISTRIBUTION.  I

22   DON'T THINK THAT YOU CAN CHANGE BENEFICIARY THEORY INTO A

23   DISTRIBUTION THEORY.

24        WE CERTAINLY, THEY CERTAINLY CAN WHEN THEY WANT TO,

25   ALLEGE DISTRIBUTION AND THEY DO ELSEWHERE WITH USING THE SAME

1    LANGUAGE THAT YOU HAVE ALREADY SAID WAS INSUFFICIENT.  THEY

2    INVOLVE CHOSE NOT DO TO DO THAT.

3         I DON'T THINK YOUR HONOR CAN REALLY STRETCH THE LANGUAGE

4    TO TAKE A BENEFICIARY AS BEING A, SOMEONE THAT THE SOFTWARE HAS

5    BEEN DISTRIBUTED TO.  TO ME THOSE ARE JUST TOTALLY DIFFERENT

6    THINGS.

7         THE COURT:  THAT THEY BE TRUE, IT'S JUST NOT

8    NECESSARILY TRUE.

9         AND PART OF ASSESSING PLAUSIBILITY RIGHT IS UNDERSTANDING

10   WHAT NECESSARY FOLLOWS FROM LANGUAGE THAT IS INCLUDED IN THE

11   COMPLAINT.  FAIR ENOUGH.

12        MS. LIPSKI:  YES, YOUR HONOR.

13        THE COURT:  ALL RIGHT.  I THINK I HAVE YOUR POSITION,

14   MS. LIPSKI.

15        DOES ANYBODY WANT TO JUMP IN ON THIS?  MR. JAMES?

16        THE COURT:  GO AHEAD, SIR.

17        MR. JAMES:  YOUR HONOR, THIS CAN EITHER BE REALLY

18   SIMPLE OR REALLY COMPLICATED.

19        THE COURT:  GUESS WHICH ONE I'M INTERESTED IN.

20        MR. JAMES:  IT ALWAYS IS.

21        THE REALLY SIMPLE ONE IS THAT YOU RULED ON THIS ALREADY.

22   YOU GAVE THEM THE CHANCE TO AUGMENT THEIR PLEADINGS IN A WAY

23   THAT ACTUALLY LAID OUT THE CASE THAT THERE'S BEEN A

24   DISTRIBUTION HERE.  AT LEAST WITH RESPECT TO THE CUSTOMER

25   DEFENDANTS, THEY DIDN'T DO THAT.  THE SUM TOTAL OF THEIR

1      ALLEGATIONS THAT ARE DIRECTED AT MY CLIENT IS IN PARAGRAPH 76.

2          AND IT READS, "AMONG THE RISK FACTORS DISCUSSED IN UNITED

3      HEALTH'S RECENT 10-Q QUARTERLY REPORT, FILED WITH THE U.S.

4      SECURITIES EXCHANGE COMMISSION ON MAY 6, 2014, UNITED HEALTH

5      STATED THAT OUR ABILITY TO ATTRACT, RETAIN AND PROVIDE SUPPORT

6      TO A NETWORK OF INDEPENDENT PRODUCERS I.E. BROKERS AND AGENTS

7      AND CONSULTANTS COULD MATERIALLY IMPACT THE COMPANY'S FINANCIAL

8      PERFORMANCE, ON INFORMATION AND BELIEF, THESE INDEPENDENT

9      PRODUCERS, I.E., NON-EMPLOYEES OF UNITED HEALTH ARE THE

10     BENEFICIARIES OF THE DCM SOFTWARE, WHICH CALCULATE THE

11     COMPENSATION.

12         NOW NOTHING THAT THEY QUOTED REFERS TO SOFTWARE, REFERS

13     TO DISTRIBUTION OF SOFTWARE, REFERS TO DISTRIBUTION OF

14     VERSATA'S SOFTWARE OR CERTAINLY ANY DISTRIBUTION OF

15     XIMPLEWARE'S SOFTWARE.

16         THERE'S NOTHING IN THERE THAT REFERS TO DISTRIBUTION AT

17     ALL.  AND BENEFICIARIES, THE COURT WOULD BE READING SOMETHING

18     INTO THEIR ALLEGATIONS THAT SIMPLY IS NOT THERE.

19         IF YOU WERE TO MAKE THE LEAP THAT BENEFITS FROM SOMETHING

20     IS THE SAME AS RECEIVING A DISTRIBUTION OF SOFTWARE.  THE GPL

21     IS VERY SPECIFIC WHEN IT DEALS WITH DISTRIBUTIONS, IT'S TALKING

22     ABOUT DISTRIBUTIONS OF CODE EITHER IN SOURCE CODE FORM OR AN

23     OBJECT CODE FORM AND IT ALL CALLS THOSE OUT WITH SPECIFICITY.

24         SOMEONE THAT WAS, SAY, USING A WEB-BASED TOOL THAT HAD A

25     PATENTED PIECE OF SOFTWARE UNDERLYING IT, BUT DIDN'T RECEIVE

1    THAT CODE, IS SOMEONE WHO IS GOING ON A WEBSITE THERE AND THE

2    WEBSITE CALLS UP INFORMATION FROM A DATABASE, FOR INSTANCE,

3    MIGHT BE BENEFITTING FROM THAT PROGRAM WHICH IS I THINK WHAT

4    THEY ARE TRYING TO DO HERE.  THAT'S THE WAY THEY ARE USING IT,

5    BECAUSE THEY CERTAINLY HAVE NO EVIDENCE WHATSOEVER OF

6    DISTRIBUTION BY UNITED HEALTH OR ANY OF THE CUSTOMER CLIENTS.

7         AND WITHOUT SOME ALLEGATION THAT THEY ACTUALLY

8    DISTRIBUTED BITS OF CODE, EITHER SOURCE CODE OR OBJECT CODE

9    FORM, THEN THEY HAVE NO CLAIM.

10         THE COURT:  SO IF I UNDERSTAND WHAT YOU ARE SAYING,

11   MR. JAMES, WHAT YOU ARE SAYING IS, I DON'T KNOW, IF YOU ARE IN

12   A BAR LISTENING TO A JUKEBOX, YOU MAY BE BENEFITING FROM THE

13   MUSIC, YOU MAY ENJOY IT IMMENSELY, BUT IF THAT COPY THAT'S

14   BEING PLAYED IS UNLICENSED, YOU ARE NOT RESPONSIBLE.

15         MR. JAMES:  RIGHT.

16       AND IN ADDITION TO THE RESPONSIBILITY, BECAUSE WE ARE

17   DEALING WITH THE COPYRIGHT AND A LICENSE THAT'S DEALING WITH

18   COPYRIGHTS, WE ARE REALLY TALKING ABOUT A DISTRIBUTION, RIGHT,

19   AS DISTRIBUTING SOMETHING THAT HAS BEEN COPYRIGHTED OR THAT IS

20   PARENTED.

21        AND HERE THERE IS NO DISTRIBUTION OF CODE THAT THEY HAVE

22   ALLEGED.  THERE'S JUST SIMPLY SOMEONE MAY BE USING A PROGRAM

23   AND IN SOME WAY UNDERLYING IT IS THEIR SOFTWARE WHICH THEY

24   HAVEN'T EVEN BY THE WAY PLED THAT WITH RESPECT TO MY CLIENT.

25   ALL THEY HAVE PLEAD WITH RESPECT TO THIS ALLEGATION THAT CAME

1    OUT.

2         AND BY THE WAY, NOT EVEN THIS ENTITY'S CORPORATE FILING,

3    THIS IS BY THE CORPORATE PARENT.  THEY HAVE ALLEGED UNITED

4    HEALTH USES INDEPENDENT CONTRACTOR.  WELL SO WHAT, THERE'S NO

5    WAY THAT THAT CAN PASS MUSTER UNDER TWOMBLY AND IQBAL.

6         AND ON THE INFORMATION AND BELIEF PLEA, MY UNDERSTANDING

7    IS UNDER THE CURRENT NINTH CIRCUIT TREATMENT OF TWOMBLY AND

8    IQBAL ON INFORMATION AND BELIEF, STATEMENTS ARE OUT.

9         THOSE FAIL AS A MATTER OF LAW TO MEET THE TWOMBLY IQBAL

10   STANDARD, AND VIRTUALLY EVERY SINGLE ALLEGATION THEY HAVE

11   AGAINST THE CUSTOMER DEFENDANTS IS PHRASED IN TERMS OF

12   INFORMATION AND BELIEF.

13        THE COURT:  MR. JAMES, WOULD YOU AGREE IF MR. RUSS

14   HAD ALLEGED THAT YOUR CLIENT DISTRIBUTED THE SOFTWARE AT ISSUE

15   TO SOME UNRELATED THIRD PARTY, THAT MIGHT BE SUFFICIENT?

16        MR. JAMES:  I THINK IF HE COULD NAME A THIRD PARTY WE

17   DISTRIBUTED TO AND HE ACTUALLY PROVIDES THE WHO, WHAT, WHEN,

18   WHERE, HOW OF THAT THEN HE COULD STATE A VALID CLAIM.

19        THE COURT:  DOES HE HAVE TO NAME THE THIRD PARTY?

20        MR. JAMES:  YOUR HONOR, I DON'T THINK HE CAN JUST DO

21   WHAT HE'S DONE HERE IS ESSENTIALLY MAKE IT UP AND THROW

22   SOMETHING IN, ON INFORMATION AND BELIEF WE BELIEVE THEY

23   DISTRIBUTED TO SOME UNRELATED THIRD PARTY.

24        THE COURT:  I TEND TO AGREE WITH YOU ON THE

25   INFORMATION AND BELIEF POINT, BUT I'M JUST THINKING OUT LOUD

1    HERE.

2        IF MR. RUSSO WERE GRANTED LEAVE, AND I'M NOT SUGGESTING HE

3    HAS BEEN YET, BUT IF HE WERE AND HE CAME BACK WITH SOMEBODY

4    LIKE YOUR CLIENT DISTRIBUTED THE VERSATA SOFTWARE AND HE

5    IDENTIFIES THE SPECIFIC XIMPLEWARE COMPONENT OF THE VERSATA

6    SOFTWARE AND HE SAYS THAT THAT DISTRIBUTION TOOK PLACE TO SOME

7    THIRD PARTY, UNDER RULE 8 WOULD THAT BE ENOUGH?

8        MR. JAMES:  I DO NOT THINK SO BECAUSE HE STILL HAVE

9    TO, THE STANDARD UNDER IQBAL AND TWOMBLY IS HE HAS TO PROVIDE

10   ENOUGH FACTUAL CONTENT THAT IT ESSENTIALLY SUPPORTS THOSE KIND

11   OF CONCLUSORY ASSERTIONS.

12       THERE HAS TO BE -- I BELIEVE IQBAL TALKS ABOUT A FACTUAL

13   ENHANCEMENT.  THERE HAS TO BE A SPECIFIC FACT.  AND POINTING TO

14   HIS OWN SOFTWARE AND SAYING, WE THINK THAT UNITED HEALTH IS

15   LICENSED TO VERSATA AND WE THINK VERSATA INCLUDED OUR SOFTWARE

16   IN THE VERSION THAT'S USED BY UNITED HEALTH, THAT'S NOT ENOUGH.

17       HE WOULD HAVE TO SHOW THAT THERE WAS A DISTRIBUTION OF

18   THE VERSATA SOFTWARE OR HIS COMPONENT OF IT TO A THIRD PARTY

19   AND GIVE SOME BASIS FOR THINKING THAT WAS AN ACTUAL BIT OF FACT

20   UNDERLYING THAT.

21       THE COURT:  SO YOU DON'T THINK IT WOULD BE ENOUGH

22   UNDER RULE 8, FORGET ABOUT RULE 11, BUT UNDER RULE 8, AND YOU

23   KNOW, I'M FULLY AWARE OF AND APPRECIATIVE OF WHAT THE RULE 11

24   ALLEGATION SAYS UNITED HEALTH CARE DISTRIBUTING THE VERSATA

25   CODE INCLUDING THE XIMPLEWARE CODE TO A THIRD PARTY, YOU DON'T

1    THINK THAT WOULD BE ENOUGH?

2         MR. JAMES:  I DON'T THINK WITHOUT SUFFICIENT FACTUAL

3    DETAIL THAT IT WOULD RISE TO THE LEVEL OF PLAUSIBLE ALLEGATION

4    THAT THEY DISTRIBUTED TO SOMEONE IT'S SUFFICIENT.

5      I THINK HE HAS TO PROVIDE ENOUGH FACTUAL DETAIL TO THE

6    COURT AND UNITED HEALTH.  AND KEEP IN MIND EVEN RULE 8, THE

7    STANDARD RULE IS ALWAYS NOTICED AND THE ABILITY TO DEFEND.  IF

8    ALL HE SAYS IS I THINK UNITED HEALTH DISTRIBUTED TO SOME

9    UNNAMED THIRD PARTY THAT GIVES US ABSOLUTELY NO INFORMATION TO

10   BE ABLE TO GO FORTH AND DEFEND AGAINST THIS CASE.

11        AND THE OTHER PROBLEM, YOUR HONOR, I THINK HE HAS, UNDER

12   BENEFITTED, AT LEAST AS HE'S ALLEGED AGAINST IT MY CLIENTS, IS

13   THE VERY LAST PART OF PARAGRAPH 76 WHEN HE'S TALKING ABOUT

14   BENEFITTED, HE'S MAKING IT CLEAR HE MEANS IT CALCULATES THEIR

15   COMPENSATION.

16        NOW THIS GOES BACK TO THE GPL WE CAN GET INTO THE MORE

17   GPL SPECIFIC ISSUES HERE, WE TALKED ABOUT IN SECTION ZERO OF

18   THE GPL, IT ALLOWS PARTIES TO RUN THE SOFTWARE.  IT ALSO DEALS

19   WITH OUTPUTS, AND SAYS SPECIFICALLY THAT AN OUTPUT IS NOT

20   RESTRICTED BY THE GPL AT ALL UNLESS IT WAS INDEPENDENT OF

21   RUNNING THE SOFTWARE.

22        WHAT HIS ALLEGATION IS SAYING HERE IS THAT THESE GAYS ARE

23   BENEFITTED BY THIS SOFTWARE BY VIRTUE OF SOME CALCULATION THAT

24   GOES ON IN THE BACKGROUND.  I DON'T KNOW WHAT THAT IS IF IT'S

25   NOT AN OUTPUT.

1        THE COURT:  OKAY.  I THINK I HAVE THAT.

2      ANY OTHER POINTS YOU WANT TO RAISE?  GO AHEAD.

3          MR. JAMES:  ON THE ISSUE OF THE GPL, I DON'T KNOW HOW

4    MUCH YOUR HONOR DOES WANT TO GET INTO THE BACKGROUND OF IT

5    AGAIN, THIS WAS ARGUED PRETTY EXTENSIVELY LAST TIME.

6      I WILL POINT OUT THEY HAVE FUNDAMENTALLY CHANGED THEIR

7    THEORY ON THIS.

8      LAST TIME WE WERE IN HERE, THEIR THEORY WAS THE GPL DOES

9    HAVE A PATENT LICENSE, BUT THE CUSTOMER HAS BREACHED IT AND

10   THEREFORE THEY WEREN'T ENTITLED TO ITS PROTECTIONS.

11      THIS TIME YOU ARE HEARING THAT IT DOESN'T APPLY AT ALL

12   AND IT JUST HAS NOTHING TO DO WITH PATENTS.

13      WHILE I AGREE THAT THEY ARE ALLOWED TO PLEAD IN THE

14   ALTERNATIVE, I THINK THAT DOES HAVE CONSEQUENCES UNDER TWOMBLY

15   AND IQBAL, AND THERE ARE CASES THAT HAVE SAID, IF YOU CHANGE

16   THE THEORY, THE COURT IS ENTITLED TO LOOK TO THAT AND SEE IF

17   THIS IS PLAUSIBLE.

18      I THINK IN THIS CASE THEY HAVE COMPLETELY REVERSED THEIR

19   THEORIES BECAUSE OF WHAT HAPPENED AT THE LAST HEARING.

20      THE COURT HAS ALREADY FOUND THAT RUNNING IT IS ALLOWED.

21   I DO NOT KNOW HOW IMPORTANT IT IS, YOU CHARACTERIZE AS AN

22   EXPRESS LICENSE, AS AN IMPLIED LICENSE AS SOME FORM OF

23   ESTOPPEL.  WHAT WE KNOW IS THAT ACCORDING TO THEM, THEY PLACE

24   ON THEIR WEBSITE PROMINENTLY NOTICES THAT THE GPL APPLIES TO

25   THIS CODE, WHICH IS BY THE WAY NO LONGER TRUE.

1        BUT EVEN IF IT WERE ON POINT, ALL OF THAT, THAT ACTUALLY

2    I THINK EXACERBATES THE PROBLEM.  IT MEANS THEY HAVE NOW HOOKED

3    IN CUSTOMERS BY TELLING THEM USE THIS CODE AS LONG AS YOU

4    COMPLY YOU ARE GOING TO BE OKAY AS LONG AS THERE'S NO

5    INDEPENDENT BREACH.

6        AND I DO NOT KNOW HOW YOU SEE IT AS OTHER THAN SOME KIND

7    OF REPRESENTATION THAT WE ARE OBJECT GOING TO COME AFTER YOU IF

8    YOU DO THIS.

9        SO THEY HAVE GOTTEN THE BENEFIT OF THE CONTRACT.  THE

10   HORNBOOK CONTRACT LAW IS YOU CAN'T AFFIRM THE PARTS YOU LIKE

11   AND DISCLAIM THE REST.

12       I DISAGREE FUNDAMENTALLY WITH MR. RUSSO'S PROPOSITION WE

13   START AT THE END OF THIS CONTRACT AND WORK OUR WAY BACK.  I

14   START AT THE VERY TOP WHERE IT TALKS ABOUT WHAT YOU ARE SIGNING

15   ONTO IF YOU ADOPT AN OPEN SOURCE LICENSE.

16       YOU ARE SIGNING ON TO THE FACT THAT WHATEVER RIGHTS YOU

17   OWN, YOU ARE GOING TO MAKE THEM AVAILABLE TO EVERYONE ELSE.

18       AND IT'S VERY CLEAR ABOUT THAT.  IT'S VERY CLEAR ABOUT

19   WHAT HAPPENS IF YOUR TECHNOLOGY HAPPENS TO BE COVERED BY A

20   PATENT.

21       AND THAT'S THE PART THAT THEY KEEP EMPHASIZING THAT

22   THAT'S NOT AN OPERATIVE PART OF THE CONTRACT WITHOUT CITING TO

23   YOUR HONOR ANY LAW THAT SAYS THAT.  IT'S PART OF THE CONTRACT

24   THAT THEY ARE RELYING ON.

25       AND IT SAYS THAT YOU HAVE TO LICENSE WHATEVER RIGHTS YOU

1   HAVE, THEN IN THE SECTION IMMEDIATELY BELOW THAT IT GOES INTO

2   SECTION ZERO AND SAYS THAT RUNNING ISN'T RESTRICTED, YOU ARE

3   ALLOWED TO RUN IT.

4        SO UNLESS THEY CAN COME UP WITH SOMETHING INDEPENDENT

5   THAT THESE PARTIES DID THAT WASN'T RUNNING THE SOFTWARE THAT

6   WASN'T AN OUT PUT OF THE SOFTWARE THEY ARE ALLOWED TO DO WITH

7   WHATEVER ANYONE ELSE TO DO WITH OPEN SOFTWARE.

8        THE COURT:  SO MR. JAMES, AS FAR AS YOUR POSITION,

9   YOUR CLIENT'S POSITION AT THIS POINT IN THE CASE, I TAKE IT YOU

10  ARE TELLING ME IT'S THE SAME AS IT WAS BEFORE THAT RUNNING AN

11  OUTPUT, YOU ARE IN THE CLEAR UNDER THE GPL.  EVEN IF THAT

12  WEREN'T TRUE, YOU HAVE RIGHTS SO AS LONG AS YOU ARE IN

13  COMPLIANCE WITH EACH OF THE RESTRICTIONS OF THE GPL, THERE'S

14  BEEN NO ALLEGATION, SUFFICIENT ALLEGATION YOU BREACHED ANY ONE

15  OF THEM.

16       IS THAT BASICALLY IT?

17       MR. JAMES:  IT IS.

18       AND IT'S A LITTLE HARD ON THIS ONE BECAUSE LAST TIME WE

19  WERE IN HERE THEIR POSITION WAS THAT WE COULD NOT COMPLY EVEN

20  IF WE WANTED TO BECAUSE WE DIDN'T KNOW ABOUT THE CODE.

21       NOW THEY ARE SAYING, AND THIS IS I THINK A VERY DANGEROUS

22  PART OF THEIR ARGUMENT THAT IT'S SORT OF I THINK THE ELEPHANT

23  IN THE ROOM, THIS HAS BEEN PICKED UP ON BY SOME BLOGGERS THAT

24  FOLLOW OPEN SOURCE ISSUES AND HAVE SAID THESE GUYS ARE SORT OF

25  THE NIGHTMARE THAT HAS BEEN AWAITING OPEN SOURCE FOR 20 YEARS.

1    THIS THEORY THAT -- WHAT THEY ARE SAYING NOW AS I

2    UNDERSTAND IT IS THE GPL HAS NO IMPACT ON PATENTS AT ALL AND IF

3    YOU WANT TO BE SAFE IN USING OPEN SOURCE SOFTWARE, YOU HAVE TO

4    GO TO THEM, DETERMINE WHETHER THEY HAVE A PATENT, AND THEN GO

5    GET A SEPARATE LICENSE TO IT.

6        I THINK THAT WOULD COME AS A VERY BIG SHOCK TO THE

7    THOUSANDS OF UPON THOUSANDS OF COMMERCIAL OF COMPANIES THAT

8    HAVE BEEN INVESTED IN OPEN SOURCE SOFTWARE.

9        IF THAT POSITION IS ADOPTED, THEN ANYONE IN XIMPLEWARE'S

10   POSITION CAN DO THAT THEY DID, PUT SOMETHING ON THEIR WEBSITE

11   THAT SAYS PLEASE COME DOWNLOAD OUR SOFTWARE, THEN THE SECOND

12   YOU DO IT AND YOU DO ANYTHING WITH IT YOU CAN BE SUED FOR

13   PATENT INFRINGEMENT.

14          THE COURT:  I DON'T WANT TO ANTICIPATE MR. RUSSO'S

15   RESPONSE, I SUSPECT ONE POINT HE MAY OFFER IS YOU ARE ALWAYS

16   FREE TO TAKE A COMMERCIAL LICENSE, RIGHT?

17          MR. JAMES:  YOU ARE.

18     BUT I THINK THAT'S THE TRADEOFF WITH THE GPL IS PART OF

19   WHAT YOU ARE GETTING IN RETURN FOR THE COMMUNITY INVESTMENT

20   THAT GOES INTO THE SOFTWARE FOR THE ADVANTAGES THAT YOU GET

21   BEING ABLE TO MARKET AND ENTER INTO AN OPEN SOURCE LICENSE IS

22   PEOPLE GET TO RUN IT.

23       AND THAT'S THE WHOLE REASON THAT PEOPLE FEEL SAFE IN

24   DOWNLOADING IT IS THEY ARE ALLOWED TO RUN IT, OTHERWISE THEY

25   WOULD BE FLIRTING WITH PATENT INFRINGEMENT EVERY TIME THEY RUN

1    IT.

2         AND THAT'S A LITTLE PERVERSE OF WHAT THEY HAVE DONE HERE,

3    YOUR HONOR, IS THIS SOFTWARE IS MADE FREELY AVAILABLE TO THE

4    PUBLIC AT NO CHARGE.  BUT IF YOU GO TO THEIR WEBSITE NOW WHAT

5    YOU ARE GOING TO SEE IS A DISCLAIMER AT THE BOTTOM THAT SAYS

6    THAT'S TRUE EXCEPT FOR ANYONE WE ARE IN LITIGATION WITH.

7         SO THE ONLY THING THESE CUSTOMER DEFENDANTS ARE ALLEGED

8    TO HAVE DONE WRONG HERE IS THEY HAD THE MISFORTUNE TO BUY

9    SOFTWARE THAT APPARENTLY HAD OPEN SOURCE CODE INSIDE OF IT THAT

10   DIDN'T HAVE ATTRIBUTIONS OR SOME MINOR VIOLATION OF THE GPL.

11        THERE'S NO ALLEGATION ANYWHERE IN THE COMPLAINT THAT THEY

12   INTENTIONALLY DID ANYTHING WRONG.  SO NOW EVERY OTHER PARTY IN

13   THE WORLD CAN GO TO THAT WEBSITE.  AND THE EASIEST WAY FOR ALL

14   THE CUSTOMER DEFENDANTS TO ACTUALLY COME INTO COMPLIANCE WOULD

15   BE TO DOWNLOAD A COMPLIANT COPY OF THEIR CODE.

16        BUT THEY WON'T LET US DO THAT, AND THAT'S WHY THIS HAS

17   ABSOLUTELY NOTHING TO DO WITH THIS SORT OF, WE'RE PROTECTING

18   THE INTEGRITY OF THE OPEN SOURCE SYSTEM WHEN WE CHOSE AN OPEN

19   SOURCE LICENSE, THEY WANT TO PREVENT THESE COMPANIES FROM GOING

20   TO THE WEBSITE AND ACTUALLY GETTING RIGHTEOUS, IN A SITUATION

21   WHERE THEY ADMIT THESE -- NOT ONLY DO THEY ADMIT THAT WE DIDN'T

22   DO ANYTHING INTENTIONALLY, LAST TIME THEY WERE ARGUING TO YOU

23   THAT WE COULDN'T HAVE BECAUSE WE HAD NO NOTICE THE CODE WAS

24   THERE.

25              THE COURT:  CAN I ASK YOU, MR. JAMES, WHY WOULDN'T

1    EXHAUSTION PROTECT PEOPLE IN YOU'RE CLIENT'S SITUATION IN THAT

2    SCENARIO?

3            MR. JAMES:  I THOUGHT ABOUT THAT A LITTLE BIT.  I

4    CAN'T GIVE YOU A FIRM ANSWER.

5            THE COURT:  YOU THOUGHT ABOUT IT MORE THAN I HAVE.

6            MR. JAMES:  I THINK THERE ARE ISSUES AROUND SOFTWARE

7    EXHAUSTION AND WHAT WAS THE CHAIN OF TITLE ON IT, WHEN YOU ARE

8    DEALING WITH BITS, I THINK THE EXHAUSTION DOCTRINE IS A LITTLE

9    BIT MORE UP IN THE AIR WHEN YOU ARE DEALING WITH A HARDWARE

10   COMPONENT.

11           THE COURT:  IT'S A THOUGHT ANYWAY.

12           MR. JAMES:  IT'S ONE I ACTUALLY DID THINK ABOUT.

13           THE COURT:  DOES ANYONE ELSE WANT TO BE HEARD ON

14   THIS.

15       MR. MASTER'S?

16           MR. MASTERS:  THANK YOU, JUDGE.  GOOD AFTERNOON.

17       I'M HERE ON BEHALF OF WADDELL & REED AND WE STAND AS A

18   CUSTOMER DEFENDANT.  AND I DON'T WANT TO REPEAT THE ARGUMENT

19   YOU OVERHEARD ESPECIALLY FROM MR. JAMES WHOSE CLIENT AND MY

20   CLIENT ARE VERY SIMILARLY SITUATED.

21       BUT I THINK THE ORDER THAT YOU ISSUED ALREADY HAS

22   NARROWED THIS CASE DOWN TO ONE OF DISTRIBUTION.  SO I DON'T

23   WANT TO GO THROUGH THAT.  BUT THERE'S A FEW THINGS.

24           FIRST, YOU ASKED ABOUT A DECLARATION TO MY CO-COUNSEL.

25           WELL, WADDELL & REED SUBMITTED A DECLARATION UNSIGNED TO

1    XIMPLEWARE WHEN THE COMPLAINT WAS FILED TO EXPRESS THE

2    FRUSTRATIONS WE HAD WITH THIS SOFTWARE IN THAT WE NEVER

3    DEPLOYED IT EXCEPT TO TRY TO TEST IT OUT TO GET IT WORKING, IT

4    DIDN'T WORK, AND BY MIDDLE OF 2012 IT WAS DONE, WE WERE DONE

5    WITH IT.

6         AND WE GOT BACK AND I DON'T WANT TO GET INTO THE DETAILS

7    OR DISTRIBUTIONS BUT ESSENTIALLY WHILE YOU USE THE SOFTWARE

8    THEREFORE YOU OWE US MONEY.  AND WE DISAGREED WITH THAT SO NOW

9    HERE WE ARE.

10        THE OTHER POINT JUDGE IS, AND YOU TOUCHED ON THIS BEFORE,

11   IS EVEN IF YOU DISMISS THESE CUSTOMER DEFENDANTS, THERE IS

12   STILL A CASE AGAINST VERSATA AND AMERIPRISE WHO IN MY OPINION,

13   JUDGE, AND MY CLIENT FIRMLY BELIEVES IS THE TRUE TARGET OF THIS

14   CASE.  IT'S NOT THE INNOCENT CUSTOMER DEFENDANTS WHO HAD NO

15   KNOWLEDGE OF THIS CODE THAT THEY MAY HAVE USED WHICH AS YOU

16   HAVE SAID IS LICENSED.

17        SO IN THE SECOND AMENDED COMPLAINT, JUDGE, PARAGRAPH 78

18   APPLIES TO WADDELL & REED.  THERE ARE SNIPPETS FROM OUR SEC

19   FILINGS.  WE HAVE THIS SET FORTH ON PAGE 5 OF OUR MOTION TO

20   DISMISS.

21        THAT IS THE ONLY NEW ALLEGATION WITH RESPECT TO WADDELL &

22   REED.  BUT THERE'S NO MENTION OF WHAT WADDELL & REED

23   DISTRIBUTES.

24        IN FACT, IF YOU LOOKED AT PAGE 15 OF THE OPPOSITION BY

25   XIMPLEWARE, WHAT THEY SAY IS IN EFFECT THAT THERE IS

```
1    DISTRIBUTION OF MATERIALS TO INDEPENDENT CONTRACTORS WHO

2    BENEFIT FROM THE USE OF THE DCM DCM SOFTWARE.

3          SO JUDGE, THEY ARE NOT EVEN SAYING WE ARE DISTRIBUTING

4    THE DCM SOFTWARE, THEY ARE SAYING WE ARE DISTRIBUTING SOME

5    MATERIALS.  THAT'S WHAT THEY TAKE OUT OF PARAGRAPH 78.

6          THE COURT:  AND OF COURSE THOSE ALLEGATIONS AS TO

7    MATERIALS AREN'T EVEN IN PARAGRAPH 78.  I DON'T SEE THE WORD

8    MATERIAL ANYWHERE.

9          MR. MASTERS:  THEY STILL CAN'T SAY IT.

10    JUDGE, IF YOU READ 78 IN CONTEXT, WADDELL & REED IS A

11    FINANCIAL COMPANY THAT SELLS FINANCIAL PRODUCTS, MUTUAL FUNDS.

12    THAT'S WHAT THEY DISTRIBUTE.

13          THEY ARE NOT IN THE BUSINESS AND THERE'S NO ALLEGATION THAT

14    THEY ARE IN THE BUSINESS OF WRITING CODE, WRITING SOFTWARE OR

15    SOURCE CODE OR ANYTHING LIKE THAT AND SELLING SOURCE CODE OR

16    DCM LIKE SOFTWARE TO THEIR CUSTOMERS OR THEIR INDEPENDENT

17    CONTRACTORS OR THINGS OF THAT SORT.  THEY DISTRIBUTE MUTUAL

18    FUNDS.

19          SO PARAGRAPH 78 ADDS THE ONLY NEW ALLEGATION IN THE SECOND

20    AMENDED COMPLAINT WITH RESPECT TO WADDELL & REED, ADDS

21    ABSOLUTELY NO ALLEGATION WHATSOEVER THAT WE DISTRIBUTE THE

22    SOFTWARE.

23          AND COUNSEL CANNOT COME UP HERE AND SAY THAT WE DISTRIBUTE

24    THE SOFTWARE, THEY KNOW WE DO NOT AND NOT THEY CAN'T ADD TO IT

25    TO A THIRD AMENDED COMPLAINT.
```

```
1              THE COURT:  OKAY.

2              MR. MASTERS:  IF I MAY JUST ADDRESS THE OTHER PART OF

3      THEIR OPPOSITION.

4              THE COURT:  OF COURSE.

5              MR. MASTERS:  JUDGE, THERE ARE SUCH SWEEPING

6      ALLEGATIONS IN THAT OPPOSITION THAT HAVE ABSOLUTELY NOTHING TO

7      DO WITH WADDELL & REED.

8          THEY MAY REFER TO REPRESENTATIONS MADE BY VERSATA OR

9      AMERIPRISE, I DON'T KNOW IF THEY WERE MADE.  THERE ARE

10     ALLEGATIONS THAT THOSE REPRESENTATIONS WERE MADE IN THE

11     COPYRIGHT CASE, SUCH AS THE USE, THE AGREEMENT TO USE PATCHES,

12     TO CHANGE THE SOURCE CODE.

13         JUDGE, THEIR ALLEGATIONS, THEY COULD CARE LESS WHO GETS

14     CAUGHT UP IN THIS WIDE NET THEY ARE TRYING TO CAST.  AND THEY

15     KNOW WADDELL & REED IS NOT PART OF THAT.  AND THEIR OPPOSITION

16     WAS NOT WRITTEN PROPERLY AND IT'S INAPPROPRIATE TO INCLUDE THAT

17     WITHIN THEIR OPPOSITION.

18             UNLESS THE COURT HAS ANY OTHER QUESTIONS.

19             THE COURT:  NO, I THINK I HAVE YOUR POSITION.

20             MR. MASTERS:  THANK YOU.  I APPRECIATE IT.

21             THE COURT:  ANYTHING ELSE FROM DEFENDANTS OR PERHAPS

22     I MAY TURN TO MR. RUSSO FOR ANY FURTHER ARGUMENTS.

23             MR. RUSSO:  THANK YOU, YOUR HONOR.

24         YOUR HONOR, WE HAVE ALWAYS TAKEN THE POSITION HERE AND WE

25     WILL CONTINUE THROUGH TRIAL TO TAKE THE POSITION THAT THESE
```

1    DEFENDANTS IS, ALL OF THEM HAVE STOLEN SOFTWARE.  STOLEN

2    SOFTWARE NO DIFFERENT THAN STEELING A BOOK FROM A LIBRARY.

3         THERE'S AN HONOR SYSTEM THAT PLAYS IN THE OPEN SOURCE

4    COMMUNITY JUST LIKE THERE'S AN HONOR SYSTEM FOR THE PUBLIC

5    LIBRARY SYSTEM.

6         THE PUBLIC LIBRARY SYSTEM THERE ARE LOTS OF BOOKS ON

7    SHELVES, SOME OF THEM ARE IN THE PUBLIC DOMAIN, SOME OF THEM

8    ARE NOT.  MOST OF THEM ARE NOT.  THE OPEN SOURCE SYSTEM HAS

9    INFORMATION AND SOFTWARE WHICH IS NOT IN THE PUBLIC DOMAIN.

10        MOST OF THE ASSERTIONS HERE AND THE ONES THIS MORNING ARE

11   ALMOST THE EQUIVALENT OF THESE DEFENDANTS CAN DO WHATEVER THEY

12   WANT BECAUSE THIS SOFTWARE IS FREE.  FREE DOES NOT MEAN IN THE

13   PUBLIC DOMAIN.  FREE MEANS IF THERE'S COMPLIANCE WITH THE HONOR

14   SYSTEM.

15        AND I WANT TO TAKE YOU THROUGH THIS IN A LITTLE BIT OF

16   DETAIL BECAUSE THE HONOR SYSTEM HAS BEEN BROKEN HERE, VERSATA

17   BROKE IT FROM THE GET GO.

18        VERSATA NEVER HAD A RIGHT TO GO FORWARD.  JUST LIKE

19   SOMEONE WHO WALKS INTO THE PUBLIC LIBRARY, VERSATA COULD GO

20   FORWARD AND READ WHATEVER IT WANTED TO IN THE SOURCE FORCE

21   SYSTEM.  YOU COULD EXTRACT EVERY BIT OF INFORMATION YOU WANT,

22   IT'S OPEN IN THAT SENSE, THERE'S NO TRADE SECRET CLAIM, THERE

23   CAN'T BE CONFIDENTIALITY, IT'S LIKE A PUBLIC LIBRARY SYSTEM.

24        SO STEP ONE, GOING INTO THE LIBRARY AND READING WHAT YOU

25   WANT IS FINE, NOT AN ISSUE.  BUT IN THE LIBRARY, IF YOU START

1    RIPPING OUT COPYRIGHT NOTICES, YOU START RIPPING OUT AUTHORSHIP

2    CREDIT, TRADEMARK NOTICES, PATENT NOTICES, LICENSE INFORMATION,

3    DISCLAIMERS OF WARRANTIES, YOU START RIPPING THAT ALL OUT, YOU

4    ARE NO LONGER IN COMPLIANCE WITH THE HONOR SYSTEM.  WHERE YOU

5    ARE IS YOU DO NOT EVEN HAVE THE RIGHT FROM THE GET GO UNDER GPL

6    VERSION TWO OR ANY FORM OF THE GPL TO SAY I AM LICENSED.

7         WE HAVE PLEADED, AND THEY SAY NOW IT'S INCONSISTENTLY

8    THAT VERSATA DID EXACTLY THAT.  THEY HAD NOT ANY RIGHT FROM THE

9    GET GO BECAUSE THERE WAS NEVER AN INSTANCE OF COMPLIANCE, NOT

10   FROM THE GET GO.  ZERO.  NO DIFFERENT THAN THE PERSON WHO IS IN

11   THE PUBLIC LIBRARY TAKING A COPYRIGHTED BOOK, RIPPING OUT ALL

12   IDENTIFYING INFORMATION.  NOW STEP 3.  THEY PUT THE BOOK IN

13   THEIR SHOPPING BAG AND WALK OUT OF THE LIBRARY.  THAT'S CALLED

14   A THEFT.

15        VERSATA WHEN THEY WENT FORWARD AFTER HAVING RIPPED OUT

16   ALL THE IDENTIFYING INFORMATION AND SAID WE ARE GOING TO

17   INTEGRATE THIS INTO OUR PRODUCT, THAT WAS A THEFT OF A COPY OF

18   OUR SOFTWARE.  JUST AS COUNSEL HAS SAID, TITLE NEVER PASSED.

19        XIMPLEWARE DOESN'T SAY YOU GET TO BE AN OWNER OF A COPY

20   OF THIS SOFTWARE SIMPLY FROM DOWNLOADING IT, HAVE YOU TO FOLLOW

21   THE HONOR SYSTEM.  WE HAVE PLEADED THAT FROM DAY ONE, MINUTE 1,

22   SECOND ONE, THEY DID NOT HONOR THE HONOR SYSTEM.

23        THEY ARE HERE TO SAY REGARDLESS OF WHETHER SOMEONE HONORS

24   THE HONOR SYSTEM, THE DOWN STREAM PURCHASER FOR VALUE FROM THAT

25   COMMERCIAL VENDOR BECOMES LIKE A CONFIDE PURCHASER.  I ASKED

1    WHERE, WHAT LAWS.  NOTHING IN THIS AGREEMENT SAYS SOMEHOW,

2    REGARDLESS OF WHETHER SOMEONE DOES SOMETHING RIGHT OR WRONG

3    USING THE HONOR SYSTEM, YOU GET TO DO WHATEVER YOU WANT TO DO.

4         THAT'S THE NEW GLOSS THEY ARE ASKING YOU TO PUT ON THE

5    VERSION 2 GPL.

6              THE COURT:  BUT THERE IS A LIMITED SAFE HARBOR

7    THOUGH, MR. RUSSO, THESE DOWNSTREAM ENTITIES.

8              MR. RUSSO:  THERE IS NOT.

9         NOT WHEN THERE'S BEEN A COMPLETE VIOLATION OF THE HONOR

10   SYSTEM.  THAT'S WHERE WE NEED SOME JUDICIAL INTERPRETATION

11   BECAUSE THE HONOR SYSTEM IS BUILT JUST LIKE THE LIBRARY IS

12   BUILT.

13        YOU ARE NOT GOING TO BE ALLOWED TO WALK INTO A LIBRARY JUST

14   BECAUSE YOU HAVE A LIBRARY CARD AND PUT A BUNCH MUCH BOOKS INTO

15   YOUR CHOPPING BAG AND BRIEFCASE AND WALK OUT.  YOU ARE NOT

16   ALLOWED TO DO THAT.  YOU CAN SAY I HAVE A LIBRARY CARD, MY NAME

17   IS IN THE REGISTER.  YOU DIDN'T FOLLOW THE HONOR SYSTEM.

18   POLICE CAN BE CALLED TO ARREST YOU FOR STEELING THOSE BOOKS.

19   IT'S A THEFT.

20        NOW SELLING THE BOOKS IN FRONT OF A LIBRARY TO SOMEONE

21   THAT THEY PRIVACY ACTS YOU COMMERCIAL VALUE, THEY WOULD HAVE TO

22   PROVE SOMEHOW THAT THEY WERE WITHOUT NOTICE AND THAT THEY HAD

23   NO OPPORTUNITY TO LEARN OF ANY OF THIS AND THEY DIDN'T ASK THE

24   RIGHT QUESTIONS IN FACT THEY HAVEN'T DONE ANY AGREEMENTS.

25        IN ALL THEIR AGREEMENTS WITH VERSATA, THEY DID APPARENTLY

1    PUT SOME PROTECTION IN FOR THEMSELVES.  THEY KNEW THAT THERE

2    WAS SOME RISK THAT THERE COULD BE STOLEN SOFTWARE INSIDE THE

3    SOFTWARE THAT THEY RECEIVED.

4        THEY ARE JUST HERE ASSERTING A NEW THEORY FOR THE HONOR

5    SYSTEM WHICH IS DOWN STREAM PEOPLE ARE AUTOMATICALLY PROTECTED

6    BECAUSE OF THE STATEMENT, ONE STATEMENT THAT THEY TAKE WHICH WE

7    THINK THEY TAKE OUT OF CONTEXT, THAT SAYS RUNNING THE SOFTWARE

8    YOU RECEIVE WHEN YOU RECEIVE IT FROM SOMEONE WHO HAS HONORED

9    THE HONOR SYSTEM AND HAS GOOD TITLE TO BEGIN WITH OR GOOD

10   LICENSE RIGHTS TO BEGIN WITH, NOT WHEN THERE'S NO LICENSE AT

11   ALL, NOT WHEN THE HONOR SYSTEM HAS BEEN BROKEN.

12       THAT'S THE THEORY OF OUR COMPLAINT.  THAT'S WHY THE WHOLE

13   TALE OF WOE, THAT THE COMPLETE OPEN SOURCE SYSTEM IS GOING TO

14   CRASH, IS NONSENSE.

15       WE ACTUALLY HAVE A VERY NARROW, VERY SPECIFIC FACT-BASED

16   CASE WHICH WE HAVE PLED WHICH UP UNTIL NOW THERE JUST ISN'T AN

17   ACKNOWLEDGEMENT OF WHAT'S HAPPENED WITH THE EXCEPTION THAT

18   MR. BRIDEN AND THE DECLARATION IN FRONT OF JUDGE ILLSTON MONTHS

19   AGO SAID, WE ARE GOING TO MAKE SURE WE FIX THIS.  WE ARE GOING

20   TO GET IT DONE RIGHT AWAY.

21       HERE WE ARE NINE MONTHS LATER AND WE HAVE TO MOVE FOR A

22   RE REVIEW OF THE REQUEST FOR THE INJUNCTION AND THE RESTRAINING

23   ORDER BECAUSE THEY STILL HAVEN'T DONE THAT.  THEY STILL HAVEN'T

24   MADE THE CHANGES.

25       SO THE REALITY OF THE CURRENT SYSTEM IS FROM OUR POINT OF

1    VIEW, IS THE WAY TO INTERPRETER AND THIS IS WHY I SUGGEST

2    READING IT BACKWARDS BECAUSE WHEN YOU READ IT BACKWARDS IT

3    BECOMES VERY CLEAR.

4        NUMBER ONE, VERSATA SHOULD HAVE ASKED FOR PERMISSION FROM

5    US FOR WHAT WANTED TO DO.  THEY DIDN'T.  THAT'S FROM

6    PARAGRAPH 10 HERE.  ADDITIONALLY THEY SAY, WELL, PATENTS CAN'T

7    BE PART OF THIS.

8        PARAGRAPH 8 SAYS, IF THE DESTRUCTION AND/OR USE OF THE

9    PROGRAM IS RESTRICTED IN CERTAIN COUNTRIES EITHER BY PATENTS OR

10   BY COPYRIGHTED INTERFACES, THE ORIGINAL COPYRIGHTED HOLDER WHO

11   PLACES THE PROGRAM UNDER THIS LICENSE MAY ADD AN EXPLICIT

12   GEOGRAPHIC DISTRIBUTION LIMITATION EXCLUDEING THOSE COUNTRIES.

13       SO TO SAY THAT SOMEHOW WE ARE PREVENTED FROM SAYING THAT

14   WE HAVE PATENT RIGHTS AND LETTING PEOPLE KNOW THAT IF YOU DO

15   NOT FOLLOW THE HONOR SYSTEM THERE'S GOING TO BE CONSEQUENCES,

16   IS FALSE.

17           THE COURT:  WOULD YOU AGREE THAT THAT LANGUAGE, EVEN

18   UNDER YOUR OWN INTERPRETATION, IMPOSES AN AFFIRMATIVE DUTY TO

19   PUT THE DOWNSTREAM USERS ON NOTICE THAT YOU ARE ASSERTING OR

20   MAINTAINING YOUR PATENT RIGHTS AND THE LIKE?

21           MR. RUSSO:  WHEN WE FIND OUT THERE'S BEEN A BREACH OF

22   THE HONOR SYSTEM AND THAT THESE DOWNSTREAM PEOPLE HAVE IT AND

23   WE GIVE THEM NOTICE IN THE LAWSUIT AND THEY SAY, WE ARE GOING

24   TO CONTINUE TO USE THE SOFTWARE, AND A DAY LATER THEY SAID WE

25   ARE GOING TO STOP USING THE SOFTWARE, WE WILL JUST STOP IT, WE

1    WILL END, TAKE US OUT OF THIS CASE, THERE WOULD HAVE BEEN NO

2    CONTINUED CASE HERE.  WE WOULD HAVE SAID THAT YOU ARE FOLLOWING

3    THE HONOR SYSTEM.

4        THAT'S NOT WHAT'S HAPPENING HERE.  INSTEAD IT'S, FROM OUR

5    POINT OF VIEW, WE CAN STRETCH THIS LICENSE, THIS GPL VERSION 2

6    TO APPLY TO ANY CIRCUMSTANCES WHATSOEVER, WHETHER THE HONOR

7    SYSTEM HAS BEEN FOLLOWED OR NOT.  THAT'S THE CORE OF OUR CASE.

8        OUR CASE IS THIS IS STOLEN SOFTWARE.  THEY HAVE RECEIVED

9    STOLEN SOFTWARE.  IF WE PROVE THAT, THEY HAVE STOLEN SOFTWARE.

10   THEY SHOULD NOT BE CONTINUING TO USE THAT STOLEN SOFTWARE.

11   THAT'S WHAT IT COMES DOWN TO.

12       THEY WOULD LIKE TO SAY WE DON'T HAVE STOLEN SOFTWARE.  WE

13   HAVE SOFTWARE YOU PUT UP ON THE GPL AND ONCE YOU DO THAT YOU

14   CAN'T COMPLAIN ABOUT ANY OF IT --

15       THE COURT:  I'M SORRY TO INTERRUPT YOU, MR. RUSSO, I

16   THINK THEY ARE SAYING THAT, BUT I THINK THEY ARE SAYING

17   SEPARATE AND APART FROM THAT, THAT THERE'S NO SUFFICIENT

18   ALLEGATION IN THIS COMPLAINT THAT SUGGESTS THEY FURTHER

19   DISTRIBUTED IT TO THESE INDEPENDENT ADVISORS.

20       MR. RUSSO:  SEE, THAT'S A SEPARATE ARGUMENT ALONG THE

21   LINES OF WHAT COULD YOU THINK WAS SUGGESTING.

22       WE WILL GO TO THE GPL AND WE WILL DOWNLOAD FOR OURSELVES

23   AND WE WILL INTEGRATE FOR OURSELVES.  WE WILL DO ALL THE WORK

24   OF RE PIPING THIS THING OURSELVES, AND THEN WE WILL HAVE A

25   DIRECT RELATIONSHIP WHERE WE DON'T -- WE WILL GO BACK TO THE

1    LIBRARY, WE ARE NOT GOING TO RIP ANYTHING OUT, WE ARE GOING TO

2    FOLLOW THE HONOR SYSTEM, WE ARE GOING TO FOLLOW THE RULES, AND

3    WE ARE GOING TO RE LICENSE OURSELVES.

4        THEY DIDN'T DO THAT.  THAT'S POINT ONE.

5        POINT TWO IS IT'S TOO LATE FOR THEM TO DO THAT NOW.

6    BECAUSE TO IMAGINE THAT SOMEONE WHO HAS BEEN TAKEN ADVANTAGE

7    OF, AND XIMPLEWARE AS A SMALL COMPANY CERTAINLY FEELS LIKE IT'S

8    BEEN TAKEN ADVANTAGE OF, CAN SOMEHOW NOT SAY IN THE SOURCE

9    BOARD SYSTEM, IF YOU ARE ONE OF THE DEFENDANTS IN THESE

10   LAWSUITS OR SOME CONTRACTOR WORKING FOR THEM, THERE IS NO RIGHT

11   FOR YOU TO DOWNLOAD THIS SOFTWARE BECAUSE WE DON'T AGREE THAT

12   YOU SHOULD EVEN BE ABLE TO GO BACK TO THE HONOR SYSTEM, NO

13   DIFFERENT THAN THE LIBRARY SAYING HEY, YOU STOLE A BOOK FROM

14   US, WE ARE NOT LETTING YOU BACK IN THE LIBRARY.  WE ARE

15   REVOKING YOUR LIBRARY CARD.  YOU HAVE NO PRIVILEGES TO BE HERE.

16       THEY HAVE NO PRIVILEGES ANYMORE, YOUR HONOR.  THAT'S THE

17   CURRENT FACT OF LIFE HERE.  WHAT THEY ARE SAYING IS YOU CAN'T

18   DO THAT.  ONCE YOU DECIDE THAT THERE'S GOING TO BE SOME SORT OF

19   USE OF THE OPEN SOURCE SYSTEM, YOU HAVE NO REMEDIES, EVEN IF

20   THE SOFTWARE IS PROVEN TO BE STOLEN, YOU HAVE NO REMEDIES AT

21   ALL.

22       THAT CAN'T BE THE LAW.  THAT CAN'T BE THE LAW IN A

23   CIRCUMSTANCE WHERE YOU PROVE THAT IT'S STOLEN SOFTWARE.  AND IT

24   ISN'T WHAT THIS GPL VERSION TWO SAYS, IN FACT IN EVERY INSTANCE

25   WHERE THERE'S A SUGGESTION ABOUT SOMEONE HAVING RIGHTS, IT GOES

1   ON TO SAY THINGS LIKE, SO LONG AS SUCH PARTIES REMAIN IN FULL

2   COMPLIANCE.  IT REPEATS THAT OVER AND OVER AGAIN.

3         SO TO USE THE SORT OF VIEW OF WELL YOU KNOW THERE WAS

4   SOME MINOR VIOLATIONS, NOTHING WAS COMPLIED WITH, ZERO.  EVEN

5   TO THIS DAY.  EVEN AFTER NOTICE.

6         IT'S A LITTLE BIT LIKE, WE DON'T CARE, WE ARE DONE.  WE

7   CAN DO WHATEVER WE WANT.  THAT MIGHT BE GREAT FOR THEM, IT'S

8   NOT VERY FAIR, SO A SOFTWARE AUTHOR WHO HAS PUT MILLIONS OF

9   DOLLARS WORTH OF TIME AND MONEY INTO PRODUCING SOMETHING THAT

10  HE WANTS TO BE FOLLOWING THE HONOR SYSTEM, AND IT'S NOT.

11        IT'S NOT THE BASIS OF OUR INTELLECTUAL PROPERTY SYSTEM.

12  AND IT CERTAINLY IS THE EQUIVALENT OF PUBLIC DOMAIN.  THERE'S

13  NO REMEDY.  YOU PUT THE WORK IN THE PUBLIC DOMAIN.

14        THAT'S REALLY WHAT THEY ARE SAYING, YOUR HONOR, THERE'S

15  NO REMEDY BECAUSE THE OPEN SOURCE APPROACH IS ESSENTIALLY

16  PUBLIC DOMAIN AND THAT'S NOT WHAT IT IS AT ALL.

17              THE COURT:  THANK YOU.

18        THANK YOU MR. RUSSO.

19        MR. JAMES, ANYONE ELSE WANT TO MAKE A BRIEF REBUTTAL?

20              MR. JAMES:  YOUR HONOR, AGAIN, WITH HIS ARGUMENT THAT

21  SOMEHOW BECAUSE VERSATA BREACHED NO ONE ELSE CAN POSSIBLY BE IN

22  COMPLIANCE, THAT'S SORT OF WHAT YOU HEARD LAST TIME, BUT

23  THERE'S A REALLY FUNDAMENTAL PROBLEM WITH THAT.

24        AGAIN, THEY ARE PICKING AND CHOOSING THE PROVISIONS OF

25  THE GPL THAT THEY LIKE AND IGNORING THE ONES THAT THEY DON'T.

1    THE GPL EXPLICITLY DEALS WITH THIS SITUATION IN SECTION 6.  IT

2    SAYS, YOU GET A LICENSE THAT IS NOT WITH YOUR UPSTREAM

3    LICENSOR, THAT EVERY TIME SOMEONE IN THAT CHAIN ISSUES A

4    LICENSE, THERE'S A LICENSE WITH THE ORIGINAL LICENSOR.

5         AND SECTION 6 COULDN'T BE MORE CLEAR ABOUT IT.  EACH TIME

6    YOU REDISTRIBUTE THE PROGRAM, THE RECIPIENT AUTOMATICALLY

7    RECEIVES A LICENSE FROM THE ORIGINAL LICENSOR TO COPY

8    DISTRIBUTE OR MODIFY THE PROGRAM.

9         THE GPL AUTHORS, THIS IS ONE THING THEY GOT RIGHT, THEY

10   ANTICIPATED A SITUATION WHERE AN UPSTREAM LICENSOR COULD

11   POTENTIALLY BREACH AND THE DOWNSTREAM PEOPLE HAD NO WAY TO

12   PROTECT THEMSELVES.

13        SO THE WAY THEY HANDLED THAT WAS THE COMBINATION OF

14   SECTION 6 WHICH SAYS YOU GET AN AUTOMATIC LICENSE WITH THE

15   LICENSOR.

16        THEN SECTION 4 THAT ALSO DEALS WITH THE FACT THAT YOU

17   CAN'T TERMINATE THE LICENSE AS LONG AS THE PARTIES REMAIN IN

18   FULL COMPLIANCE.

19        NOW IN THIS CASE THEIR ARGUMENT IS, AGAIN, WE ARE BACK TO

20   WHAT THEY ARGUED LAST TIME.  THERE'S NO WAY THESE PARTIES COULD

21   EVER GET RIGHTS ON THE UNDER THE LICENSE BECAUSE THEY DIDN'T

22   KNOW THAT THIS CODE WAS IN THERE.

23        I THINK THE COURT HAS TO READ THAT WITH, THERE CAN'T BE

24   ANY INDEPENDENT SUBSEQUENT VIOLATION.

25        AND IN THIS CASE THEY HAVEN'T, AND THIS IS WHERE THE

1    DESTRUCTION COMES IN AGAIN.  SO YOU'VE GOT SECTION 6 THAT SAYS,

2    SECTION 6 AND SECTION 4 THAT TOGETHER SAY YOU HAVE A LICENSE

3    WITH THE ORIGINAL LICENSOR IF SOMEONE ABOVE YOU BREACHES.

4        THEN FOR THEM TO GET AROUND THAT THEY HAVE TO PLEAD UNDER

5    TWOMBLY IQBAL STANDARDS THAT THERE WAS A DISTRIBUTION OR

6    SOMETHING ELSE THAT VIOLATED THE LICENSE.  THAT'S WHERE THEY

7    FAIL.

8        SO THESE ISSUES, THEY REALLY AREN'T INDEPENDENT.  YOU

9    HAVE TO FIRST START WITH THE GPL AND WHAT IT SAYS IN 4 AND 6,

10   AND THEN ASK, DID THEY THEN MEET THE STANDARD FOR PLEADING, WE

11   DID SOMETHING WRONG.  AND THEN YOU ARE ON THE DISTRIBUTION,

12   HAVE THEY EFFECTIVELY PLEADED DISTRIBUTION BY MY CLIENT, BY THE

13   CUSTOMER CLIENTS, NO.

14           THE COURT:  ALL RIGHT.

15           MR. JAMES:  AND YOUR HONOR ONE OTHER THING I WOULD

16   ADD, THIS MAY BE ANTICIPATING FURTHER MOTIONS PRACTICE, BUT THE

17   REPRESENTATION THAT SOMEHOW ALL THIS WOULD HAVE ENDED IF THE

18   CUSTOMERS HAD JUST SIMPLY STOPPED USING THE SOFTWARE IS

19   ABSOLUTELY UNTRUE.

20       THERE HAVE BEEN DISCUSSIONS AMONG THE PARTIES ABOUT THAT

21   EXACT ISSUE AND AT LEAST WITH MY CLIENT WHEN IT WAS REPRESENTED

22   THAT THEY WERE STOPPING USING THE SOFTWARE OR MOVING COMPLETELY

23   TO A VERSION THAT HAS NO XIMPLEWARE SOFTWARE CODE IN IT.

24           THE COURT:  YOU ARE STILL HERE.

25           MR. JAMES:  WE'RE NOT ONLY STILL HERE, THE RESPONSE

1    IS NOW WE ARE BACK TO THE SORT OF NO LICENSE ISSUE THAT WE ARE

2    STILL WIDE OPEN TO PATENT INFRINGEMENT SUITS NO MATTER WHAT WE

3    DO.

4         SO IF IT'S IN THERE, THEY CAN SUE US, IF WE PULL IT OUT,

5    THEY CAN SUE US.

6              THE COURT:  THANK YOU, MR. JAMES.

7         ANYONE ELSE?

8              MR. MASTERS:  IF I MAY BRIEFLY, YOUR HONOR.

9              THE COURT:  SURE.

10             MR. MASTERS:  THE FIRST POINT WHICH I BELIEVE COUNSEL

11   WAS UP HERE TRYING TO REARGUE WAS SOMETHING YOU ALREADY DECIDED

12   ON PAGE 9 OF YOUR ORDER.

13        YOU STATE, THE REASON IS THAT THE GPL PROVIDES THAT EVEN

14   IF THE ORIGINAL LICENSEE, HERE ONE OF THE VERSATA ENTITIES,

15   BREACHES ITS LICENSE FOR WHATEVER REASON, THIRD PARTY CUSTOMERS

16   OF THAT ORIGINAL LICENSE RETAIN THE RIGHT TO USE XIMPLEWARE

17   SOFTWARE SO LONG AS THE CUSTOMER DOES NOT ITSELF BREACH THE

18   LICENSE BY "DISTRIBUTING" XIMPLEWARE SOFTWARE WITHOUT

19   SATISFYING AN ATTENDANT CONDITIONS.

20        AND COUNSEL WAS JUST TRYING TO REARGUE THE POINT THAT'S

21   ALREADY BEEN DECIDED BY THIS COURT.

22        THE SECOND, IF SOMEBODY STOLE BOOKS, IT WASN'T THE

23   CUSTOMER DEFENDANTS.  I DON'T KNOW WHAT VERSATA DID, JUDGE, BUT

24   IF I BUY A BOOK ON THE OPEN MARKET AND THE AUTHOR PLAGIARIZED

25   PORTIONS OF THAT BOOK, ME AS THE PURCHASER OF THAT BOOK IS NOT

1   RESPONSIBLE.

2        AND YOU HAVE ALREADY RULED WE CAN USE IT, IT'S VERY

3   CONSISTENT.

4        NOW IF I TAKE THAT BOOK, JUDGE, AND I GO START SELLING IT

5   TO MAKE A PROFIT ON IT, THAT MAY BE A DIFFERENT ISSUE BECAUSE

6   NOW I'M DISTRIBUTING IT.

7        AND THOSE FACTS DO NOT LINE UP HERE.  WADDELL & REED

8   SHOULD NOT BE IN THIS CASE.

9        AND JUST THE LAST THING, JUDGE, WE TOLD XIMPLEWARE WHEN

10  THIS CASE WAS FILED, WE HAVEN'T USED THE SOFTWARE SINCE THE

11  MIDDLE OF 2012, AND JUDGE, I'M STILL HERE.

12            THE COURT:  ALL RIGHT.  THANK YOU.

13       I WILL TAKE THE MATTERS UNDER SUBMISSION.  I WILL GET AN

14  ORDER OUT AS QUICKLY AS I CAN.

15            MR. COLLARD:  YOUR HONOR, THIS IS CASE COLLARD FOR

16  AMERIPRISE.

17            THE COURT:  MR. COLLARD, GO AHEAD.

18            MR. COLLARD:  I WOULD JUST ADD BRIEFLY LOOKING AT THE

19  ISSUE HERE, AGAIN WITH THE OTHER DEFENDANTS, I THINK THERE ARE

20  SIMILAR ISSUES THAT PROBABLY WARRANT ANOTHER LOOK IN

21  AMERIPRISE'S CASE.

22       THERE ARE SOME SLIGHT DISTINCTIONS BETWEEN THE FACTUAL

23  ALLEGATIONS THAT WERE ADDED IN.  BUT OVERALL, THE POSTURE OF

24  AMERIPRISE IS EXACTLY THE SAME AS THE OTHER CUSTOMER

25  DEFENDANTS.  IT'S REALLY NO DIFFERENT AT ALL.

1          AND YOU KNOW, ONE THING THAT I THINK WASN'T ADDRESSED IN

2     DEPTH TODAY THAT I DO JUST WANT TO MENTION VERY BRIEFLY.  AT

3     ONE POINT I BELIEVE IT WAS MR. JAMES THAT SAID IF THERE WAS A

4     NAMED THIRD PARTY THAT WAS -- RECEIVED THE SOFTWARE, THEN THEY

5     COULD STATE A VALID CLAIM.

6          I DO WANT TO POINT OUT I THINK THIS CASE IS OBVIOUSLY

7     DIFFERENT IN KIND THAN THE CASE IN FRONT OF JUDGE ILLSTON

8     BECAUSE IT'S PATENT ISSUES, COPYRIGHT ISSUES, AND I THINK IT'S

9     REALLY IMPORTANT TO GO BACK TO THE PATENT STATUTE ITSELF AND

10    LOOK AT ISSUE OF USE AND HOW ITS USED TO FACTOR INTO THE GPL AS

11    OPPOSED TO DISTRIBUTION AND SOME OF THE OTHER ACTIVITIES THAT

12    ARE CLEARLY COVERED.

13         AND I THINK THAT SORT OF ANSWERS THIS ISSUE ON THE

14    LIBRARY ANALOGY, RIGHT, IS THAT WHO IS THE PERSON THAT IS

15    LIABLE TO XIMPLEWARE IF THERE WAS WRONGDOING?  IS IT THE READER

16    OF THE BOOK THAT WAS STOLEN, THE PERSON LISTENING TO THE SONG

17    ON THE JUKEBOX OR IS ANYBODY A PARTY THAT DIDN'T FOLLOW THE

18    RULES OF THE GPL AND THEN WAS SELLING THE PRODUCT THAT

19    INCORPORATED THE OPEN SOURCE LICENSING.

20         SO, YOU KNOW, I DO THINK THAT THAT MERITS A LITTLE BIT OF

21    THOUGHT AND I DID JUST WANT TO ADD THAT.

22         THAT'S ALL I HAVE.

23          THE COURT:  I WELCOME THOSE COMMENTS, MR. COLLARD.

24     I WILL POINT OUT, PERHAPS I MISUNDERSTOOD, THERE IS ONE

25    DIFFERENCE BETWEEN YOU AND SOME OF THE OTHERS, I DON'T HAVE A

1    MOTION FROM YOU, DO I?

2            MR. COLLARD:  THAT IS CORRECT.  THAT IS ONE

3    DIFFERENCE.

4            THE COURT:  ALL RIGHT.

5        I WILL TAKE THIS MATTER UNDER SUBMISSION AND WISH YOU ALL A

6    VERY GOOD AFTERNOON.

7        THANK YOU.

8        (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                      **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 9/13/14