1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12 **XimpleWare Corp.**, a California
   Corporation,                              Case No. 5:13-cv-5161-PSG
13
                  Plaintiff;                 **DECLARATION OF LAWRENCE ROSEN**
14
          v.
15
   **Versata Software, Inc., f/k/a Trilogy
16 Software, Inc.,** a Delaware corporation;
   **Trilogy Development Group, Inc.**, a
17 California corporation; **Ameriprise
   Financial, Inc.,** a Delaware corporation;
18 **Ameriprise Financial Services, Inc.**, a
   Delaware corporation; **Aurea Software, Inc.,
19 a/k/a Aurea, Inc.,** a Delaware corporation;
   **Pacific Life Insurance Company**, a
20 Nebraska corporation; **United HealthCare
   Services, Inc.**, a Minnesota corporation;
21 **Metropolitan Life Insurance Company**, a
   New York corporation; **The Prudential
22 Insurance Company of America**, a New
   Jersey corporation; **Wellmark, Inc.**, an Iowa
23 corporation, **Waddell & Reed Financial,
   Inc.**, a Delaware corporation; and **Aviva USA
24 Corporation**, an Iowa corporation,

25                Defendants.

26

27

28

Declaration of Lawrence Rosen                    1                    Case No. 5:13-cv-5161-PSG

Computerlaw Group LLP
www.computerlaw.com℠

I, Lawrence Rosen, declare as follows:

1. I have been retained as an expert by Plaintiff XimpleWare Corp. and its counsel in this case, Computerlaw Group LLP.

2. I am an attorney, and I have been a member of the State Bar of California (SB#173632) since 1994. I am a partner at a law firm called Rosenlaw & Einschlag with offices in Ukiah and Los Altos Hills, California. I was the founding general counsel of Open Source Initiative and in that role was responsible for coordinating the approval and dissemination of open source licenses to the world. I have authored several open source licenses, including the Academic Free License (AFL), the Open Software License (OSL), and the Non-Profit Open Software License (NOSL). I am also the author of many articles—for both academic and lay audiences—on open source licensing, as well as the book *Open Source Licensing: Software Freedom and Intellectual Property Law*, which was published by Prentice Hall in 2004. I taught open source law at Stanford Law School, and have led numerous continuing education programs for attorneys in this field.

3. I have reviewed XimpleWare's Second Amended Complaint (Dkt. 88), which I understand several defendants oppose with motions to dismiss. I also understand that some defendants are threatening to bring motions for sanctions under Rule 11 unless XimpleWare withdraws the Second Amended Complaint.

4. I have also reviewed this Court's order of May 16, 2014 (Dkt. 85) on the defendants' previous motions to dismiss XimpleWare's First Amended Complaint.

5. I am intimately familiar with the open source license at issue in this case, version 2 of the General Public License, or "GPL". A copy of the GPL is attached as **Exhibit 1**.

6. I agree with the Court that judicial precedents on the GPL are incredibly sparse. It is quite accurate to say that, even today, the law of open source licensing and the interpretation of the GPL are both unsettled in several areas including, as the Court noted previously, "an elementary question arising from the license: what does it mean to distribute?" (Dkt 85, 2:19–20)

7. There is another important question arising from this license: what patent rights are licensed by the GPL? This is an important question of license interpretation that has never been answered with certainty.

8. I have been informed by XimpleWare that there is no express patent license, nor any other express license, between XimpleWare and any defendant in the case. Counsel has also told me that they made multiple requests to the various defendants to clarify on what patent license they rely, and that there was no response.

9. The only potentially applicable license is the GPL, under which XimpleWare publishes its software on the Internet.

10. I understand that the various defendants in this case contend, and are asserting as a defense, that they have a license to XimpleWare's patents under the GPL.

11. Although the GPL is described as a "public license", this license was not granted to the public at large; it is only between a specific licensor (XimpleWare) and licensees who accept the license.

12. To be a GPL licensee, one must know about the license and know about the software. Such notice is an express requirement of the GPL because the goal for GPL software, like all open source software, is to be published and shared and improved upon without locking it into proprietary systems.

13. I have reviewed XimpleWare's Second Amended Complaint, and the facts alleged are that Versata included a version of XimpleWare's VTD-XML software within its DCM product, but without including a copy of the GPL itself, nor making any other identification or attribution to XimpleWare. Versata's customers therefore had no knowledge of the license, or even of the existence of the VTD-XML software itself. They cannot be licensees because they had no license with the copyright and patent owner of the software, nor did they even have any awareness of the availability of a license.

14. There is no **express** patent license in the GPL—and I am not aware of anyone in the open source community who contends that there is—so I understand the defendants' contention to be that they have a patent license that is **implied** by the GPL's other express terms.

Computerlaw Group LLP
www.computerlaw.com℠

15. The subject of implied patent licenses in open source licenses is a matter of substantial debate within the open source community and among open source lawyers and experts. Many efforts at clarification have been made in the years since version 2 of the GPL was published in June 1991. For example, version 2.0 of the Apache License (attached as **Exhibit 2**), which was published in January 2004—more than a decade after the GPL—contains an express patent license in its § 3, which is unambiguously titled "Grant of Patent License." There is no such clause in the GPL.

16. There are some lawyers (myself among them) who fail to find any implied patent license in the GPL, and who argue that the GPL expressly prohibits the distribution of patent-encumbered software altogether in jurisdictions where the patent applies. There are other attorneys who have identified or seem to identify implied patent licenses, although even among them there is debate about the scope of such implied patent licenses. There is no agreement, even if there is a patent license implied in the GPL, whether it applies to anything more than the single copy that was obtained in conformity with the license, or whether it applies to copies of derivative works such as those received and used by the defendants in this case.

17. I gather that the defendants rely on a single statement in Section 0 of GPL that says "[t]he act of running the Program is not restricted." Defendants are misreading that statement. It means, in my opinion, that the GPL's **copyright** grant itself (which is all there is in the GPL) does not restrict the act of running the program. Nor could it; that is a true statement because running a program is not one of the copyright rights enumerated in 17 U.S.C. § 106 that can be the subject of a copyright license. The authors of the GPL licenses have themselves made that argument repeatedly: the **use** of software is simply not a **copyright** issue.

18. Under 17 U.S.C. § 117, the only additional right the "owner of a copy of a computer program" has is to make a single copy in memory to run the program, or for archival purposes. He has no right of distribution or any other rights under 17 U.S.C. § 106.

Because the GPL is strictly a copyright license, it is this § 117 "use" that the GPL discusses—not "use" of a patent.

19. Nor is there any evidence that I'm aware of that the defendants, as required under § 117, were the "owners" of a valid copy of the GPL-licensed software authorized to make even that limited "use" of the software.

20. The GPL is not the sole source of conditions on GPL-licensed software. Other conditions may, for example, be imposed by law (*e.g.*, export restrictions) or, as in this case, by patents. The GPL actually address this cirumstance. Section 7 states, in part:

> 7. If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

21. In plain language, what this means is that a party cannot distribute GPL-licensed software if it is otherwise precluded from doing so because of patents. This, of course, would have been a natural place for the GPL's drafters to include an express patent license, but there is none.

22. This GPL prohibition on distributing patent-encumbered software is repeated in GPL Section 8, which Versata and the distributing defendants failed to honor when they distributed the plaintiff's patented software:

> 8. If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

23. Because of the widespread publication of open source licenses and software, the defendants knew or should have known that patents are important even in open source software, and that patent licenses may be needed. The fact is that Versata hid the presence

Computerlaw Group LLP
www.computerlaw.com℠

of patented software from its customers in breach of the GPL. The customers were (presumably) innocent infringers, but they were infringers nonetheless.

24. I have been informed that the defendants continue to use XimpleWare software and thus continue to infringe despite assurances to the Court in the copyright case on December 4, 2013, that such uses would promptly cease.

> THE COURT: … I'm going to take note of the representations that have been made in the papers about the fact that Versata has no new customer sales of DCM and does not anticipate closing any additional sales during the 2013 calendar year; that all references to XimpleWare of the versions of DCM that have been created have been removed and a patch has been created which will be sent to all the customers; all those representations I'm taking as true and I'm going to require, as time goes by, that I get proof it did, in fact, happen.

Transcript of TRO Hearing at 36:25–37:9, *XimpleWare Corp. v. Versata, et al.*, N.D. Cal. no. 3:13-cv-05160-SI, Dkt. 46 (Dec. 4, 2013).

25. At a hearing before the Court on March 14, 2014, the defendants admitted in the copyright case that they had not yet ceased use of the infringing software.

> THE COURT: Very, very briefly. Have you fixed it yet? Have you fixed it yet? Has it been -- has the patch been put in yet?
>
> …
>
> THE COURT: You're saying it's been done.
>
> MR. BOHRER: Well, there are in- -- I can't tell you that in every instance it's been done, no, Your Honor, …
>
> …
>
> THE COURT: So you've been talking about it quite a lot.
>
> MR. BOHRER: Yes.
>
> THE COURT: But you just haven't done it yet.

Transcript of Motion to Dismiss Hearing at 22:7–23:23, *XimpleWare Corp. v. Versata, et al.*, N.D. Cal. no. 3:13-cv-05160-SI, Dkt. 82 (Mar. 14, 2014).

26. I also note that having a license is an **affirmative defense** to patent infringement. It is not a plaintiff's burden in its complaint to disprove that a defendant has a license, or any other affirmative defense. The plaintiff's burden at this stage of the litigation is to make a

*prima facie* showing that there has been infringement. The defendant may then assert license as an affirmative defense, but it is that defendant's burden to prove it. To require a patent plaintiff, in a complaint, to disprove a defendant's affirmative defense of license would be exceptional and improper, not in the spirit of the Federal Rules of Civil Procedure, and certainly well beyond what Rule 11 is supposed to require.

27. As I have stated above, I am a lawyer. I am familiar with Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions [in a pleading] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…".

28. In my opinion, XimpleWare's claims in this case fall well within what Rule 11 allows. The law of open source licensing and the interpretation of the GPL are unsettled. Reasonable minds can differ, and they do so very often. This case tests several of those unsettled points of law relating to open source licensing and the GPL, and does so directly for the first time. This is, therefore, an important case for open source. It presents a rare opportunity to finally achieve more clarity on these unsettled and uncertain questions. Whatever the clarification ends up being, XimpleWare should, in my opinion, be allowed to pursue that clarification without being punished for taking positions that are inherently novel, but far from frivolous.

29. Attached as **Exhibit 3** is an article by Aaron Williamson on Opensource.com discussing this case and the novel issues it presents. Mr. Williamson is a technology lawyer whom I have met and respect. Mr. Williamson's article was posted on July 30, 2014. While I personally consider this particular statement of his to be exaggerated, Mr. Williamson notes that "[l]awyers for commercial software vendors have feared a claim like this for essentially the entire 20-odd-year lifetime of the GPL." As of today, there were 18 comments on the article, including one by Richard Stallman, the primary author of the GPL and founder of the Free Software Foundation that published it. Such reactions by leaders of the open source movement should not be met with Rule 11 sanctions merely for raising these important questions.

30. Attached as **Exhibit 4** is an additional post on opensource.com highlighting Mr. Williamson's article (and Mr. Stallman's comment) as one of the site's top 10 articles in the month of July 2014, with 3,481 page views.

31. On August 12, I posted a responsive article to Mr. Williamson's article on the main page at Slashdot.org, another popular technology news site, which has so far spurred over 150 comments. That posting and the comments are attached as **Exhibit 5.**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I signed this declaration on August 14, 2014, in Ukiah, California.

/s/ Lawrence Rosen
Lawrence Rosen

I declare under penalty of perjury under the laws of the United States that concurrence in the filing of this document has been obtained from the signatory.

/s/ Jack Russo
Jack Russo