Search Slashdot          Beta

Search Slashdot

🔍 Search

Share This Story     

# Larry Rosen: A Case Study In Understanding (and Enforcing) the GPL

 182
▼

**timothy** posted 2 days ago | from the he-actually-wrote-the-book dept.

Irosen (attorney Lawrence Rosen) writes with a response to an article that appeared on Opensource.com late last month, detailing a court case that arose between Versata Software and Ameriprise Financial Services; part of the resulting dispute hinges on Versata's use of GPL'd software (parsing utility VTD-X, from Ximpleware), though without acknowledging the license. According to the article's author, attorney Aaron Williamson (former staff attorney for the Software Freedom Law Center), "Lawyers for commercial software vendors have feared a claim like this for essentially the entire 20-odd-year lifetime of the GPL: a vendor incorporates some GPL-licensed code into a product—maybe naively, maybe willfully—and could be compelled to freely license the entire product as a result. The documents filed by Amerprise in the case reflect this fearful atmosphere, adopting the classically fear-mongering characterization of the GPL as a 'viral' license that 'infects' its host and 'requires it to become open source, too.'" Rosen writes:

> I want to acknowledge Aaron's main points: This lawsuit challenges certain assumptions about GPLv2 licensing, and it also emphasizes the effects of patents on the FOSS (and commercial) software ecosystem. I also want to acknowledge that I have been consulted as an expert by the plaintiff in this litigation (Ximpleware vs. Versata, et al.) and so some of what I say below they may also say in court.

Read on for the rest (and Williamson's article, too, for a better understanding of this reaction to it). An important take-away: it's not just the license that matters.

Let's be open about the facts here. Ximpleware worked diligently over many years to create certain valuable software. The author posted his source code on SourceForge. He offered the software under GPLv2. He also offered that software under commercial licenses. And he sought and received and provided notice of United States patent claims related to that software.

Unbeknownst to Ximpleware, Versata took that GPLv2 software and incorporated it into Versata products – without disclosing that GPLv2 software or in any other way honoring the terms of the GPLv2 license. The reason Ximpleware became aware of that GPLv2 breach is because some months ago Versata and one of its customers, Ameriprise, became embroiled in their own litigation. The breach of GPLv2 came out during discovery.

Ximpleware has terminated that license as to Versata. This is exactly what the Software Freedom Conservancy and others do when confronted by GPL breaches.

That earlier litigation is between two (or more) commercial companies; it is not a FOSS problem. These are mature, sophisticated, profitable companies that have the wherewithal to protect themselves. I know in my own law practice, whether I represent software vendors or their commercial customers, we typically provide for some level of indemnification. Perhaps Ameriprise and the other customer-defendants can count on

Search Slashdot          Beta

🔍 Search

reflected in Aaron Williamson's article:

1. The notion of "implied patent licensing" has no clear legal precedent in any software licensing. While it is true that goods one purchases include a patent license under what is known as the "exhaustion doctrine," there is no exhaustion of patented software when copies are made (even though copying of the software itself is authorized by GPLv2). For example, a typical commercial patent license nowadays might include a royalty for each Android phone manufactured and sold. Companies that distribute Android phones and its FOSS software acquire patent licenses so recipients of their phones are indeed free to use those phones. But that isn't because of some implied patent licenses that come with Android software, but because commercial companies who distribute phones pay for those patent rights, directly or indirectly. I think it is entirely reasonable to require commercial companies to get their patent licenses in writing.

2. Versata's customers who received the (in breach!) GPLv2 software all moved to dismiss Ximpleware's infringement claims against them, pointing to Section 0 of GPLv2, which says, "[t]he act of running the Program is not restricted." What that sentence actually means is just what it says: The GPLv2 copyright grant itself (which is all there is in GPLv2) does not restrict the act of running the program. Nor could it; that is a true statement because running a program is not one of the enumerated copyright rights subject to a copyright license (17 USC 106). The authors of the GPL licenses have themselves made that argument repeatedly: The use of software is simply not a copyright issue.

3. Because there are U.S. patent claims on this Ximpleware software, Section 7 of GPLv2 prohibits its distribution under that license in the United States (or any jurisdictions where patent claims restrict its use). If Ameriprise and the other defendants were outside the U.S. where the Ximpleware patents don't apply, then GPLv2 would indeed be sufficient for that use. But inside the U.S. those customers are not authorized and they cannot rely on an assumed patent grant in GPLv2. Otherwise GPLv2 Section 7 would be an irrelevant provision. Reread it carefully if you doubt this.

The Versata customers certainly cannot depend on an implied patent license received indirectly through a vendor who was in breach of GPLv2 since the beginning – and still is! Versata ignored and failed to disclose to its own customers Ximpleware's patent notices concerning that GPLv2 software, but those patents are nevertheless infringed.

Should we forgive commercial companies who fail to undertake honest compliance with the GPL? Should we forgive their customers who aren't diligent in acquiring their software from diligent vendors?

As Aaron Williamson suggests, we shouldn't ignore the implications of this case. After all, the creator of Ximpleware software made his source code freely available under GPLv2 and posted clear notices to potential commercial customers of his U.S. patents and of his commercial licensing options. Lots of small (and large!) open source commercial companies do that. Although it is ultimately up to the courts to decide this case, from a FOSS point of view Ximpleware is the good guy here!

There is rich detail about this matter that will come out during litigation. Please don't criticize until you

Search Slashdot                          Beta

Search

Rosenlaw & Einschlag (lrosen@rosenlaw.com)"

## More From Slashdot

"Six Lies About Linux"

C++ the Clear Winner In Google's Language
Performance Tests

At Google, You're Old and Gray At 40

Microsoft Confirms It Is Dropping Windows 8.1
Support

Students Banned From Bringing Pencils To School

## From The Web

Shocking Trick: How To Smell Great For 6 Days
Using A Necklace! (FLO Perfume Jewelry)

Warren Buffett Reveals How Anyone With $40
Could Become A Millionaire (The Motley Fool)

The 3 Worst Things that Age You Faster (AVOID)
(MAX Health & Nutrition)

10 Films That Knew Something We Didnt
(Movieseum)

Seriously, Stop Refrigerating These Foods
(Reviewed.com)

Promoted Links by Taboola

Comment on this story...

## 182 comments          check for more

All
Insightful
Informative
Interesting
Funny

⚙ Threshold  -1

▼ **Happy Tuesday From The Golden Girls** (0, Offtopic)
Anonymous Coward | 2 days ago | (#47656475)

Thank you for being a friend
Traveled down the road and back again
Your heart is true, you're a pal and a cosmonaut.

And if you threw a party
Invited everyone you knew
You would see the biggest gift would be from me

Search Slashdot    Beta



🔍Search

## ▼ Software patents (-1)

Anonymous Coward | 2 days ago | **(#47656491)**

GPL would not be needed if software patents did not exist in the first place.

↩ Reply    ✎ Moderate

### ▼ Re:Software patents (1)



**preaction (1526109)** | 2 days ago | **(#47656577)**

You'd need to get rid of copyright too, which the GPL uses to enforce its provisions.

↩ Reply    ⬆ Parent    ✎ Moderate

### ▼ Re:Software patents (4, Insightful)

**Kaz Kylheku (1484)** | 2 days ago | **(#47656595)**

That unfortunate statement betrays a serious misunderstanding of copyright, patents, and the nature of software.

↩ Reply    ⬆ Parent    ✎ Moderate

### ▼ Re:Software patents (4, Informative)



**jonbryce (703250)** | 2 days ago | **(#47656651)**

Yes it would. RMS invented the GPL because of copyright issues, and before software patents became a problem.

↩ Reply    ⬆ Parent    ✎ Moderate

#### ▼ Specifically: problems with public domaining. (5, Informative)



**Ungrounded Lightning (62228)** | 2 days ago | **(#47657347)**

🔏RMS invented the GPL because of copyright issues, and before software patents became a problem.

As I understand it: It was a (brilliant) workaround for two problems with putting software in the public domain, which releases ALL rights:

  - Derived works: Somebody makes a modified version and copyrights that. They do a bugfix or enhancement and even the original author is locked out of his own software's future. He can't do the same bugfix or a similar enhancement without violating the new copyright. Similarly with other users of the software.

Search Slashdot                    Beta

🔍 Search

rights to the components. Again the original author and other users can get locked out of the author's own work. (For instance, nobody else could include it in a similar library or distribution.)

Stallman's trick solution was to keep the original work under copyright, but license it under terms that require derived works to also be licensed under the same terms and source to be included with obect. Expiration of the copyright might cause a problem - but with companies like Disney on the job lobbying congress, that's probably not going to happen in the US as long as there IS a US. Alternatively, eliminating copyrightability of software would also eliminate the need for the GPL.

↩ Reply   ↕ Parent   🔨 Moderate

### ▼ Re:Specifically: problems with public domaining. (1)
jonbryce (703250) | 2 days ago | (#47657467)

Public domain gives you Freedom 0 (the right to run the software), and Freedom 2 (the right to copy and distribute it), but not Freedom 1 (the right to study how the software works) or Freedom 3 (the right to modify it).

↩ Reply   ↕ Parent   🔨 Moderate

### ▼ Re:Specifically: problems with public domaining. (0)
Anonymous Coward | 2 days ago | (#47657829)

How does Public Domain software prevent freedoms 1 and 3? It doesn't enforce a right to be given the source, but if you have that, you can do both 1 and 3.

↩ Reply   ↕ Parent   🔨 Moderate

### ▼ Re:Specifically: problems with public domaining. (1)
jonbryce (703250) | 2 days ago | (#47658109)

The GPL guarantees that you have those freedoms, public domain does not.

↩ Reply   ↕ Parent   🔨 Moderate

### ▼ Re:Specifically: problems with public domaining. (1)
Anonymous Coward | 2 days ago | (#47658613)

The Public Domain doesn't prevent you doing any of those things, and if



Search Slashdot                    Beta

🔍 Search

↩ Reply    ↕ Parent    ⚒ Moderate

### ▼ Re:Specifically: problems with public domaining. (1)

Anonymous Coward | 2 days ago | (#47658679)

All GPL does is _add restrictions_ to what you can do. Public domain
mean _no restrictions_. None. Zero. As a developer public domain is
much safer since it doesn't contaminate you. If you have ever written,
worked with or even looked at GPL'd code then you can never from that
point in your life write any similar code for commercial use because there
is a risk that you might accidentally copy something.

↩ Reply    ↕ Parent    ⚒ Moderate

### ▼ Re:Specifically: problems with public domaining. (1)

AceofSpades19 (1107875) | 2 days ago | (#47659573)

If that was the case, then nobody would ever be able to write any
software because everyone at some point has looked at GPL'd
code. I don't think there has ever been a case where someone was
accused of GPL infringement because they might've looked at
some GPL source code at some point in their life.

↩ Reply    ⚒ Moderate

### ▼ Re:Specifically: problems with public domaining. (1)

reikae (80981) | 2 days ago | (#47661171)

Even if that were true, it wouldn't be a GPL-only issue. Nobody who
had ever written code for commercial use could ever change jobs
again because they might accidentally copy something and their
new employer would be in trouble.

Copyright law most probably isn't quite that insane... yet.

↩ Reply    ⚒ Moderate

### ▼ Re:Specifically: problems with public domaining. (1)

Search Slashdot          Beta

🔍 Search

not cover functionality, API, ABI or any but the most literal and direct of language ports.

Second, as a developer, the GPL protects ⚲my rights in ways that public domain cannot. If I release a piece of code under the GPL, I remain free to grant or sell other licenses to my software as I please. At the same time, if users wish to release modifications of my software without acquiring another license, then they must also release the source for those modifications. I am then able to learn from their development efforts, and if I choose, integrate those changes into my source tree. Similarly, if users want to link my software as a library, then they must release the code for their software, too.

If I ⚲do want to allow users to be able to ⚲link my code without having to release theirs, for example because my code is ⚲intended for use as a library, then I can use the LGPL to allow that.

To all the other devs out there, do yourself a favor and spend 30 minutes reading about the commonly used licensing strategies on Wikipedia. It's not scary and you can choose the license that best suits ⚲your tastes and the intended uses of your software. ⚲You put in the hard time on that code and you have the right to restrict use or modification if that's what you want.

↩ Reply    ⚒ Moderate

▾ **Re:Specifically: problems with public domaining.** (0)
Anonymous Coward | 2 days ago | (#47661405)

> *The GPL guarantees that you have those freedoms, public domain does not.*

Nowhere in GPL does it say that you have to distribute the code to everyone. It only forces you do distribute the source to those you send the binary to. Freedom 0 is disputable and Freedom 2 and Freedom 3 are heavily conditioned.
As for public domain in doesn't enforce Freedom 1 if you only release the binary. If you on the other hand release the source code under public domain Freedom 0 - 3 are all enforced. Someone can create a derivate and distribute but they can't prevent you from using the original source.

Larry Rosen: A Case Study In Understanding (and Enforcing) the GPL - ...

http://beta.slashdot.org/story/205777

Case 5:13-cv-05161-PSG    Document 133-5    Filed 11/10/14    Page 8 of 66



Search Slashdot          Beta

🔍 Search

Essentially the GPL advocated claims a lot about its freedom that isn't true or requires you do redefine the meaning of freedom more than NSA already has done.

↩ Reply    🔨 Moderate

### Re:Specifically: problems with public domaining. (1)

ArmoredDragon (3450605) | 2 days ago | (#47658157)

You don't have to have the source to modify it, it just makes it dramatically easier. So you can still have 1 and 3 without the source.

People who pirate software or crack drm don't ever have the source. They rely on debugging and binary patching.

↩ Reply    ↕ Parent    🔨 Moderate

### Re:Specifically: problems with public domaining. (1)

Raumkraut (518382) | 2 days ago | (#47661347)

> *You don't have to have the source to modify it, it just makes it dramatically easier.*

"We're not stopping blacks from voting! They just have to fight their way past the KKK barricade around the polling station."

↩ Reply    🔨 Moderate

### Re:Specifically: problems with public domaining. (0)

Anonymous Coward | 9 hours ago | (#47670377)

i think you misunderstood public domain. public domain says "you can have it". if you want it more formal, read the WTFPL, "the public domain licence"

↩ Reply    🔨 Moderate

### What if it were Microsoft code (5, Insightful)



Search Slashdot          Beta

Search

Reply          Moderate

### ▼ Re:What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47656565)

Microsoft licenses are viral!

↰ Reply    ↥ Parent    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (4, Insightful)

MightyMartian (840721) | 2 days ago | (#47656583)

Indeed. I fail to see why GPL software is being picked on here. You lift someone else's copyrighted code without permission and without abiding by any licensing agreements, you are SOL if you get busted.

↰ Reply    ↥ Parent    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47656779)

>Indeed. I fail to see why GPL software is being picked on here.

Because Microsoft doesn't shout from the rooftops that their code is "free", tempting unscrupulous programmers. Moreover unscrupulous programmers know better than to tangle with Microsoft's legal department even if they could get their code, whereas they might mistakenly believe they can escape detection (which almost happened in this case) or the author won't have enough resources to pursue them in the case of GPL code.

↰ Reply    ↥ Parent    ⚒ Moderate

### ▼ Re: What if it were Microsoft code (1, Insightful)

grcumb (781340) | 2 days ago | (#47658253)

Seriously, dude? 'She was dressed provocatively, so she had it coming.' That's your argument?

↰ Reply    ↥ Parent    ⚒ Moderate

### ▼ Re: What if it were Microsoft code (1)

Anonymous Coward | 2 days ago | (#47658517)

*Seriously, dude? 'She was dressed provocatively, so she had it coming.' That's*



Search Slashdot       Beta

 Search

 ↩ Reply    ⬆ Parent    ⚔ Moderate

▼ **Re: What if it were Microsoft code** (1)
reve_etrange (2377702) | yesterday | (#47664961)

Yes, never the blame the victim, it reveals too many uncomfortable truths about the American psyche.

 ↩ Reply    ⚔ Moderate

▼ **Re:What if it were Microsoft code** (0)
Anonymous Coward | 2 days ago | (#47656797)

> *Indeed. I fail to see why GPL software is being picked on here. You lift someone else's copyrighted code without permission and without abiding by any licensing agreements, you are SOL if you get busted.*

The GPL is being picked on here because it is easier to point at the smelly freedom hippies than point out that Versata is acting like a total douche. If a couple kids did this in their basement then they would be labeled "pirates" and would be facing jail time. Talking about the GPL is a great way to change the subject *[wikipedia.org]* .

 ↩ Reply    ⬆ Parent    ⚔ Moderate

▼ **Re:What if it were Microsoft code** (1)
Jane Q. Public (1010737) | 2 days ago | (#47657365)

THIS.

This is a non-issue. Open Source (or specifically GPL) has no genuine relationship to the actual problem here. .

 ↩ Reply    ⬆ Parent    ⚔ Moderate

▼ **Re:What if it were Microsoft code** (1)
tlhIngan (30335) | 2 days ago | (#47657681)

> *Indeed. I fail to see why GPL software is being picked on here. You lift someone else's copyrighted code without permission and without abiding by any licensing agreements,*

Search Slashdot          Beta

Search

you, vendor B took GPL code D to implement feature C, making program A now GPL, unknown to you because vendor B took GPL'd code to add feature C.

So now your program A is GPL.

That's the nightmare scenario - someone basically pirated GPL code and forces your closed-source code to be GPL.

And it's happened to Microsoft before - they contracted someone to write the ISO-USB tool to write Windows OS ISOs to a USB stick for USB installs. Microsoft immediately took it down (they didn't know someone used a GPL'd library, so took it down when they learned of the breach), then figured out the whole licensing mess and posted it back up with full GPL sources.

That works in some cases, like this one, where Microsoft didn't care about the tool. But in this story, they couldn't GPL their main app for many legitimate reasons.

And that was one of the many thorny issues in this case.

The second is the fact that the GPL'd software contained patented items. (In theory, the GPL does state that using the code provides a license to those patents, but that expires when the license is revoked), so now the use of that code is also a patent infringement case - does the GPL confer users the right to use patented code if they follow the GPL?

In the end, it's a really messy situation involve patent infringement, GPL violations by a third party incorporated into your code, and other stuff. Commercial software license violations typically are far more quiet and it just boils down to contract law on who really violated the license or who was in the wrong.

This one adds the GPL into the mix and also adds stuff like "what is distribution?".

The real problem was the lack of legal oversight - for too long too many companies assumed the GPL and FOSS were "free" and all that and people just used the code willy-nilly. Yet if they licensed third-party software, what immediately happens is the license terms are reviewed by Legal to ensure they will be no problems using the code.

Only after the GPLv3 came out have companies started applying the same discipline to FOSS like they do to commercially-licensed code. Sure it means having to go to legal before you can use that nifty tool you found, but it protects everything in the end to have ALL code license-checked, even if it means wasting weeks of time before you can use it.



↩ Reply    ↥ Parent    ⚒ Moderate

▼ **Re:What if it were Microsoft code** (0)



Search Slashdot

Beta

🔍 Search

This is not specific to the GPL

↩ Reply    ↥ Parent    ✎ Moderate

### ▼ Re:What if it were Microsoft code (5, Insightful)

Spazmania (174582) | 2 days ago | (#47657933)

> *So now your program A is GPL.*

No. No, it isn't. Your program A is not GPL, it's infringing.

You may cure that infringment a number of ways, including: stripping the infringing code, paying the authors for an alternative license, pay the authors what the court orders you to pay them and, yes, releasing program A under the GPL. The point is, how you cure the infringement is up to you. The GPL does not automatically attach to your code and if push comes to shove the court will order monetrary damages not compulsory licensing.

↩ Reply    ↥ Parent    ✎ Moderate

### ▼ Re:What if it were Microsoft code (2)

sixoh1 (996418) | 2 days ago | (#47658619)

+1 - A lot of folks are playing amateur lawyer and making claims about what the GPL "does", but you should defer to Rosen here since he actually is a practicing lawyer who has actually been at a Plaintiff's table and enforced the GPL. He is very explicit that the GPL does not create new obligations upon authors who combine original works with GPL works. Your code is always your code, regardless of whether it is in a separate C file, or patched into an existing file licensed to you under the GPL. Go back and re-read the GPL, look for the words "distribution" and "distribute" which are the _ACTS_ that invoke the GPL terms of the upstream author.

The fact that we're still dealing with the "virus" meme suggests that Microsoft's dirty FUD war lives on long beyond it's usefulness to them. I only hope someday that karma pays them back when we have enough solid case law to make GPL the better legal framework for business and that we can repay their little FUD bomb one kick in the proprietary wall at a time.

↩ Reply    ↥ Parent    ✎ Moderate

### ▼ Re:What if it were Microsoft code (1)

Search Slashdot                    Beta

🔍Search

That isn't true either. If you accept license to the GPL'd work, you're bound by the terms of that license, which includes providing the source for the combined work to anyone to whom you also provide the binary. The terms of the license can be enforced against you by anyone the license empowers to do so -- namely anybody to whom you directly provided the binary code.

In tlhIngan's scenario, you never knew about the GPL'd work thus could not have agreed to the license. That makes it unwitting infringement -- copyright and patent law apply, but the GPL does not.

↩ Reply    ↕ Parent    ⚒ Moderate

▼ **Re:What if it were Microsoft code** (1)
Anonymous Coward | 2 days ago | (#47659303)

Most people just say IANAL, instead of proving it so convincingly. How about you actually defer to a real lawyer on this one.

↩ Reply    ⚒ Moderate

▼ **Re:What if it were Microsoft code** (1)
Spazmania (174582) | 2 days ago | (#47659611)

Explain the error in the reasoning (preferably referencing case law) or STFU.

↩ Reply    ⚒ Moderate

▼ **Re:What if it were Microsoft code** (1)
reve_etrange (2377702) | yesterday | (#47664993)

The error is that the source of the combined work does **not** have to be released if either A) the GPL code is removed from the work or B) the author of the combined work obtains an alternate license from the owner of the GPL code.

↩ Reply    ⚒ Moderate

▼ **Re:What if it were Microsoft code** (1)
Spazmania (174582) | yesterday | (#47665807)

Ignoratio elenchi.



Search Slashdot    Beta

🔍 Search

The claim in this subthread is that the combined work 🔲 *becomes* a GPL work. That is not the case; it becomes infringing. There are then multiple remedies which could be pursued, as discussed extensively above.

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

Spazmania (174582) | yesterday | (#47668281)

The claim in this subthread was, "the GPL does not create new obligations upon authors who combine original works with GPL works"

If you accept license to the GPL'd work, that plainly isn't true. What part of the phrase "If you accept license to the GPL'd work" was unclear? Yes of course if you don't accept the GPL license to the work then it's simply infringing and nothing in the GPL applies.

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

Anonymous Coward | 2 days ago | (#47660547)

> If you accept license to the GPL'd work, you're bound by the terms of that license, which includes providing the source for the combined work to anyone to whom you also provide the binary.

Not exactly. You MAY distribute source code + binaries, or you MAY distribute binaries with an offer to provide source (this is an exception to the "must include source" requirement) but you MAY NOT distribute binary-only derived works. What you choose to do is up to you, but you are under no obligation to distribute anything.

↩ Reply    ⚒ Moderate

Search Slashdot          Beta

🔍 Search

or hash out some agreement with the Licensors (GPL authors) of some sort, but relicensing simply is not automatic, as frusturating as it might seem.

↩ Reply     ⚒ Moderate

### ▾ Re:What if it were Microsoft code (0)

Anonymous Coward | yesterday | (#47669029)

> *That isn't true either. If you accept license to the GPL'd work, you're bound by the terms of that license, which includes providing the source for the combined work to anyone to whom you also provide the binary. The terms of the license can be enforced against you by anyone the license empowers to do so -- namely anybody to whom you directly provided the binary code.*

That is blatantly wrong. The end user has no standing. Licenses are between the owner of the licensed work and the user of said work (the creator of the derivative), the end user is not the programmer of the original code so they would be summarily dismissed from court due to lack of standing.

↩ Reply     ⚒ Moderate

### ▾ Re:What if it were Microsoft code (1)

Spazmania (174582) | 5 hours ago | (#47672339)

The recipient of the derivative work can enforce the GPL license between himself and the creator the derviative work. Said license came into effect as a result of the creator's acceptance of the GPL when he received the original work and its subsequent distribution.

The end user has no standing against the creator of the original work -- that license is between the original creator and the derivative creator. But he most certainly has standing in his license with the derivative creator which the derivative creator is shown to have established as a result of his acceptance of the GPL from the original creator.

Only if the creator of the derivative work accepted the GPL license of course. If he didn't then the work is simply infringing and the GPL does not come into play at all.

Search Slashdot          Beta

**Search**

Anonymous Coward | 2 days ago | (#47659439)

> *You may cure that infringment a number of ways, including: stripping the infringing code, paying the authors for an alternative license, pay the authors what the court orders you to pay them and, yes, releaseing program A under the GPL. The point is, how you cure the infringement is up to you. The GPL does not automatically attach to your code and if push comes to shove the court will order monetrary damages not compulsory licensing.*

If the code is only available via GPL, how can you "pay the authors for an alternative license"? Plus, isn't it true that you likely can't even find all of the authors?

Doesn't stripping the infringing code require you to essentially go out of business while you rewrite what could be a significant chunk of your program?

Heck, Samsung lost a huge patent case against Apple, and was NOT stopped from selling their infringing products.

↩ Reply      ⚒ Moderate

▼ **Re:What if it were Microsoft code** (1)

Spazmania (174582) | 2 days ago | (#47660191)

In the time between the authors filing a suit and the court entering a judgement you can write your way around any GPL infringement that isn't your whole product. After which you take your lumps for the past activity... which amounts to paying the authors who sued.

↩ Reply      ⚒ Moderate

▼ **Re:What if it were Microsoft code** (0)

Anonymous Coward | yesterday | (#47662121)

> If the code is only available via GPL, how can you "pay the authors for an alternative license"?

You can ask them to dual-license it. They may agree or may decline. Otherwise you have no rights to the code except what the GPL offers, it's that simple.

Most people who complain about the GPL are just annoyed that they can't simply use the code however they want since it's "open." They want the right



Search Slashdot Beta

Search

## Re: What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47660163)

This. It would have to be a pretty severe case for a court to "virally attach" your business developed code to GPL-based code even flat out stolen and plagiarized. The most nuclear option is to just shut down distribution.. Which could mean pushing the "off" button! Absolute terror for businesses. That would give the company time to separate the code to fix the license and/or pay money to satisfy the author.
The court taking or reassigning licenses to property would be pretty hard to get... But the court forcing customers to TURN OFF the software can be WORSE than extremely large sums of money because it means not doing work and getting paid for whatever that software was doing.

Reply Moderate

## Re:What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47660969)

> > *So now your program A is GPL.*
>
> *No. No, it isn't. Your program A is not GPL, it's infringing.*
>
> *You may cure that infringment a number of ways, including: stripping the infringing code, paying the authors for an alternative license, pay the authors what the court orders you to pay them and, yes, releaseing program A under the GPL.*

Actually, the latter option is off the table: the license has been terminated. The GPLv3 contains mechanisms for curing a breach in a timely manner. The GPLv2 instead has an immediate shutdown option. So if you want to talk about "viral" licensing, GPLv2 is more of the Ebola kind until recently: not a lot of potential for epidemics because there are no surviving carriers.

Reply Moderate

## Re:What if it were Microsoft code (0)

Search Slashdot          Beta

🔍 Search

The naive take from a IANAL: the software is GPL, any damages etc is a now a matter between the vendor B and maker of A. It should not matter to me who did what or how they organized things "internally".

↩ Reply     ⚒ Moderate

### ▼ GPL more Flexible in this Situation (2)

Roger W Moore (538166) | 2 days ago | (#47658529)

> *I think it's the nightmare scenario.*

True but this is not specific to GPL at all. What has happened is company A bought code from company B and company B did not have all the correct permissions and licenses under both copyright and patent law to sell that code to them. It's true that company A is now stuck because they cannot sell any product which includes that code but this would be true regardless of whether company B violated the GPL or other license.

If anything company A has more options with the GPL that they would with a proprietary license: if they lack the money to pay for a commercial license for the code for all the copies they have sold then they can choose to release their source code under the GPL as well. Note that it is an **option** only and not required. The code is infringing and there are two ways to fix this: pay damages and ongoing license fees or release the source code. With a commercial license you would only have the first of these options.

↩ Reply     ↥ Parent     ⚒ Moderate

### ▼ Re:GPL more Flexible in this Situation (0)

Anonymous Coward | 2 days ago | (#47661031)

> *It's true that company A is now stuck because they cannot sell any product which includes that code but this would be true regardless of whether company B violated the GPL or other license.*

Step 1: Contact the copyright holder of the GPL'd part of the software
Step 2: Buy a version of the code with an alternative license.
Step 3: Sue company B for the amount the proper license cost you since they should have performed step 1 and 2 as part of the original purchase.

If it is clear who do copyright holder of the GPL'd code is it should be solvable. If it isn't clear then company A can countersue those trying to enforce GPL since it's

Search Slashdot    Beta

Search

### ▾ Re:What if it were Microsoft code (1)

sjames (1099) | 2 days ago | (#47660255)

GPL isn't the relevant part of the nightmare though. It is no less harmful if B takes per-instance proprietary library D and links it to A. You are now potentially on the hook for more than each copy of A was sold for.

↩ Reply    ✎ Moderate

### ▾ Re:What if it were Microsoft code (2, Insightful)

Kaz Kylheku (1484) | 2 days ago | (#47656635)

The difference is that the code is distributed for free. No judge is going to award damages for the redistribution of something that is free. At least, not actual damages, like $$$ per infringing copy. The breach of the terms (like not redistributing the source code) could be translated to some punitive damages, perhaps. Probably the best outcomes you can hope for are: the violator of the license is either asked to stop distributing the software, or else to come into compliance: replace the GPL'ed part with a from-scratch workalike, so that the program is no longer distributed with any GPLed code, or else make the whole program GPLed.

↩ Reply    ↕ Parent    ✎ Moderate

### ▾ Re:What if it were Microsoft code (3, Insightful)

bulled (956533) | 2 days ago | (#47656727)

> *The difference is that the code is distributed for free. No judge is going to award damages for the redistribution of something that is free. At least, not actual damages, like $$$ per infringing copy. The breach of the terms (like not redistributing the source code) could be translated to some punitive damages, perhaps.*

I don't see how the lack of a monetary cost for _one_ of the licensing options should affect awarding damages.

> *Probably the best outcomes you can hope for are: the violator of the license is either asked to stop distributing the software, or else to come into compliance: replace the GPL'ed part with a from-scratch workalike, so that the program is no longer distributed with any GPLed code, or else make the whole program GPLed.*

You forgot the third option in this case. If Ximpleware is open to it, they could pay for a commercial license.



Search Slashdot          Beta

Search

Indeed. This is no different from distributing, say, a copy of Oracle's database with your code without a licensing deal. They don't require a key code to install or run it - you can download, install and run it, but without paying $17k per processor, you are in violation of their copyright.

↩ Reply   ✺ Moderate

### Re:What if it were Microsoft code (1)
**reve_etrange (2377702)** | yesterday | (#47665011)

> You forgot the third option in this case. If Ximpleware is open to it, they could pay for a commercial license.

Right, and contra the parent, if e.g. Ximpleware already had a commercial licensing option, damages could surely be based upon the cost of that license.

↩ Reply   ✺ Moderate

### Re:What if it were Microsoft code (1)
Anonymous Coward | 2 days ago | (#47656781)

Naive comment. How much did ximpleware charge for a commercial license to their software? You can bloody well believe that the judge WILL look at that to determine the costs. The best outcome may well include Versata keeping their software fully proprietary, but come to terms on licensing of the infringed upon code in a way to satisfy all.

↩ Reply   ⬆ Parent   ✺ Moderate

### Re:What if it were Microsoft code (2, Insightful)
Anonymous Coward | 2 days ago | (#47656811)

The code wasn't distributed for free. It was distributed under a choice of two separate licenses: One was the GPL, one was commercial. Clearly, the commercial license route wasn't taken, and the GPL license wasn't adhered to.

↩ Reply   ⬆ Parent   ✺ Moderate

### Re:What if it were Microsoft code (0)
Anonymous Coward | 2 days ago | (#47657217)

Search Slashdot          Beta


Search

Irrelevant if the patent owners argument is accepted that the GPL license **did not include a license to use the software** because you also needed to obtain a license for the patent that the GPL'd source uses. It's like cops putting out a plate of free 'special' (unmarked as such) brownies next to a plate of $5-per regular brownies at back-to-school night and promptly arresting everybody who eats one of the 'free' brownies.

If Oracle pulled such a BS claim out in their Java lawsuits, everybody but the corporate lawyers would be puking in disgust at such a bold admission of intent to entrap users.

↰ Reply   ↥ Parent   ✎ Moderate

### ▾ Re:What if it were Microsoft code (3, Informative)

dnavid (2842431) | 2 days ago | (#47657781)

> *The code wasn't distributed for free. It was distributed under a choice of two separate licenses: One was the GPL, one was commercial. Clearly, the commercial license route wasn't taken, and the GPL license wasn't adhered to.*

> *Irrelevant if the patent owners argument is accepted that the GPL license **did not include a license to use the software** because you also needed to obtain a license for the patent that the GPL'd source uses. It's like cops putting out a plate of free 'special' (unmarked as such) brownies next to a plate of $5-per regular brownies at back-to-school night and promptly arresting everybody who eats one of the 'free' brownies.*

> *If Oracle pulled such a BS claim out in their Java lawsuits, everybody but the corporate lawyers would be puking in disgust at such a bold admission of intent to entrap users.*

I believe Larry Rosen's warning to learn the facts carefully applies here. XimpleHelp's argument is not that the GPL license did not include a license to use the software. The problem is more complicated than that. XimpleHelp's argument, as I understand it, is that the software was offered under two terms: one: you could abide by the GPL and use it (and redistributed it under certain conditions) for free. Two: you could buy a commercial license and use (and presumably redistribute) the software without any need to follow the GPL. The VDT-XML distribution site is pretty clear on this: it took me only a couple minutes to find and read the relevant part of the FAQ:

Search Slashdot          Beta

**Q** Search

*VTD-XML is protected by US patents 7133857, 7260652, and 7761459, as long as you abide by GPL, you don't have to worry about patent infringement. All licenses to any parties in litigation with XimpleWare have been expressly terminated. No new license, and no renewal of any revoked license, is granted to those parties as a result of re-downloading software from this or any other website If you don't like the restriction of GPL, XimpleWare also offers flexible commercial licenses for VTD-XML. Please email us at sales@ximpleware.com for more details.*

XimpleHelp's legal argument as I understand it is that Versata violated the GPL when it used VDT-XML and *redistributed* the software in modified form without subjecting the derivative software to the terms of the GPL. That means effectively Versata did not have a valid license to VDT-XML, because they broke the GPL which granted it in the first place. Without that license, Versata was now not just in violation of the GPL, but also now violating XimpleWare's patent rights of the software - because Versata was using patent-protected software without permission.

Versata's customers may not have the right to estoppel they think they do, for the reason Rosen specifies: the GPL *would have* offered some protection to those customers if Versata itself had been compliant with the GPL. But since they are not, the GPL doesn't apply to Versata and neither does it apply to its customers - except insofar as they are in breach of it.

Addressing your analogy, nothing prevents Versata's customers themselves from downloading VDT-XML (or would have, before Versata terminated their ability to get a license because of the lawsuits) and using it, and nothing prevents anyone else from downloading VDT-XML and using it free from patent infringement allegations. If XimpleHelp tried to sue me for violating its patents just because I downloaded and used VDT-XML, they'd almost certainly lose that case both on legal merits and also because they explicitly said on their distribution site they would not do that (see the quote above). In that case, the estoppel rights Versata's customers are attempting to assert would apply to me, because I could reasonably argue what they are trying to argue and what you are suggesting: that XimpleHelp implicitly granted a license to use the software when they made it available under the GPL, which I am obeying. The problem is that XimpleHelp is asserting Versata is not obeying the GPL, and thus cannot assert an implicit license. Because of that, neither can Versata's customers.

↩ Reply    ⬆ Parent    ⬉ Moderate

Search Slashdot          Beta

🔍Search

> GPL when it used VDT-XML and *redistributed* the software in modified
> form without subjecting the derivative software to the terms of the GPL.
> That means effectively Versata did not have a valid license to VDT-XML,
> because they broke the GPL which granted it in the first place. Without
> that license, Versata was now not just in violation of the GPL, but also now
> violating XimpleWare's patent rights of the software - because Versata
> was using patent-protected software without permission.

XimpleHelp's legal argument is wacky. Either Versata agreed to abide by the
GPL (in which case they're liable to damages to XimpleHelp for violating the
contract but are not liable for copyright or patent infringement since they had a
valid contract for them) or they did not agree to abide by the GPL (in which
case they're liable for damages due to copyright and patent infringement but
not liable for any breach of contract). It's one or the other, not a mix and match
free-for-all from both.

In the former case, XimpleHelp expected to receive Vyatta's source code as
compensation and is entitled to it. In the latter case, XimpleHelp expected to
be paid at their normal rates for Vyatta's use of their source code and is
entitled to payment. In both cases XimpleHelp is entitled to injunctive relief,
preventing further sales of Vyatta's product until terms are met.

Either way, going after the customers is a risky play. It seems plausible (or at
least murky) that Vyatta's customers could gain access to the IP rights simply
by downloading the GPL XimpleHelp software. If they can, naming them in a
then-dismissable suit potentially creates a tortious interference claim turning
XimpleHelp into a bad actor.

↩ Reply    ↕ Parent    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

**Immerman (2627577)** | 2 days ago | (#47659033)

I haven't read the GPL recently, but I suspect patent rights are limited to
the software being licensed - so in your scenario the customers would
have patent rights to use the GPLed copy of XimpleHelp, but still NOT
have any patent rights with respect to the infringing software from Vyatta,
for which they *only* have a license from Vyatta.

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

Search Slashdot                Beta

🔍 Search

then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program."

And:

"You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work"

And:

"You may not impose any further restrictions on the recipients' exercise of the rights granted herein."

So it would seem to me that an argument can be made that if patent restrictions by Ximpleware prevent you from using derivative works of VTD-XML then Ximpleware may not be distributed under the GPL. Since Ximpleware DID distribute it under the GPL, he either intended folks receiving a derivative work to have a license to the patent or he breached the GPL up front.

It also hurts their position that the only mention of patents on VTD-XML's GPL web site (http://vtd-xml.sourceforge.net/) is: "Although VTD-XML is protected by US patents 7133857, 7260652, and 7761459, as long as you abide by GPL, you don't have to worry about patent infringement."

↩ Reply        🔧 Moderate

### ▼ Re:What if it were Microsoft code (1)

Immerman (2627577) | yesterday | (#47663799)

However, If XimpleWare granted a patent license or non-enforcment covenant to derivative GPL works (as I believe is the claim) the issue becomes moot - anyone using the code under the GPL license gets a patent license automatically - so no additional restrictions are imposed. However, as soon as the GPL is violated the patent license is likewise null and void, so that you are infringing both the copyrights and patents on the software(at least that's how I'd

Search Slashdot                    Beta

🔍 Search

separately. It's their software, they can do whatever they want with it - the license only specifies what YOU can do with that software once you have it. Of course it would probably be pretty self-defeating to release their code under the GPL only to hold the threat of patent litigation over any downstream project. Not to mention putting them in legal hot water if they were incorporating anyone else's GPLed code into their product.

But again - so long as they've granted a patent license to anyone with a valid GPL license, it's a non-issue. The problem here is that Versatta **doesn't have** a valid GPL license, and thus can't extend it to their customers. And their customers don't have sufficient rights to Versatta's software to be able to independently bring themselves into compliance with the GPL (Ameriprise, the customer, are themselves currently suing Versatta to try to get those rights, though it's far from clear that they will suceed). And without a license under the GPL they have no claim to a patent license either. Or so I would expect a competent judge to rule.

Now if Ameriprise were an end-user I would be inclined to think Ximpleware were just being dicks, but Ameriprise is continuing to further redistribute the software to it's OWN customers, despite knowing that they are in violation of the GPL by doing so (they're the ones who brought it up). Under the circumstances I think Ximpleware is well within it's right's, both legal and moral, to demand that Amerprise stop selling a product that infringes on their patents without a license.

↩ Reply          ☗ Moderate

### ▼ Re:What if it were Microsoft code (1)

Spazmania (174582) | yesterday | (#47666281)

> *However, as soon as the GPL is violated the patent license is likewise null and void*

That's an error. Violated != void. Violated means the license remains in full force and effect and you're entitled to enforcement of its terms. But it remains in full force and effect, including all the rights granted to the violator!



Search Slashdot                    Beta

🔍 Search

### ▼ Re:What if it were Microsoft code (1)
Immerman (2627577) | yesterday | (#47668285)

Actually I believe in this case it does - the ONLY thing giving them license to distribute this software is their compliance with the GPL - don't comply, and you have no license (there's some legal precedent establishing that the GPL terms are conditions for acquiring the license rather than terms of a covenant - which among other things allows GPL authors to request injunctions against ongoing copyright infringement. Something only possible if the distributor has no license, not if they're only in violation of a contract.)

Regardless, in this case it sounds like Ximpleware's patent pledge was basically "GPL software doesn't have to worry about these patents". And since neither Ameriprise nor Versatta are distributing software under the GPL, neither is in much of a position to argue they are covered by that pledge.

↩ Reply     ⚒ Moderate

#### ▼ Re:What if it were Microsoft code (1)
Spazmania (174582) | 5 hours ago | (#47672129)

Versatta can't be in violation of the GPL unless they distributed their software under the GPL. As I understand it, whether their software was distributed under the GPL is still in dispute.

↩ Reply     ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)
dnavid (2842431) | yesterday | (#47665539)

*It also hurts their position that the only mention of patents*

Search Slashdot    Beta

🔍 Search

In what legal way does this hurt XimpleHelp? Patent holders are not required to announce that fact anywhere under the law, the only difference would be the issue between knowing and unknowing infringement (an issue of damages, not of culpability).

Versata is arguing bait and switch: that XimpleHelp allowed people to download the software "freely" and then now wants to spring a patent infringement trap on them. But that legal argument is completely invalid to me, because XimpleHelp did *not* allow people to download the software "freely." They allowed them to download and use the software 🔒 under the terms of the GPL. People who do not follow the GPL should not presume that they have any right to the software, and at that point without a valid license all sorts of penalties can accrue to people who in effect steal something, up to and including the fact they may have infringed on other rights besides the GPL itself.

Its not a legal defense to argue "if I had known the software had patent protection, I wouldn't have stolen it."

↩ Reply    ⚔ Moderate

▼ Re:What if it were Microsoft code (1)

Spazmania (174582) | yesterday | (#47665767)

> Patent holders are not required to announce that fact anywhere under the law

35 U.S. Code Â 287 (A) reads in part: "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement"

So technically you're right, it's a question of damages not culpability. But practically speaking I was right too: failure to adequately mark the patented product hurts Ximpleware's case. In the worst case, Versatta could argue that error in conjunction with Ximpleware's other behavior shows bad faith. That could get really ugly.



Search Slashdot          Beta

Search

jrumney (197329) | 2 days ago | (#47659973)

> *Either Versata agreed to abide by the GPL (in which case they're
> liable to damages to XimpleHelp for violating the contract but are not
> liable for copyright or patent infringement since they had a valid
> contract for them)*

If they violated the contract, then they don't have a valid contract for
anything.

↰ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

Spazmania (174582) | 2 days ago | (#47660221)

Of course they still have a valid contract. Breach doesn't void a
contract. Think about it.

Breach entitles the non-breaching party to restitution and
enforcement. How would that work if the contract was void?

↰ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

david_thornley (598059) | yesterday | (#47664191)

Except that we're not talking about a contract, but a license. There
are ways of dealing with contract violations, but they don't involve
immediately rendering the contract invalid. However, if they violated
the terms of the license, they didn't have a valid license for
anything.

↰ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

dnavid (2842431) | yesterday | (#47665491)

> *XimpleHelp's legal argument as I understand it is that Versata
> violated the GPL when it used VDT-XML and \*redistributed\* the
> software in modified form without subjecting the derivative*

Search Slashdot          Beta

🔍 Search

> *Versata was using patent-protected software without permission.*

> *XimpleHelp's legal argument is wacky. Either Versata agreed to abide by the GPL (in which case they're liable to damages to XimpleHelp for violating the contract but are not liable for copyright or patent infringement since they had a valid contract for them) or they did not agree to abide by the GPL (in which case they're liable for damages due to copyright and patent infringement but not liable for any breach of contract). It's one or the other, not a mix and match free-for-all from both.*

I have no idea what you mean specifically by "mix and match free-for-all" but in the general case it is very common in legal arguments to argue that the facts support only one of a small set of possibilities, and the law entitles you to relief under all of them. That's a trivial method of logic that is perfectly acceptable in the law.

> *Either way, going after the customers is a risky play. It seems plausible (or at least murky) that Vyatta's customers could gain access to the IP rights simply by downloading the GPL XimpleHelp software. If they can, naming them in a then-dismissable suit potentially creates a tortious interference claim turning XimpleHelp into a bad actor.*

Under the terms of the GPL, they could have up until the point where XimpleHelp denied them that relief by explicitly revoking that right. But even if that revocation is deemed invalid, there's the separate matter that downloading the software themselves is not enough to supply Versata's customers with GPL protection: the GPL would only allow them to use the base software itself, not the derivative work Versata created. To comply with the GPL, Versata would have to supply its customers with its base source code and allow its customers to patch in Versata's VDT-XML extensions themselves, which is allowed under the GPL. Under the GPL, you can download and modify GPL software for your own use, but you cannot redistribute that software. If Versata's customers could immunize themselves by simply downloading VDT-XML, that would make the GPL's protections effectively meaningless. Courts tend to be reluctant to interpret contracts and license agreements in a way that renders their literal text meaningless. I find it highly unlikely any reasonable court would rule the GPL's terms could be circumvented in this manner.

Search Slashdot                     Beta

$\mathcal{Q}$ Search

You're conflating three distinct issues here: unlawful posession of a copyrighted work, unlawful copying and distribution of a copyrighted work and unlawful use of a patent.

Downloading the original GPLed work places Versata's customers in a position where they're entitled to posession of the derivative work. The path gets arcane but that's the bottom line.

Versata's customers are not entitled under the GPL to further distribute the derivative work without versata's source code. Period. They're liable for any such distribution, witting or otherwise, and Versata is liable to them for any damages they suffer as a result.

There's a decent case to be made that separately acquiring the software in a manner compliant with the GPL entitles the recipient to a license to use the Versata patents. Versata's behavior allows the statements they made about patent use in the GPL software to be interpreted that way. It puts the patent claim uncomfortably close to the 50% preponderance of the evidence line.

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

dnavid (2842431) | yesterday | (#47666765)

> *You're conflating three distinct issues here: unlawful posession of a copyrighted work, unlawful copying and distribution of a copyrighted work and unlawful use of a patent.*

> *Downloading the original GPLed work places Versata's customers in a position where they're entitled to posession of the derivative work. The path gets arcane but that's the bottom line.*

I don't believe your interpretation of the law here is correct. Downloading the original GPLed work does not automatically grant a license to possess derivative works. There is case law here involving the legal status of "collages" and other such derivative work. License to a piece does not automatically grant rights to the whole, and the whole has a separate legal status from the status of the components. Once VTD-XML was

Search Slashdot          Beta

🔍Search

repair the fact the work is unlicensed, and therefore Versata's customers are not entitled to possess it.

> *Versata's customers are not entitled under the GPL to further distribute the derivative work without versata's source code. Period. They're liable for any such distribution, witting or otherwise, and Versata is liable to them for any damages they suffer as a result.*

> *There's a decent case to be made that separately acquiring the software in a manner compliant with the GPL entitles the recipient to a license to use the Versata patents. Versata's behavior allows the statements they made about patent use in the GPL software to be interpreted that way. It puts the patent claim uncomfortably close to the 50% preponderance of the evidence line.*

Patent licenses are not universal. By downloading VTD-XML someone gets a license to use XimpleHelp's patents, but only within the context of using VTD-XML itself. It does not grant them the universal right to use those patents in any way they see fit, including using them within an otherwise infringing work. It would be highly novel to argue that obtaining a patent license from a patent holder allowed the licensee to use works that infringe on the patent created by other people who did not acquire a valid patent license. I don't know what you mean by "close to the 50% preponderance of evidence line" because in this case its not the evidence that is in question, but the interpretation of the law. There's no such thing as saying I think there's a 55% chance the law means X.



↩ Reply    🪓 Moderate

▼ **Re:What if it were Microsoft code** (1)

Spazmania (174582) | yesterday | (#47668257)

> *Downloading the original GPLed work does not automatically grant a license to possess derivative works.*

A decent argument can be made, but you can come at



Search Slashdot          Beta

🔍 Search

accepted the GPL license then none of their customers
are in violation unless those customers further
redistribute the software. Even though Versata itself is in
violation. More importantly, it means that IF Ximpleware
asserts that Versata accepted the GPL (they seem to
make this claim) that must also mean that the GPL
license flowed down to everyone who received the
software from Versata and themselves accepted the GPL
license. Even if they never requested the source code
and don't care to.

> By downloading VTD-XML someone gets a license to
> use XimpleHelp's patents, but only within the context
> of using VTD-XML itself. It does not grant them the
> universal right to use those patents in any way they
> see fit

But that's just the thing - they ARE using it within the
context of using VTD-XML. It just happens to be a copy
of VTD-XML that's embedded in Versatta's derivative
work. And if you grant that the patent license comes with
the download of the GPL'd code then the license must
have been meant to cover as many copies of VTD-XML
that the downloader cares to use.

↩ Reply      ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

WorBlux (1751716) | 2 days ago | (#47660403)

Sections 4+6. Shows the license is granted from the original licencor each
time the work is distributed.

↩ Reply      ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

dnavid (2842431) | yesterday | (#47665415)

> Sections 4+6. Shows the license is granted from the original licencor
> each time the work is distributed.

Search Slashdot          **Beta**

🔍 Search

have their licenses terminated **so long as such parties remain in full compliance.**"

Versata is obviously not in full compliance with the GPL.

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47661009)

> *would have* offered some protection to those customers if Versata itself had been compliant with the GPL. But since they are not, the GPL doesn't apply to Versata and neither does it apply to its customers - except insofar as they are in breach of it.

It's like being in a car crash with a stolen car: here the car thief is suing the insurance company of the stolen car because it does not want to cover the damage, even though it is a rental car and anybody could have been driving it *who would have accepted the rental conditions.*

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

darkonc (47285) | yesterday | (#47668633)

You misunderstand: The plaintif's argument is that you are **only** protected from the patent if the software is distributed **via the GPL**. Since Versata's customers **did NOT** get the software under the terms of the GPL, they **are not protected by the GPL license that Versata refused to abide by** The alternative was to pay for a commercial patent license, but nobody bothered to do that, either.

Thus, both Versata and their customers are in the legal dog house. Technically, Ximpleware doesn't even have to raise the GPL. All that they have to do is sue Versata and their customers for copyright and patent violations. If either tries to claim the GPL as a defense, then the response to that claim is that **the GPL doesn't apply to this case** because Versata didn't even **try** to abide by the terms of the GPL.

> The code wasn't distributed for free. It was distributed under a choice of two



Search Slashdot                    Beta

🔍 Search

*not include a license to use the software* because you also needed to obtain
a license for the patent that the GPL'd source uses. It's like cops putting out a
plate of free 'special' (unmarked as such) brownies next to a plate of $5-per
regular brownies at back-to-school night and promptly arresting everybody who
eats one of the 'free' brownies.

*If Oracle pulled such a BS claim out in their Java lawsuits, everybody but the
corporate lawyers would be puking in disgust at such a bold admission of intent
to entrap users.*

↩ Reply          ⚒ Moderate

### ▼ Re:What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47656845)

The patent is infringed.
The patent is worth money.

↩ Reply     ↕ Parent     ⚒ Moderate

### ▼ Re:What if it were Microsoft code (5, Informative)

khellendros1984 (792761) | 2 days ago | (#47656847)

VTD-XML is a dual-licensed piece of software. From their FAQ:

> *If you don't like the restriction of GPL, XimpleWare also offers flexible commercial licenses
> for VTD-XML [contact info follows]*

The software is distributed for free provided certain license terms are followed, and
otherwise, a license can be purchased for it as a commercial product. This seems to be a
case where the GPL-licensed version of the software was inappropriate, and Versata
should've paid for a license. I think that it can be argued that there are real damages in this
case.

↩ Reply     ↕ Parent     ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

mark-t (151149) | 2 days ago | (#47656849)

You don't award damages on stuff that is being released for free, but copyright infringement is



Search Slashdot          Beta

🔍 Search

show they are out of as a result of the infringement.

↩ Reply   ⇡ Parent   🔨 Moderate

### ▾ Re:What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47657203)

🖼️and any other amount of money they can provably show they are out of as a result of the infringement.

Yes, like the commercial licensing fee that they lost.

↩ Reply   ⇡ Parent   🔨 Moderate

### ▾ Re:What if it were Microsoft code (1)

flambard (842310) | 2 days ago | (#47658239)

This keeps cropping up. GPL isnt free as in free beer. It has a cost. You can use the fruit of someone's labour in return for yours. Labour can and is very frequently expressed in monetarian value (read wages), so damages can be asked and given for breaking copyright. Think about a writer writing a piece but never getting any money for it. Then someone else takes his essay/book/whatever and uses it in his own work and makes big bucks from it. You bet the court is going to award damages!

↩ Reply   ⇡ Parent   🔨 Moderate

### ▾ Re:What if it were Microsoft code (1)

Anonymous Coward | 2 days ago | (#47656855)

> The difference is that the code is distributed for free. No judge is going to award damages for the redistribution of something that is free. At least, not actual damages, like $$$ per infringing copy.

Tell that to all the people in debt for millions of dollars for distributing a song played on the radio for free, or a TV show broadcast to everyone for free...

↩ Reply   ⇡ Parent   🔨 Moderate

### ▾ Re:What if it were Microsoft code (2, Interesting)

Anonymous Coward | 2 days ago | (#47656875)

IAAL (and I have litigated GPLv2 cases unlike most IP attorneys). Anyway, the current case

Search Slashdot          Beta

🔍 Search

prove.

↩ Reply    ⬆ Parent    ⚒ Moderate

---

### ▼ Re:What if it were Microsoft code (1)

**Kjella (173770)** | 2 days ago | (#47656937)

> *The difference is that the code is distributed for free. No judge is going to award damages for the redistribution of something that is free.*

If you sue under US law there's statutory damages, the kind that lets the RIAA/MPAA charge a $750 minimum (that can go down to $200 if you're an innocent infringer) and $150,000 maximum per work. Make that $250,000 and up to 5 years in prison if you can show it was for profit, which shouldn't be a problem in this case. If they can hire a lawyer to get a $10,000/song verdict for a 99 cent product, surely you can make up some imaginary numbers of lost commercial licenses too. However that's got nothing to do with the customers of the infringing party as they didn't violate copyright. That part is about patents, basically as a result of taking this GPLv2 code but not getting a patent license, they're in violation of patents. Just like I can download and use x264 but still infringe on the H.264 patents.

The catch here though is that they're trying for an estoppel defense, because XimpleWare is the one with both the code and the patents. That may or may not work as the GPLv2 still means you can distribute it freely except in countries where it's patented - like the US - and if you bring it to the US and use it there then you're on the hook for patent infringement. I don't see the very big principal implications though.

↩ Reply    ⬆ Parent    ⚒ Moderate

---

### ▼ Re:What if it were Microsoft code (4, Informative)

**sribe (304414)** | 2 days ago | (#47657039)

> *The difference is that the code is distributed for free. No judge is going to award damages for the redistribution of something that is free. At least, not actual damages, like $$$ per infringing copy. The breach of the terms (like not redistributing the source code) could be translated to some punitive damages, perhaps.*

Copyright law explicitly provides for statutory damages of up to $250,000 per copy, precisely so that authors who are ripped off do not have to definitely prove exactly how much they lost.



Search Slashdot                                    Beta

Search

In other words, "Fuck having standards or having to prove losses, I want an absurd amount of money now!"

↩ Reply     ☚ Moderate

### ▾ Re:What if it were Microsoft code (1)

Anonymous Coward | 2 days ago | (#47657211)

So, let's say that Coca Cola donates 1000 bottles of water to a charity event or disaster recovery effort. Does that mean that all bottles of water manufactured by Coca Cola can be lifted from a store for free? The license was "viral implementation for free, but still subject to patent protection" OR "buy a commercial license for code and patent".

The point of the patent system was originally to enhance disclosure -- you disclose the invention and you get protection from others selling the invention for a number of years. If I take a patented idea, use or implement the patented idea for my own use (not for sale nor profit) then I am golden and don't owe the patent holder a thing. The opposite thing is to try and protect by obscurity -- but if you built a better mouse trap, it's pretty easy for me buy one rev engineer it and to go into competition with you.

↩ Reply     ↕ Parent     ☚ Moderate

### ▾ Re:What if it were Microsoft code (1)

Spazmania (174582) | 2 days ago | (#47658751)

> *The difference is that the code is distributed for free.*

Nonsense. The code is distributed with the expectation of payment in kind, namely providing your source code as well. At a minimum, your source code that you're trying to keep closed has a monetary value which you deprived the GPL author of.

↩ Reply     ↕ Parent     ☚ Moderate

### ▾ Re:What if it were Microsoft code (1)

jrumney (197329) | 2 days ago | (#47659909)

The original author was distributing **both** GPL and commercially licensed copies, so a monetary value can very easily be attributed as damages in this case.

↩ Reply     ☚ Moderate

Search Slashdot          Beta

🔍Search

Free software is lberated, as in freedom. It does not free you or me from obligations. It literally means that the software itself is free from our restrictions and impositions. That is why the source code of RedHat is available for CentOS, Unbreakable, Fedora, and others to make their own distributions.

So why do people pay for RedHat? To get support and access from the developers. If something ever happens to RedHat, then another company with the right talent can just as easily step in and offer support. Try that with Solaris!

The two meanings of "free" are an anomoly of the English language. It is time to start referring to "Free Software" as "Liberated Software".

↩ Reply    ⚒ Moderate

### ▼ Re:What if it were Microsoft code (1)

Errol backfiring (1280012) | 2 days ago | (#47661287)

> The difference is that the code is distributed for free.

Nonsense. The GPL is especially used against finance-driven development. You "pay" by being a human instead of a robotic bean counter. The GPL states other demands than monetary. The GPL exist to fight money based extortions. The damages are damages against humanity. These damages are more real than the dollars you want to express them in.

↩ Reply    ⚒ Moderate

### ▼ What if it were Microsoft code (0)

Anonymous Coward | 2 days ago | (#47656639)

Indeed. And, in truth, I wouldn't blame them. It's absolutely NO different with GPL/LGPLed stuff and should have similar consequences (which, wow...they DO...)

↩ Reply    ⬆ Parent    ⚒ Moderate

### ▼ Would a commercial vendor forgive an ordinary user (0)

Anonymous Coward | 2 days ago | (#47656585)

> Should we forgive commercial companies who fail to undertake honest compliance with the GPL?
> Should we forgive their customers who aren't diligent in acquiring their software from diligent

Search Slashdot                    Beta

Reply    Moderate

Search

### ▼ Compelled to freely license? (1)


ShanghaiBill (739463) | 2 days ago | (#47656629)

> ... and could be compelled to freely license the entire product as a result.

No. Violating the GPL is violating copyright law. Copyright law spells out specific remedies for violations, and being "compelled to freely license" a product is NOT one of those remedies.

↩ Reply    ⚒ Moderate

#### ▼ Re:Compelled to freely license? (1)

MightyMartian (840721) | 2 days ago | (#47656649)

The copyright part of the GPLv2 doesn't allow that remedy, but the GPL isn't just a statement of copyright, but is also a license, and the license part of the GPLv2, which you agree to if you use GPL code, does specify what must happen if GPLv2 code is incorporated.

And if software companies are suddenly saying licenses aren't enforceable, then wow, we've entered a brand new age.

↩ Reply    ↕ Parent    ⚒ Moderate

##### ▼ Re:Compelled to freely license? (1)


vux984 (928602) | 2 days ago | (#47656919)

*The copyright part of the GPLv2 doesn't allow that remedy, but the GPL isn't just a statement of copyright, but is also a license, and the license part of the GPLv2, which you agree to if you use GPL code, does specify what must happen if GPLv2 code is incorporated.*

So if they used a non-gpl library from microsoft in their code, or paid for a 3rd party license what then? The court is going to force them to GPL and distribute those as well? That's just asinine. It would NEVER happen. It doesn't even make sense that a court would ever order that.

If you are in violation of the GPL then you lose the right to distribute the code. That's it. For copies of the program you already distributed you will be on the hook for damages. That's it.

*And if software companies are suddenly saying licenses aren't enforceable, then wow, we've entered a brand new age.*

The license doesn't specify that you must release the code as a REMEDY for violation of the

Search Slashdot           Beta

🔍 Search

### ▾ Re:Compelled to freely license? (0)

Anonymous Coward | 2 days ago | (#47657083)

This is why the LGPL was created. Any utility library licensed using the GPL should never be touched by commercial vendors unless they understand the difference. This was a smart move on Ximpleware's part, as it does have the impact of essentially "infecting" Versata's entire codebase unless they are granted a commercial license (the hammer to the commercial license carrot).

The GPL does state that if you cannot meet the terms of the license by distributing the source code for the entire program (DLLs and all) then you aren't allowed to distribute it.

↰ Reply    ↕ Parent    ⚞ Moderate

### ▾ Re:Compelled to freely license? (1)

vux984 (928602) | 2 days ago | (#47657769)

*The GPL does state that if you cannot meet the terms of the license by distributing the source code for the entire program (DLLs and all) then you aren't allowed to distribute it.*

The GPL at that point is just re-stating copyright law.

*This was a smart move on Ximpleware's part, as it does have the impact of essentially "infecting" Versata's entire codebase unless they are granted a commercial license (the hammer to the commercial license carrot).*

The word 'infect' is simply inaccurate FUD. Suppose a guy with a serious virus gets on a plane and infects the rest of the passengers. THAT is an infection. They can't solve the problem by simply removing the original carrier.

The GPL library doesn't 'infect' anything, they can simply remove the dependency. Problem for the rest of the code solved. They are still on the hook for copyright infringement/license violation for any copies they distributed up to that point, but the 'code' itself isn't infected in any meaningful way.

↰ Reply    ↕ Parent    ⚞ Moderate

### ▾ Re:Compelled to freely license? (1)

spitzak (4019) | 2 days ago | (#47658243)

No, it has NOTHING to do with "infection". That is a FALSE concept, a LIE perpetuated by MicroSoft to discredit the GPL. There IS NO SUCH THING AS



Search Slashdot

Beta

Search

include 'you are forced to distribute stuff you have copyright on for free'. It just does not contain that in any law in any jurisdiction. So stop it with the lies.

↰ Reply    ↕ Parent    ☚ Moderate

### ▼ Re:Compelled to freely license? (0)

Anonymous Coward | 2 days ago | (#47658651)

So what do you do if you get busted?

↰ Reply    ↕ Parent    ☚ Moderate

### ▼ Re:Compelled to freely license? (1)

spitzak (4019) | 2 days ago | (#47658911)

Copyright violation conviction results in having to pay monetary damages to the copyright holder, and to cease redistribution of the copyrighted work.

Fulfilling the requirements of the LGPL on new copies in no way is required by, and conversely also does not get you out of, the punishment. Therefore for every possible reason in the book this "viral" idea is false.

↰ Reply    ☚ Moderate

### ▼ Re:Compelled to freely license? (0)

Anonymous Coward | 2 days ago | (#47658089)

*So if they used a non-gpl library from microsoft in their code, or paid for a 3rd party license what then? The court is going to force them to GPL and distribute those as well? That's just asinine. It would NEVER happen. It doesn't even make sense that a court would ever order that.*

Bzzt. Wrong. Thanks for playing. The GPL (v2, in this case) specifies that ⇅derivative works must be GPL'd, not other incorporated software.

From the GPL v2 itself:

*2. You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or*

Search Slashdot          Beta

 Search

*parties under the terms of this License. c) If the modified program normally reads
commands interactively when run, you must cause it, when started running for such
interactive use in the most ordinary way, to print or display an announcement
including an appropriate copyright notice and a notice that there is no warranty (or
else, saying that you provide a warranty) and that users may redistribute the
program under these conditions, and telling the user how to view a copy of this
License. (Exception: if the Program itself is interactive but does not normally print
such an announcement, your work based on the Program is not required to print an
announcement.)* **These requirements apply to the modified work as a whole. If
identifiable sections of that work are not derived from the Program, and can be
reasonably considered independent and separate works in themselves, then
this License, and its terms, do not apply to those sections when you distribute
them as separate works.** *But when you distribute the same sections as part of a
whole which is a work based on the Program, the distribution of the whole must be
on the terms of this License, whose permissions for other licensees extend to the
entire whole, and thus to each and every part regardless of who wrote it. [emphasis
added]*

Posting AC as I've moderated on this thread.

⤺ Reply    ↥ Parent    ⚒ Moderate

▾ **Re:Compelled to freely license?** (1)

ShanghaiBill (739463) | 2 days ago | (#47656963)

> *... which you agree to if you use GPL code ...*

No. You only agree if you agree, by, say, signing an agreement. If you use GPL in violation of
the license, and you have never agreed to that license, then you are in violation of copyright
law, not contract law.

⤺ Reply    ↥ Parent    ⚒ Moderate

▾ **Re:Compelled to freely license?** (1)

MightyMartian (840721) | 2 days ago | (#47657841)

Thanks to the Supreme Court of the United States, one does not have to physically sign
any agreement to be bound by it. Use alone, such as putting a commercially-produced
DVD in a DVD player, is sufficient for you to have agreed to the terms.



Search Slashdot          Beta

 Search

Citation or it didn't happen.

↩ Reply    ⬆ Parent    ⚒ Moderate

### Re:Compelled to freely license? (1)

spitzak (4019) | 2 days ago | (#47658217)

No you are wrong.

The license gives rules that you must follow if you don't want to violate the copyright. There are other ways of not violating the copyright, an easy one is to not distribute a copy at all!

The license is enforceable. If you don't follow it you have VIOLATED COPYRIGHT, which is against the law.

But you are making the bogus and false statement that the punishment for violating copyright is to force you to continue distributing it but obey the license. That is FALSE. The punishment for violating copyright is that you must cease violating it (ie stop distributing!!!!!) and pay monetary damages to the copyright holder.

Conversely starting to obey the GPL on new distributions does not get you out of anything. You have still violated copyright with your earlier copies and therefore not only are you not forced to distribute code, it does not even help you!

You are repeating one of the biggest lies being perpetuated by MicroSoft. Don't be such a tool.

↩ Reply    ⬆ Parent    ⚒ Moderate

### Re:Compelled to freely license? (1)

Spazmania (174582) | 2 days ago | (#47658365)

Licenses are enforceable -- if you agreed to them. Presumably XimpleHelp doesn't have a signed agreement from Vyatta. Did Vyatta stipulate to using the XimpleHelp software under it's GPL license or is that a disputed fact? If disputed then it's just as likely that we're looking and plain-jane infringement for which the GPL and its terms are irrelevant. Infringement is cured with cash and injunctions. Nothing else, just cash and injunctions.

↩ Reply    ⬆ Parent    ⚒ Moderate

### Re:Compelled to freely license? (1)

WorBlux (1751716) | 2 days ago | (#47660415)



Search Slashdot    Beta

**Search**

**Spazmania (174582)** | yesterday | (#47663189)

Versata, I typoed it.

As far as acceptance of the license goes, it doesn't matter where they steal the source from, the license is not automatically accepted. The GPL is funky that way: one part tries to say it can be automatically accepted, another part concedes that it isn't, and the law everywhere in the US except two states says it isn't.

↩ Reply    ⚒ Moderate

### ▼ Settle out of court (1)
**tepples (727027)** | 2 days ago | (#47657589)

> *Copyright law spells out specific remedies for violations, and being "compelled to freely license" a product is NOT one of those remedies.*

True, but a lot of authors who use the GPL have accepted retrospective compliance as an out-of-court settlement.

↩ Reply    ⤒ Parent    ⚒ Moderate

#### ▼ Re:Settle out of court (1)
**sixoh1 (996418)** | 2 days ago | (#47658715)

Yes, people get very confused by the fact that nearly all of the headline grabbing GPL enforcement actions to date have "settled" for coming into compliance, with occasional "donations" to GPL enforcement bodies. Remember, a settlement is usually an out of court agreement between the parties to terminate or withdraw legal action, and never involves actually settling the law at hand, and a settlement generally doesn't need to comply the law.

The best way to understand this difference is to realize that if you run off the road and break my fence, and I sue you but settle for $20 instead of the $200 repair bill for whatever reason, you can still be sued by my neighbor for his part of the fence, and he is under no obligation to settle for $20 as I have done.

↩ Reply    ⤒ Parent    ⚒ Moderate

### ▼ Re:Compelled to freely license? (0)
Anonymous Coward | 13 minutes ago | (#47674371)

Larry Rosen: A Case Study In Understanding (and Enforcing) the GPL - ...

http://beta.slashdot.org/story/205777

Search Slashdot          Beta



Search

decided that the attempt to prevent the exercise of fair use rights by contract was grounds for loss of copyright over the item the contract was attempting to protect. Hence, at least one legal professional was of the opinion that the remedies spelled out in copyright law are not the sole remedies applicable to cases that involve this law.

↩ Reply     ⚒ Moderate

## ▼ Fault appears to lie with Versata (2)

BaronM (122102) | 2 days ago | (#47656659)

If I read correctly:

1. Versata produced software 'DCM' incorporating Ximpleware's GPLv2 licensed code.
2. Versata licensed DCM to Ameriprise, who then distributed copies to it's independent contractors.
3. Ximpleware's code is subject to patent claims in the USA, making distribution under GPLv2 impermissible, and Versata did not have a commercial license, making Versata's distribution of Ximpleware's code unlicensed (in the USA).
4. Ameriprise was not aware of (1) or (2) until discovery related to a lawsuit between Versata and Ameriprise.

If this is correct, I can see where Ximpleware has a copyright claim against Versata, but I don't see where Ximpleware has a copyright claim against Ameriprise for any distribution of DCM to it's contractors. Strictly speaking, I suppose Ameriprise did distribute copies of Ximpleware's code, but if they did so under good-faith belief that they had appropriately licensed DCM from Versata, I can not see it being reasonable to hold Ameriprise liable.

At the risk of a possible bad analogy, if Google included undocumented unlicensed code in Android, I would not consider it reasonable to hold each phone vendor liable for infringement, either.

↩ Reply     ⚒ Moderate

## ▼ But Ameriprise is vulnerable to patent claims (2)

sirwired (27582) | 2 days ago | (#47656735)

"Good Faith" helps reduce your damages in a patent claim, but mere use of patented software (much less distribution) leaves you open to patent claims, independent of copyright claims.

And yes, this is a problem with software patents. Both the distributor and end users are vulnerable to claims.

Android is indeed tied up in all sorts of patents, and every phone vendor has to pay up licensing fees, including to Microsoft. (As of a couple years ago, MS made about 10x their Windows Phone revenue just from Android lic fees.)



Search Slashdot                          Beta

🔍 Search

> *At the risk of a possible bad analogy, if Google included undocumented unlicensed code in Android, I would not consider it reasonable to hold each phone vendor liable for infringement, either.*

That is a bad analogy, which is why all the major phone vendors have done licensing deals with Microsoft, and not Google. And remember SCO going after end users of linux?

↩ Reply    ↕ Parent    🔨 Moderate

### ▼ Re:Fault appears to lie with Versata (0)

Anonymous Coward | 2 days ago | (#47657303)

> *I would not consider it reasonable to hold each phone vendor liable for infringement, either.*

If i'm not mistaken I believe that's what has been going on for years now. Due to Microsoft making patent claims over android.

↩ Reply    ↕ Parent    🔨 Moderate

### ▼ Re:Fault appears to lie with Versata (2)

msobkow (48369) | 2 days ago | (#47658143)

Perhaps simplistic, but mere possession of stolen goods is an indictable offense. It does not matter whether you were under the impression that the fence owned the items you bought; they're stolen, and you can't keep them.

↩ Reply    ↕ Parent    🔨 Moderate

#### ▼ Re:Fault appears to lie with Versata (1)

msobkow (48369) | 2 days ago | (#47658155)

Yeah, "just a copy", blah, blah, blah.

The point is that "good faith" is not a defense against charges nor does it give free reign to continue the offending action.

↩ Reply    ↕ Parent    🔨 Moderate

Search Slashdot          Beta


Search

distribution or copying not compliant with the GPLv2 would violate not only copyright but patents.

Ameriprise did distribute copies of XimpleWare's code without proper license. If they'd merely used copies they got from Versata, they'd be in a much better position. If the contract with Versata contained an indemnification clause, then Versata would be responsible for at least part of any findings against Ameriprise. That's what indemnification clauses are for. They're not automatic. Ameriprise has a very good argument that it did not violate patents or copyrights willfully or knowingly, but they still violated.

The idea behind the law is to give the copyright and patent holders control over their work, and not allow a company to use it with impunity by having the copies go through a disposable company first.

↩ Reply      ✇ Moderate

### ▼ The viral argument is misleading. (2)

queazocotal (915608) | 2 days ago | (#47656695)

You distribute compiled code with GPL integrated, without complying with the GPL.

If this is discovered, then your customer has no right at all under the GPL to your whole code, and the GPL can never give them any rights.

The only way you can come into compliance with the GPL is to distribute sources for the whole blob - but in practice what has to happen to compel you to do this is for you to either decide that it is easier doing this than going to court - or for an author of the GPL code (or for the FSF where authorship has been assigned) to take court action for violating the licence - and then for the court to as the penalty require the release of source code.
The court is much more likely to go for financial damages - as that's what they know.

↩ Reply      ✇ Moderate

### ▼ Re:The viral argument is misleading. (0)

Anonymous Coward | 2 days ago | (#47656827)

you could also:

1) Eliminate the GPL code, either by replacing it with a proprietary version, or rolling your own.
2) Negotiate with the copyright holder for a proprietary release of the same code (only works well if there aren't a lot of separate copyright holders, and if the actual holder isn't an idealistic nut).
3) Stop distributing the product (only works well if you can stop distributing the specific feature/module that uses GPL code and the client doesn't need it, or if you have an alternative product that gets equivalent work done).



Search Slashdot       Beta

Search

None of those get you off the hook for the previous copyright violation.

Also starting to distribute your own source code does not fix it either.

The viral argument is worse than misleading, it is totally wrong. The concept does not exist, it is a LIE being perpetuated by various parties for who defeat of open source is in their interests.

↩ Reply   ↕ Parent   ⚒ Moderate

### ▼ Re:The viral argument is misleading. (1)

Spazmania (174582) | 2 days ago | (#47658445)

That depends. If your customer can prove that you accepted the GPL license for the code you later integrated into your product then that license flowed to them with the copy of the binary and they have the right to demand production of your source code for the relevant binaries. Proof such as an email chain discussing the GPL where you explicitly acknowledge that you acquired the code under that license. Which the customer gains access to through discovery.

If the customer can't prove you ever agreed to the GPL then it's plain infringement. In which case you're forced to discontinue use of the unlawful software and may claim damages for the monetary harm that does you.

↩ Reply   ↕ Parent   ⚒ Moderate

### ▼ Re:The viral argument is misleading. (1)

david_thornley (598059) | yesterday | (#47664345)

Actually, no, you can't come into compliance with GPLv2 by retroactively following it. If you've violated it, you no longer have a license (GPLv3 has provisions for coming into compliance again, but GPLv2 doesn't).

You can either accept the injunction from further distribution and pay what the court says to, or you can negotiate with the copyright holder(s). In many cases, the violator has negotiated a settlement in which they provided some guarantees that they would relicense the already distributed code, and do further distribution in accordance with the GPL, in addition to getting their GPL rights back. That would only happen as part of a settlement. As it happens, the FSF's attitude is that such a settlement is perfectly agreeable to them, and so if you're dealing with them you can almost certainly get such a settlement. No court is going to order such a thing in a case of copyright violation, and that's what a GPL violation is.

Case 5:13-cv-05161-PSG    Document 133-5    Filed 11/10/14    Page 49 of 66

Search Slashdot                Beta

 Search

Odds are high that the remedy will simply be to cease distribution and fix the problem. Perhaps some court costs and settlement money.

The odds the court would require them to release the source for everything under the GPL is almost laughably absurd.

For starters that would almost invariably trigger a bunch of OTHER license violations for other libraries and packages they used. No court is going to enforce the GPL by demanding the company violate all its other suppliers licenses. Its just ridiculous on its face.

Its just FUD and full on stupidity.

↩ Reply      ☍ Moderate

▼ **Re:I hate articles like this** (1)

jopsen (885607) | 2 days ago | (#47657689)

> *The odds the court would require them to release the source for everything under the GPL is almost laughably absurd.*

Agree... But terms of the GPL says that if you violated it the license is revoked.
By my interpretation that means that once violated you don't have a license, and **complying with GPL terms after the fact has no effect**.

Thus, the case is reduced to somebody using software for which they don't have a license.

I'm pretty sure bringing yourself into compliance won't change the fact that the license was revoked. But most vendors **might** be willing to extend a new GPL license to you, if you comply with the terms - just as a way to end the case.

↩ Reply    ↕ Parent    ☍ Moderate

▼ **Re:I hate articles like this** (1)

vux984 (928602) | 2 days ago | (#47657843)

*By my interpretation that means that once violated you don't have a license, and complying with GPL terms after the fact has no effect.*

It has no effect on the previous copyright infringement, but it does mean you can move forward with distribution.

*I'm pretty sure bringing yourself into compliance won't change the fact that the license was*

Search Slashdot          Beta

🔍 Search

*But most vendors might be willing to extend a new GPL license to you*

A vendor cannot refuse to license GPL code. The license offer is in the code itself. The only thing anyone can do is pursue infringers for copyright infringment damages.

*[...] just as a way to end the case.*

Right, the infringer might offer to bring his code into compliance with the GPL (as opposed to ceasing to use the GPL library in his product) as part of his settlement offer. Many GPL rights holders would be inclined to accept that as part of a settlement, since that is really what they want all along.

But we are in agreement, the GPL in no way mandates that outcome, and it would be absurd to imagine it did.

↩ Reply   ↥ Parent   ⚒ Moderate

### ▾ gpl bit wont be decided one way or another.. (0)

Anonymous Coward | 2 days ago | (#47656761)

in this suit.... the software's copyright holder is not a party to the case.

↩ Reply   ⚒ Moderate

### ▾ It's almost as if people don't understand the GPL (-1)

Anonymous Coward | 2 days ago | (#47656769)

Call it viral if you want, free software should stay that way.

↩ Reply   ⚒ Moderate

### ▾ I'm quite sure that... (3, Interesting)

mark-t (151149) | 2 days ago | (#47656813)

... the GPL cannot compel you to realease your own source code for free, no matter what you do.

It can, however, make you guilty of copyright infringement if you don't comply (since permission to copy the work does not exist if you don't agree to the terms of the GPL), and this can result in a legally sustainable C&D against the distribution of any and all products by the company which utilize the GPL code in a noncompliant fashion until either all of the GPL code is removed, the code is released, or else alternative licensing arrangements can be made. Exact damages awarded to the copyright holder, if any, would probably be at the discretion of the court, but even if there were none, the company that infringed



Search Slashdot          Beta

🔍Search

### ▼ Re:I'm quite sure that... (1)

Anonymous Coward | 2 days ago | (#47656959)

. . .

> the company that infringed on the copyright would still have a fine for violating copyright law, payable to the state, . . .

Where do you get this idea that there are any fines payable to the state for copyright infringement? Copyright cases are generally civil suits. There can be statutory damages - payable to the plaintiff.

↩ Reply   ↕ Parent   ⚒ Moderate

### ▼ Re:I'm quite sure that... (1)

geminidomino (614729) | 2 days ago | (#47657533)

In common practice against corporations, maybe, but there are absolutely criminal penalties [copyright.gov] to be had.

↩ Reply   ↕ Parent   ⚒ Moderate

### ▼ Re:I'm quite sure that... (1)

mark-t (151149) | 2 days ago | (#47659255)

Where do you get this idea that copyright infringement isn't a crime that can have criminal penalties associated with it?

↩ Reply   ⚒ Moderate

### ▼ Re:I'm quite sure that... (1)

david_thornley (598059) | yesterday | (#47664369)

Sigh. Copyright is a dessert topping AND a floor wax. If somebody violates your copyright, you can sue them in civil court. Certain copyright violations are also Federal crimes, although not all infringements are.

↩ Reply   ⚒ Moderate

### ▼ Re:I'm quite sure that... (1)

mark-t (151149) | yesterday | (#47664765)

What type of copyright infringement is not a crime?



Search Slashdot

Beta

🔍 Search

From , any infringement that is not willful for one. For example, Ameriprise here. They had good reason to believe that they were within their rights to distribute the software, and it turns out they didn't. They did nothing criminal. [copyright.gov]

↩ Reply    🛠 Moderate

### ▾ Re:I'm quite sure that... (1)

mark-t (151149) | 15 minutes ago | (#47674359)

My understanding is that it is still criminal, but the criminal penalties can be waived. Sort of like getting caught going slightly over the speed limit and being let off with a warning instead of being dealt a fine.

↩ Reply    🛠 Moderate

### ▾ Re:I'm quite sure that... (0)

Anonymous Coward | 2 days ago | (#47661027)

> ... the GPL cannot compel you to realease your own source code for free, no matter what you do.
>
> It can, however, make you guilty of copyright infringement if you don't comply

No, it can't. Your copying without permission makes you guilty of copyright infringement. The only thing the GPL can do is make you *unguilty* of copyright infringement if you heed its conditions.

Saying the GPL "can make you guilty of copyright infringement" is disingenuous. If I tell my neighbor "you can take the apples from my orchard if I get a piece of the pie" and he then goes hollering around that I am trying to turn him into a thief since my permission makes him guilty of theft since he does not comply, that's a piece of bullshit and a crook's way of looking at things.



↩ Reply    🛠 Moderate

### ▾ Re:I'm quite sure that... (1)

mark-t (151149) | yesterday | (#47664017)

Fair point... you are right it's not the GPL itself that makes one guilty of copyright infringement, it's their own actions of copying the work without permission. The GPL only explicitly states that permission will not be given to copy the work if one does not agree to its terms, which is how it might feel like it's the GPL's terms that cause copyright infringement, but you are

Search Slashdot        Beta

🔍 Search



▼ **Do What Though Wilt** (2, Insightful)
Anonymous Coward | 2 days ago | (#47656977)

BSD license removes most of these legal acrobatics.

The GPL has behind it an altruistic notion. That is, that your code can be extended and improved and will still remain free. I've always been of the view that it is even more altruistic to let people do what they wish with my code, even if that means closing it off in proprietary products, not acknowledging my efforts, and making money off of it while not giving any back to me.

If a company does make money of of my code, then great, I hope they create lots of jobs and provide benefits, and generally improve whatever economy the reside in.

↩ Reply    ⚒ Moderate

▼ **Re: Do What Though Wilt** (-1)
Anonymous Coward | 2 days ago | (#47657097)

Are you a sado-masochist or where does this desire to be exploited stem from?

↩ Reply   ⬆ Parent   ⚒ Moderate

▼ **Re: Do What Though Wilt** (2, Informative)
Anonymous Coward | 2 days ago | (#47657153)

> *BSD license removes most of these legal acrobatics.*

> *Are you a sado-masochist or where does this desire to be exploited stem from?*

You're thinking of the BDSM license, which is something else entirely. Don't worry; it's a common mistake.

↩ Reply   ⬆ Parent   ⚒ Moderate

▼ **Re:Do What Though Wilt** (0)
Anonymous Coward | 2 days ago | (#47657529)

They are just different. Your preference is fine -- so is mine.

> If a company does make money of of my code, then great, I hope they create lots of jobs and provide benefits, and generally improve whatever economy the reside in.

Search Slashdot    Beta

🔍Search

### ▼ Re:Do What Though Wilt (1)

spitzak (4019) | 2 days ago | (#47658305)

I assume you just completely missed the fact that the original company was making money by selling a commercial license for their code? They certainly did not want to use the BSD license.

↩ Reply    ⬍ Parent    🔨 Moderate

### ▼ Re:Do What Though Wilt (1)

u38cg (607297) | 2 days ago | (#47661259)

Umm, the point of the GPL is not altruism. It is to create software that the end user has the right to inspect and modify. So yes, if altruism is your goal, public domain your code and be done with it (this works perfectly well for, say, SQLite).

↩ Reply    🔨 Moderate

#### ▼ Re:Do What Though Wilt (1)

david_thornley (598059) | yesterday | (#47664397)

The point of the GPL is indeed altruism. It's a different approach than the BSD, but both are altruistic in that they allow people to do things with the code freely. Public domain, on the other hand, is legally troublesome, particularly in some countries. If you want anybody to use the code for whatever use the BSD license or the WTF license or something like that.

↩ Reply    🔨 Moderate

### ▼ Re:Do What Though Wilt (1)

stoatwblr (2650359) | 5 hours ago | (#47672073)

"BSD license removes most of these legal acrobatics."

Yes, and leaves 3rd parties free to modify my code, call it their own and claim copyright on it, or release binary-only versions.

Both have their advantages and disadvantages, but the BSD model's main advantage is to vendors who want to benefit off others work whilst not contributing back to the ecosystem.

To be honest I'm surprised that BSD isn't more widespread in embedded systems, but the fact that so many use linux means that the GPL must have something going for it on the vendor side.

↩ Reply    🔨 Moderate

Search Slashdot          Beta


Search

*its distribution under that license in the United States*

Not entirely true. That section says that you cannot □further distribute any GPL software that □also has patent encumbrances (or other encumbrance enacted by court order or similar judgement). It's not clear what original copyright and patent holder's options are. They could license the software under the GPL with a patent license attached that prevents further distribution (arguably perverting the point of the GPL). The question before the court is whether distribution of the software under the GPL by the original patent holder without an explicit patent agreement automatically grants a right to the patent as the license as the intent of the GPL is to enable further distribution.

↩ Reply    ☗ Moderate

### ▾ Re:Misreading section 7? (1)
Spazmania (174582) | 2 days ago | (#47658599)

Actually, section 7 of the GPL says "If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all."

So, if Ximpleware intentionally distributed the software under the GPLv2 (they did) and held the patents (they did) then either they must have intended that any recipient of the software under the GPLv2 also receive a license to use the patents or they deliberately breached the GPL contract with every single person who downloaded the code making them (Ximpleware) liable for damages from any of those users who are otherwise compliant with the terms of the license.

Either way, the court might reasonably cure Ximpleware's problem by affirming the existence of a patent license to everyone legitimately using the code under the GPL.

↩ Reply    ⬍ Parent    ☗ Moderate

### ▾ Re:Misreading section 7? (1)
j-beda (85386) | 2 days ago | (#47659923)

> *Actually, section 7 of the GPL says "If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all."*

> *So, if Ximpleware intentionally distributed the software under the GPLv2 (they did) and held the patents (they did) then either they must have intended that any recipient of the software under the GPLv2 also receive a license to use the patents or they deliberately breached the GPL contract with every single person who downloaded the code making them (Ximpleware) liable for damages from any of those users who are otherwise*

Search Slashdot          Beta

Search

If the court says Versata got a patent license when legitimately using the code under the GPL, that does not do much to protect Versata since they do not seem to be legitimately using the code under the GPL - certainly none of their customers knew the code was supposedly GPLed, which seems to be the entire point of this case.

↩ Reply    ☈ Moderate

### ▾ Re:Misreading section 7? (1)

david_thornley (598059) | yesterday | (#47664407)

Actually, XimpleWare can distribute any of its code under any provisions it wants. It can give you a copy under the GPLv2, and point out you can't actually redistribute under it. What they apparently meant to do is provide an implicit patent license, although apparently that's legally iffy.

↩ Reply    ☈ Moderate

#### ▾ Re:Misreading section 7? (1)

Spazmania (174582) | yesterday | (#47666403)

> *XimpleWare can distribute any of its code under any provisions it wants. It can give you a copy under the GPLv2, and point out you can't actually redistribute under it.*

That would be simple fraud. Which would essentially kill XimpleWare's case in spite of Versata's bad behavior.

↩ Reply    ☈ Moderate

##### ▾ Re:Misreading section 7? (1)

david_thornley (598059) | 6 hours ago | (#47671659)

Fraud, I believe necessarily involves misrepresentation. This wouldn't.

It would be an extreme asshole move, but I think it would be legal. You can distribute your own code with any license you please, after all.

↩ Reply    ☈ Moderate

###### ▾ Re:Misreading section 7? (1)

Spazmania (174582) | 5 hours ago | (#47672177)



Search Slashdot          Beta

🔍 Search

license must completely spell out the rights granted and responsibilities
demanded. Lies of omission are still lies, lies with a financial impact are fraud,
and the GPL doesn't allow for modification -- if you want to add patent
limitations you have to use a difference license.

↩ Reply     ⚒ Moderate

### ▼ Re:Misreading section 7? (1)

**stoatwblr** (2650359) | 5 hours ago | (#47672137)

"Either way, the court might reasonably cure Ximpleware's problem by affirming the existence
of a patent license to everyone legitimately using the code under the GPL."

There are plenty of parts of GPL which are patent encumbered. It's perfectly possible to
release patented stuff under GPL as long as a patent license is bundled - and the patent
license can be worded to only be valid whilst use of the software is GPL-compliant.

Issues come when the holder of the patent is not the same entity as the author of the software
and is not entitled to issue a patent license. That's when rewrites are needed.

As others have said, the issue here is that Company A sued Company B and during discovery
it was discovered that Company C's work had been illegally incorporated into the product in
dispute.

Given the "logic" that the MAFIAA use, if the value of the breach is over $50k, criminal
charges could be filed. Some software companies would try and use that logic too.

↩ Reply     ⚒ Moderate

### ▼ Good Public License (-1)

Anonymous Coward | 2 days ago | (#47657069)

Good that it's viral. The more things it "infects" the more open source code we have. Go GPL!

↩ Reply     ⚒ Moderate

### ▼ Morality vs The Law (4, Insightful)

Anonymous Coward | 2 days ago | (#47657167)

(For the sake of disclosure, IAAL, I am a software developer, I have written GPLv2 code, and I have
litigated GPLv2 cases, but I have absolutely zero involvement in this matter)

Search Slashdot        Beta

Q Search

to lean towards money grab.

That said, having intimate knowledge of both sides of the equation here (opensource development ideas and IP attorney mentalities), I can attest that the ideals employed by both sides are, generally, diametrically opposed. Is Ximpleware is right, legally, in the fact that it can release a GPLv2'd software, file patents on the ideas, and then sue the living pants off everyone for patent violations? Frankly, yes because IP laws are harsh and designed to be massive swords. Still, the defendants have decent equitable arguments for estoppel under their implied license/baiting arguments which have precedent in the realm of copyrights. Outside the legalities, is it morally right as an opensource developer? No, probably not.

Suing the hell out of a violator? Go for it. Suing the hell out of a customer with knowledge of the infringement: Sure, why the hell not. But sending off lawsuits to unwitting customers who simply purchased a product they didn't know was infringing? Now you're pushing the line. Such actions have real world consequences. The litigation of these cases is extremely expensive, extremely time consuming, and a corporation must hire representation in U.S. courts (they cannot appear pro se). Most attorneys ignore those realities because, frankly, the suffering of a defendant is of no concern. The only thing that matters is whether the case is meritorious; if so, I'm suing the living pants off you because the law says I can. The motto is typically summarized as: legal, not ethical. But is that what the opensource world wants to present?

Mr. Rosen throws around "indemnification" and "diligent" arguments to justify the lampooning of what most people would consider "innocent" parties, but they're shill arguments at best. The simple truth, is that you're not furthering the opensource movement in any way. As for indemnification, it is a farce. First, it's speculative that any such agreement exists. Second, the indemnitor needs to: 1) agree to honor it's obligation; 2) have the resources to honor it's obligation; and 3) actually honor the obligations. The reality is that a request for indemnification is just as likely to result in more lawsuits, as it is to result in a resolution for the downstream users. Beyond that, if original defendant files for bankruptcy, indemnification is worth absolutely squat. As for "due diligence," any software engineer will readily admit, it is nearly impossible (especially for small to mid-sized firms that are letting non-technical staff handle acquisitions). It's not impossible, just cost prohibitive. Ask yourself, What purpose does destroying a company serve to the greater cause of opensource? Is it legally viable, sure, but is it worth it, morally?

All that to say, I wish people would stop trying to co-opt grand ideals and sugar coating these types of cases. The plaintiff has sued the living hell out of everyone because, legally, they can. In turn, those actions makes settlement more likely, since the upstream infringer is now getting complaints from his clients and costs are rapidly mounting up. Was it legal? Sure. Was it moral and in-line with the opensource movement's ideals? Well, that really depends on what side of the line you fall on. But regardless of where you are on that line, is possibly destroying the lives (yes, personal lives) of the what amounts to companies that did nothing more than purchase a product that they thought was legitimate worth the results? I can attest that plenty of clients have gone bankrupt, been forced into divorces, or killed themselves from lawsuits filed against them (see Aaron Swartz for an example). This type of case is no different. I just wish that the parties would have the respect to admit what they're doing and stop

Search Slashdot          Beta

🔍 Search

### ▼ Re:Morality vs The Law (-1)

Anonymous Coward | 2 days ago | (#47657765)

Absurd indeed!

You said "killed themselves from lawsuits filed against them (see Aaron Swartz for an example)".

You Sir, are also a mindless moron.

↩ Reply     ↕ Parent     ⚒ Moderate

### ▼ Re:Morality vs The Law (0, Flamebait)

Anonymous Coward | 2 days ago | (#47658023)

One of the best analyses of open source politics I have seen in a long time. It's not a coincidence that BSD variants are winning over GPL

↩ Reply     ↕ Parent     ⚒ Moderate

#### ▼ Less winning... (0)

Anonymous Coward | yesterday | (#47668421)

and more 'swinging pendulum.'

When GPL gets too oppressive you'll see a shift to more BSD/MIT licensed software, and then after enough companies leech, encumber, embrace and extend, you'll see a pushback to more GPL'd software, just like initially happened when Stallman and Co created the GPL.

↩ Reply     ⚒ Moderate

### ▼ Re:Morality vs The Law (1)

pem (1013437) | yesterday | (#47663091)

The thing you have to remember is this:
The code in question is dual-licensed.

The code is not produced by a charity; it is produced by a business. From the perspective of a business, the GPL is a marketing tool -- a great marketing tool. "Here's the source; try it out! Talk to others who are using it! Just contact us if you want to merge it with your proprietary code and make money!"

Any business can use the GPL this way, and many have. Just because a business uses the GPL does not mean that their politics align with the FSF.

Search Slashdot          Beta

🔍Search

Thank you for your analysis, but it seems to me that Ameriprise is not just a customer. They're also a distributor of GPLed software not in accordance with the GPL. It seems to me that the plaintiff would have every legal and moral right to at least get an injunction against further distribution. I don't know if there were any lawsuits against anybody for just receiving the software.

This is also a commercial case, since the software is dual-licensed. The plaintiff would normally have collected money on every copy of the software distributed in a non-GPL fashion, and may well want the license fees for all distributed copies.

Moreover, I'm quite confident that dinging Ameriprise is not going to personally bankrupt anybody. There are times when one might want to go easy on the litigation because of the effect it would have on people or small companies, but Ameriprise has profited enough from shady activity in the past* that I'm not going to have sympathy with them.

*Considering what I received as part of a class-action suit in response to something I paid $500 for, I assume Ameriprise made loads on charging for financial advice to buy Ameriprise products even when the customer couldn't really afford them.

 Reply   🔨 Moderate

## You sir, are being absurd (1)
Zontar_Thing_From_Ve (949321) | 2 days ago | (#47657185)

From the parent post:
📄 *There is rich detail about this matter that will come out during litigation. Please don't criticize until you understand all the facts.*

When has knowing the facts ever stopped Slashdotters from criticizing? Sounds like somebody doesn't understand how things work around here.

 Reply   🔨 Moderate

## Skeptic (0)
Anonymous Coward | 2 days ago | (#47657241)

Comments by attorney's in support their client are essentially meaningless. Even in criminal trials lawyers' remarks are not under oath and are better ignored. Similarly those who claim a deep understanding of both the facts and the law are naive. The only opinion that matters is the final disposition of the courts.

↩ Reply   🔨 Moderate

Case 5:13-cv-05161-PSG   Document 133-5   Filed 11/10/14   Page 61 of 66



Search Slashdot          Beta

🔍 Search

Except this is just nonsense and this method which is "child like" should not be protected under the law. The non-gpl code is not an extension or modification of the GPL source code no matter what the illogical gpl license states. Only a self important, child like, sociopath(richard stallman) would come up with a moronic method. The company should just release the GPL open source code portion and not the whole thing. The non-gpl becomes part of gpl because both touched, oooooooo? what is this shit kindergarten.

Even MS does not do stupid shit like this, you can static or dynamic link to their libraries and they don't give a fuck since it will benefit their freaking windows platform anyway.

↩ Reply    ⚒ Moderate

▼ **Re:more gpl non-sense** (1)
Anonymous Coward | 2 days ago | (#47657767)

The definition of "derived work" is part of the interpretation of copyright law. It is not defined by RMS or Microsoft, and certainly not by you.

↩ Reply    ↕ Parent    ⚒ Moderate

▼ **Re:more gpl non-sense** (0)
spitzak (4019) | 2 days ago | (#47658357)

You are stating a LIE that was written by MicroSoft. Absolutely not what Richard Stallman said.

The GPL does not compel anybody to freely license their product. What it does is make you violate copyright if you include GPL code in that product. The punishment for violating copyright is defined by law as monetary damages and a requirement to STOP distributing (and stopping is the exact opposite of being forced to distribute, you know).

Thanks for proving your ignorance.

↩ Reply    ↕ Parent    ⚒ Moderate

▼ **Re:more gpl non-sense** (0)
Anonymous Coward | 2 days ago | (#47660759)

> *whine* *foam* *ooooo*

Now tell me: where are the zealots?

↩ Reply    ⚒ Moderate

Larry Rosen: A Case Study In Understanding (and Enforcing) the GPL - ...

http://beta.slashdot.org/story/205777

Case 5:13-cv-05161-PSG   Document 133-5   Filed 11/10/14   Page 62 of 66

Search Slashdot          Beta

🔍 Search

punishments or fines can take place there must be some evidence that a person is doing wrong knowingly. The intellectual property mess with all its complexity and legal issues should not be put upon the end user of the product who in many cases has no way to know or even find out if he is doing wrong. Keep in mind that many businesses are quite small and even a ten dollar expense can be a harsh issue for them therefore lawyers and expert opinions may not be available to them.

↩ Reply   ⚒ Moderate



▼ **Re:3rd. Party rights** (1)

david_thornley (598059) | yesterday | (#47664543)

While I largely agree with you, this is a problem completely unrelated to F/OS licenses.

For many things, a violation is a violation whether somebody knows it is a violation or not. Ameriprise clearly wasn't willfully or knowingly violating copyright and maybe patent law, but they don't get a free pass just because they didn't know (just reduced penalties). Otherwise, a company could acquire software or other copyrighted and/or patented material through a small "burner" company that could be left to go bankrupt.

Also, Ameriprise is not a small company. It can afford good legal counsel. It can afford $10. It was also itself violating copyright by distributing copies of GPLed stuff, not merely using it. Ameriprise is a fully legitimate target here.

↩ Reply   ⚒ Moderate

▼ **Section 0 of the GPL** (0)

Anonymous Coward | 2 days ago | (#47657783)

> [...] Section 0 of GPLv2, which says, "[t]he act of running the Program is not restricted." That sentence actually means is just what it says: The GPLv2 copyright grant itself (which is all there is in GPLv2) does not restrict the act of running the program.

I've noticed that many installers for GPL software on Windows require me to accept the GPL license before I'm able to install the software on my computer. Given the quote above, I shouldn't have to accept the license to install and run it. I'm only subject to the license when I redistribute the software.

↩ Reply   ⚒ Moderate



▼ **Re:Section 0 of the GPL** (1)

kthreadd (1558445) | 2 days ago | (#47658637)

Yep, but nothing stops anyone else from having you accept it before you can install it.



Search Slashdot          Beta

🔍 Search

I think you are absolutely correct. The only time you should "accept" the GPL as a contract is when you download or receive the source code. If those Windows installers include the source code, then the click-through agreement is OK, in my opinion.

↰ Reply    ↕ Parent    ⚒ Moderate

### ▾ Re:Section 0 of the GPL (1)

twistedcubic (577194) | 2 days ago | (#47658809)

On second thought, my reasoning is incorrect. You could just as easily link to an already compiled GPL library and distribute it. So the click-through agreement might be necessary, if you imagine all the possibilities.

↰ Reply    ↕ Parent    ⚒ Moderate

## ▾ The code was available under a commercial license (1)

DrJimbo (594231) | 2 days ago | (#47660505)

Versata chose to steal the code instead of licensing it under the commercial license or the GPL. Just because the GPL allowed the thieves to legally look at the code or use it unmodified does not magically transform this into a nightmare scenario. They are  not being forced to either abandon their project or release their own code. They could just buy the commercial license like any responsible grownup would do.

The claim that this is a GPL nightmare scenario is just a stupid lawyer trick to try to fool people into blaming the victim instead of the unscrupulous bastards who stole the code and who still refuse to pay for it even after they were caught red-handed.

Think for a moment what would happen if the unscrupulous bastards prevail. The implications go far beyond the GPL. Imagine you let me see your commercial code without authorizing me to use it or copy it, perhaps through an NDA. Then I steal your code and put it in my products which I sell to a bunch of people. I get caught red handed and I still refuse to pay. Instead I hire a sleaze-ball lawyer who claims this is a nightmare scenario for commercial software licenses and NDAs. If the UBs win here, my lawyer's job becomes much easier because she can use this case as precedent. ISTM a win by the UBs would create a world where simply letting someone see your code dissolves any rights you have to that code.

↰ Reply    ⚒ Moderate

## ▾ A reply to the enumerated points (1)

WorBlux (1751716) | 2 days ago | (#47660973)

1. Implied - Not directly expressed.

Search Slashdot          Beta

Q Search

patent license for that task even if not patent was specifically mentioned. If Microsoft entered into a contract with me to manufacture android devices for their employees, that can't turn around a sue me for patent infringement of those specific enumerated devices on the purchase order. In the purchase contract it is implied Microsoft gives me permission to do those things reasonably required to fulfill the contract.

The is precedent I assume of using the principle of estoppel as a defense against patent claims. And estoppel may be implied. Ergo implications of representations made by a person may estopped patent claims against other persons.

2. The contract must be judged by it's actual language rather than ex-post-facto assertions of it's authors. It is the interpretation they would like to see in the courts, though not indicative of current law.

It may be true the FSF believes running a program is not a copyright issue, however there are precedents that claim loading a program into RAM constitutes a copying under the meaning or 106, especially if done by a licensee of a copy rather than an owner. A licensee being differentiated by having significant restrictions places on their ability to redistribute to transfer the copy of the work. The GPL does put significant limitations on this act, Section 4 specifically forbids you to "copy, modify, sublicense, or distribute the Program except as expressly provided under this License"

But this point is irrelevant. The GPL is not a copyright grant it is a license contract giving permission under certain conditions to do certain things that would otherwise be illegal. The GPL could have said that use of the program is not restricted by this license, but is simply says not restricted.

3. Section 8. allows the Original Copyright holder to expressly exclude distribution on such jurisdictional basis, why was this not done?

Anyways that's not quite what I think section 7 implies. If you agree not to distribute or use the program outside a license agreement, you may not longer distribute under the GPL unless royalty-free licenses are granted downstream. If there is a judicial ruling that the software infringes then you may not distribute it (under this license at least).

So with section 8 available (but not taken), then it must be presumed Ximpleware's distribution really did give a full GPL license to those receivers in the U.S., without additional restrictions. Now if the programs was distributed in violation of the GPL then it could be considered and inducement to infringe.

Having transmitted the program under a license in which no restrictions are placed on use of the program, Ximpleware is estopped from asking for judicial relief that would be a restriction on the use of the program.

Even in the case of the accusation patent infringement the GPL the GPL makes no termination of right.. The GPL just clarifies that distribution under the GPL may only only happen when in full compliance with the GPL; if for some reason you are legally unable to fully comply then you must forgo distribution.

Search Slashdot          Beta

Search

party receiving the license from Ximpleware, they to have the implied patent license from the no restrictions on use clause. To distribute under the the GPL is to represent that you are imposing no restrictions on the use of the program.

↩ Reply      ⚒ Moderate

▼ **Re:A reply to the enumerated points** (1)

david_thornley (598059) | yesterday | (#47664687)

The GPL has generally been held to be a copyright license, and that disregarding it is a copyright violation.

The law on loading into RAM or whatever is, IIRC, that copyright is not infringed by copying necessary for use of software obtained legally. Personally, I think it should be legal regardless (I'm not liable for copying words into my retina or brain if I'm reading an illegally copied book), but that's another topic. There's also the question of what the plaintiff is suing for; if a plaintiff is not going to sue for such copying (and some are), it doesn't matter.

Section 7 is the "liberty or death" provision. It is intended to keep the GPL pure. If you can't distribute without more restrictions than the GPL allows, then you can't distribute under the GPL. This would apply if the recipient had to get any sort of license, or was restricted in any sort of use, or something like that.

Section 8 is an option available for the copyright holder. The idea is that, if redistribution is not allowed in the US, but would be in Europe, the copyright holder could put such a geographic restriction into the license and still be in GPL compliance. It is not required, and has absolutely nothing to do with this case.

XimpleWare's distribution did in fact give a valid GPLv2 license to anybody without additional restrictions. You or I could use it freely, if we could acquire a copy. It did not give a valid license to redistribute in violation of the license, and since both Versata and Ameriprise were distributing not in accordance with the GPLv2 they were violating copyright. I was unaware that XimpleWare was suing any actual user (as opposed to redistributor) on the basis of copyright. The GPL itself says that there is nothing wrong with using GPLed software without intending to comply with the conditions. Patent law is somewhat different. While it could be argued that there's estoppel on suing for patent violations if the software is distributed according to the GPLv2, this wouldn't apply to software distributed in violation.

The license termination clause is section 4 of GPLv2. Versata does not have a license to use XimpleWare's code under the GPL, unless reinstated by XimpleWare. This does not affect the rights of people who received copies from Versata, but it doesn't free them from GPLv2 restrictions either.

Larry Rosen: A Case Study In Understanding (and Enforcing) the GPL - ...

http://beta.slashdot.org/story/205777

Case 5:13-cv-05161-PSG   Document 133-5   Filed 11/10/14   Page 66 of 66

Search Slashdot

**Beta**

**Search**

The only thing I don't quite understand is the possible motivation for XimpleWare to only sue for patent infringement, but not for copyright infringement. It's not like you have to choose between the two (you can have both), and anyway it seems that a copyright claim would be quite strong.

Maybe it's just to keep the lawsuit more contained and therefore save in attorney's fees and costs? On the other hand it seems to me that only claiming patent infringement encourages the defendants to challenge the validity of the patents (which are anyway questionable after Bilski and Alice Corp), while they would have much more incentive to settle if there also was a copyright claim that they had little hope of winning.

↩ Reply    ⚒ Moderate

▼ **It's a Closed-source product.** (1)

darkonc (47285) | yesterday | (#47668679)

Versata claiming GPL protection for a Closed-Source product is as obscene as them claiming to be protected by the commercial license, even though they refused to ever write a cheque. The principle is quite simple: If you refuse to abide by the central theme of a license (be it code relicensing or cheque writing), then that license won't protect you.
period.

↩ Reply    ⚒ Moderate

check for more

A language that doesn't affect the way you think about programming is not worth knowing.

Trademarks property of their respective owners. Comments owned by the poster.

Copyright © 2014 Dice. All Rights Reserved. Slashdot is a Dice Holdings, Inc. service