1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| XIMPLEWARE, INC., | Case No. 5:13-cv-05161-PSG |
| Plaintiff, | **ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| VERSATA SOFTWARE, INC., et al., | **(Re: Docket Nos. 89, 90, 91, 93)** |
| Defendants. | |

Justified or not, customers usually do not take kindly to being sued by their suppliers. And so when Defendant Versata Software, Inc. sued its customer Defendant Ameriprise Financial, Inc. for breach of a software license, Ameriprise was not content merely to defend itself.  Ameriprise instead reached out to Plaintiff XimpleWare, Inc., not only to support its defense but also to inform XimpleWare that it had discovered XimpleWare's source code throughout Versata's DCM product, in violation of Ximpleware's GNU General Public License.[1]  XimpleWare did not, however, direct its fire against Versata alone.  Ximpleware filed this suit against both Versata and Ameriprise, as well as other Versata customers, alleging infringement of Ximpleware's patents.[2]

---

[1] *See* Docket No. 88, at ¶ 61.

[2] *Id.* at ¶¶ 62–64.

> 62.   In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation").

The court previously dismissed Ximpleware's complaint, but with leave to amend.  Now before the court is another round of motions to dismiss Ximpleware's operative complaint, brought by Defendants United HealthCare Services, Inc.,[3] Waddell & Reed Financial, Inc.,[4] Pacific Life Ins. Co., Metropolitan Life Ins. Co., Wellmark, Inc. and Aviva USA Corp.,[5] and Versata Software, Inc., Trilogy Development Group, Inc. and Aurea Software, Inc. (the "Versata Defendants").[6]

The motions are GRANTED, but only IN-PART.

## I.

The Patent Act recognizes not just one form of infringement, but several.

There is direct infringement.  "In order to be liable for direct infringement, an accused infringer must make, use, offer to sell, or sell a product embodying the patented design in the United States, or import such a product into the United States."[7]  To facilitate pleading direct infringement, Congress included in the Federal Rules of Civil Procedure a specific form complaint: Form 18.  "Form 18 sets forth a sample complaint for direct patent infringement and requires: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using the device embodying the

---

63.   According to documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product.  Versata then sued for misappropriation, among other claims.

64.   During the prosecution of the Texas Litigation, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's Source Code in the source code of Versata's DCM product, and with said XimpleWare Source code, none of the conditions of the GPL license had been met.  There was also no evidence of any commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in Versata's DCM product.

[3] *See* Docket No. 89.

[4] *See* Docket No. 90.

[5] *See* Docket No. 91.

[6] *See* Docket No. 93.

[7] *Alibaba.com Hong Kong LTD v. P.S. Products, Inc.*, Case No. 10-04457, 2012 WL 1668896, at *3 (N.D. Cal. May 11, 2012) (citing 35 U.S.C. § 271(a)).

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

patent; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages."[8]  Fed. R. Civ. P. 84 provides: "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." "Rule 84, combined with guidance from the Advisory Committee Notes to the 1946 amendment of Rule 84, makes clear that a proper use of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding the sufficiency of the pleading."[9]  But "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement."[10]

There is induced infringement.  35 U.S.C. § 271(b) provides that whoever "actively induces infringement of a patent shall be liable as an infringer."  "Unlike direct infringement, induced infringement is not a strict liability tort; it requires that the accused inducer act with knowledge that the induced acts constitute patent infringement."[11]  Although inducement "requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's" infringement,[12] it "does not require that the induced party be an agent of the inducer or be acting

---

[8] *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

[9] *Id.* (citing *In re Bill of Lading*, 681 F.3d at 1334).

[10] *Id.* at 1284.

> It logically follows that a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend.  *See Bell Atlantic*, 127 S. Ct. at 1971 n.10 (stating "[a] defendant wishing to prepare an answer in the simple fact pattern laid out in Form 9 [in the Federal Rules of Civil Procedure] would know what to answer; a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin.").  Thus, a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent.  *See, e.g., Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

[11] *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011)), *rev'd on other grounds*, 134 S.Ct. 2111 (2014).

[12] *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (internal quotation marks omitted).

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

under the inducer's direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer."[13]  "It is enough that the inducer causes, urges, encourages, or aids the infringing conduct and that the induced conduct is carried out."[14]

"An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement.  That principle, that there can be no indirect infringement without direct infringement, is well-settled."[15]  "The reason for that rule is simple: [t]here is no such thing as attempted patent infringement, so if there is no infringement, there can be no indirect liability for infringement."[16]

And then there is contributory infringement.  "Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an

---

[13] *Akamai*, 692 F.3d at 1308. The Supreme Court recently reversed the Federal Circuit's opinion in *Akamai*. *See Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111 (2014).  In *Limelight* the Supreme Court rejected the Federal Circuit's conclusion in *Akamai* "that a defendant can be liable for inducing infringement under § 271(b) even if no one has committed direct infringement within the terms of § 271(a) (or any other provision of the patent laws), because direct infringement can exist independently of a violation of these statutory provisions." *Id.* at 2117.  The Court assumed without deciding that the Federal Circuit correctly held in *Muniauction* that direct infringement of a method patent requires that the method's steps are all attributable to the same defendant, and concluded that the Federal Circuit's expansive conception of inducement liability ran afoul of *Muniauction's* single-actor rule. *Id.* (citing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329–1330 (Fed. Cir. 2008)).  Ultimately, *Limelight* is relevant here for its reaffirmation of the established and undisputed proposition that "where there has been no direct infringement, there can be no inducement of infringement under § 271(b)." *Id.*

[14] *Akamai*, 692 F.3d at 1308. (quotations omitted) (citing *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 n.13 (Fed. Cir. 2011)); *see also Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001).

[15] *Akamai*, 692 F.3d at 1308. (citing *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526 (1972); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961); *Henry v. A.B. Dick Co.*, 224 U.S. 1, 12 (1912)).

[16] *Id.*

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

infringement of such patent.'"[17]  "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'"[18]

XimpleWare designs, develops, and distributes computer software.[19]  According to its complaint, XimpleWare spent over a decade developing and fine-tuning its copyrighted software product, known as "VTD-XML" or "VTD XML Extended" (collectively, the "Product"), which reads and parses XML code more efficiently and faster than alternative XML parsers.  Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data.[20]  If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs.[21]

XimpleWare made the business decision to license the Product and related source code under an "open source" license known as the GNU General Public License version 2 ("GPL").  The GPL requires, among other things, that: (1) any changes made to the code carry notices stating

---

[17] *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *see* 35 U.S.C. § 271(c):

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

[18] *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

[19] *See* Docket No. 88, at ¶¶ 2–3.

[20] *See id.*

[21] *See id.*

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

that the files were changed, and the dates of all changes; (2) any code created or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices must print or display when the code is run; and (4) when distributed, the program must be accompanied by the complete machine-readable source code.[22]  All four conditions must be met,[23] and the GPL requires strict compliance.[24]

XimpleWare is the owner of all right, title, and interest in various patents related to the Product and related source code, including U.S. Patent Nos. 7,133,857, 7620,652, and 7,761,459.[25] The '857 Patent, filed in 2002 and issued in 2006, is titled "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering methods, apparatuses, and program storage devices for "efficiently processing a structured data file" or "efficiently processing structured data"—including XML.  The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8 independent claims) for methods, apparatuses, and program storage devices, and focuses on efficiently processing structured data like XML.  The '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent claims) for methods, apparatuses, hardware devices, and program storage devices, and again focuses on efficiently processing structured data like XML.

Like Ximpleware, Versata is in the business of software.  Trilogy acquired Versata in 2006, and in 2013 the combined entity merged with Aurea.[26]  As mentioned above, Ameriprise is a Versata customer.  United HealthCare, MetLife, Wellmark, Waddell & Reed, and Aviva

---

[22] *See* Docket No. 18-1.

[23] *See* Docket No. 88, at ¶ 34.

[24] *See id.* at ¶ 30–39.

[25] *See id.* at ¶¶ 50–51.

[26] *See id.* at ¶¶ 4–6.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

(collectively, the "Customer Defendants"), are all believed to be customers of Versata and Trilogy as well.[27]

XimpleWare's first amended complaint asserted claims for: (1) direct infringement of the '852, '459 and '657 patents under 35 U.S.C. § 271(a) against all the defendants;[28] (2) willful infringement by the Versata Defendants; (3) both inducement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c)[29] against Versata and its corporate parents Aurea and Trilogy; and (4) declaratory relief that the asserted patents are valid and enforceable.[30]

The court dismissed the following claims in the FAC: (1) direct infringement against each Customer Defendant; (2) inducement and contributory infringement against the Versata Defendants; and (3) that the Versata Defendants' infringement was willful.[31]  However, the court found that Ximpleware had adequately alleged direct infringement against Ameriprise and the Versata Defendants, and denied Defendants' motions to dismiss as to these claims.[32]

In dismissing the direct infringement claims, the court found that whereas mere use of XimpleWare's patented source code is explicitly permitted under the terms of the GPL, unlicensed distribution of the source code to unrelated third parties is not.[33]  Accordingly, the court concluded that in order to assert patent infringement against the Customer Defendants in this case,

---

[27] *See id.* at ¶¶ 9–15.

[28] *See* Docket No. 18, at ¶¶ 74–90.

[29] Ximpleware's second claim for relief is for "inducing patent infringement." *Id.* at ¶¶ 91–98. Although the complaint cites only the U.S. Code section for inducement—35 U.S.C. § 271(b)— Ximpleware appears to allege contributory infringement against the Versata Defendants as well. *See id.* at ¶¶ 95, 97.

[30] *See id.* at ¶¶ 101–105.

[31] *See* Docket No. 85, at 11–13.

[32] *Id.*

[33] *Id.* at 9–10.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

Ximpleware must allege that the Customer Defendants distributed XimpleWare's software to unrelated third parties.[34]

The court dismissed Ximpleware's indirect infringement claims on two grounds. First, the court found that the FAC failed to allege that Versata knew of the patents in suit, as is required for claims of both inducement and contributory infringement.[35] Second, a claim for indirect infringement requires an underlying act of direct infringement by another party. Because Ximpleware failed to adequately allege direct infringement against all Customer Defendants, the court dismissed Ximpleware's derivative indirect infringement claims.[36]

In accordance with the leave granted, Ximpleware filed a second amended complaint.[37] The SAC contains the same claims as the FAC, and adds a request for declaratory relief as to the scope of the GPL and that any purported patent license granted to Defendants is invalid.[38] Defendants responded to the SAC with four motions to dismiss.[39]

## II.

This court has subject matter jurisdiction under 28 U.S.C. § 1338. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[40] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

---

[34] *Id.*

[35] *Id.* at 13–14.

[36] *Id.* at 13.

[37] Docket No. 88.

[38] *See  id.* at ¶¶ 115, 116.

[39] Docket Nos. 89, 90, 91, 93.

[40] Fed. R. Civ. P. 8(a)(2).

8

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

may be granted.[41]   A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42]   Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[43]   When resolving a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true.[44]   Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[45]

### III.

Defendants move to dismiss Ximpleware's: (1) direct infringement claims against the Customer Defendants; (2) inducement and contributory infringement claims against the Versata Defendants; (3) willful infringement claims against all parties except Ameriprise; and (4) request for declaratory relief from the court as to the validity of the patents in suit and the scope of the GPL.[46]   The court addresses each in turn.

### A.

The Customer Defendants each move to dismiss XimpleWare's claims of direct infringement on the basis that XimpleWare has failed to plead facts showing distribution of the DCM software by any Customer Defendant.

---

[41] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[43] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[44] *See Hannan v. Maxim Integrated Products, Inc.*, 394 F. App'x 434 (9th Cir. 2010) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

[45] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[46] As Ameriprise did not move to dismiss the SAC, none of XimpleWare's claims against Ameriprise are at issue.   Nor is Ximpleware's claim of direct infringement against the Versata Defendants contested by any party in the motions before the court.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

In dismissing XimpleWare's claims for direct infringement against the Customer

Defendants in the FAC, the court held that regardless of the actions of the Versata Defendants,

under the GPL the Customer Defendants each "retain the right to use XimpleWare's software so

long as the customer does not itself breach the license by 'distributing' XimpleWare's software."[47]

Unchanged in the SAC is XimpleWare's allegation that the Customer Defendants "infringe and

continue to willfully infringe the Patents by using the infringing Versata products."[48]  As use is

expressly permitted under the GPL, the court's conclusion on this point is likewise unchanged: the

---

[47] *See* Docket No. 88, at 9–10; *see also* Docket No. 18-1, Ex. 1 at ¶¶ 0-2, 4:

0.  Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does.

1.  You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

2.  You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

  a)  You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.

  b)  You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.

  c)  If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License.  (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

[48] Docket No. 88, at ¶ 84; *cf.* Docket No. 18, at ¶ 84.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

SAC fails to state a claim for direct infringement against the Customer Defendants based on their use of XimpleWare's code included in the DCM software.

While use is unrestricted under the GPL, distribution is not.[49]  The GPL permits distribution only if the distributing party satisfies several specific conditions, including among other things including copy of the GPL along with the distributed program.[50]  The court previously held that XimpleWare had adequately alleged the Customer Defendants failed to satisfy the conditions for distribution of XimpleWare's software.  Accordingly, the "only real issue to resolve" was "whether XimpleWare has sufficiently alleged that its software was 'distributed' by the customers when they shared the software with their independent contractors, franchisees, and producers."[51]  The court further held that Ximpleware had not, and dismissed its claims against the Customer Defendants. However, the court granted XimpleWare leave to amend to cure this defect.[52]

In the SAC, XimpleWare now alleges that each Customer Defendant uses the DCM software in a way which benefits a third party, non-employee, or other unrelated entity.[53]  For example, XimpleWare points to a recent 10-Q quarterly report filed with the Securities Exchange Commission by Defendant Metropolitan Life which states that Metropolitan "has entered into various agreements with affiliates for services necessary to conduct its activities[, which] include personnel, policy administrative functions and distribution services."[54]  XimpleWare alleges, on information and belief, that these affiliates "are the beneficiaries of the DCM software, which

---

[49] *See* Docket No. 18-1, Ex. 1 at ¶¶ 0-2, 4.

[50] *Id*. at ¶ 2.

[51] Docket No. 85, at 10.

[52] *Id*. at 14.

[53] *See* Docket No. 88, at ¶¶ 75–81.

[54] *Id*. at ¶ 77.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

calculates their compensation."[55]  The SAC includes a similar allegation for each Customer

Defendant.[56]

These new allegations are insufficient to support a claim for direct infringement.[57]  In

dismissing the FAC, the court specifically held that in order to bring a claim of direct infringement

against the Customer Defendants, XimpleWare must allege distribution of the patented software in

violation of the GPL.[58]  What Ximpleware alleges in the SAC is use by the Customer Defendants

which benefits some unrelated third party.  But the GPL expressly permits use of GPL-licensed

code.[59]  Whether a third party benefits from such use is irrelevant, and in any case the court fails to

imagine a situation where use of GPL-licensed software benefits no third party whatsoever.  In

sum, allegations of use and third-party benefit are not a substitute for allegations of distribution.

Because Ximpleware has failed to allege facts showing distribution by the Customer

Defendants of the patented software to unrelated third parties, the SAC fails to state a cause of

action for direct patent infringement against the Customer Defendants.[60]

---

[55] *Id.*

[56] *See id.* at ¶¶ 75–81.

[57] *See, e.g.*, Docket No. 90, at 6–8.

[58] Docket No. 85, at 9–10.

[59] *See* Docket No. 18-1, Ex. 1 at ¶ 0 ("The act of running the [licensed] Program is not restricted.").

[60] XimpleWare also raises the new argument in the SAC that the GPL provides no patent license to users of GPL-licensed software. Docket No. 88, at ¶ 40.  In its prior order, the court held that: (1) XimpleWare's software is licensed under the GPL; (2) the downstream user provisions in GPL sections 4 and 6 authorize Customer Defendants to use XimpleWare's software; and (3) to show infringement, XimpleWare must show unlicensed distribution by the Customer Defendants to an unrelated third party. *See id.* at 9–12.  XimpleWare was provided leave to amend its complaint to cure the deficiencies identified by the court.  On this issue, that meant amending the complaint to include factual allegations showing distribution by the Customer Defendants.  Because Plaintiff neither sought leave to assert new claims nor moved for reconsideration of the court's previous order, this new argument is unavailing.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

**B.**

The SAC alleges both inducement and contributory infringement against the Versata

Defendants, and bases each claim on XimpleWare's direct infringement claims against the

Customer Defendants.[61]   As the court noted in its previous order, no claim for indirect infringement

may lie in the absence of direct infringement.[62]   Because the court finds that the SAC fails to state

a claim for direct infringement against all Customer Defendants, the corresponding derivative

indirect infringement claims also fail.   Thus all that remains are XimpleWare's indirect

infringement claims for inducement and contributory infringement based on Ameriprise's direct

infringement.

**1.**

"Liability [for induced infringement] under § 271(b) requires knowledge that the induced

acts constitute patent infringement."[63]   The specific "intent necessary to induce infringement

requires more than just intent to cause the acts that produce direct infringement.   Beyond that

threshold knowledge, the inducer must have an affirmative intent to cause direct infringement."[64]

In their motion to dismiss the SAC, the Versata Defendants contend that the SAC fails to allege

that the Versata Defendants specifically intended to cause direct infringement by the Customer

Defendants.

To induce another party infringe a patent requires knowledge of the patent itself.[65]   In its

previous order dismissing the FAC, the court found that XimpleWare had not alleged the Versata

Defendant's knowledge of the contested patents, and dismissed the inducement claims in their

---

[61] Docket No. 88, at ¶¶ 103–109.

[62] Docket No. 85, at 13.

[63] *In re Bill of Lading*, 681 F.3d at 1339.

[64] *DSU Med. Corp.*, 471 F.3d at 1306.

[65] *See id*. at 1303.

13

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

entirety.[66]  In the SAC, XimpleWare now alleges, on information and belief, that "both Versata and Ameriprise knew about the XimpleWare Patents [before XimpleWare filed suit], and have been on at least inquiry notice since Ameriprise's assertion against Versata in the Texas Litigation of defenses based on XimpleWare's contractual and copyright defenses."[67]  The SAC also alleges that "XimpleWare uses the patent numbers on its Product and in its documentation to give actual and constructive notice of the existence of XimpleWare patents."[68]  Although minimal, at the pleadings stage the court finds these allegations sufficient to demonstrate the Versata Defendants' knowledge of the patents in suit.[69]

Beyond the initial hurdle of showing that a defendant was aware of the asserted patent, to state an inducement claim a complaint must also contain facts showing that a defendant specifically intended its customers to infringe the patent in suit.[70]

As discussed above, the Customer Defendants are free to *use* XimpleWare software under the GPL.  To state a claim for direct infringement by the Customer Defendants XimpleWare must allege *distribution* in violation of the GPL.  Likewise, to adequately allege inducement by the Versata Defendants, the SAC must contain factual allegations that give rise to the plausible inference that the Versata Defendants specifically intended the Customer Defendants to *distribute* the DCM software.

In the SAC, XimpleWare alleges that "the Versata Defendants . . . have knowingly aided, abetted, and actively induced" the Customer Defendants to infringe XimpleWare's patents.[71]  But

---

[66] Docket No. 85, at 13.

[67] Docket No. 88, at ¶ 68.

[68] *Id*. at ¶ 58.

[69] *Merritt v. Countrywide Fin. Corp.*, Case No. 09-17678, 2014 WL 3462097, at *2 (9th Cir. July 16, 2014) ("Pleading on 'information and belief' in appropriate circumstances fits well with the spirit of the rules.") (citation omitted).

[70] *DSU Med. Corp.*, 471 F.3d at 1306.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

the story XimpleWare tells in the SAC is that the Versata Defendants took XimpleWare code, incorporated it into their own DCM software, and sold this software to the Customer Defendants for their own use.[72]  Nothing in the SAC supports the further conclusion that the Versata Defendants specifically intended that their customers would distribute the DCM software containing XimpleWare's code.  In fact, XimpleWare's allegations suggest the opposite.  The SAC alleges that the Customer Defendants use the DCM software to calculate the compensation of third party "affiliates"—the "beneficiaries of the DCM software."[73]  Why would the Customer Defendants distribute the software they use to calculate the compensation of certain non-employee affiliates to those affiliates?  And more importantly, why would the Versata Defendants wish them to do so?

Ultimately, the SAC alleges neither distribution by the Customer Defendants nor even that the Versata Defendants intended the Customer Defendants to so distribute.  The allegations in the SAC show that the Versata Defendants intended the Customer Defendants to do something that the GPL expressly permits—use the licensed software.  Because the SAC fails to set forth facts showing that the Versata Defendants intended the Customer Defendants (and in particular, Ameriprise, the only party for whom XimpleWare has adequately alleged distribution) to distribute the DCM software, the SAC fails to state a claim for inducement.

**2.**

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the

---

[71] Docket No. 88, at ¶ 105.

[72] *See  id*. at ¶¶ 64–71.

[73] *See id*. at ¶¶ 77–81.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'"[74]

The court previously dismissed XimpleWare's contributory infringement claims because the FAC failed to allege knowledge of the patents in suit and because "XimpleWare [had] not 'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'"[75]  Although as discussed above the SAC adequately alleges knowledge of the XimpleWare patents, the SAC contains no facts showing that DCM has no substantial non-infringing use.

In response to the court's dismissal of its contributory infringement claim, XimpleWare added the following to the SAC: "Because the XimpleWare Patents cover the main algorithms and functionality of VTD-XML, and because VTD-XML implements the XimpleWare Patents, there are no substantial non-infringing uses of VTD-XML."[76]  This allegation is insufficient to plead contributory infringement because the accused product is DCM, not VTD-XML. VTD-XML is XimpleWare's product, parts of which were allegedly incorporated by the Versata Defendants into DCM.  It does not necessarily follow that because VTD-XML as no non-infringing uses, DCM must as well.  XimpleWare never alleges that DCM cannot be used without using the parts of VTD-XML incorporated in DCM, or that DCM cannot be used without infringing the patents in

---

[74] *In re Bill of Lading*, 681 F.3d at 1337.  The knowledge requirement for contributory infringement is identical to that for inducement. *See Global-Tech Appliances*, 131 S. Ct. at 2068. The SAC satisfies the knowledge requirement for pleading contributory infringement for the same reasons it does for inducement.

[75] Docket No. 85, at 14 (quoting *In re Bill of Lading*, 681 F.3d at 1337).

[76] Docket No. 88, at ¶ 104.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

suit.[77]  In short, whether or not VTD-XML has any substantial non-infringing uses is a different question from whether or not DCM does.

Because the SAC does not allege that the accused product—DCM—has no substantial non-infringing uses, XimpleWare's claim for contributory infringement must be dismissed.

## C.

Although the Versata Defendants state in their notice of motion to dismiss the SAC that they will move to dismiss XimpleWare's willfulness claim, they fail to raise the issue in the motion itself.[78]  The court finds that the Versata Defendants thus have forfeited this argument.  Regardless, were the court to reach the issue of willfulness, the Versata Defendants' motion would be denied as "[w]ithin the Northern District, to sufficiently plead a claim for willful infringement, a patentee must make out the barest factual assertion of knowledge of an issued patent."[79]  As discussed above, XimpleWare has cleared this hurdle.

## D.

The SAC seeks a declaratory judgment that: (1) XimpleWare's asserted patents are valid;[80] (2) the GPL confers no patent license;[81] and (3) any purported grant of a patent license by one

---

[77] The Federal Circuit is clear that "[f]or the purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes other than infringement." *In re Bill of Lading*, 681 F.3d at 1337.

[78] *See* Docket No. 93, at 1.

[79] *Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, LLC*, Case No. 12-0068, 2012 WL 2803617, at *3 (N.D. Cal. July 10, 2012) (citing *IpVenture, Inc. v. Cellco P'ship*, Case No. 10-4755, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011)).

[80] Docket No. 88, at ¶ 114.

[81] *Id.* at ¶ 115.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1  defendant to another is invalid.[82]  Because each of these requests lacks a legal or factual basis, the

2  SAC fails to state a claim for declaratory relief.[83]

3      XimpleWare's first request is improper because "a declaratory judgment of patent

4  validity . . . is not a viable cause of action."[84]  A defendant may seek a declaration of invalidity as

5  an affirmative defense to a charge of patent infringement, but no corresponding affirmative cause

6  of action is available to XimpleWare.[85]  Patents are presumed valid under 35 U.S.C. § 282.[86]  In

7  this case no defendant has challenged the validity of the asserted patents, and consequently a

8  declaration as to their validity would amount to an improper advisory opinion.[87]  Accordingly,

9  XimpleWare's request for a declaratory judgment that the asserted patents are valid must be

10  denied.

11      Ximpleware's request for declaratory relief in the SAC also fails to meet the statutory

12  requirements for a declaratory judgment.  18 U.S.C. § 2201 authorizes federal courts to declare

13  rights and legal relations only in cases of "actual controversy."[88]  But XimpleWare cannot point to

14  any controversy which existed at the time the complaint was filed in this case.[89]  In defense of its

---

[82] *Id.* at ¶ 116.

[83] XimpleWare failed to identify the statutory basis for its declaratory relief claims, as required by Rule 8(a). *See* Fed. R. Civ. P. 8(a). ("A pleading that states a claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction . . . .").

[84] *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1370 (Fed. Cir. 2013).

[85] *Brooks Mfg. Co. v. Dis-Tran Wood Prods., LLC*, Case No. 11-0309, 2012 WL 1099760, at *4 (W.D. Wash. Mar. 30, 2012) (dismissing request for declaratory judgment of validity because "the court has uncovered no case in which a patentee seeks a declaration of validity. [Because the] patent is presumed . . . valid, [the complaint] essentially seeks a declaration as to the status quo.").

[86] 35 U.S.C. § 282(a) ("A patent shall be presumed valid.").

[87] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[A]n opinion advising what the law would be upon a hypothetical state of facts" does not satisfy the case-or-controversy requirement).

[88] 18 U.S.C. § 2201(a).

[89] *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012)("The party seeking to establish declaratory judgment jurisdiction bears the burden of

18

declaratory relief claims, XimpleWare simply contends that the instant motions to dismiss are themselves sufficient to give rise to an actual controversy.[90]  However, as Defendants point out, if this were true, no defendant could ever challenge a declaratory judgment action on subject matter jurisdiction grounds.[91]  It is for this very reason that courts require an actual controversy "at the time the claim for declaratory relief is filed."[92]  Because no such controversy existed at the time the instant complaint was filed, the SAC fails to state a valid claim for declaratory relief.

**E.**

XimpleWare contends that it should be granted leave to amend the complaint.[93]  "The court should freely give leave when justice so requires."[94]  However, leave is not appropriate in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[95]  In its previous order, the court clearly directed plaintiff to allege facts, if it could, showing distribution by the Customer Defendants.[96]  Although XimpleWare has acknowledged that it understood the court's prior order required them

---

demonstrating that an Article III case or controversy exists at the time the claim for declaratory relief is filed.").

[90] Docket No. 99, at 22–23 ("The very issues XimpleWare has and is seeking declaratory relief on form the basis of this motion, showing that there is an actual case or controversy on the points upon which XimpleWare sought declaratory relief.").

[91] Docket No. 103, at 4.

[92] *Matthews Int'l*, 695 F.3d at 1328.

[93] Docket No. 99, at 23.

[94] Fed. R. Civ. P. 15(a)(2).

[95] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[96] Docket No. 85, at 9–10.

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

to allege distribution,[97] the SAC fails to do so, and it does not appear to the court that XimpleWare has the ability or inclination to do so in the future.

XimpleWare's opposition barely addresses the issue of distribution, stating only that "[i]n full compliance with the [court's prior order], in its Second Amended Complaint Plaintiff cites excerpts from Customer Defendants' own SEC filings and websites describing the distribution of materials to independent contractors who benefit from the use of the DCM software."[98]  As discussed above, the GPL prohibits neither the use of DCM nor third party benefit from such use. Distribution of "materials" to these beneficiaries is equally irrelevant: as the court has made very clear, the Customer Defendants must distribute DCM to infringe the asserted patents.  Beyond this cursory argument that XimpleWare has complied with the court's directive, the rest of XimpleWare's opposition is devoted to arguing a wholly new theory of liability.[99]

In light of Ximpleware's failure to follow the court's directive, the court is inclined to deny XimpleWare's request for leave to amend yet another time.[100]  But if it can explain how it will cure the deficiencies in the complaint identified by the court, Ximpleware may file a motion for leave to

---

[97] Docket No. 99, at 15.

[98] *Id.*

[99] *Id.* at 7–15. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("[A] district court does not abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally."); *Forces Action Project LLC v. California*, 61 F. App'x 472, 474 (9th Cir. 2003) (Denial of leave to amend proper where "Plaintiffs presented no new facts, but only new theories, and provided no satisfactory explanation for their failure to develop all theories earlier."); *see also Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 570–71 (9th Cir. 1987); *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982).

[100] The court notes that a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013) (citation and internal quotation marks omitted).

20

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

amend.[101] The motion must clearly set forth how the proposed amendment cures the deficiencies Ximpleware failed to address in the SAC.

## IV.

Defendants' motions to dismiss are GRANTED-IN-PART.  XimpleWare's direct infringement claims against the Customer Defendants, indirect infringement claims against the Versata Defendants (both inducement and contributory infringement), and declaratory relief claims are all dismissed.  Also dismissed are XimpleWare's willful infringement claims against the Customer Defendants.  XimpleWare's direct and willful infringement claims against the Versata Defendants and Ameriprise remain in the case.

No later than 14 days from the date of this order, Ximpleware may seek leave to amend the complaint.  The motion should be noticed on a normal 35–day track.[102]  A proposed amended complaint (and a redline indicating the changes) must be appended to the motion.  The motion must clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: November 25, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[101] *See, e.g.*, *Logic Devices, Inc. v. Apple, Inc.*, Case No. 13-02943, 2014 WL 60056, at *3 (N.D. Cal. Jan. 7, 2014) (request for leave to amend premature where plaintiff neither filed a proposed amended complaint nor explained how it would cure deficiencies identified by court). The court also notes that the local rules require parties seeking to amend a pleading file a proposed amended pleading with the court. Civil L.R. 10-1 ("Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading.).

[102] *See* Civil L.R. 7-2(a).

21

Case No. 5:13-cv-05161-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS